UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELODIE PASSELAIGUE, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>GETTY IMAGES (US), INC., GETTY IMAGES, INC., BILL DIODATO PHOTOGRAPHY, LLC, and BILL DIODATO,<br><br>    Defendants. | Civil Action No. 16-cv-01362 (VSB)(BCM) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS THE CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND ................................................................................................. 3

ARGUMENT ........................................................................................................................ 5

I.      THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE
PLAINTIFF SIGNED A VALID AND BINDING WRITTEN RELEASE WAIVING
HER CLAIMS AGAINST DEFENDANTS ...........................................................6

II.     NOTWITHSTANDING THE VALID RELEASE, PLAINTIFF'S CLAIMS
EACH FAIL AS A MATTER OF LAW BASED ON THE FACTS
ALLEGED ............................................................................................................7

       A.    Plaintiff's New York Right of Publicity Claim Fails Because Defendants' Use Was
Not for Purposes of Advertising or Trade, Is Protected by the First Amendment, and
Is Preempted by the Copyright Act ...........................................................7

             1.    Defendants did not use the photograph depicting Plaintiff for purposes of
advertising or trade under Section 51 ..............................................8

             2.    Defendants' actions are protected by the First Amendment .............11

             3.    Plaintiff's Section 51 claim is preempted by the Copyright Act ........12

       B.    Plaintiff's Fraud Claim Fails Because Plaintiff Is Not Entitled to Rely on Alleged
Oral Statements Contradicted by Subsequent Written Terms .......................13

             1.    The signed model release defeats Plaintiff's reliance argument .........13

             2.    Plaintiff's allegations regarding Diodato's purported oral statements are
prohibited by the Parol Evidence Rule .............................................16

       C.    Plaintiff's Lanham Act and Unfair Competition Claims Fail Because She Does Not
Satisfy The Laws' Basic Elements, and Her Claims Are Preempted ...............17

             1.    Defendants are not directly liable .....................................................17

             2.    Defendants are not contributorily liable .............................................19

             3.    Plaintiff's Lanham Act and unfair competition claims are preempted
.......................................................................................................21

D.  Plaintiff's Negligence Claim Fails Because Defendants Owed No Legal Duty ....................................................................................................................................22

E.  Plaintiff's Section 349 Claim Fails Because She Does Not and Cannot Allege Any Consumer Injury or Harm to the Public Interest……………………………...25

F.  Washington Law Claims Fail Because Washington Law Is Inapplicable..27

III.    THE COURT SHOULD STRIKE OR DISMISS THE CLASS ALLEGATIONS ....................................................................................................28

A.  Plaintiff Cannot Meet Rule 23(a)'s Prerequisites to a Class Action ...........29

1.  Commonality and typicality are not satisfied………………………...29

2.  The putative class is not ascertainable…………………………………31

B.  The Class Action is Not Maintainable Under Rule 23(b) ...........................32

1.  Common questions of law and fact do not predominate……………32

2.  There is no injunctive class…………………………………………...34

CONCLUSION...............................................................................................................35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agee v. Paramount Commc'ns, Inc.*,
   59 F.3d 317 (2d Cir. 1995) ........................................................................... 18

*Alfano v. NGHT, Inc.*,
   623 F. Supp. 2d 355 (E.D.N.Y. 2009) ...................................................... 8, 9

*Ann-Margaret v. High Soc'y. Magazine, Inc.*,
   498 F. Supp. 401 (S.D.N.Y. 1980) .......................................................... 9, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................. *passim*

*Ault v. J.M. Smucker Co.*,
   No. 13-CV-3409, 310 F.R.D. 59 (S.D.N.Y. 2015) ............................... 34, 35

*Auscape Int'l v. Nat'l Geographic Enters. Inc.*,
   No. 02 CIV. 6441 LAK HBP, 2003 WL 23531750 (S.D.N.Y. July 25, 2003) ................................... 34

*Banco Indus. de Venezuela, C.A. v. CDW Direct, L.L.C.*,
   888 F. Supp. 2d 508 (S.D.N.Y. 2012) ................................................. 23, 24

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................. *passim*

*Benfield v. Mocatta Metals Corp.*,
   No. 91 CIV. 8255 (LJF), 1993 WL 148978 (S.D.N.Y. May 5, 1993) ............. 35

*Bery v. City of New York*,
   97 F.3d 689 (2d Cir.1996) .............................................................................. 12

*Biediger v. Quinnipiac Univ.*,
   No. 3:09-CV-621, 2010 WL 2017773 (D. Conn. May 20, 2010) ................... 32

*In re Bridgestone/Firestone Tires Prods. Liab. Litig.*,
   288 F.3d 1012 (7th Cir. 2002) ..................................................................... 28

*British W. Indies Guar. Trust Co. v. Banque Internationale a Luxembourg*,
   567 N.Y.S.2d 731 (App. Div. 1st Dep't 1991) ............................................. 7, 15

*Burrow-Giles v. Sarony*,
   111 U.S. 53 (1884) ....................................................................................... 12

*Centronics Fin. Corp. v. El Conquistador Hotel Corp.*,
   573 F.2d 779 (2d Cir. 1978) ......................................................................... 16

*Chambers v. Time Warner*,
   No. 00 Civ. 2839(JSR), 2003 WL 749422 (S.D.N.Y. July 14, 2008) ................................. 33

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
   516 N.E.2d 190 (N.Y. 1987) .................................................................................. 23

*Cohn v. Mass. Mut. Life Ins. Co.*,
   189 F.R.D. 209 (D. Conn. 1999) ........................................................................... 33

*Conopco Inc. v. Wells Enters., Inc.*,
   No. 14 CIV. 2223 NRB, 2015 WL 2330115 (S.D.N.Y. May 14, 2015) ........................... 25

*Costlow v. Cusimano*,
   311 N.Y.S.2d 92 (N.Y. App. Div. 4th Dep't 1970) ........................................................ 9, 11

*Dale v. Coors Brewing Co.*,
   113 Wash. App. 1017 (2002) ............................................................................... 27

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003) ........................................................................................... 21

*Deer Consumer Products, Inc. v. Little Grp.*,
   37 Misc. 3d 1224(A), 961 N.Y.S.2d 357 (Sup. Ct. 2012) ............................................ 25

*Digigan, Inc. v. Ivalidate, Inc.*,
   No. 02 Civ. 420(RCC), 2004 WL 203010 (S.D.N.Y. Feb. 3, 2004) ............................. 18, 26

*Doe* v. *Chao*,
   306 F.3d 170 (4th Cir. 2002). ............................................................................. 31

*Drenis v. Haligiannis*,
   452 F. Supp. 2d 418 (S.D.N.Y. 2006) .................................................................... 27

*Dryer v. Nat'l Football League*,
   No. 14-3428 (8th Cir. Feb. 26, 2016) .................................................................... 12

*Eisen v. Carlisle & Jacquelin*,
   391 F.2d 555 (2d Cir. 1968) ............................................................................... 34

*Eric M. Berman, P.C. v. City of New York*,
   895 F. Supp. 2d 453 (E.D.N.Y. 2012) ..................................................................... 5

*Ford v. Grand Union Co.*,
   197 N.E. 266 (N.Y. 1935) ................................................................................... 24

*Foster v. Svenson*,
   7 N.Y.S.3d 96 (App. Div. 1st Dep't 2015) ............................................................... 11

*Georgine v. Amchem Prods.*,
   83 F.3d 610 (3d Cir. 1996) ................................................................................. 34

*Gray v. Seaboard Sec., Inc.*,
    788 N.Y.S.2d 471 (3d Dep't 2005) ................................................................. 25

*Greenblatt v. Prescription Plan Servs. Corp.*,
    783 F. Supp. 814 (S.D.N.Y. 1992) .................................................................. 17

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
    277 F. Supp. 2d 269 (S.D.N.Y. 2003) ............................................................. 25

*Hoepker v. Kruger*,
    200 F. Supp. 2d 340 (S.D.N.Y. 2002) ............................................................. 12

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
    456 U.S. 844 (1982) ....................................................................................... 19

*Jackson v. Broad. Music, Inc.*,
    No. 04 CV 5948 (TPG), 2006 WL 250524 (S.D.N.Y. Feb. 1, 2006) ................ 14

*Jones v. Corbis Corp.*,
    815 F. Supp. 2d 1108 (C.D. Cal. 2011) ........................................................... 33

*Kelly-Brown v. Winfrey*,
    717 F.3d 295 (2d Cir. 2013) ..................................................................... 19, 20

*Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atl. Corp.*,
    309 F.3d 71 (2d Cir. 2002) .......................................................................... 6, 7

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc.*,
    No. CV 15-05024 DDP (EX), 2016 WL 1027998 (C.D. Cal. Mar. 14, 2016) .................................... 21

*Lombard v. Booz–Allen & Hamilton, Inc.*,
    280 F.3d 209 (2d Cir. 2002) ............................................................................ 22

*Luciano v. Eastman Kodak Co.*,
    No. 05-CV-6463T, 2006 WL 1455477 (W.D.N.Y. May 25, 2006) .................... 29

*M & T Bank Corp. v. LaSalle Bank Nat'l Ass'n*,
    852 F. Supp. 2d 324 (W.D.N.Y. 2012)............................................................. 23

*Maloney et al. v. T3Media, Inc.*,
    94 F. Supp. 3d 1128 (C.D. Cal. 2015) ....................................................... 12, 13

*MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*,
    32 Misc. 3d 758, 927 N.Y.S.2d 517 (Sup. Ct. 2011)........................................ 13

*Medic Alert Found. U.S., Inc. v. Corel Corp.*,
    43 F. Supp. 2d 933 (N.D. Ill. 1999).................................................................. 10

*Mimms v. Carr*,
    No. 09-CV-5740 NGG LB, 2011 WL 2360059 (E.D.N.Y. June 9, 2011) ............ 7

*Moore v. PaineWebber*,
   306 F.3d 1247 (2d Cir. 2002) ........................................................................................ 33

*Morby v. Di Siena Assocs. LPA*,
   737 N.Y.S.2d 678 (App. Div. 3d Dep't 2002) ...................................................... 13, 14, 15

*Muller-Paisner v. TIAA*,
   289 Fed. App'x 461 (2d Cir.2008) ............................................................................... 23

*Myskina v. The Conde Nast Publ'ns, Inc.*,
   386 F. Supp. 2d 409 (S.D.N.Y. 2005) .......................................................................... 16

*Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   89 Fed. App'x 287 (2d Cir. 2004) ............................................................................... 27

*Newman* v. *RCN Telecom Servs. Inc*.,
   238 F.R.D. 57 (S.D.N.Y. 2006)..................................................................................... 31

*Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.*,
   No. 07 CIV 6959 DAB, 2010 WL 4968072 (S.D.N.Y. Dec. 6, 2010).......................... 20, 26

*Otero v. Houston St. Owners Corp*.,
   37 Misc. 3d 1212(A), 961 N.Y.S.2d 359, 2012 WL 5230209 (N.Y. Sup. Ct. 2012) ........... 8

*Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*,
   887 F. Supp. 2d 519 (S.D.N.Y. 2012) .......................................................................... 26

*Rand v. Hearst Corp.*,
   298 N.Y.S.2d 405 (N.Y. App. Div. 1st Dep't 1969) ........................................................ 11

*Reinsich v. N.Y. Stock Exch.*,
   52 F.R.D. 561 (S.D.N.Y.1971)...................................................................................... 28

*Resource Developers Inc. v. Statue of Liberty-Ellis Island Foundation, Inc.*,
   No. 87 CIV. 1993 (CSH), 1988 WL 31881 (S.D.N.Y. 1988) ............................................ 18

*Robinson v. Metro-North Commuter R.R.*,
   267 F3d 147 (2d Cir. 2001) .......................................................................................... 35

*Salon Fad v. L'Oreal USA, Inc.*,
   No. 10 CIV 5063 DLC, 2011 WL 4089902 (S.D.N.Y. Sept. 14, 2011)............................... 30

*Shields v. Gross*,
   58 N.Y. 2d 338 (1983)................................................................................................ 11

*Simon v. E. Ky. Welfare Rights Org*.,
   426 U.S. 26 (1976) ..................................................................................................... 31

*Sola Franchise Corp. v. Solo Salon Studios Inc.*,
   No. 14-CV-0946, 2015 WL 1299259 (E.D.N.Y. Mar. 23, 2015) ...................................... 26

*State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*,
   840 N.Y.S.2d 8 (1st Dep't 2007) ................................................................ 25

*Sports Traveler, Inc. v. Advance Magazine Pubs., Inc.*,
   96 Civ. 5150, 1997 WL 137443 (S.D.N.Y. Mar. 24, 1997) ................................ 27

*State Farm Mut. Ins. Co. v. Anikeyeva*,
   35 Misc. 3d 1203(A), 950 N.Y.S.2d 726 (Sup. Ct. 2012) ................................ 26

*Stone v. Schulz*,
   647 N.Y.S.2d 822 (App. Div. 2d Dep't 1996) ................................................ 15

*Stutman v. Chemical Bank*,
   95 N.Y.2d 24 (2000) .................................................................................. 25

*Szymczak v. Nissan N. Am., Inc.*,
   No. 10 CV 7493 VB, 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ............... 27, 28

*Thompson v. Getty Images (US), Inc.*,
   No. C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013) .................................. 10

*Tiffany (NJ) Inc. v. eBay Inc.*,
   600 F.3d 93 (2d Cir. 2010) ..................................................................... 19, 20

*Time, Inc. v. Hill*,
   385 U.S. 374 (1967) .................................................................................. 11

*Tirado v. Deboers*,
   No. 03-CV-5604 ARR LB, 2013 WL 1810746 (E.D.N.Y. Apr. 24, 2013) ............. 7

*Urstadt Biddle Props., Inc. v. Excelsior Realty Corp.*,
   885 N.Y.S.2d 510 (App. Div. 2d Dep't 2009) ................................................ 14

*Village on Canon v. Bankers Trust Co.*,
   920 F. Supp. 520 (S.D.N.Y. 1996) .............................................................. 14

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .......................................................................... 29, 30, 31

*Wang v. Pataki*,
   396 F. Supp. 2d 446 (S.D.N.Y. 2005) ........................................................... 5

*Waters v. N.Y. City Housing Auth.*,
   501 N.Y.S.2d 385 (2d Dep't 1986) .............................................................. 24

*Weil v. Johnson*,
   No. 119431/02, 2002 WL 31972157 (N.Y. Sup. Ct. Sept. 27, 2002) ............ 14, 15

*Weiner v. Snapple Beverage Corp.*,
   No. 07 CIV. 8742 DLC, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ................ 31

**Statutes & Rules**

17 U.S.C.§ 106..................................................................................................................... 21

17 U.S.C.§ 301 ..................................................................................................................... 12

15 U.S.C.§ 1051, *et seq.*...................................................................................................... *passim*

New York Civil Rights Law § 51 ......................................................................................... 7, 8, 9

New York General Business Law § 349 ............................................................................... 2, 25, 26, 27

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

Defendants Getty Images (US), Inc., Bill Diodato, and Bill Diodato Photography, LLC (collectively "Defendants")[1] respectfully submit this memorandum of law in support of their motion to dismiss the Class Action Complaint ("Complaint").

## PRELIMINARY STATEMENT

This is a case of model's remorse that is foreclosed by a written release.  Plaintiff Elodie Passelaigue ("Plaintiff") – a self-styled internationally renowned fashion model – participated in two photo shoots with defendant Bill Diodato ("Diodato"), a professional photographer.  She signed a written release granting virtually limitless permission to use the resulting photographs and absolving Diodato and his licensees of all liability resulting from any future publication.  The photographs, by way of visual content licensor defendant Getty Images (US), Inc. ("Getty Images") were licensed to pharmaceutical company Allergan, Inc., who used them to illustrate advertisements for Botox and other pharmaceutical products.  Upon learning of the ads, Plaintiff suddenly claimed that Diodato had promised her, verbally, that the photographs would only be used for Diodato's portfolio and on his website.  The Complaint teeters on a flimsy interpretation of the law of fraud, a scattershot approach to pleading numerous other causes of action, and a dubious claim that this case is somehow appropriate for class treatment under Federal Rule 23.

*First*, Plaintiff waived all of her claims relating to the publication of the photographs when she signed a written model release.  All of the causes of action in the Complaint stem from publication of the photographs and are squarely within the scope of the broad release regardless of the fact that Plaintiff finds the publications objectionable.  Even if Plaintiff could avoid the applicability of the release, her right-of-publicity claim fails because Defendants did not use her image for purposes of advertising or trade, and because the First Amendment moots her claim.

---

[1] Defendant Getty Images, Inc. does not join this motion because the parties have agreed that, at this time, Getty Images, Inc. should be dismissed from this case without prejudice.  [Dkt. No. 43.]

*Second*, Plaintiff's fraud claim fails because Plaintiff cannot, as a matter of law, have reasonably relied on oral statements that were subsequently contradicted by a short, clear writing that she signed.  That Plaintiff obviously did not read the release further dooms her claim; she cannot hide her head in the sand and then claim she was duped into signing a one-page document that she could and should have easily read.  Moreover, the parol evidence rule prohibits her from utilizing evidence of inconsistent oral statements allegedly made before signing a written release.

*Third*, Plaintiff cannot satisfy basic elements of the Lanham Act given that no cause of action lies for purportedly false statements concerning ownership of intellectual property.  Moreover, Plaintiff does not and could not adequately plead the necessary elements of contributory liability because the Defendants did not induce a third party's direct infringement, nor did they knowingly ignore specific instances of actual infringement.

*Fourth*, Plaintiff's negligence claim fails because she points to no applicable legal duty running from Diodato or Getty Images to her which was breached.  Her failure to do so is for good reason – because no such legal duty exists.

*Fifth*, Plaintiff's New York General Business Law § 349 claim is inapt because her claim is decidedly not consumer-focused.  This case is based firmly on purported injury to Plaintiff's own career, and any confusion attributable to the public is a distant secondary consideration.

*Finally*, class certification is, on the face of the Complaint, inappropriate.  Plaintiff's own allegations belie the notion that common issues of law and fact will predominate here, or that any putative class is even ascertainable.  The Complaint similarly supports the proposition that individual hearings will be necessary to determine who properly belongs in the putative class given how many factual distinctions will inherently arise from the situation Plaintiff describes.

2

Plaintiff cannot turn back time and reconsider her decision to participate in the photo shoots and sign the release.  Defendants should not be subject to claims that Plaintiff specifically relinquished and that otherwise rest on implausible factual assertions and baseless legal theories. The Court should dismiss the Complaint in its entirety.

## FACTUAL BACKGROUND

Accepting as true for purposes of this motion all factual allegations in the Complaint, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553 (2007), the relevant facts are as follows:

Plaintiff is a professional model residing in New York.  (Cplt. ¶¶ 2, 4.)  Diodato is a professional photographer who also resides in New York (Cplt. ¶ 8); his company, Bill Diodato Photography, LLC is a New York limited liability company located in New York City.  (*Id.* ¶ 7.)[2]  Defendant Getty Images (US), Inc. is a New York corporation located in New York, and is a licensor of visual media, including tens of millions of stock photography images.  (*Id*. ¶¶ 5, 76.)

According to the Complaint, Plaintiff participated in a photo shoot for beauty company Clinique on February 9, 2004; the purpose of the shoot was to test the lighting while taking photographs of Plaintiff appearing submerged in water (the "Clinique Test Shoot"), and Diodato was hired as the photographer.  (Cplt. ¶¶ 20-23.)  Plaintiff claims that after the Clinique Test Shoot, Diodato asked Plaintiff if he could use the resulting photos "for his portfolio and professional website simply as an example of his work" (*id.* ¶ 23), and Plaintiff agreed.  (*Id.* ¶ 24.)  Diodato then purportedly asked Plaintiff to sign a form model release, which Plaintiff did. (*Id.* ¶ 27.)  The one-page, two-paragraph model release granted Diodato "the unrestricted right to use [Plaintiff's] appearance, form, likeness and voice, . . . contained in the photographs" from the photo shoot, "and to distribute such Images for editorial, trade, advertising, packaging, or other

---

[2] Plaintiff provides no factual support for her conclusory allegation that Bill Diodato Photography, LLC is an "alter ego" of Bill Diodato (*see* Cplt. ¶7), and this allegation should be disregarded.

purposes in any manner or medium . . . throughout the world, in perpetuity." (*Id.* ¶ 62; Cplt. Exh. 3.)  The model release further stated that Plaintiff "understand[s] Photographer may contract with a stock agency and that the Images may be included in stock files." (*Id.*)

The model release also clearly stated that Plaintiff waived "the right to inspect or approve any use of the Images" and released Diodato and his assigns "from and against any and all actions, liabilities, losses, demands or claims" that Plaintiff has or may have in the future "for rights of publicity, invasion of privacy, defamation, libel or slander and/or any other tort or cause of action arising out of any use of the Images, even if such use is unflattering, embarrassing or objectionable to [Plaintiff]." (*Id.*)  Notwithstanding these clear releases, the model release states that Plaintiff's "monetary damages award against Photographer or his/her Assigns if any, shall not under any circumstances exceed $US 500.00." (*Id.*)  Despite the clear terms of the model release, Plaintiff claims to have been "unaware" of the terms, including the limitation of monetary damages and waiver of her rights to object to uses of her photographs. (*Id.* ¶ 32.)

According to the Complaint, on June 11, 2009, Spiegel, a woman's clothing and accessory company, hired Plaintiff for a photo shoot also conducted by Diodato (the "Spiegel Shoot"). (*Id.* ¶ 34.)  Plaintiff alleges that she did not sign any release on the date of the Spiegel Shoot and that Diodato took headshots of Plaintiff without Spiegel's knowledge. (*Id.* ¶¶ 36-38.)

Plaintiff claims that in August 2014 she learned that Allergan had been using her headshots in online advertisements for Botox and other cosmetic pharmaceutical products but that Plaintiff had not authorized such use. (*Id.* ¶¶ 39-41.)  Plaintiff's agent contacted Getty Images, who explained that it had a valid release for the photographs – the model release Plaintiff concedes she signed. (*Id.* ¶¶ 49-50.)  While Plaintiff recognized her name and signature on the model release, she purports to not recall how the other information was filled out or why

4

two photographs appear on the release itself.  (*Id.* ¶¶ 51-54.)  She concedes, however, that the model release is signed by two witnesses, and points out that the model release appears on a pre-printed form dated as of June 18, 2007 – after the Clinique Test Shoot.  (*Id.* ¶ 62.)  To justify her story concerning the alleged 2004 signing of the model release, she concludes, without any factual support, that the model release must have somehow been "doctored."  (*Id.* ¶¶ 62, 67.)

It was later revealed to Plaintiff that the photographs were submitted under the name Adrianna Williams (*id.* ¶58), a pseudonym Diodato uses for submission of photographs to stock agencies.  (*See id.* ¶¶ 60-61.)[3]  Plaintiff claims to have spoken to "others in the industry" and determined that many other models were purportedly defrauded by Diodato.  (*Id.* ¶ 68.)  For her own injuries, Plaintiff alleges, among other things, that the Defendants have caused her "to be falsely associated with Allergan" and its products, yet Plaintiff does not include Allergan – the actual advertiser that used her image – as a defendant.

## ARGUMENT

None of Plaintiff's claims can withstand a Rule 12(b)(6) motion because Plaintiff fails to plead "enough facts to state a[ny] claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  This "plausibility" standard demands that Plaintiff plead sufficient "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," not just "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the court must "accept as true all of the factual allegations contained in the complaint," *Twombly*, 550 U.S. at 572, those factual

---

[3] Contrary to Plaintiff's baseless allegations (*see* Cplt. ¶¶ 72, 73, 89, 90), using pseudonyms is a common and accepted occurrence in the professional photography industry, and is even condoned by the Copyright Office.  *See, e.g.*, http://www.alamy.com/contributor/how-to-sell-images/captions-and-keywords-for-images/; http://www.shutterstock.com/contributorsupport/articles/kbat02/000006637?q=pseudonym&l=en_US&fs=Search&p n=1); http://www.copyright.gov/fls/fl101.pdf.  The Court may consider these materials on a motion to dismiss because they are publicly available on the Internet.  *See Wang v. Pataki*, 396 F. Supp. 2d 446, 458 & n.2 (S.D.N.Y. 2005); *Eric M. Berman, P.C. v. City of New York*, 895 F. Supp. 2d 453, 494 n.34 (E.D.N.Y. 2012).

allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555. Moreover, "bald assertions and conclusions of law will not suffice." *Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atl. Corp.*, 309 F.3d 71, 74 (2d Cir. 2002). Based on the allegation as stated in the Complaint, and the incorporated model release, and ignoring Plaintiff's misguided legal conclusions and clearly fabricated factual allegations, Plaintiff can state no plausible claims against Defendants as a matter of law.

## I. THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE PLAINTIFF SIGNED A VALID AND BINDING WRITTEN RELEASE WAIVING HER CLAIMS AGAINST DEFENDANTS

Plaintiff should not be allowed to use the judicial system to undo a valid written release because she now regrets the consequences of signing it. Quite simply, Plaintiff signed an unambiguous model release granting Diodato broad consent to use the photographs "in any manner or medium," including submission to "a stock agency," and "expressly releas[ed]" Diodato as well as his licensees such as Getty Images[4] from "any and all actions, liabilities, losses, demands or claims" related to "any use of the Images, even if such use is unflattering, embarrassing or objectionable." (Cplt. Exh. 3.) All of Plaintiff's claims stem directly from the publication of a photograph on a product which she finds distasteful. However, no amount of model's remorse can change the fact that she has relinquished her rights to pursue this case.

Taking the well-pleaded factual allegations in the Complaint as true, the model release – which Plaintiff admits to signing (Cplt. ¶¶ 23, 24, 27, 28; Exh. 3) – is clear, and is valid and binding on Plaintiff, defeating all of Plaintiff's claims.[5] As discussed below, even if Plaintiff did not read the model release, Plaintiff is presumed "to know the contents of the instrument she

---

[4] The waiver of claims in the Model Release applies to Diodato's "Assigns" which is defined as including his "affiliates, licensees, agents and assigns (and their respective licensees and assigns)." (Cplt. Exh. 3.)
[5] Plaintiff's claim that the Model Release was procured by fraud is meritless for the reasons stated in Section II.B.

signed and to have assented to such terms." *British W. Indies Guar. Trust Co. v. Banque Internationale a Luxembourg*, 567 N.Y.S.2d 731, 732 (App. Div. 1st Dep't 1991).

The Court should disregard Plaintiff's speculative allegations that the model release was "doctored" and that, despite her concession that the model release appeared on a pre-printed form revised in 2007 that Diodato schemed to fabricate that date in 2009.  These conclusory allegations do not "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and such "bald assertions" clearly invented to avoid a fundamental flaw in Plaintiff's case are the types of abusive tactics *Twombly* and *Iqbal* sought to prevent.  *Law Offices of Curtis V. Trinko, L.L.P.*, 309 F.3d at 74.  *See also Mimms v. Carr*, No. 09-CV-5740 NGG LB, 2011 WL 2360059, at *8 (E.D.N.Y. June 9, 2011), *aff'd*, 548 F. App'x 29 (2d Cir. 2013) ("Mimms's bare allegation that" defendants "at some unidentified time, fabricated unidentified evidence against Mimms is insufficient to meet the *Iqbal* plausibility standard."); *Tirado v. Deboers*, No. 03-CV-5604 ARR LB, 2013 WL 1810746, at *4 (E.D.N.Y. Apr. 24, 2013) (conclusory allegation that defendant was "the 'architect' of the overall design or scheme" was "precisely the type of claim that the Supreme Court held in *Iqbal* to be 'too chimerical to be maintained'").

## II.   NOTWITHSTANDING THE VALID RELEASE, PLAINTIFF'S CLAIMS EACH FAIL AS A MATTER OF LAW BASED ON THE FACTS ALLEGED

The Complaint should be dismissed with prejudice because Plaintiff does not state any plausible claims under her myriad theories of liability.

### A.   Plaintiff's New York Right of Publicity Claim Fails Because Defendants' Use Was Not for Purposes of Advertising or Trade, Is Protected by the First Amendment, and Is Preempted by the Copyright Act

Notwithstanding that Plaintiff's New York Civil Rights Law § 51 ("Section 51") claim (Count I) fails due to her consent, *see* N.Y. Civ. Rights L. § 51, it fails for three other reasons.

1.   Defendants did not use the photograph depicting Plaintiff for purposes of advertising or trade under Section 51

7

Section 51 is an exceedingly narrow statute.  As a matter of established law, Defendants did not use Plaintiff's image for "advertising or trade purposes" by merely displaying and offering it for license, or even by the granting of a license.  Any purported violation of Section 51 would be by the end-user, a non-party, and there is no vicarious liability under Section 51.

To state a claim under Section 51, "plaintiffs . . . must plead and prove defendants' (1) use of plaintiffs' picture (2) within the state of New York, (3) *for purposes of advertising or trade*, (4) without plaintiffs' written consent."  *Otero v. Houston St. Owners Corp*., 37 Misc. 3d 1212(A), 961 N.Y.S.2d 359, 2012 WL 5230209 at *4 (N.Y. Sup. Ct. 2012) (emphasis added). Notwithstanding Plaintiff's conclusory statements to the contrary (*see* Cplt. ¶¶114-115), the Complaint does not satisfy the third element, because in New York, making images available for potential license is not, in itself, considered a use in trade or advertising, nor is the actual licensing or sale of those images, which is the extent of the Defendants' activities here.

The New York legislature amended Section 51 in 1983 to expressly provide that the display of an image by a photographer or publisher for purposes of attracting licensors or buyers – and subsequent license or sale – does not violate the statute:

> [N]othing contained in this article shall be so construed as to prevent any person, firm or corporation from ***selling or otherwise transferring any material containing such name, portrait, picture or voice*** in whatever medium to any user of such name, portrait, picture or voice, or to any third party for sale or transfer directly or indirectly to such a user, for use in a manner lawful under this article.

N.Y. Civ. Rights L. § 51 (emphasis added).  The legislature could not have spoken more clearly concerning the scope of, and intent behind, Section 51: just because a sale or license is involved does not mean the use of an individual's image is "commercial" under the statute.

The law's implications are well established, as the court stated in *Alfano v. NGHT, Inc.*:

> [T]he state legislature clearly intended to protect the trade of selling or licensing images.  If the display of images as a form of advertisement for their sale or licensing were forbidden under Section 51, a licensing company might find itself liable for damages even where its sales were used in a lawful manner and it would thus otherwise not be liable under Section 51.

*Alfano v. NGHT, Inc.,* 623 F. Supp. 2d 355, 362 (E.D.N.Y. 2009); *accord Ann-Margaret v. High Soc. Magazine, Inc.*, 498 F. Supp. 401, 404 (S.D.N.Y. 1980) (Sections 51 has been narrowly construed by the courts).

The *Alfano* case is on point.  In that case, plaintiff sued National Geographic Networks as well as Corbis Corporation (a distributor of still and motion imagery like Getty Images) under Section 51 for a Corbis photograph licensed for use in a documentary film and promotional material depicting him interacting with John Gotti.  Like Getty Images, Corbis had displayed and offered the photograph for licensing as part of its online image catalogue.  The court granted summary judgment in favor of Corbis on Alfano's Section 51 claim concerning Corbis's "long-running display of the Image [of plaintiff] on its website for licensing purposes."  *Alfano*, 623 F. Supp. 2d at 361.  Citing *Costlow v. Cusimano*, 311 N.Y.S.2d 92, 95 (N.Y. App. Div. 4th Dep't 1970), the court held that the "in order to be able to license the Image for lawful use, Corbis must be able to take the 'necessary step[]' of advertising in the ways customary to its industry, which now includes display of images on its website."  *Id.* at 362.  The court held that "the display of the Image in advertising for sale for use in a lawful manner is also excepted from liability under Section 51" and "Corbis's display of the Image on its website does not violate Section 51."  *Id.*

Here, Defendants did not themselves use the photograph depicting plaintiff in any advertisement or on any other product, and they did not use Plaintiff's image to advertise their own products or services.  Rather, as Plaintiff concedes, Diodato merely licensed the photograph to Getty Images, and Getty Images offered, via its website, *copyright licenses* in tens of millions

of images (*see* Cplt. ¶ 76 (noting that Getty Images "maintains an archive of over 80 million images and illustrations")), including the photograph at issue here, to end-users to enable those end-users to utilize such images on or in the *end-user's* products, merchandise, goods, or services in accordance with Getty Images' standard End-User License Agreement.[6] These actions do no implicate Section 51.  *See Alfano*, 623 F. Supp. 2d at 361, 362.  *Cf. Medic Alert Found. U.S., Inc. v. Corel Corp.*, 43 F. Supp. 2d 933, 939 (N.D. Ill. 1999) (in Lanham Act context, finding it "highly doubtful that the reasonable consumer would think that each image [among thousands in clip art software] is an endorsement of [that] software").

Plaintiff cannot plausibly contend that one photograph out of 80 million was itself used specifically to promote Getty Images' own website or services.  To the contrary, one searching for photographs can only access them via keyword search of Getty Images' online database – a fact which Plaintiff effectively concedes (*see* Cplt. ¶ 73), and which places Getty Images' actions outside the ambit of Section 51.  *Cf. Thompson v. Getty Images (US), Inc.*, No. C 1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013) (dismissing right of publicity claim arising from Getty Images' "posting and offering for sale on its website" images of plaintiff because the law's "commercial purpose" requirement "does not prohibit the mere sale of someone's photograph" but rather "prohibits the use of an individual's image to promote or entice the purchase of *some other product than the photograph itself*") (emphasis added).

It is only the end-user – not the transacting parties in the middle – whose conduct is relevant to the "advertising or trade use" inquiry.  (*See* Cplt. ¶¶ 39-48 (indicating that *Allergan* used Plaintiff's image for "commercial purposes to sell synthetic cosmetic medicines" which might "seriously interfere with her prospective assignments" from other companies).)  Even if the end-user used Plaintiff's image for advertising or trade purposes, no New York court has ever

---

[6] *See* www.gettyimages.com/Corporate/LicenseInfo.aspx.

held that there is vicarious liability under Section 51 that would potentially bring Defendants into the fold.  To the contrary, numerous New York courts have held that the statute should be narrowly interpreted both because it is in derogation of common law, and in order to avoid a conflict with the First Amendment.  *See, e.g.*, *Shields v. Gross*, 58 N.Y. 2d 338, 345 (1983); *Ann-Margaret v. High Soc'y Magazine, Inc.*, 498 F. Supp. 401, 404 (S.D.N.Y. 1980).

If Getty Images and Diodato could not license photographs without being exposed to liability if an end-user misuses an image, Defendants would have no business at all.  *Cf. Costlow*, 311 N.Y.S.2d at 95.  Plaintiff's interpretation of Section 51 is not only contrary to law, but it flies in the face of public policy and common sense.

### 2. Defendants' actions are protected by the First Amendment

Courts, including the Supreme Court, have long recognized that Section 51 may conflict with the First Amendment, and have held that it should be strictly construed to avoid such a conflict.  *See, e.g.*, *Time, Inc. v. Hill*, 385 U.S. 374, 382 (1967) (Section 51 is interpreted in order "to avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest."); *Rand v. Hearst Corp.*, 298 N.Y.S.2d 405, 409 (N.Y. App. Div. 1st Dep't 1969), *aff'd*, 26 N.Y.2d 806 (1970) (Section 51 is to be narrowly construed, particularly in the context of First Amendment-protected materials).  Defendants' First Amendment rights would be severely chilled if Plaintiff's interpretation of the law were accepted.

Photographs are undisputedly expressive works, and the display of a photograph is itself a form of expression; accordingly, Defendants have a First Amendment right to display photographs as expressive works of authorship, and to display these works in order to license them.  *See Foster v. Svenson*, 7 N.Y.S.3d 96, 103-04 (App. Div. 1st Dep't 2015) (photographer's display and sale of his photographs protected by the First Amendment; "any advertising

undertaken in connection with the promotion of the art work was permitted" and images depicting plaintiffs were not used for advertising or trade within the meaning of Section 51); *Bery v. City of New York*, 97 F.3d 689, 698-99 (2d Cir.1996) (holding that painters, photographers, and sculptors had First Amendment right to display their wares in public for sale, which could not be restricted by requiring a general vending license); *Hoepker v. Kruger*, 200 F. Supp. 2d 340, 350 (S.D.N.Y. 2002) (concluding defendants' display of artist's collage containing plaintiff's photograph fell "within the scope of the First Amendment and outside the range of Sections 50 and 51").  Plaintiff's claim cannot stand because then the mere display or offering for any use of an expressive image that depicts a person would expose Defendants to liability.

### 3.   Plaintiff's Section 51 claim is preempted by the Copyright Act

Defendants' purportedly infringing acts include the reproduction and distribution of copyrighted images: *i.e.*, Diodato's licensing photographs to Getty Images, and Getty Images offering for license and licensing a photograph to an end-user.  There is precedent establishing that state law publicity claims are preempted by § 301 of the Copyright Act where the claim is based on content that falls within the subject matter of copyright (*i.e.*, photographs, *see Burrow-Giles v. Sarony*, 111 U.S. 53 (1884)), and purports to assert rights equivalent to those protected by the Copyright Act (*i.e.*, reproduction and distribution).  *See, e.g.*, *Dryer v. Nat'l Football League*, No. 14-3428 (8th Cir. Feb. 26, 2016) (former NFL players' publicity claims preempted; players could not "attempt to control dissemination" of films depicting players' participation in historical games); *Maloney et al. v. T3Media, Inc.*, 94 F. Supp. 3d 1128 (C.D. Cal. 2015) (holding the Copyright Act preempted state right-of-publicity claims brought by former college basketball players complaining of photographs licensed of their likenesses without consent).

Defendants merely licensed and offered for licensing copyrighted photographs; they did not use Plaintiff's name for some other purpose, such as advertising another product, and so Plaintiff's claim is preempted. *See Maloney*, 94 F. Supp. 3d at 1137, n.3 (differentiating between "merely *selling a copyrighted photograph* containing an athlete's likeness," which would be protected by copyright law, and "*using the athlete's likeness* contained in the photograph for some other purpose," which would give rise to a right-of-publicity claim) (emphasis in original).

**B.  Plaintiff's Fraud Claim Fails Because Plaintiff Is Not Entitled to Rely on Alleged Oral Statements Contradicted by Subsequent Written Terms**

Plaintiff's fraud claim (Count V) fails for two independent reasons: Plaintiff could not have reasonably relied on any oral statements allegedly made by Diodato prior to signing the Model Release, and the supposed oral promises are barred by the parol evidence rule.

**1.  The signed model release defeats Plaintiff's reliance argument**

Plaintiff's fraud claim is grounded in Plaintiff's claimed reliance on Diodato's alleged oral promise to only use Plaintiff's photographs in his portfolio and on his website. (*See* Cplt. ¶¶ 23, 24, 27.) It is on this element that the claim fails as a matter of law. While it is true that a signatory to a contract *may* avoid her obligations if she was fraudulently induced into signing that agreement, she must plausibly allege reasonable and justifiable reliance on a purportedly false statement in order to establish fraudulent inducement in the first place; simply *saying* that a contract was fraudulently induced does not make it so, but this is all Plaintiff offers. *See, e.g.*, *MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*, 32 Misc. 3d 758, 773, 927 N.Y.S.2d 517, 530 (Sup. Ct. 2011) (setting forth justifiable reliance on false factual statement is an essential element of fraud); *Morby v. Di Siena Assocs. LPA*, 737 N.Y.S.2d 678, 680 (App. Div. 3d Dep't 2002) (to avoid a release on grounds of fraud, "a party must allege every material element of fraud with specific and detailed evidence in the record sufficient to establish a prima facie case").

13

Plaintiff's fraud claim fails because, on the facts she pleads, she could not have plausibly relied on an oral promise by Diodato that was "flatly contradicted by [the] express terms" of the model release.  *See, e.g.*, *Village on Canon v. Bankers Trust Co.*, 920 F. Supp. 520, 530-31 (S.D.N.Y. 1996);  *Urstadt Biddle Props., Inc. v. Excelsior Realty Corp.*, 885 N.Y.S.2d 510, 512 (App. Div. 2d Dep't 2009) (a "'meaningful' conflict between an express provision in a written contract and a prior alleged oral representation . . . negates a claim of reasonable reliance upon the oral representation" for purposes of fraud); *Weil v. Johnson*, No. 119431/02, 2002 WL 31972157 (N.Y. Sup. Ct. Sept. 27, 2002) (release valid even though defendant solicited plaintiff's participation on the false assurance that film was a non-commercial school project; the face of the release clearly belied the assertion).  While Plaintiff alleges that Diodato promised to only use Plaintiff's photographs for his portfolio and on his website (*see* Cplt. ¶¶ 23, 24, 27), the model release clearly granted Diodato the right to use and distribute photographs in any manner or medium for any purpose including for inclusion in stock agency files.  (*See* Cplt. Exh. 3.)

The clear discrepancy between Diodato's alleged oral statements and the terms of the model release "could have been readily discovered" if Plaintiff had read the "simple, straightforward document" that was presented to her, which was a mere *two paragraphs* in length. *Morby*, 737 N.Y.S.2d at 679-80 (plaintiff's failure to read clear and unambiguous two-page release defeated claim of fraud). *See also Jackson v. Broad. Music, Inc.*, No. 04 CV 5948 (TPG), 2006 WL 250524, at *9 (S.D.N.Y. Feb. 1, 2006) (dismissing fraudulent inducement claim where one-page agreement was clear that Plaintiff was releasing his rights to his music, so "Plaintiff could not reasonably have relied on any alleged misrepresentation to the contrary").  But it is obvious from the face of Plaintiff's Complaint that she did not read the model release.   Plaintiff admits she "was not aware" of the terms, including the limitation of her monetary damages to

14

$500, and her "waiver of the right to object to unflattering, embarrassing or objectionable uses of her photographs" (Cplt. ¶ 32), but the waiver of rights, release, and limitation of liability provisions of the Model Release constitute half of terms in the document.  (*See* Cplt. Exh. 3.) That Diodato supposedly did not "disclos[e] the actual unconscionable terms" of the model release to Plaintiff (Cplt. ¶ 147) inherently means Plaintiff was unaware of the terms; she would have been aware had she read the model release.  That Diodato allegedly "direct[ed] [Plaintiff's] attention only to the signature line and other non-substantive portions" of the model release carries the same implication.  (*Id.* ¶ 147).  Plaintiff could have easily directed her own attention to the terms of the one-page model release which was written in plain English,[7] and she would have been immediately aware of the purported falsity of Diodato's alleged statements.  (*Id.* ¶ 149).

"Having failed to read the release before signing it, plaintiff simply cannot establish the essential element of justifiable reliance" for purposes of fraud.  *Morby*, 737 N.Y.S.2d at 680 (citing cases).  Indeed, "as a signatory to the contract, she is presumed to know the contents of the instrument she signed and to have assented to such terms."  *British W. Indies Guar. Trust Co.*, 567 N.Y.S.2d at 732.  The case law is clear that Plaintiff "may not avoid [her] obligations under a clearly worded release on the grounds that the defendant falsely misrepresented the true significance of the document to [her] in order to secure [her] signature."  *Weil*, 2002 WL 31972157, at *2.

### 2. Plaintiff's allegations regarding Diodato's purported oral statements are prohibited by the Parol Evidence Rule

Plaintiff's fraud claim also fails because the parol evidence rule prohibits the consideration of any evidence of oral statements that contradict a signed writing even in the context of fraud.  *See Stone v. Schulz*, 647 N.Y.S.2d 822, 823 (App. Div. 2d Dep't 1996)

---

[7] Plaintiff does not claim to be unable to read or understand the English language.

(applying parol evidence rule even in the face of a claim for fraudulent inducement where reasonable reliance was not adequately pled in light of "meaningful conflict" between a written agreement and alleged prior oral statements).

As discussed above, the express terms contained in the model release directly contradict Diodato's supposed oral promises, and under the parol evidence rule, the Court should disregard any evidence of such promises.  Cases indicating that the parol evidence rule is not strictly applied when fraud is claimed are not to the contrary; rather, those cases say parol evidence will be allowed in a "*well-pleaded* claim for fraud in the inducement of a contract," *Centronics Fin. Corp. v. El Conquistador Hotel Corp.*, 573 F.2d 779, 782 (2d Cir. 1978) (emphasis added) – that is, where the plaintiff pleaded *reasonable* reliance upon the alleged misrepresentation.  For the reasons stated above, Plaintiff's fraud claim is not well pleaded given her failure to satisfy the essential element of reasonable reliance.

*Myskina v. The Conde Nast Publ'ns, Inc.*, 386 F. Supp. 2d 409 (S.D.N.Y. 2005), is on point.  There the plaintiff, a Russian women's tennis star, participated in a topless photo shoot, prior to which she was told that her photographs would only be used in an artistic spread in *GQ* Magazine, and would not be published anywhere else.  However, after the photo shoot the plaintiff signed a release consenting to the use of the photographs for editorial purposes, without further restriction, and the photographer subsequently submitted the topless images to Corbis, who in turn licensed them to a Russian magazine.  *Id.* at 413.  The court held that, as to the alleged oral agreement limiting the use of the photographs, the parol evidence rule barred the admission of any prior negotiations or agreements offered to contradict or modify the terms of the written release.  *Id.* at 415.  The Court should reach the same result here.

C.   **Plaintiff's Lanham Act and Unfair Competition Claims Fail Because She Does Not Satisfy The Laws' Basic Elements, and Her Claims Are Preempted**

Plaintiff's convoluted claims under the Lanham Act (Counts XIII & IX) state a variety of theories which are either duplicative of one another or inapplicable, all of which fail on the allegations in the Complaint itself.  Section 43(a) of the Lanham Act establishes a claim against:

> (1) Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities . . . of his or her or another person's goods, services, or commercial activities, . . . .  15 U.S.C. § 1125(a).

To state a claim under New York's unfair competition law (Count III), Plaintiff must allege "unfairness and an unjustifiable attempt to profit from another's expenditure of time, labor, and talent."  *Greenblatt v. Prescription Plan Servs. Corp.*, 783 F. Supp. 814, 825 (S.D.N.Y. 1992).

1.   Defendants are not directly liable

According to the Complaint, Diodato took photographs of Plaintiff and licensed those photographs to Getty Images (*see* Cplt. ¶ 74), and Getty Images licensed those images to non-party Allergan who used one in its Botox advertisement.  (*See id.* ¶¶ 39-48, 178-179.)  Plaintiff does not allege that Defendants used her image in connection with *any* goods or services, much less made any misrepresentations or false statements that would confusingly associate her with any other person or suggest that she originated or sponsored anyone else's goods or services.  Plaintiff does not allege that Defendants used her likeness in any advertisements that would misrepresent Plaintiff's (or anyone else's) goods or services.  At most, Plaintiff claims

17

Defendants provided her photographs to a *non-party* that allegedly engaged in Lanham Act violations but, as discussed below, her allegations of contributory infringement are insufficient.

Plaintiff's claims boil down to one core theory: consumers are likely to be confused as to Plaintiff's affiliation with Defendants because Defendants misrepresented their legal right to license or sell photographs of Plaintiff.  (*See* Cplt. ¶¶ 130, 167, 168, 169.)  But this theory fails as a matter of law because the right to license or sell photographs is a copyright right, and intellectual property rights are not "good[s] or service[s]" as contemplated by the Lanham Act. *See Digigan, Inc. v. Ivalidate, Inc.*, No. 02 Civ. 420(RCC), 2004 WL 203010, at *5 (S.D.N.Y. Feb. 3, 2004) (dismissing Lanham Act claim based on purported misrepresentations as to rights in a patent because a patent is not a good or service); *Resource Developers Inc. v. Statue of Liberty-Ellis Island Foundation, Inc.*, No. 87 CIV. 1993 (CSH), 1988 WL 31881 (S.D.N.Y. 1988) (alleged misrepresentations as to the scope of defendant's copyright and trademark rights "cannot state a claim under the Lanham Act" because they "concern[] the scope of an intangible property right" rather than "a false claim about the defendant's product or services").

It is not the photographs, themselves, that are at the center of this controversy – it is the representations concerning the underlying rights to use those photographs, and any purported misrepresentation as to the ownership of those rights falls outside the scope of the Lanham Act, particularly given that Plaintiff concedes that she is not even the owner of the copyrights.  (*See, e.g.*, Cplt. ¶ 25.)  *See also Agee v. Paramount Commc'ns, Inc.*, 59 F.3d 317, 327 (2d Cir. 1995) (affirming dismissal of Lanham Act claim that was based solely on defendants' purportedly unauthorized use of plaintiff's sound recording in TV show credits without payment and without recognizing plaintiff in the credits).[8]

---

[8] Plaintiff's theory that Diodato's use of a pseudonym and Getty Images' complicity therein causes confusion as to the origin of Plaintiff's images (Cplt. ¶¶ 89-90, 170) is a red herring and fails for the same reasons stated above.

Plaintiff's unfair competition claim also fails because she has not alleged that her labor or talent was appropriated in connection with Defendants' use of the photographs.  Rather, she alleges that Defendants misrepresent the scope of their rights in an intangible property that Plaintiff, herself, admits *she does not own*.  (*See, e.g.*, Cplt. ¶ 25.)

### 2.   Defendants are not contributorily liable

Plaintiff's claims of contributory liability against Defendants (Count IX) and against Diodato (Count VIII) also fail.  Defendants may only be held contributorily liable for violations of the Lanham Act if they "intentionally induce[d] another" to engage in those violations or "continue[d] to supply [their] [product or service] to one whom [they] know[] or ha[d] reason to know is engaging" those violations  *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 106 (2d Cir. 2010) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 854 (1982)); *Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d Cir. 2013).  Plaintiff's allegations consist of the conclusory statements that Defendants "caused [Plaintiff] to be falsely associated with Allergan" (Cplt. ¶ 95), that Diodato "enable[ed]" Getty Images' infringement (Cplt. ¶ 129) and "contributed to Getty [Images'] aforesaid false or misleading descriptions or representations of fact" (Cplt. ¶ 172), and Defendants "are contributorily liable for Allergan's wrongful use of plaintiff's image to advertise Botox." (Cplt. ¶ 180.)  These allegations fall far short of stating plausible claims.

Plaintiff does not provide any "factual content that allows the court to draw the reasonable inference that" Diodato intentionally induced Getty Images or that any Defendant induced Allergan to engage in violations of the Lanham Act.  *Iqbal*, 556 U.S. at 678. Inducement requires that a defendant affirmatively suggest that the direct infringer engage in conduct that the defendant knows is infringing.  *See generally, Inwood Labs., Inc.*, 456 U.S. 844. Plaintiff does not allege that such suggestions were made, nor could she plausibly do so.  The

extent of Diodato's conduct was to submit the photographs of Plaintiff to Getty Images.  (*See* Cplt. ¶ 74.)  The extent of Getty Images' conduct was to offer the photographs for licensing purposes on its website, and to license one of them.  (*Id.* ¶¶ 83-84.)  *See Kelly-Brown*, 717 F.3d at 314 (affirming dismissal of contributory trademark infringement claim where plaintiff did not state plausible allegations that corporate events sponsors "intentionally induced" infringement).

Moreover, Plaintiff does not state a plausible claim that Defendants knew or should have known of any violations.  Defendants "must have [had] more than a general knowledge or reason to know that its [product or] service is being used to sell counterfeit goods [or services]."  *eBay*, 600 F.3d at 107.  Plaintiff must allege Defendants were aware of "specific instances of actual infringement" and yet "continued to supply their services after they knew or should have known that their services were being used to infringe Plaintiffs' Mark."  *Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.*, No. 07 CIV 6959 DAB, 2010 WL 4968072, at *5-6 (S.D.N.Y. Dec. 6, 2010) (granting motion to dismiss contributory trademark infringement claim).

Plaintiff does not allege that Diodato knew of "specific instances of actual infringement" on the part of Getty Images, or that any Defendant knew of specific instances of infringement by Allergan; rather, she speculates that Defendants each had some general knowledge that they lacked authority to license the photographs in question.  (*See* Cplt. ¶¶ 74, 86-88.)  This is precisely the type of conclusory allegation that fails to "satisfy the knowledge element of contributory infringement."  *Nomination*, 2010 WL 4968072, at *6.  Indeed, Plaintiff does not even contend that any Defendant knew about any specific uses of the photographs after Diodato submitted the photographs to Getty Images.

Plaintiff's mechanical recitals that Defendants "caused" Lanham Act violations or are otherwise "contributorily liable" are insufficient to state a claim.  *See Twombly*, 550 U.S. at 555

("formulaic recitation[s] of the elements of a cause of action" are insufficient to state a plausible claim).  The Court should disregard these "'naked assertion[s]' devoid of "further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556), and dismiss the contributory liability claims.

3.  Plaintiff's Lanham Act and unfair competition claims are preempted

As with her right of publicity claims, the crux of Plaintiff's claims relate to copyright issues.  As discussed above, the Copyright Act will preempt any cause of action that falls within the scope of copyright and duplicates an exclusive copyright right.  Plaintiff improperly attempts to manipulate the Lanham Act to avoid that she has no claim for copyright infringement because she admits she does not own the copyrights in Diodato's photographs.  (*See* Cplt. ¶ 25.)  *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003).  *See also Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc.*, No. CV 15-05024 DDP (EX), 2016 WL 1027998, at *14 (C.D. Cal. Mar. 14, 2016) (Lanham Act claim was preempted by copyright law because the claims sought to enforce the rights of reproduction and distribution of a copyrighted work).

The majority of Plaintiff's Lanham Act allegations concern the purportedly unlawful reproduction, display, and distribution of photographs, all exclusive rights under Section 106 of the Copyright Act.  Plaintiff alleges that Diodato "has no legitimate ownership or commercial licensing rights in the images" of Plaintiff yet submitted them to Getty Images knowing Getty Images "will use the images commercially, advertising them for sale or license to others, such as Allergan."  (Cplt. ¶ 74.)  This is a copyright claim dealing with who owns the rights to the images, not the origin or source of any product or someone's affiliation with that product.  (*See also* Cplt. ¶¶ 131, 132 (Diodato allegedly misrepresents that he has the right to sell the images).)  Similarly, Plaintiff bases her Lanham Act claims against Getty Images on the fact that Getty

Images "represents publicly that it owns the right to license these images" (*id.* ¶ 77); licensed photographs bearing Plaintiff's image "for use by Allergan" (*see id.* ¶ 84); "realized substantial licensing fees and profits" (*id.* ¶85); and "publicize[d] photographs" of Plaintiff "on its website, offering them to others, fraudulently holding itself out as having the legal right to license her images to third parties." (*Id.* ¶¶ 91, 167, 169; *see also id.* ¶ 129). These licensing claims are all based on copyright principles. Further, that Defendants allegedly "lowered the demand and value for [Plaintiff's] services" by representing that her images are available through Getty Images is directly preempted by the right to publicly display and to distribute copyrighted works. (*Id.* ¶ 98.) These are archetypal examples of preempted claims, and they should be dismissed.

## D.   Plaintiff's Negligence Claim Fails Because Defendants Owed No Legal Duty

Plaintiff's negligence claims against Diodato and Getty Images (Count IV) have no basis in the law and are based solely on groundless legal conclusions. One must owe a duty of care, and must have breached that duty, in order to be liable for negligence. *See Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002). Plaintiff's conclusory allegations that Diodato owed "a duty of care to plaintiff . . . to obtain valid consent before using [her] photographs for commercial purposes" (Cplt. ¶138), and that Getty Images "owes a duty of care to plaintiff . . . to obtain valid consent before using photographs of plaintiff . . . for commercial purposes" (*id.* ¶ 139) are insufficient under *Twombly* and *Iqbal* to state plausible negligence claims because there were no duties owed, and therefore no duties have been breached.

With respect to Diodato, Plaintiff does not dispute that she entered into a contract with Diodato for Diodato to conduct a photo shoot. (*See* Cplt. ¶¶ 23, 24, 27, 28.) Taking as true Plaintiff's allegations concerning Diodato's representations that he would only use the photographs for his portfolio and website – although irrelevant and of no legal effect – Plaintiff's

claim is tantamount to one for breach of that agreement, which precludes a negligence claim. Where, as here, "the only duty owed to the plaintiff arises from a valid contract, a negligence claim does not lie." *Banco Indus. de Venezuela, C.A. v. CDW Direct, L.L.C.*, 888 F. Supp. 2d 508, 512-13 (S.D.N.Y. 2012). To convert a purported breach of contract into a tort, Plaintiff must establish the violation of "a legal duty independent of the contract itself." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987). Plaintiff has not, and cannot, establish any such independent legal duty.

Plaintiff's interaction with Diodato was an "arms-length commercial transaction" which, "without more, cannot give rise to a duty of care" unless "a special relationship exists between the parties" whereby Diodato either had "unique or specialized expertise" or was in a "special position of confidence and trust" with the Plaintiff. *M & T Bank Corp. v. LaSalle Bank Nat'l Ass'n*, 852 F. Supp. 2d 324, 337 (W.D.N.Y. 2012) (citing *Kimmell v. Schaefer*, 675 N.E.2d 450 (N.Y. 1996)). *See also Muller-Paisner v. TIAA*, 289 Fed. App'x 461, 465–66 (2d Cir.2008) (special duty in commercial transaction owed to the unsophisticated, elderly, and infirm). Despite Plaintiff's insistence that Diodato owed some amorphous duty to "obtain valid consent" (Cplt. ¶ 138), the Complaint "fails to indicate any source for this duty." *Banco Indus. de Venezuela, C.A.*, 888 F. Supp. 2d at 512 (dismissing plaintiff's negligence claim). Plaintiff does not allege that Diodato had any "unique or specialized expertise" with respect to model releases over and above Plaintiff's own knowledge, nor does she allege the existence of a "position of confidence or trust" with Diodato because Diodato had no superior expertise nor had a special relationship with Plaintiff. *M & T Bank Corp*, 852 F. Supp. 2d at 337.

Plaintiff, by her own words, is highly experienced and sophisticated. She claims to be an "internationally-renowned fashion model" represented by a "world-famous" agency (Cplt. ¶ 17)

who "has been photographed by many of the world's leading fashion photographers" and who possesses a client list that is "a virtual 'who's who' of high-end fashion and beauty icons." (*Id.* ¶ 18.)  She cannot plausibly claim to have inadequate knowledge or experience in the photography or modeling business, or lack of exposure to model releases and other contracts, nor can she claim entitlement to specialized treatment that would bestow a duty of care on Diodato.

Even further removed from reality is the notion that Getty Images owed some duty of care to Plaintiff.  The Complaint contains no allegations concerning any relationship between Plaintiff and Getty Images – much less a special one – because there is no relationship.  Plaintiff is not even a party to a contract with Getty Images as she was with Diodato.  There is no legal basis for Plaintiff's fabricated "duty of care . . . to obtain valid consent" (Cplt. ¶ 138) to use photographs.  *See Banco Indus. de Venezuela, C.A.*, 888 F. Supp. 2d at 512.  Nor is there a more general, overarching duty that would compel Getty Images to protect Plaintiff.  *See, generally*, *Ford v. Grand Union Co.*, 197 N.E. 266, 269 (N.Y. 1935) ("Ordinarily a person owes no duty to members of the public at large except to avoid [physical] injury to them by forces set in motion by such person or those acting as his agents."); *Waters v. N.Y. City Housing Auth.*, 501 N.Y.S.2d 385 (2d Dep't 1986) (owner of housing project who failed to keep door locks in good repair did not owe duty to passerby to protect her from being dragged into the building and assaulted).

Further, to impose a duty on a company that, as Plaintiff admits, maintains an archive of over 80 million images (*see* Cplt. ¶ 76), to investigate every line of every model release submitted by its contributors would be unduly burdensome and completely unprecedented.  Getty Images is entitled to rely on its contributors' and licensees' representations and warranties concerning proper consents to license submitted photographs.

### E.     Plaintiff's Section 349 Claim Fails Because She Does Not and Cannot Allege Any Consumer Injury or Harm to the Public Interest

Plaintiff's claim under N.Y. GBL § 349 (Count II) fails because her purported injury is, as a matter of law, not covered by the statute.  The "gravamen of the complaint" in a § 349 claim "must be consumer injury or harm to the public interest."  *Conopco Inc. v. Wells Enters., Inc.*, No. 14 CIV. 2223 NRB, 2015 WL 2330115, at *6 (S.D.N.Y. May 14, 2015).  A § 349 claim must be "consumer oriented, that is, it must have a broad impact on consumers at large." *Gray v. Seaboard Sec., Inc.*, 788 N.Y.S.2d 471, 472 (3d Dep't 2005).  *See also Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000). This case is not consumer-oriented; rather, the gravamen of Plaintiff's Complaint is injury to *Plaintiff* and to her fellow models, not to the consuming public. Plaintiff is effectively without standing to "recover damages under GBL § 349 for purely indirect or derivative losses that were the result of third-parties being allegedly misled or deceived." *Deer Consumer Products, Inc. v. Little Grp.*, 37 Misc. 3d 1224(A), 961 N.Y.S.2d 357 (Sup. Ct. 2012).  *Cf. Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 274 (S.D.N.Y. 2003) ("Where the gravamen of the complaint is harm to a business as opposed to the public at large, the business does not have a cognizable cause of action under § 349.").

Plaintiff alleges that Getty Images misrepresents its rights to license photographs depicting Plaintiff to "consumers and the public at large" (Cplt. ¶ 122), and offers the photographs "to others, fraudulently holding itself out as having the legal right to license [Plaintiff's] images to third parties." (*Id.* ¶ 91.)  Yet Plaintiff claims that Getty Images' conduct injures Plaintiff and other models, not the public at large.  (*See, e.g.*, Cplt. ¶¶ 93, 98, 125).  *See State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*, 840 N.Y.S.2d 8, 12 (1st Dep't 2007) ("indirect purchasers on whose behalf plaintiff is suing are too remote from defendants' alleged wrongdoing to support such a claim" under § 349).  Plaintiff's rote reference to "consumers and

the public at large" (Cplt. ¶ 122) does not save her claim. *See State Farm Mut. Ins. Co. v. Anikeyeva*, 35 Misc. 3d 1203(A), 950 N.Y.S.2d 726 (Sup. Ct. 2012) (plaintiff cannot "avoid the derivative injury bar by merely alleging that its suit would somehow benefit the public").

Regardless, allegations of confusion regarding issues like ownership of intellectual property are insufficient to state a § 349 claim. For instance, trademark infringement actions alleging only general consumer confusion do not threaten direct harm to consumers for purposes of stating a § 349 claim unless there is specific, substantial injury to the public interest over and above the damages caused by trademark infringement. *See Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-0946, 2015 WL 1299259, at *14 (E.D.N.Y. Mar. 23, 2015). *See also Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519 (S.D.N.Y. 2012).

Plaintiff's allegations that Defendants "misrepresent[ed] to consumers and the public at large" that they could license Plaintiff's image and falsely stated that "plaintiffs and class members use or otherwise endorse or sponsor or are otherwise affiliated with Getty's purported licensees and/or their products and services" (Cplt. ¶¶ 122, 123) are precisely the types of claims not covered by § 349: they do not present injuries distinct from the harm that intellectual property and false advertising laws generally seek to redress. *Nomination di Antonio e Paolo Gensini S.N.C.*, 2009 WL 4857605, at *8. *See Digigan, Inc.*, 2004 WL 203010, at *5 (dismissing § 349 claim because "the potential confusion that might arise due to Defendants' claim that they own, or are licensees of, the patent . . . does not rise to the level of consumer injury necessary to sustain a claim under section 349"). Moreover, federal courts have interpreted § 349's scope as limited to the types of false advertising claims that would trigger Federal Trade Commission review, such as cases involving a risk to public health or safety. *See*

*Sports Traveler, Inc. v. Advance Magazine Pubs., Inc.*, 96 Civ. 5150, 1997 WL 137443 (S.D.N.Y. Mar. 24, 1997).  This is clearly not such a case.

Finally, Defendants were unable to find any law to support Plaintiff's contributory liability claim under § 349 (*see* Cplt. ¶¶ 122, 123); it appears such a claim does not exist.

### F.   Washington Law Claims Fail Because Washington Law Is Inapplicable

As a threshold matter, Plaintiff's Washington misappropriation of likeness claim fails for the reasons stated in Section II.A.  *See Dale v. Coors Brewing Co.*, 113 Wash. App. 1017 (2002) (affirming dismissal of claim because plaintiff consented to use of her image).  However, both of Plaintiff's Washington law claims (Counts VI & VII) fail for the basic reason that Washington law simply does not apply here.

Under New York conflict of law rules, courts identify the jurisdiction with the greatest interest in the litigation, which in tort cases is where the tort occurred; and a tort occurs where the injury was inflicted, "generally where the plaintiffs are located."  *Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 427 (S.D.N.Y. 2006).  The same rule applies to fraud cases.  *See Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 89 Fed. App'x 287, 288 (2d Cir. 2004).  Here, all the parties are in New York (*see* Cplt. ¶¶ 4, 5, 7, 8), which strongly suggests New York law, not Washington law, applies.[9]  *Drenis*, 453 F. Supp. 2d at 427.

Moreover, "[a]s numerous courts have observed, in any action based in tort, the law of the defendant's home state should not govern those claims that have no other nexus to that state."  *Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493 VB, 2011 WL 7095432, at *13-14 (S.D.N.Y. Dec. 16, 2011).  The fact of a defendant's residence in a particular state "is not relevant to the law that should apply to plaintiffs' claims that have no other connection" to that state.  *Id.* at *14.

---

[9] Getty Images' parent company, Getty Images, Inc., is located in Washington.  (*See* Cplt. ¶ 6.)  However, as mentioned above, the parties have agreed that Getty Images, Inc. should be dismissed without prejudice.

Here, even if Getty Images, Inc. were still a party to this action, Plaintiff's claims are completely unconnected to Washington.  All events related to her claims occurred in New York in connection with New York parties, and Plaintiff cannot base her reliance on Washington law on her bare contention that Getty Images, Inc. somehow "provided" a license "through" Getty Images (US), Inc. (*see* Cplt. ¶76), particularly because she concedes that Getty Images, Inc. is neither the "licensing entity" nor the "party entering into" the licensing contract for the images at issue.  (*Id.*)

Finally, that Plaintiff's purported class members may be spread across the country also does not warrant the hypothetical application of other states' laws at this stage of the case.  *See In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules.").  Presumably if this case proceeds, putative class members who are resident in other states would be subject to the laws of their respective states.  *See Szymczak*, 2011 WL 7095432, at *13-14.  At this time, however, there is no reason to apply Washington law when the only Plaintiff is in New York.

## III.    THE COURT SHOULD STRIKE OR DISMISS THE CLASS ALLEGATIONS[10]

The Court should strike or dismiss the class allegations, as it is apparent from the face of the Complaint that Plaintiff cannot meet the requirements for class certification.  *See* Fed. R. Civ. P. 23(c)(1) ("When a person sues or is sued as a representative class, the court must – at an early as practicable time – determine by order whether to certify the action as a class action."). *Reinsich v. N.Y. Stock Exch.,* 52 F.R.D. 561, 564 (S.D.N.Y.1971) (a court may decide the issue of class certification based on a review of the complaint prior to a party's motion to certify the

---

[10] Defendants acknowledge Plaintiff has not yet sought class certification under Rule 23.  Should Plaintiff ever so move, Defendants would assert arguments beyond those asserted here and specifically reserve the right to do so.

proposed class);[11] *Luciano v. Eastman Kodak Co.*, No. 05-CV-6463T, 2006 WL 1455477, at *3 (W.D.N.Y. May 25, 2006) (granting defendant's motion to dismiss plaintiff's class allegations). While courts in this District are generally reticent to grant early motions to strike class allegations, this case presents a clear example of an exception to that practice.

### A.   Plaintiff Cannot Meet Rule 23(a)'s Prerequisites to a Class Action

Under Rule 23(a), a plaintiff may sue on behalf of a class only if all of the following factors are met: (1) the class is so large "that joinder of all members is impracticable"; (2) there exist "questions of law or fact common to the class"; (3) named parties' claims or defenses "are typical . . . of the class"; and (4) plaintiff will "fairly and adequately protect the interests of the class."  Taking the allegations in the Complaint as true, Plaintiff cannot meet, at very least, the first two factors and the implied requirement of ascertainability.

#### 1.   Commonality and Typicality are not satisfied

Plaintiff's allegations that other models were similarly "defrauded" into signing model releases and were falsely associated with Getty Images to their financial and reputational detriment are insufficient to plausibly establish the propriety of class treatment.  "What matters to class certification . . . is not the raising of common 'questions' – even in droves –  but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted).  In order to satisfy commonality, Plaintiff's claims "must depend on a common contention . . . of such a nature that is capable of classwide resolution – which means

---

[11] While the court in *Reinisch* decided the defendants' challenge to class certification eight months after the filing of the complaint, the decision implies that, while an answer was filed, no discovery was conducted and that, for reasons not clear from the opinion, the court considered "moving affidavits."  However, the court's analysis and conclusion that a class was not appropriate appears to be based almost exclusively on allegations contained in the complaint.

that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* The substance of Diodato's purported representations to any individual model; the truth or falsity of those statements; a model's reliance on those statements; whether a model release was presented and signed; the contents of the model release; whether the model read the release; whether the model was or wanted to be associated with Getty Images; whether the model's image was used in advertisements without her permission; and whether the model was offended by the use, are all essential questions in this case, but none of those issues can be resolved "in one stroke" because each will inherently differ by model.

Plaintiff also must "demonstrate that the class members have suffered the same injury," but she cannot plausibly do so. *Id.* (quotation marks omitted). The injury Plaintiff describes is far too specific to her, individually, and the purported injuries will also be far too diverse among members of the class she describes; in fact, she does not even plead that class members suffer common injury. Each putative member's damages will be specifically keyed, at very least, to his or her career, contracts, clients, relationships, and reputations. (*See* Cplt. ¶¶ 100-103; *id.* ¶ 47 ("*[D]epending on the* circumstances, such use might violate contracts [Plaintiff] had with her actual clients, or otherwise comprose and damages those relationships and her career" (emphasis added)).) Reputational injury, in particular, is not amenable to class treatment. *See, e.g.*, *Salon Fad v. L'Oreal USA, Inc.*, No. 10 CIV 5063 DLC, 2011 WL 4089902, at *11 (S.D.N.Y. Sept. 14, 2011) (denying class certification because plaintiffs "failed to demonstrate that the alleged injury to the salons' reputations is susceptible of class-wide proof").

As the Supreme Court has observed, "'[t]he commonality and typicality requirements of Rule 23(a) tend to merge,'" *Wal-Mart*, 564 U.S. at 349 n.5 (citation omitted), and for many of the same reasons that commonality is not satisfied here, typicality likewise cannot be established.

The Complaint makes clear that Plaintiff will not "possess the same interest and suffer the same injury as the class members." *Id.* at 348 (citation omitted).  To satisfy Rule 23(a)(3), Plaintiff must demonstrate that she has suffered "the same harm the proposed class is alleged to have suffered." *Newman* v. *RCN Telecom Servs. Inc.*, 238 F.R.D. 57, 64 (S.D.N.Y. 2006). *See also Doe* v. *Chao*, 306 F.3d 170, 184 (4th Cir. 2002), *aff'd*, 540 U.S. 614 (2004) ("putative class representatives have not suffered 'injur[ies] similar to the injuries suffered by the other class members'") (citation omitted).  For the reasons discussed above, Plaintiff does not and cannot do so even assuming all the allegations in the Complaint are true.

2.   <u>The putative class is not ascertainable</u>

Plaintiff also cannot satisfy the "implied requirement of ascertainability." *Weiner v. Snapple Beverage Corp.*, No. 07 CIV. 8742 DLC, 2010 WL 3119452, at *12 (S.D.N.Y. Aug. 5, 2010) (quoting *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)).  To satisfy this requirement, "the class must be readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling." *Id.* "A class is ascertainable when defined by objective criteria that are administratively feasible, and when identifying its members would not require a mini-hearing on the merits of each case." *Id.* (internal quotation marks omitted).  Here, individualized mini-hearings as to each purportedly defrauded model will be required in order to identify class members who were injured and therefore would have standing.

As discussed above, Plaintiff has staked her injury in this case on purported lost contracts, lost fees, and reputational damage caused by purported fraud that resulted in the use of Plaintiff's image in an advertisement she disliked.  (*See* Cplt. ¶¶ 47, 100-103.)  Any person who seeks membership in her class must show comparable professional or reputational harm arising from the same fraud and misuse of likeness.  *See Wal-Mart*, 564 U.S. at 350; *Simon v. E. Ky.*

31

*Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (plaintiffs lack standing unless they "allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and purport to represent").  But for the reasons noted above (and discussed further below concerning predominance), such a showing requires individual proof – complicated mini-hearings in which witnesses will testify about, at very least, how their photographs came to be taken and used; how they were used in ways they disliked; how those uses caused individual class members to be perceived in the industry; how each class member is typically compensated; and whether any such compensation or contracts were lost as a result of the use of their images.  There is no formula for making these determinations.  A proposed class whose membership can be determined only through individual fact finding is not ascertainable.  *See Biediger* v. *Quinnipiac Univ.*, No. 3:09-CV-621, 2010 WL 2017773, at *3-5 (D. Conn. May 20, 2010) (finding class unascertainable because plaintiffs failed to offer administratively feasible way to make necessary individualized determinations).

**B.     The Class Action is Not Maintainable Under Rule 23(b)**

Even assuming, *arguendo*, that Plaintiff satisfied Rule 23(a), she still cannot clear the additional hurdles presented by Rule 23(b).  An action may be maintained as a class action only if Plaintiff also satisfies at least one of the subdivisions of Rule 23(b).

1.   Common questions of law and fact do not predominate

The allegations in the Complaint illustrate that this case is inappropriate for class treatment under Rule 23(b)(3) because questions of law and fact affecting individual members predominate over those common to the proposed class.  Particularly with respect to cases involving allegations of fraud, such actions are "based on individualized misrepresentations," and class certification is improper because "plaintiffs will need to submit proof of the statements

made to each plaintiff, the nature of the varying material misrepresentations, and the reliance of each plaintiff upon those misrepresentations in order to sustain their claims." *Moore v. PaineWebber*, 306 F.3d 1247, 1252 (2d Cir. 2002). *See also* Fed. R. Civ. P. 23(b)(3) advisory committee's note (1966 amendment) ("[A]though having some common core, a fraud case may be unsuited for treatment as a class action if there was a material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed."). The same can be said for misappropriation of likeness and unfair competition cases. *See, e.g.*, *Chambers v. Time Warner*, No. 00 Civ. 2839(JSR), 2003 WL 749422, at *7-8 (S.D.N.Y. July 14, 2008) (denying class certification motion as to Lanham Act and Section 51 claims); *Jones v. Corbis Corp.*, 815 F. Supp. 2d 1108, 1117 (C.D. Cal. 2011) (class certification inappropriate in misappropriation of likeness case; analysis "depends on the circumstances surrounding each photograph, Plaintiff's knowledge of the circumstances, Plaintiff's past industry experience and conduct, and other evidence of Plaintiff's conduct that would reasonably imply consent").

To resolve this case, this Court would be required to analyze countless variations of facts; and it is implausible to believe that the exact circumstances of any of Defendants' purported conduct will be the same in each putative class members' case. For instance, the circumstances surrounding the signing of each model release will be unique, including variations in the words spoken and understood between the parties (*see, e.g.*, Cplt. ¶¶146-147); the model release in each scenario may be different, whether in form (depending on what type of form was used), or substance (terms sometimes are amended); and timing of signature, presence of witnesses, awareness by a model of the terms, and experience, sophistication, and "cache" of each model will vary (*id.* ¶ 107(e)-(i)). *See Cohn v. Mass. Mut. Life Ins. Co.*, 189 F.R.D. 209, 215 (D. Conn. 1999) (no predominance where resolution of plaintiffs' breach of contract claims was dependent

on representations made to each plaintiff individually).  As discussed above, each member's entitlement to damages will be keyed to his or her career, contracts, clients, relationships, and reputations, and the use of the photographs by Defendants and end users will vary.

Further adding to the complexity of this analysis is the fact that Plaintiff's state law class claims may be subject to adjudication under various states' laws.  Here, Plaintiff has asserted multiple state law claims and, although the states of residency of the putative class members is not currently known, Plaintiff alleges that "more than two-thirds of the members of the class reside in states other than" New York and Washington.  (Cplt. ¶ 10.)  In fact, even just between Plaintiff and Defendants, the Complaint purports to apply two different states' laws.  Questions common to the class will not predominate over questions affecting individual members where, as here, many state laws are purportedly implicated, requiring the court's individualized analysis of each.  *See Auscape Int'l v. Nat'l Geographic Enters. Inc.*, No. 02 CIV. 6441 LAK HBP, 2003 WL 23531750, at *16 (S.D.N.Y. July 25, 2003) (refusing to certify nationwide class); *Georgine v. Amchem Prods.*, 83 F.3d 610, 618 (3d Cir. 1996) (factual differences "when expontentially magnified by choice of law considerations, eclipse any common issues in this case").

With this level of variation, Plaintiff cannot demonstrate common issues predominate, and the efficiencies of a class action are negated by the necessarily individual factual inquiries.

## 2.   There is no injunctive class

Plaintiff cannot proceed under Rule 23(b)(2) because that rule "was never intended to cover causes such as the instant one where the primary claim is of damages"; rather, it "is only applicable where the relief sought is exclusively or predominantly injunctive or declaratory." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 564 (2d Cir. 1968); *Ault v. J.M. Smucker Co.*, No. 13-CV-3409, 310 F.R.D. 59, 68 (S.D.N.Y. 2015) ("[C]laims for monetary relief may not be

34

certified under Rule 23(b)(2), at least where . . . the monetary relief is not incidental to the injunctive or declaratory relief.") (quoting *Wal-Mart*, 564 U.S. at 360).

Here, the allegations in the Complaint regarding the class members' purported injuries relate predominantly to money damages. (*See generally*, Cplt. ¶¶ 99-103.) *See Benfield v. Mocatta Metals Corp.*, No. 91 CIV. 8255 (LJF), 1993 WL 148978, at *5 (S.D.N.Y. May 5, 1993) (certification under Rule 23(b)(2) is not appropriate where plaintiff's request for injunctive or declaratory relief is ancillary to a claim for monetary damages). Regardless, as discussed above, individualized factfinding would be required to assess class members' injuries, making it impossible to fashion a single injunction to provide relief to each member. *See Robinson v. Metro-North Commuter R.R.*, 267 F3d 147, 162 (2d Cir. 2001) (Rule 23(b)(2) class is "intended for cases where broad, class-wide injunctive . . . relief is necessary to redress a group-wide injury"); *Ault*, 310 F.R.D. at 68 (single injunction must provide relief to all class members).

## CONCLUSION

Just because Plaintiff is unhappy with the ultimate use of her image does not give her free reign to sue everyone who touched the photographs. For the reasons discussed above, all of Plaintiff's claims should be dismissed with prejudice.

Dated: New York, New York
   May 27, 2016

      COWAN, DeBAETS, ABRAHAMS & SHEPPARD LLP

      By:  /s/ Scott J. Sholder
        Nancy E. Wolff
        Scott J. Sholder
        41 Madison Avenue, 34th Floor
        New York, New York 10010
        Tel.:  (212) 974-7474
        Fax:  (212) 974-8474
        ssholder@cdas.com
        nwolff@cdas.com

        *Attorneys for Defendants*

35