**The Law Office of Jack Fitzgerald, PC**
Hillcrest Professional Building | 3636 Fourth Avenue, Suite 202 | San Diego, California 92103
Phone: (619) 692-3840 | Fax: (619) 362-9555
www.jackfitzgeraldlaw.com

November 30, 2017

The Honorable Vernon S. Broderick, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:     Compelling Further Production of Documents from Getty Images (US), Inc.
        *Elodie Passelaigue v. Getty Images (US), Inc., et al.*, 1:16-cv-01362-VSB

Dear Judge Broderick:

We represent plaintiff Elodie Passelaigue in the above-referenced matter. We submit this letter pursuant to Rule 3 of Your Honor's Individual Practices, and Local Rule 37.2, to raise several discovery disputes with defendant Getty Images (US), Inc. ("Getty"), which the parties have been unable to resolve despite good faith negotiations, and which the parties expect will be the subject of a motion to compel.

**Plaintiff's Document Requests, Getty's Responses, and the parties meet and confer efforts:** Plaintiff has served Getty with two sets of requests for the production of documents, totaling 23 requests. (Attached hereto as Exhibits 1-2.) Getty responded to the first set on June 20, 2016, and to the second set on October 28, 2017. Beginning with an August 15, 2016 letter, plaintiff raised insufficiencies in Getty's responses, some of which were resolved through the parties' extensive meet and confer efforts, including several letter exchanges, telephone calls (usually involving Thomas A. Canova and Melanie Persinger for plaintiff and Scott Sholder and Marissa Lewis for Getty, and lasting between 30 minutes and 60 minutes each), and aditional document productions from all parties. There are, however, remaining issues that could not be resolved, which plaintiff addresses below.

**Getty Refuses to Produce Documents Relating to Corbis Images (All Requests):** Getty has refused to produce any documents relating to photographs taken by Bill Diodato and originally available for license from Corbis, another image licensing database, which were later acquired by Getty. Getty maintains that these documents are not relevant to the current dispute. (*See*, *e.g.*, Ex. 1 at Request No. 6 ("All communications between [Getty] and CORBIS relating to the IMAGES, including communications relating to the MODEL RELEASES for the IMAGES", Request No. 12 ("All documents concerning IMAGES provided to [Getty] on or behalf of CORBIS and/or VISUAL CHINA GROUP, including without limitation any related releases, contracts, agreements, or invoices.").)[1] These documents, however, are highly relevant because Getty is now offering those images for license, including but not limited to, images of putative class members who were, like plaintiff, fraudulently induced into signing a model release by Bill Diodato (or in some cases may not even have signed a release). For example, while looking for images of only 11 putative class members, plaintiff was able

---

[1] While Requests for Production Nos. 6 and 12 call specifically for documents relating to Corbis, because Getty is now licensing the same images on its website, it is obligated to produce documents relating to those images in response to all of plaintiff's discovery requests.

Melanie Persinger | melanie@jackfitzgeraldlaw.com

2 | P a g e

to locate approximately 40 photographs on Getty's website which were previously offered for license on Corbis. Indeed, as far as plaintiff can tell, all of the photographs taken by Bill Diodato and previously offered for license through Corbis have been moved over to Getty's website into what it refers to as the "Corbis" collection. Accordingly, such images, and documents related thereto, fall within the class definition, and are thus clearly relevant here, particularly given that at least some of the images are offered for license as "Rights Managed" photos, which the Court has already found relevant by ordering the production of other "Rights Managed" photographs taken by Bill Diodato, as well as documents relating thereto. (*See* Dkt. No. 60.) Although Getty argues it does not need to produce these documents because it "became a distributor of those images months after the Complaint was filed pursuant to an agreement with Visual China Group" rather than "acquir[ing] Corbis or the Corbis Images," the fact remains that Getty is now offering these image for license without the valid consent of putative class members. Getty argues that the images are outside of the class definition proposed in the Complaint because Bill Diodato did not convey the Corbis images directly to Getty, but instead conveyed them first to Corbis, and Getty later acquired the right to license them through Visual China Group. If anything, this shows Getty chose to acquire and offer for license additional images of putative class members despite allegations that these images were being licensed unlawfully. Getty's attempt to distance itself from the Corbis images is particularly disingenuous given they were admittedly taken by defendant Bill Diodato, and very obviously include images of the same models, from the same photography sessions (and thus presumably covered by the same model releases) as those alleged in the Complaint months prior. Enforcing such a rigid and narrow interpretation of plaintiff's class definition at this stage of the proceedings should thus be rejected, as it would leave many putative class members without recourse, forcing them to file their own class action, despite that their claims are materially identical to plaintiff's, and raise the possibility of conflicting judgments relating to images subject to the same release.

- Defendants' Response:  The so-called "Corbis Images" do not fall within the Court's discovery order given that they were not available at the time the complaint was filed. (*See* Dkt. No. 60).  Further, Plainitff's class definition, and Plaintiff's understanding of the nature of the Corbis Images is factually inaccurate. Plaintiff defines her class as "all persons in the United States who are professional models whose photographs were taken by or on behalf of Diodato (including through Diodato Photography) and then conveyed to Getty in a manner by which the photographer has been identified by the pseudonym Adrianna Williams." Cplt. ¶ 104.  First, the Corbis Images were not "conveyed" to Getty Images.  Getty Images became a distributor of those images months after the Complaint was filed pursuant to an agreement with Visual China Group ("VCG"), the company that had recently purchased Corbis and the rights to its library of photos, including the Corbis Images.  Getty Images did not acquire Corbis or the Corbis Images, contrary to Plaintiff's belief.  Moroever, to the extent anything was "conveyed" to Getty Images, it was not conveyed by Diodato, as the class definition seems to require.  Diodato was twice removed from any alleged "conveyance" to Getty Images:  Diodato submitted the Corbis Images to Corbis, which sold its business and right to distribute those images to VCG, which in turn granted to Getty Images the limited right to distribute them in territories outside China.  Second, that Corbis may have distributed the Corbis Images under the name "Adrianna Williams" on its own website (as established by Plaintiff's referenced documents) – before Getty Images took over distribution – is irrelevant and

Melanie Persinger | melanie@jackfitzgeraldlaw.com

outside Getty Images' control. Getty Images further refers to its arguments in the section below concerning the impropriety of expanding the scope of discovery.[2]

**<u>Getty is Refusing to Produce Documents Relating to "Royalty Free" Images (All Requests)</u>:** Although we recognize the Court's September 1, 2016 Order granting in part plaintiff's motion to compel (Dkt. No. 60) was limited to images classified by Getty as "rights managed," at this stage in the litigation, discovery must be broadened to include "royalty free" images depicting recognizable persons. At the time of the August 31, 2016 hearing on plaintiff's motion to compel, prior to any discovery being taken, plaintiff did not have a detailed understanding of the distinctions between these two classifications and thus was unable to address the Court's concern regarding whether the individuals depicted in royalty free images would be "similarly situated" to plaintiff, since plaintiff's images were categorized "rights managed." (*See* Aug. 31 Hr'g Tr. at 10:13-18.) It has become apparent in discovery, however, that the distinctions between the two classifications do not affect a person's class membership; "royalty free" images should thus not be excluded from discovery. For example, the fact that "royalty free" photographs may be used for slightly different purposes by the end licensee, or cost less than "rights managed" images, does not change that class members' images are being used for commercial purposes without their valid consent. This is especially true considering that some models images appear in both categories and the "royalty free" images clearly depict professional models and indicate that the images have been "model released." These documents are likely to help plaintiff demonstrate that Getty acted similarly with respect to all class members, that all class members' claims can be proven by common evidence, and that damages are capable of measurement on a classwide basis. Getty's attempt to characterize plaintiff's efforts to gather relevant evidence of the violation of putative class members' rights as somehow demonstrating she cannot establish a valid class is not only circular, in that Getty is denying plaintiff discovery and then complaining she has no evidence, but also ignores documents produced by both parties showing that other putative class members were, just like plaintiff, fraudulently induced by Bill Diodato into signing Model Releases. Getty's unsubstantiated attacks on plaintiff aside, it does not actually respond to plaintiff's arguments regarding the clear relevance of these documents, nor demonstrate any burden, aside from its conclusory statement that plaintiff will not be able to certify a class, an issue not before the Court at this stage of the proceedings. The fact that Getty supposedly does not have detailed "end-use" information for these images—only one category of information sought—does not change the fact that Getty itself is still licensing them for profit without valid consent. Nor does Getty's lacking some information relating to Royalty Free Images somehow render the requests disproportional regarding the information it does retain regarding those images.[3]

---

[2] The above information, as well as the rest of the answers presented in this letter, to the extent not already documented, will be memorialized during plaintiff's deposition of Getty Images' 30(b)(6) witness; alternatively, Getty Images would be happy to provide a sworn affidavit in connection with this motion should the Court prefer.

[3] In any event, Getty's response reveals it does retain *some* end-use information—namely, it tracks "certain editorial uses"—and such information is highly relevant to plaintiff and the class's allegation that "Defendants Getty and Diodato engage in contributory deceptive acts and practices by enabling those who license from Getty to use plaintiff's and class members' portraits and/or pictures to engage in false or misleading representations that plaintiffs and class members use or otherwise endorse or sponsor or are otherwise affiliated with Getty's purported licensees and/or their products and services." (Compl. ¶ 123*; see also id.* ¶¶ 115, 117.)

- <u>Defendants' Response</u>:  Plaintiff concedes that the Court has not ordered Getty Images to produce Royalty Free images.  Indeed, Getty Images' understanding of the Court's August 31, 2016 ruling on Plaintiff's prior motion to compel was to keep the scope of discovery limited yet robust enough so Plaintiff could explore whether a valid class exists.  More than a year later, Getty Images has produced over 1,500 pages of documents (not counting Diodato's documents), including 550 images depicting numerous models, model releases, e-mails, and financial and usage information, and yet Plaintiff's attempt to further broaden the scope of discovery demonstrates she is no closer to establishing a valid class.  The Court should not further expand discovery to allow Plaintiff to continue its seemingly futile effort to establish and class and its invasive and overly broad fishing expedition, particularly given that Defendants' motion to dismiss is still pending and could dispose of the entire case, or at very least significantly narrow the issues (and therefore discovery).  Plaintiff should not be permitted free reign to continue a crusade that seeks to undermine the entire image licensing industry and would render meaningless any valid release if a model simply decides she is dissatisfied with her professional decisions, fails to read or recall terms of a clear release, or fabricates a story to attempt to circumvent contractual obligations.  Notwithstanding all of this, as a matter of business reality, with the exception of certain editorial uses (which do not require any permission by a model prior to use), Getty Images generally receives no end-use information for Royalty Free images, and such images would therefore almost surely be of no relevance or use to Plaintiff.  Licensing of Royalty Free images is based on pixel size, not content or usage type, and licensors are not required to – and generally do not – report the nature of their use to Getty Images.  It is entirely possible that many or even all of the end uses of the Royalty Free images were not commercial, and, for the reasons stated in Getty Images' motion to dismiss, mere display of those images on a website for purposes of offering a license does not violate the law.  To produce Royalty Free images and all associated documents would be a waste of time and effort, and would be disproportional to the needs of this case under Federal Rule 26(b)(1), given that Getty Images would not have information relevant to Plaintiff's claims or its alleged class.

***

Lastly, although plaintiff maintains that Getty's production of email communications remains incomplete, because Getty has agreed to produce additional emails, plaintiff reserves her right to later move to compel the production of those communications in the event defendants' production remains incomplete.

Respectfully submitted,

*Melanie Persinger*

Melanie Persinger

cc: All counsel of record (via ECF)

---

Melanie Persinger | melanie@jackfitzgeraldlaw.com