**The Law Office of Jack Fitzgerald, PC**
Hillcrest Professional Building | 3636 Fourth Avenue, Suite 202 | San Diego, California 92103
Phone: (619) 692-3840 | Fax: (619) 362-9555
www.jackfitzgeraldlaw.com

November 30, 2017

The Honorable Vernon S. Broderick, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   Compelling Documents Responsive to Plaintiff's Requests for the Production of Documents
      *Elodie Passelaigue v. Getty Images (US), Inc., et al.*, 1:16-cv-01362-VSB

Dear Judge Broderick:

We represent plaintiff Elodie Passelaigue in the above-referenced matter. We submit this letter pursuant to Rule 3 of Your Honor's Individual Practices, and Local Rule 37.2, to raise several discovery disputes with defendants Bill Diodato Photography, LLC and Bill Diodato (collectively, "Diodato"), which the parties have been unable to resolve despite good faith negotiations, and which the parties expect will be the subject of a motion to compel.

**Plaintiff's Document Requests, Diodato's Responses, and the parties' meet and confer efforts:**
Plaintiff has served Diodato with two sets of requests for the production of documents, totaling 25 requests. (Attached hereto as Exhibits 1-2.) Diodato responded to the first sets of requests on June 20, 2016, and to the second set on October 28, 2017. Beginning with an August 15, 2016 letter, plaintiff raised insufficiencies in Diodato's responses, some of which were resolved through the parties' extensive meet and confer efforts, including several letter exchanges, telephone calls (usually involving Thomas A. Canova and Melanie Persinger for plaintiff and Scott Sholder and Marissa Lewis for Diodato, and lasting between 30 minutes and 60 minutes each), and aditional document productions from all parties. There are, however, remaining issues that could not be resolved, which plaintiff addresses below. To date, Diodato has produced only 62 pages total, despite being ordered to produce documents relating to "rights managed" images, of which Getty has produced 500, relating to more than 150 separate model releases (and thus likely more than 150 photo shoots).

**Diodato Refuses to Produce Documents Relating to Corbis Images (All Requests):** Diodato has refused to produce any documents relating to photographs taken by Diodato and originally available for license from Corbis, another image licensing database, which were later acquired by Getty. Diodato maintains that these documents are not relevant. (*See, e.g.*, Ex. 1 at Request No. 3)[1] These documents, however, are highly relevant because Getty is now offering those images for license, including images of putative class members who were, like plaintiff, fraudulently induced into signing a model release by Bill Diodato (or in some cases may not even have signed a release). For example, while looking for images of only 11 putative class members, plaintiff was able to locate approximately 40 images on Getty's website which were previously offered for license on Corbis. Indeed, as far as

---

[1] While Requests for Production Nos. 6 and 12 call specifically for documents relating to Corbis, because Getty is now licensing the same images on its website, defendants are obligated to produce documents relating to those images in response to all of plaintiff's discovery requests.

Melanie Persinger | melanie@jackfitzgeraldlaw.com

plaintiff can tell, all of the photographs previously offered by Corbis have been moved over to Getty's website into what it refers to as the "Corbis" collection. Accordingly, such images, and documents related thereto, fall within the class definition and are thus relevant here, particularly given that at least some of the images are offered for license as "Rights Managed" photos, which the Court has already found relevant by ordering the production of other "Rights Managed" photographs taken by Diodato, as well as documents relating thereto. (*See* Dkt. No. 60.) Although Diodato argues it does not need to produce these documents because Getty "became a distributor of those images months after the Complaint was filed pursuant to an agreement with VCG Visual China Group" rather than "acquir[ing] Corbis or the Corbis Images," the fact remains that Getty is now offering these images for license without valid consent. Getty argues that the images are outside of the class definition proposed in the Complaint because Bill Diodato did not convey the Corbis images directly to Getty, but instead conveyed them first to Corbis, and Getty later acquired the right to license them through Visual China Group. If anything, this shows Getty chose to acquire and offer for license additional images of putative class members despite allegations that these images were being licensed unlawfully. Getty's attempt to distance itself from the Corbis images is particularly disingenuous given they were admittedly taken by Diodato, and very obviously include images of the same models, from the same photography sessions (and thus presumably covered by the same model releases) as those alleged in the Complaint months prior. Enforcing such a rigid and narrow interpretation of the class definition at this stage of the proceedings should thus be rejected, as it would leave many putative class members without recourse, forcing them to file their own class action, despite that their claims are materially identical to plaintiff's, and raise the possibility of conflicting judgments relating to images subject to the same release.

> Defendants' Response:  Diodato refers to and incorporates by reference Getty Images' response to this same alleged deficiency in Plaintiff's letter directed to Getty Images.

**Diodato is Refusing to Produce Documents Relating to "Royalty Free" Images (All Requests):**
Although the Court's September 1, 2016 Order granting in part plaintiff's motion to compel (Dkt. No. 60) was limited to images classified by Getty as "rights managed," at this stage in the litigation, discovery must be broadened to include "royalty free" images depicting recognizable persons. At the time of the August 31, 2016 hearing on plaintiff's motion, prior to any discovery, plaintiff did not have a detailed understanding of the distinctions between these classifications, and thus was unable to address the Court's concern regarding whether the models depicted in royalty free images would be "similarly situated" to plaintiff, since her images are categorized as "rights managed." *See* Aug. 31 Hr'g Tr. at 10:13-18. It has become apparent in discovery, however, that the classifications do not affect a person's class membership; "royalty free" images should thus not be excluded from discovery. For example, that "royalty free" images may be used for slightly different purposes by the end licensee, or cost less than "rights managed" images, does not change that class members' images are being used for commercial purposes without their valid consent. This is especially true considering that some models' images appear in both categories and the "royalty free" images clearly depict professional models and indicate they have been "model released." These documents are likely to help plaintiff demonstrate, at a minimum, that Diodato acted similarly with respect to all class members and that class members' claims can be proven by common evidence. Diodato's attempt to characterize plaintiff's efforts to gather relevant evidence of the violation of class members' rights as somehow demonstrating she cannot establish a valid class is not only circular, in that Diodato is denying plaintiff discovery and then complaining she has no evidence, but also ignores documents produced by both parties showing that other putative class members were, just like plaintiff, fraudulently induced by Bill Diodato into signing Model Releases. Diodato's unsubstantiated attacks on plaintiff aside, it does not actually respond to plaintiff's arguments regarding the clear relevance

3 | P a g e

of these documents, nor demonstrate any burden, aside from its conclusory statement that plaintiff will not be able to certify a class, an issue not before the Court at this stage of the proceedings.

> Defendants' Response:  Diodato refers to and incorporates by reference Getty Images' response to this same alleged deficiency in Plaintiff's letter directed to Getty Images.

**Diodato Produced Only 18 Model Release (Request No. 1):** This request seeks "All MODEL RELEASES for the IMAGES." Diodato, however, has produced only 18 model releases—one relating to plaintiff, and those relating to class members identified in response to an interrogatory, but none for any of the remaining class members.While *Getty* has produced some releases, plaintiff is entitled to copies as they exist in Diodato's possession, particularly in light of her allegations that Diodato has engaged in fraud relating to such releases. Thus, plaintiff is entitled to inspect the originals (and drafts), which should be in Diodato's possession since he was required to submit them to Getty and Corbis. These documents are central to this case—arguably the most important at issue—and Diodato is a party to this lawsuit. He cannot avoid his obligation to produce responsive, relevant discovery by pointing to separately maintained copies produced by another party. This is particularly true given his responses to requests for admission stating that changes are often made to releases after they are signed, including adding the "copy or visual reference" photo to which the release pertains, and "occasionally" adding the "description of shoot." Under such circumstances, Diodato does not satisfy his discovery obligations by producing only 18 releases and then claiming that he "likely does not have many of the releases associated with the 550 images." Diodato may be a small business but it seems unlikely he would dispose of documents purporting to give him rights to use the photos at issue when he continues to this day to rely on those releases to supposedly absolve himself and his business of all liability.

> Defendants' Response:  Plaintiff admits that Diodato has provided a separate copy of the only model release currently at issue here – the release signed by the sole named plaintiff. Plaintiff's allegations concerning her own model release are unique to her claims; for instance, she does not contend that anyone else signed a release covering two photo shoots, and so the many releases (corresponding to over 500 images) produced by Getty Images with respect to other unnamed class members should suffice.  To the extent Plaintiff claims her fraud arguments apply to other class members, those allegations relate to conversations allegedly taking place between the models and Diodato which will come out during depositions and do not require independent production of model releases by Diodato.  *See, e.g.*, Cplt. ¶¶ 145-52.
>
> Further, Diodato agreed to produce responsive documents subject to his objections, which included objections based on burden and that certain documents were already available to Plaintiff or in her possession (*e.g.*, by way of production from Getty Images). Plaintiff is not entitled to duplicative discovery just because she wants it, especially if it was available elsewhere and will be burdensome on the producing party.  *See, e.g.*, Fed. R. Civ. P. 26(b)(2)(C) ("[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . ."). Getty Images was able to search its files for the images and associated model releases it produced, which was not an easy task even for a large company.
>
> Diodato's small business does not have the technological capabilities or resources that Getty Images has, and even so, Diodato likely does not have many of the releases associated with the 550 images; he generally does not keep records for more than 5 or 7 years, and once model

releases are scanned and delivered to Getty Images, Diodato and his colleagues do not focus on keeping and organizing hard copies. Indeed, there is generally no reason to keep the hard copies, and many of them simply are not retained once they are converted into digital format during the upload to Getty Images.  To the extent copies exist, they are not kept in such a way that they could be easily located. Regardless, any digital copy would be the same as the copy submitted to Getty Images.[2]

Notwithstanding the reasons Diodado should not be compelled to produce duplicative model releases, and without waiver of his continued objections to producing Corbis-related documents, Diodato has produced copies of the original releases for the models referenced in Plaintiff's answer to Interrogatory No. 1 to the extent he has been able to find them.  To be clear, Diodato did, in fact, engage in diligent search efforts; after considerable time, expense, and effort searching through hard copy records in off-site storage, Diodato located most of the original releases relevant to the putative class members; accordingly, to the best of Diodato's knowledge, he has searched for and retrieved the model releases that are even remotely relevant to this case. He should not be compelled to effectively suspend operations of his small business to search for dozens, if not hundreds more, many of which are likely not relevant and may not even exist in his possession, and which have already been produced by Getty Images.  To compel him to do so – which would likely entail weeks' worth of time searching – would be financially ruinous to his small business and would contravene the proportionality requirements set forth in Federal Rule 26(b)(1).

**Diodato Produced Only 8 Emails (Request Nos. 3-4, 7, 16-17):** Although plaintiff served 5 requests seeking communications, Diodato produced only 8 emails, several of which are nearly identical, and involve only communications relating to plaintiff's claims and only *one* other class member, Mariel Booth. It strains credulity that Diodato has no other responsive emails, either in his personal possession or that of Bill Diodato Photography, LLC (a company that has been around for at least 15 years), relating to more than 150 other models and photo shoots. Indeed, plaintiff is aware of specific communications between Diodato and class member Lucia Fiala. Further, the term "documents" encompasses emails, *see* Fed. R. Civ. P. 34(a)(1)(A), and so Diodato is obliged to produce emails responsive to plaintiff's other requests, such as, "the monetary amounts and other consideration provided to YOU concerning the IMAGES" (Ex. 1, at Request No. 5), but has produced none to date.

Defendants' Response:  Diodato generally does not e-mail models, and they do not typically e-mail him; the models are booked by the clients and paid by the clients and Diodato has little other contact with them outside the shoot.  Diodato has searched for and produced (or will produce) materials relevant to the models named in Interrogatory No. 1, and he is not aware of any additional relevant e-mails concerning the models that are currently alleged to be part of the putative class.  Plaintiff offers no justification for why Diodato should have to engage in an extremely burdensome and time-consuming expedition to identify communications with "150 other models" – some of whom he has not interacted with in many years – who may not even be part of the putative class.[3]  Further, Diodato does not possess e-mails concerning money paid to

---

[2] Diodato notes that the above information, as well as the rest of the answers presented in this letter, to the extent not already documented, will be memorialized during plaintiff's deposition of Diodato and Diodato Photography LLC's 30(b)(6) witness; alternatively, Diodato and Diodato Photography, LLC would be happy to provide sworn affidavits in connection with this motion should the Court prefer.

[3] Getty Images has produced documents that would be responsive to Request No. 7, and for the reasons stated herein, Diodato should not be compelled to duplicate efforts simply because Plaintiff demands it of him.

Melanie Persinger| melanie@jackfitzgeraldlaw.com

5 | P a g e

him and cannot be compelled to produce documents that he does not possess.  *See, e.g.*, Fed. R. Civ. P. 34(a)(1); *Williams v. Bank Leumi Tr. Co. of New York*, No. 96 CIV. 6695(LMMAJP), 1999 WL 375559, at *1 (S.D.N.Y. June 7, 1999); *Henderson v. Williams*, No. 3:10-CV-1621 MRK WIG, 2012 WL 4587343, at *1 (D. Conn. Oct. 2, 2012).  The Images at issue here were sold through Getty Images, which has already produced information concerning royalties paid to Diodato.  Diodato does not keep this royalty data for more than a few years, and to the extent the information exists, it is not readily available or kept in an easily accessible manner, and to pull and organize this information would be extremely time-consuming and burdensome.  Given that Plaintiff already has this information from Getty Images, Diodato should not be compelled to duplicate efforts at great cost to his business.

Without waiver of his continued objections to producing Corbis-related documents, Diodato will produce his copies of the Lucia Fiala e-mails even though these e-mails are not relevant (Ms. Fiala's images only appeared on Corbis), his e-mails related to model Haley Higgens (even though the e-mail chain was already produced by Getty Images) and his e-mails with Phil Bram's modeling agency (even though Mr. Bram's images also only appeared on Corbis and therefore are not relevant).

**Diodato Has Not Produced Any Documents Responsive to Request Nos. 12, 13, and 15:** Diodato has not produced a single document responsive to these requests despite agreeing to "use commercially reasonable efforts to produce responsive non-privileged documents . . . ." Nor has Diodato stated that none exist. While plaintiff recognizes that *Getty* has produced some documents responsive to these requests, such as a contributor agreement, plaintiff is entitled to copies of this and other documents as they exist in *Diodato's* possession, custody or control. Diodato should be compelled to produce documents responsive to Requests 12-13 because they seek copies of Model Releases that would have been signed in the months surrounding plaintiff's photo shoots with Diodato. Neither party has been able to identify one of the witnesses to plaintiff's model release and because Diodato often had staff witnessing the model releases, it is likely that the same witness signed other releases around the same time that may be legible. Thus, this request is narrowly tailored at identifying a key witness in this case that has thus far been unidentifiable through other discovery efforts.

Defendants' Response:  Diodato will produce his copy of the contributor agreement (Request No. 15) even though it was already produced by Getty Images.  However, Diodato should not be compelled to produce documents in response to RFP Nos. 12 and 13 when Plaintiff is already in possession of those same documents from Getty Images.  Diodato refers to his responses above concerning documents already produced by Getty Images (*i.e.*, a significant number of model releases covering over 500 images) and incorporates those arguments by reference. Moreover, Diodato notes that Plaintiff's assumption that production of these releases will identify a missing witness is completely speculative and factually misguided.  Diodato, not to mention Plaintiff's counsel, has questioned the other witness to Plaintiff's model release and Diodato's staff members concerning the possible identity of the missing witness, and no one has been able to identify him or her.  This is likely because Diodato often has part-time interns working for him, sometimes for no more than a day or two or a shoot or two at a time.  It is unlikely that the same intern would have been on other shoots, or that any other witness or staff member would be able to identify or recall him or her based on other releases given the number of interns that pass through Diodato's business in a given year.  Plaintiff is overreaching, and is simply creating excuses to engage in a fishing expedition to uncover as many potential class members through as many ways as possible given her apparent inability to do so to date.

Respectfully submitted,

*Melanie Persinger*

Melanie Persinger

cc:     All counsel of record (via ECF)

---

Melanie Persinger| melanie@jackfitzgeraldlaw.com