USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/1/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
:
ELODIE PASSELAIGUE, *on behalf of herself* :
*and all other persons similarly situated,* :
:
Plaintiff, :
:
-against- :
:
GETTY IMAGES (US), INC., BILL :
DIODATO PHOTOGRAPHY, LLC, and BILL :
DIODATO, :
:
Defendants. :
-------------------------------------------------------X

16-CV-1362 (VSB)

**OPINION & ORDER**

Appearances:

Thomas A. Canova
Jack Fitzgerald
Trevor M. Flynn
Melanie Persinger
The Law Office of Jack Fitzgerald, PC
San Diego, California
*Counsel for Plaintiff*

Nancy E. Wolff
Scott J. Sholder
Cowan, DeBaets, Abrahams & Sheppard LLP
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Elodie Passelaigue, a professional fashion model, brings claims under the

Lanham Act, 15 U.S.C. § 1051 *et seq*., Washington State law,[1] and New York State law against

Defendants Getty Images (US), Inc. ("Getty"), Bill Diodato Photography, LLC ("Diodato

---

[1] Plaintiff originally brought claims pursuant to Washington State law against Washington-based Defendant, Getty Images, Inc., but voluntarily dismissed these claims on June 3, 2016. (Doc. 46.) Plaintiff agrees that her Washington law claims should be dismissed given the fact that Getty Images, Inc. is no longer a party. (Pl.'s Br. 4 n.1.)

Photography"), and Bill Diodato (together, "Defendants") relating to their alleged unlawful licensing and sale of images of Plaintiff that were eventually used to advertise synthetic beauty products. Before me is Defendants' motion to dismiss the complaint in its entirety. Because Plaintiff has failed to state claims for common law fraud, negligence, and deceptive practices under New York General Business Law Section 349, those claims are dismissed. In addition, because the Model Release signed by Plaintiff bars her claims as they relate to the 2004 Clinique photo shoot, Defendants' motion to dismiss Plaintiff's remaining claims of misappropriation of her likeness under New York Civil Rights Law Section 51, as well as unfair competition under the Lanham Act and New York law, is granted. Defendants' motion to dismiss with regard to these claims is denied, however, with respect to the photographs taken at the 2009 Spiegel photo shoot. Therefore, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I.    <u>Factual Background</u>[2]

Passelaigue is a "professional, internationally-renowned fashion model." (Compl. ¶ 17.)[3] In the early 2000s, she was hired to work for Clinique, and remains one of Clinique's most recognized faces. (*Id.* ¶ 19.) As part of one advertising campaign in early 2004, Clinique sought to portray Passelaigue in images of her in water, showing part of her face above water, and part of her face and neck underwater. (*Id.* ¶ 20.) In order to test the feasibility of this idea, including whether lighting and other conditions would be acceptable, Clinique arranged for a test photo shoot in New York, (*id.* ¶ 21), and hired a local photographer, Defendant Bill Diodato, to take the photos, (*id.* ¶ 22).

---

[2] The following factual summary is drawn from the allegations of the complaint and documents attached to the complaint, which I assume to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[3] "Compl." refers to the complaint filed on February 22, 2016 ("Complaint"). (Doc. 1.)

On February 9, 2004, Passelaigue posed for the Clinique underwater test photos in New York, which were taken by Diodato. (*Id.* ¶ 23.)  After the test shoot, Diodato "asked Ms. Passelaigue if he could use photos from the test shoot for his portfolio and professional website simply as an example of his work."  (*Id.*)  He "showed her a form document titled 'Model Release,' representing to Ms. Passelaigue that if she was willing to allow him to use the photos only for his portfolio and website, she just needed to sign the Model Release form."[4]  (*Id.*)  Passelaigue agreed to allow him to use the photos for his website "[a]s a professional courtesy." (*Id.* ¶ 24.)  Diodato then took Passelaigue into a different room where she signed the Model Release document.  (*Id.* ¶ 27.)  At his direction, she also filled out additional items on the form, specifically her name, address, phone number, email address, and date of birth.  (*Id.* ¶ 28.)  She did not date the Release.  (*Id.*)  The document she signed "contained no signature of a photographer or any witnesses, did not set forth a photographer name in the two places where indicated, did not set forth the 'Description of Shoot' where indicated, did not set forth the 'Date' of Ms. Passelaigue's signature where indicated, did not have a mark in the box indicating the model is at least 18 years old, and did not 'Attach a Copy of a Photo ID or Visual Reference' where indicated."  (*Id.* ¶ 29.)  No one else was present when Plaintiff signed the Release. (*Id.* ¶ 27.)

More than five years later, on June 11, 2009, Passelaigue was hired to model for a photo shoot in New York for Spiegel, a women's clothing and accessory company.  (*Id.* ¶ 34.)  Diodato photographed the shoot.  (*Id.*)  At the beginning of the Spiegel shoot Diodato tried to remind Passelaigue that they had meet on the 2004 Clinique photo shoot years before, but despite remembering the shoot, she did not remember Diodato as the photographer.  (*Id.* ¶ 35.)  Although

---

[4] This form document will hereinafter be referred to as "Model Release" or "Release."

Spiegel hired Passelaigue for "waist down" photographs, Diodato took about a dozen headshots of Passelaigue without Spiegel's consent, and told Passelaigue the headshots were "precautionary, in case Spiegel later decided it wanted to use the images for the cover of a catalog." (*Id.* ¶ 36.) Passelaigue did not sign anything at the 2009 Spiegel photo shoot. (*Id.* ¶ 38.)

Around August 2014, Passelaigue learned for the first time that headshot images of her were being used for an advertising campaign for Botox, "a prescription-only medicine manufactured by pharmaceutical giant Allergan, which is injected into muscles and used to temporarily improve the appearance of moderate to severe 'crow's feet' lines and frown lines between the eyebrows." (*Id.* ¶ 39.) She had never modeled for Botox or Allergan. (*Id.* ¶ 41.) Her image was also being used on an Allergan website, www.skinmedica.com, which belongs to "SkinMedica, an Allergan Company." (*Id.*) The SkinMedica web pages feature Passelaigue's image advertising synthetic beauty products. (*Id.* ¶ 42.) The webpages also falsely suggest that Passelaigue is at least in her 40s, and contain various statements regarding health and physical side effects associated with the products. (*Id.* ¶ 43.) As of February 2016, Allergan continued to use Passelaigue's images in its advertising campaigns. (*Id.* ¶ 45.)

Concerned for her professional image, and the potential impact the Allergan campaign would have on her "prospective assignments for companies that market 'natural' cosmetic, skincare, and other beauty products," (*id.* ¶ 48), Passelaigue contacted her agent to look into the matter, (*id.* ¶ 49). Grey Advertising, the advertising agency for Botox, informed Passelaigue's agent that it had licensed the image from Getty. (*Id.*) Passelaigue's agent contacted Getty, which responded that "it had a valid release for her photographs." (*Id.* ¶ 50.) Getty sent her agent a copy of the Model Release, which was redacted to "protect the photographer's identity."

(*Id.*)  The Release contained Passelaigue's signature and written name, in Passelaigue's handwriting.  (*Id.* ¶ 51.)  However, it also contained a handwritten date of "6-11-09" under her name, and the phrase "Clinique Underwater Shot [sic] & Spiegel Beauty" on the line designated for "Description of Shoot," both written by someone else.  (*Id.* ¶ 52.)  Under the section titled "Attach a copy of a photo ID or visual reference here," the Release includes two sample headshots:  one from the 2004 Clinique photo shoot, the other from the 2009 Spiegel photo shoot.  (*Id.* ¶¶ 50, 53, 54.)

Getty eventually identified the photographer as Adrianna Williams.  (*Id.* ¶ 57.) Passelaigue discovered a number of photos associated with "Adrianna Williams" being offered for sale on the Getty website, including the photos from the 2004 Clinique and Spiegel photo shoots.  (*Id.*)  Numerous other models' photographs were also being offered for sale on the Getty website, purportedly taken by Adrianna Williams.  (*Id.* ¶¶ 57–58.)  Passelaigue's agent asked other models if they had ever worked with, or heard of, a photographer named Adrianna Williams, and none had.  (*Id.* ¶ 58.)  Passelaigue determined around the same time that the photographer—Adrianna Williams—was in fact Diodato.  (*Id.* ¶ 60.)

Passelaigue retained counsel, who convinced Getty to provide an unredacted copy of the Model Release, (*id.* ¶ 61), which is reproduced below:

## MODEL RELEASE

For good and valuable consideration that I acknowledge as received, and with the intent to be legally bound, by signing this release I hereby irrevocably grant to _____, ("**Photographer**"), his/her affiliates, licensees, agents and assigns (and their respective licensees and assigns) ("**Assigns**"), the unrestricted right to use my appearance, form, likeness and voice, or that of the minor named below (if applicable), contained in the photographs, film, or recording of me (or the named minor, if applicable) by Photographer as part of a shoot described below ("**Images**"), and to distribute such Images for editorial, trade, advertising, packaging or other purposes in any manner or medium (including without limitation broadcast, online and print), whether now or hereafter devised, throughout the world, in perpetuity. I understand Photographer may contract with a stock agency and that the Images may be included in stock files. I further understand and agree that the Images may be modified, altered, cropped and combined with other content such as images, video, audio, text and graphics.

I waive any right to the Images, including the right to inspect or approve any use of the Images and any additional money or consideration for any use of the Images. I acknowledge and agree that this release is binding on my heirs and assigns, and that the personal information provided by me to Photographer as part of this release may be used and disclosed by the Photographer and his/her Assigns for the purposes of selling, licensing and distributing my likeness for commercial purposes and confirming my consent. I expressly release Photographer and his/her Assigns from and against any and all actions, liabilities, losses, demands or claims that I have or may in the future have for rights of publicity, invasion of privacy, defamation, libel or slander and/or any other tort or cause of action arising out of any use of the Images, even if such use is unflattering, embarrassing or objectionable to me. In any event, I agree that my monetary damages awarded against Photographer or his/her Assigns if any, shall not under any circumstances exceed $US 500.00.

**[ATTACH A COPY OF A PHOTO ID OR VISUAL REFERENCE HERE]**




Please check one of the following boxes (as applicable):

☒ I represent and warrant that I am at least eighteen years of age, am competent and have authority to execute this release.

☐ If parent or guardian is executing on behalf of a minor appearing in image: I represent and warrant that I am at least eighteen years of age and have full legal capacity to execute this release of rights in the Images for the following minor: Full name of minor: _____

Description of Shoot: _CLINIQUE UNDER WATER SHOOT, SPIEGEL BEAUTY_

For Photographer Only:

_____
Photographer's Signature

_BILL DIDDTO_
Printed Name

_____
witness

_____
Lauren Benward—witness
6/11/09

Rev'd 6-18-07

For Model Only (Required):

_____
Model's Signature (or Parent/Guardian of Minor)

_Elodie PASSELAIGUE_
Printed Name

_6-11-09_
Date

_395 South end ave # 14G_
Model's Address
_NY - NY - 10280. USA_

_(917) 334 5941_
Model's Phone No.

_elodiepass@hotmail.com_
Model's Email

_25th of July 1980_
Model's Date of Birth

(*Id.* Ex. 3.) The Release lists two purported witnesses: one, named "Lauren Benward," signed the Release and also included a handwritten printed name and date of "6-11-09;" however, the other witness's signature is illegible, and there is no printed name associated with it. (*Id.* ¶ 62.) In the bottom right-hand corner, the Release also contains the typed phrase "Rev'd 6-18-07." (*Id.*)

## II.   Procedural History

Passelaigue brought this action by filing a complaint on February 2, 2016, alleging claims for (1) misappropriation of likeness under New York Civil Rights Law Section 51; (2) deceptive acts and practices pursuant to New York General Business Law Section 349; (3) unfair competition under New York law; (4) negligence; (5) fraud; (6) Washington common law misappropriation of likeness; (7) violating the Washington consumer protection act; and (8) false advertising, false representation, false designation, unfair competition, and false endorsement and association under the Lanham Act. (Compl. ¶¶ 113–81.) Plaintiff also seeks to represent a class of "professional models whose photographs were taken by or on behalf of Diodato (including through Diodato Photography) and then conveyed to Getty in a manner by which the photographer has been identified by the pseudonym Adrianna Williams." (*Id.* ¶ 104.) Before me is Defendants' motion to dismiss the Complaint in its entirety. (Doc. 44.)

## III.   Discussion

### A.   *The Release is Binding as to the 2004 Clinique Photo Shoot Only*

Defendants argue that all of Plaintiff's claims must be dismissed because she signed the Release, and that allegations of "doctoring" the Release are merely speculative. In response, Plaintiff asserts that she signed the Release after the 2004 Clinique photo shoot, and that a number of handwritten terms were not present on the Release when she signed it. I find

Plaintiff's allegations plausible, and supported by the fact that the alleged execution date and description of the 2004 Clinique photo shoot are handwritten in what appears to be handwriting different from Plaintiff's. It is only because of the handwritten terms—the alleged doctoring— that the 2009 Spiegel photo shoot comes within the ambit of the Release. As a result, Plaintiff has plausibly alleged that the Release does not apply to the photographs from the 2009 Spiegel photo shoot.

Assuming the Release was doctored as alleged in the Complaint, however, that does not make it inapplicable to the 2004 Clinique photo shoot, since Plaintiff admits she signed the Release at the Clinique photo shoot in 2004. Plaintiff argues that the Release is nevertheless unenforceable because (1) she was fraudulently induced to sign the Release and (2) the Release contains unconscionable terms. For the reasons that follow, Plaintiff fails to establish either that she was fraudulently induced into signing the Release with respect to the photographs from the 2004 Clinique photo shoot or that the terms of the Release are unconscionable.

### 1. Fraudulent Inducement

Where a party is fraudulently induced to enter into a contract, "the contract is voidable at the instance of the defrauded party." *Bazzano v. L'Oreal, S.A.*, No. 93 Civ. 7121 (SHS), 1996 WL 254873, at *3 (S.D.N.Y. May 14, 1996). "In New York a plaintiff alleging fraud must show by clear and convincing evidence that the defendant knowingly or recklessly misrepresented a material fact, intending to induce the plaintiff's reliance, and that the plaintiff relied on the misrepresentation and suffered damages as a result." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007); *see also Huntington Vill. Dental, PC v. Rathbauer*, No. 34620–12, 2014 WL 5461544, at *4 (N.Y. Sup. Ct. 2014). In determining whether a plaintiff reasonably relied, courts consider "the entire context of the transaction, including factors

such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp. Inc.*, 343 F.3d 189, 195 (2d Cir. 2003). According to the New York Court of Appeals, where "facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by exercise of ordinary intelligence . . . he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations." *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320 (1959) (quoting *Schumaker v. Mather*, 133 N.Y. 590, 596 (1892)). Thus, a party may not justifiably rely on a representation that is specifically disclaimed in a written agreement. *See Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 785 (2d Cir. 2003); *Wash. Capital Ventures, LLC v. Dynamicsoft, Inc.*, 373 F. Supp. 2d 360, 365–66 (S.D.N.Y. 2005) ("New York law clearly conditions fraud on the reasonability of the plaintiff's reliance on a material misrepresentation, which in turn cannot be established when a party simply fails to read an unambiguously-worded agreement.").

Here, Plaintiff claims that Diodato orally promised her that he would only use her photographs in his portfolio and on his website. (*See* Compl. ¶ 23.) She then signed a two-paragraph Release which specifically states:

> For good and valuable consideration that I acknowledge as received, and with the intent to be legally bound, by signing this release I hereby irrevocably grant to _____ ("Photographer"), his/her affiliates, licensees, agents and assigns (and their respective licensees and assigns) ("Assigns"), the unrestricted right to use my appearance, form, likeness and voice, . . . contained in the photographs, film, or recording of me . . . by Photographer as part of a shoot described below ("Images"), and to distribute such images for editorial, trade, advertising, packaging or other purposes in any manner or medium (including without limitation broadcast, online and print), whether now or hereafter devised, throughout the world, in perpetuity. I understand Photographer may contract with a stock agency and that the images may be included in stock files. I further understand and

> agree that the images may be modified, altered, cropped and combined with
> other content such as images, video, audio, text and graphics.

(Compl. Ex. 3.) Because the alleged misrepresentations conflict with the terms of the Release, "there can be no reasonable reliance as a matter of law." *Interpharm, Inc. v. Wells Fargo Bank, N.A.*, No. 08 Civ. 11365(RJH), 2010 WL 1257300, at *9 (S.D.N.Y. Mar. 31, 2010) (quoting *Ruffino v. Neiman*, 794 N.Y.S.2d 228, 229 (4th Dep't 2005)). If Plaintiff read the one page Model Release, she would have known that the agreement provided for "unrestricted" use of her appearance, including for sale with a "stock agency," and that "the images may be included in stock files." (Compl. Ex. 3.) Having failed to read the Release, Plaintiff could not have reasonably relied on Diodato's statements to the contrary. *See, e.g.*, *Morby v. Di Siena Assocs. LPA*, 737 N.Y.S.2d 678, 680 (3d Dep't 2002) ("Having failed to read the release before signing it, plaintiff simply cannot establish the essential element of justifiable reliance. . . . [T]he allegedly fraudulent misrepresentation . . . could have been readily discovered upon the reading of the document, and plaintiff cannot now avoid his obligations under a release he did not read merely by asserting that he 'thought' it was something else." (citations omitted)); *Jackson v. Broad. Music, Inc.*, No. 04 CV 5948(TPG), 2006 WL 250524, at *9 (S.D.N.Y. Feb. 1, 2006) ("[U]nder New York law, 'a plaintiff's ability to establish reasonable reliance is irreparably impaired when it simply fails to read a binding document prior to executing the document.'" (quoting *Dynamicsoft*, 373 F. Supp. 2d at 365)). Therefore, Plaintiff's argument that she was fraudulently induced to enter the contract is without merit.

## 2. Unconscionability

Plaintiff also argues that the Release is voidable because, for a high-end fashion model, the limitation of $500 in damages, as well as the prohibition on any objection to unflattering, embarrassing, or otherwise objectionable uses, are unconscionable terms. (Pl.'s Br. 5.)[5] "[A]n unconscionable contract has been defined as one which is so grossly unreasonable as to be unenforceable because of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *King v. Fox*, 7 N.Y.3d 181, 191 (2006). An unconscionable agreement is unenforceable. *See Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988); *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002). In New York, unconscionability requires both procedural and substantive showings. *See Gillman*, 73 N.Y.2d at 10. "In determining whether a contract is unconscionable, a court should take a 'flexible' approach, examining 'all the facts and circumstances of a particular case.'" *Brennan*, 198 F. Supp. 2d at 382 (quoting *In re Estate of Friedman*, 407 N.Y.S.2d 999, 1008 (2d Dep't 1978)).

"To determine whether a party lacked 'meaningful choice,' courts look for evidence of high pressure or deceptive tactics, as well as disparity in bargaining power." *Pallonetti v. Liberty Mut.*, No. 10 Civ. 4487, 2011 WL 519407, at *5 (S.D.N.Y. Feb. 11, 2011). "Several factors contribute to the determination of whether a contract clause is procedurally unconscionable, including '(1) the size and commercial setting of the transaction; (2) whether there was a lack of meaningful choice by the party claiming unconscionability; (3) the experience and education of the party claiming unconscionability; and (4) whether there was disparity in bargaining power.'"

---

[5] "Pl.'s Br." refers to Plaintiff's Opposition to Defendants' Motion to Dismiss the Class Action Complaint, filed on June 27, 2016. (Doc. 47.)

*Reach Music Publ'g, Inc. v. Warner/Chappell Music, Inc.*, No. 09 Civ. 5580(KBF), 2014 WL 5861984, at *7 (S.D.N.Y. Nov. 10, 2014) (quoting *Dallas Aerospace,* 352 F.3d at 787). Although the allegations in the Complaint suggest that Diodato's conduct may have involved some deceptive tactics, it does not rise to the level of depriving Plaintiff of "meaningful choice." *See King*, 7 N.Y.3d at 191.

The Release is short—one page—and afforded Plaintiff with the opportunity to easily disprove Diodato's alleged oral promises that he would only use the photographs for his portfolio. (*See* Compl. Ex. 3.) There are no allegations that suggest that (1) Plaintiff's bargaining power, experience, and/or education were limited, or (2) Plaintiff was under any sort of duress or pressure to sign the Release without reading it, and she admits that she signed it as a "professional courtesy." (*Id.* ¶ 24.) In other words, there are no allegations that Diodato did anything so as to effectively deprive Plaintiff of a meaningful choice. Under the circumstances, the Release was not procedurally unconscionable.[6] *See Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571–73 (S.D.N.Y. 2009). Therefore, Plaintiff's argument that the Release was unconscionable fails.

Accordingly, Plaintiff's claims as they relate to the 2004 Clinique photo shoot are dismissed, and Defendants' motion to dismiss Plaintiff's complaint is granted as to the claims relating to the 2004 Clinique photo shoot.

---

[6] In light of this finding, I need not consider whether the damages cap itself was substantively unconscionable.

### B.    *Fraud*

Plaintiff's fraud claim must also be dismissed for the reasons stated in Part III.A, namely because Plaintiff fails to allege reasonable reliance on Diodato's statements in the face of a plain and unambiguous written agreement.  Therefore, Defendants' motion to dismiss Plaintiff's fraud claim is granted.

### C.    *New York Right of Publicity Claim*

To state a claim under Section 51 of the New York Civil Rights Law, a plaintiff must allege "(i) usage of plaintiff's name, portrait, picture, or voice, (ii) within the state of New York, (iii) for purposes of advertising or trade, (iv) without plaintiff's written consent." *Molina v. Phoenix Sound Inc.*, 747 N.Y.S.2d 227, 230 (1st Dep't 2002).  Defendants argue that the photographs were not used "for purposes of advertising or trade" under Section 51 because they were merely making the images themselves available for license.  (Defs.' Mem. 8–10.)[7]  They point to the New York legislature's amendment of Section 51 in 1983, which provided that:

> [N]othing contained in this article shall be so construed as to prevent any person, firm or corporation from selling or otherwise transferring any material containing such name, portrait, picture or voice in whatever medium to any user of such name, portrait, picture or voice, or to any third party for sale or transfer directly or indirectly to such a user, for use in a manner lawful under this article.

N.Y. Civ. Rights Law § 51.  This amendment was recently discussed in *Alfano v. NGHT, Inc.*:

> In *Arrington*, the Court of Appeals held that the mere sale of images, without more, is a use "for the purposes of trade" and thus creates liability under Section 51.  However, in 1983, shortly after *Arrington* was decided, the New York state legislature amended Section 51 to clarify that it was not intended to prohibit sales of images for use in a lawful manner: "[N]othing contained in this article shall be so construed as to prevent any person . . . from selling or otherwise transferring any [such] material . . . to any user . . . for use in a manner lawful under this article . . ."  This exception

[7] "Defs." Mem." refers to Defendants' Memorandum of Law in Support of their Motion to Dismiss the Class Action Complaint, filed on May 27, 2016.  (Doc. 45.)

> makes it possible for freelance photographers . . . and licensing companies . . . to conduct their business without liability so long as the ultimate use of their images is lawful; without it, they would be liable for the sale of the very images which media publications could then publish with impunity.

623 F. Supp. 2d 355, 361 (E.D.N.Y. 2009) (citations omitted).  In other words, an image for sale by an online image distributor is exempt from Section 51 liability only so long as it was "for use in a manner lawful under this article."  *Id.* at 361–62 (finding that online image distributor was exempt from Section 51 liability because use of image posted online for sale was lawful by virtue of its newsworthiness).  Here, Plaintiff alleges that the sale of images was not in fact "for use in a manner lawful under" Section 51 by virtue of the fact she did not knowingly authorize their use, and she has also adequately alleged that Defendants' sale of the images themselves was "for purposes of advertising or trade."

Defendants also argue that their use was not for purposes of advertising or trade because the photographs were constitutionally protected acts of expression.  (Defs.' Mem. 11–12); *see Foster v. Svenson*, 7 N.Y.S.3d 96, 102–03 (1st Dep't 2015) ("[W]orks of art fall outside the prohibitions of the privacy statute under the newsworthy and public concerns exemption."); *Hoepker v. Kruger*, 200 F. Supp. 2d 340, 348–49 (S.D.N.Y. 2002) ("New York courts have taken the position in the right of privacy context that art is speech, and, accordingly, that art is entitled to First Amendment protection vis-à-vis the right of privacy.").  However, not all photographs are expressive works, and not all expressive works are entitled to protection.  *See Foster*, 7 N.Y.S.3d at 102–03 ("To give absolute protection to all expressive works would be to eliminate the statutory right of privacy.  Accordingly, under New York law, the newsworthy and public concern exception does not apply where the newsworthy or public interest aspect of the images at issue is merely incidental to its commercial purpose.").  The photographs here are entirely

commercial in nature. They were commissioned by companies seeking to use them in advertising campaigns, and any artistic expression added by Diodato as the photographer was incidental. *See Beverley v. Choices Women's Med. Ctr.*, 78 N.Y.2d 745, 751–55 (1991) (finding that the producer and distributor of a calendar with a picture of the plaintiff used to promote defendant's medical center were not entitled to First Amendment protection on the basis of newsworthiness or public concern around theme of women's progress, where the calendar was clearly designed to advertise the medical center); *cf. Foster*, 7 N.Y.S.3d at 103–04 (photographs not subject to Section 51 where they were indisputably "work[s] of art" by renowned fine arts photographer and assembled into an exhibit in an art gallery); *Hoepker*, 200 F. Supp. 2d at 350 (collage artist's enlargement of photograph and addition of superimposed text entitled him to protection from creator of original photograph); *Altbach v. Kulon*, 754 N.Y.S.2d 709, 712–13 (3d Dep't 2003) (artist portraying photograph of town justice as a devil with a horn and tail was constitutionally protected because it was a work of art).

I also reject Defendants' argument that Plaintiff's Section 51 claim is preempted by Section 301 of the Copyright Act. (Defs.' Mem. 12–13.) "Because [Section 51] contains the additional element of use of one's image for advertising or trade purposes without written consent, . . . the nature of the action is nonequivalent and the doctrine of preemption does not apply [to Section 51]." *Molina*, 747 N.Y.S.2d at 230–31 (rejecting the argument that the federal Copyright Act preempts Section 51 of New York Civil Rights Law); *see also Shamsky v. Garan, Inc.*, 632 N.Y.S.2d 930, 935–36 (N.Y. Sup. Ct. 1995) (same); *James v. Delilah Films, Inc.*, 544 N.Y.S.2d 447, 450–51 (N.Y. Sup. Ct. 1989) (same).

For the reasons stated in Part III.A, the remaining element of non-consent has been plausibly alleged as to the images from the 2009 Spiegel photo shoot, but not as to the images

from the 2004 Clinique photo shoot.  Therefore, Defendants' motion to dismiss Plaintiff's

Section 51 claim is granted as to the 2004 Clinique photo shoot, and denied as to the 2009

Spiegel images.

### D.     *The Lanham Act*

Plaintiff appears to allege that Defendants violated the Lanham Act by

(1) misrepresenting that Getty had the right to license or sell photographs of Plaintiff; (2) using

the fictitious name of Adrianna Williams as the name of the photographer, which was likely to

cause confusion as to the origin of the images; and (3) contributing to Allergan's use of

Plaintiff's image in a way that falsely associates her with synthetic cosmetic products.

(*See* Compl. ¶¶ 167–71, 178–79.)

Section 43(a)(1) of the Lanham Act provides in pertinent part:

> Any person who, on or in connection with any goods or services . . . uses in
> commerce any . . . false or misleading description of fact, or false or
> misleading representation of fact, which . . . (A) is likely to cause confusion,
> or to cause mistake, or to deceive as to the affiliation, connection, or
> association of such person with another person, or as to the origin,
> sponsorship, or approval of his or her goods, services, or commercial
> activities by another person, or (B) in commercial advertising or promotion,
> misrepresents the nature, characteristics, qualities, or geographic origin of
> his or her or another person's goods, services, or commercial activities, shall
> be liable in a civil action by any person who believes that he or she is or is
> likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  The Lanham Act thus provides liability for "false or misleading

descriptions or false or misleading representations of fact made about one's own or another's

goods or services."  *Boule v. Hutton*, 328 F.3d 84, 90 (2d Cir. 2003) (internal quotation marks

omitted).

As an initial matter, Passelaigue cannot and does not claim any rights to the photographs

themselves.  (*See* Compl. ¶¶ 30–31, 33 (stating that Clinique, rather than Plaintiff, owned the

photographs).)  As a result, her only plausible claim can be based on harm to her image, and its

false association with another product.  *See Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 454–55

(S.D.N.Y. 2008) (noting that Section 43(a) is the "appropriate vehicle for the assertion of claims

of falsely implying the endorsement of a product or service by a real person" (quoting *Albert v.*

*Apex Fitness, Inc.*, No. 97 CIV. 1151(LAK), 1997 WL 323899, at *1 (S.D.N.Y. June 13, 1997)).

This is because actions brought under Section 43(a) are restricted to a "purely commercial class"

of plaintiffs.  *See Colligan v. Activities Club of N.Y., Ltd.*, 442 F.2d 686, 692 (2d Cir. 1971)

(plaintiffs as consumers did not have standing to sue under the Lanham Act); *see also Berni v.*

*Int'l Gourmet Rests. of Am., Inc.*, 838 F.2d 642, 648 (2d Cir. 1988); *Telecom Int'l Am., Ltd. v.*

*AT & T Corp.,* 280 F.3d 175, 197 (2d Cir. 2001) ("To have standing for a Lanham Act false

advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive

injury.").

  "A plaintiff in a § 43(a) action need not be a direct competitor of the defendant, but there

must be a 'potential for a commercial or competitive injury.'"  *Albert Fürst von Thurn und Taxis*

*v. Karl Prince von Thurn und Taxis*, No. 04 Civ. 6107(DAB), 2006 WL 2289847, at *11

(S.D.N.Y. Aug. 8, 2006) (quoting *Berni*, 838 F.2d at 648).  Because celebrities have a certain

amount of commercial investment in their names and images, courts have held that the

"underlying purposes of the Lanham Act therefore appear to be implicated in cases of

misrepresentations regarding the endorsement of goods and services."  *Id.* (quoting *Allen v. Nat'l*

*Video, Inc.*, 610 F. Sup. 612, 625–26 (S.D.N.Y. 1985)); *see also Bondar v. LASplash Cosmetics*,

No. 12 Civ. 1417(SAS), 2012 WL 6150859, at *5 (S.D.N.Y. Dec. 11, 2012) ("Courts in this

Circuit have recognized that celebrities have a trademark-like interest in their name, likeness,

and persona that may be vindicated through a false endorsement claim under the Lanham Act.");

*Avalos v. IAC/Interactivecorp*, No. 13-CV-8351 (JMF), 2014 WL 5493242, at *4 (S.D.N.Y. Oct. 30, 2014).  To the extent Plaintiff alleges that (1) Getty falsely represented that it had the right to license the photographs, (Compl. ¶ 167), (2) it falsely represented the name of the photographer, independent from her image's association with them, (*id.* ¶ 170), and (3) Diodato contributed to Getty's acts, (*id.* ¶ 172), she fails to state a Lanham Act claim because—as she concedes—she is not the originator of the photographs and has no rights to them, and, even if she did, such claims of misrepresentation about the ownership of intellectual property would fail, *see Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33 (2003); *Agence Fr. Presse v. Morel*, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011) ("Because photographs are 'communicative products' protected by copyright, false designation of their authorship is not cognizable under section 43(a)(1)(A) after *Dastar*.").

Construing her claim as one of false affiliation with Allergan and with the pseudonym Adrianna Williams, Plaintiff must allege that Defendants "(1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services." *Burck*, 571 F. Supp. 2d at 454–55.  Courts in this Circuit have used the eight-factor test from *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961), with modifications, to examine false endorsement claims.  *See, e.g.*, *Bondar*, 2012 WL 6150859, at *5; *Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 627 (S.D.N.Y. 1985).  Those factors include the following: "(1) strength of the plaintiff's mark; (2) degree of similarity between plaintiff's and defendant's marks; (3) the competitive proximity of the products; (4) the likelihood that either owner will bridge the gap; (5) the sophistication of the buyers; (6) the quality of defendant's product; (7) actual confusion; and (8) the existence of bad faith."  *Bondar*, 2012 WL 6150859, at *5 n.60.

While celebrity is not necessarily required for consumer confusion, "the misappropriation of a completely anonymous face could not form the basis for a false endorsement claim, because consumers would not infer that an unknown model was 'endorsing' a product, as opposed to lending her image to a company for a fee." *Id.* at *7; *see also Albert v. Apex Fitness, Inc*., No. 97 CIV. 1151(LAK), 1997 WL 323899, at *1 (S.D.N.Y. June 13, 1997) (dismissing a professional model's Lanham Act claim of false endorsement because no reasonable trier of fact could think that use of his picture in an advertisement implies that he personally endorsed the products). Here, however, Plaintiff alleges that she is an "internationally-renowned fashion model," (Compl. ¶ 17), which, if true, might establish that her mark is strong enough to cause a likelihood of consumer confusion, *see Bondar*, 2012 WL 6150859, at *7 (finding that "well known" model adequately pleaded a false endorsement claim where a possibility existed that the public was familiar with her face such that ads would imply endorsement); *Albert Fürst von Thurn und Taxis*, 2006 WL 2289847, at *11 (finding that the complaint adequately alleged that the plaintiff is "well-known throughout the world," and that there was possibility of consumer confusion regarding the association of his family's crests with defendant's websites). Therefore, assuming, as I must, that Plaintiff is an "internationally-renowned fashion model," (Compl. ¶ 17), she has pleaded a likelihood of consumer confusion.

I also find that the sale of Plaintiff's image on Getty's stock photo website and its listing under the work of photographer "Adrianna Williams" are affiliations that are covered by the text of the Lanham Act. *See Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc*., 778 F.3d 1059, 1072 (9th Cir. 2015) (stating that "the plain text of the statute establishes that a viable false endorsement claim does not require that the mark be used in connection with separate goods to promote the purchase of those separate goods—but may be used directly on the defendant's

goods," and rejecting the argument that Bob Marley's image directly on a tee shirt being sold precluded a Lanham Act claim on the ground that the image was not being used to sell a separate good).

In addition to her claims of direct trademark infringement, Plaintiff raises claims of contributory infringement. (Compl. ¶¶ 122–23.) Plaintiff has not, however, sufficiently alleged that Defendants intentionally induced non-party Allergan to violate the Lanham Act. "To be liable for contributory Lanham Act violations, a plaintiff must plead facts demonstrating that the defendant intentionally induced the infringing party to engage in the infringing behavior." *Obeid v. Mack*, No. 14CV6498-LTS-MHD, 2016 WL 5719779, at *8 (S.D.N.Y. Sept. 30, 2016); *see also Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d Cir. 2013). Plaintiff alleges that Diodato was aware that, by selling the images to Getty, that Getty would "use the images commercially, advertising them for sale or license to others, such as Allergan," (Compl. ¶ 74), and that Getty "knew or should have known that professional models such as plaintiff . . . would not have agreed to convey rights to their images to Diodato, Getty, or ultimately one of Getty's clients," (*id.* ¶ 140). Plaintiff also alleges that Getty should have known how Allergan would use the image because it "licensed Ms. Passelaigue's image for use by Allergan." (*Id.* ¶ 84.) These are insufficient to allege intentional inducement. *See Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 107 (2d Cir. 2010) (holding that defendant's generalized knowledge of infringement of the plaintiff's trademark was not sufficient to impose an affirmative duty to remedy the problem, and therefore defendant was not liable for contributory trademark infringement).

For the reasons stated in Part III.A, Plaintiffs' claims as to the 2004 Clinique photo shoot are dismissed. Thus, only Plaintiffs' claims as to the images from the 2009 Spiegel photo shoot remain at issue. Although Defendants' motion to dismiss Plaintiff's Lanham Act claim is denied

only as to the 2009 Spiegel images, because I find that Plaintiff has not sufficiently pleaded any

Lanham Act claims relating to Defendants' contributory liability, any claims relating to

Defendants' contributory liability under the Lanham Act are dismissed.

### E.     *Unfair Competition under New York Law*

Unfair Competition under New York law is subject to the same analysis as a Lanham Act

claim, except that it also requires bad faith.  *Bondar*, 2012 WL 6150859, at *5, *7.  "The inquiry

into willfulness or bad faith considers whether the defendant adopted its mark with the intention

of capitalizing on the plaintiff's reputation and goodwill and on any confusion between its and

the senior user's product."  *Id.* at *5 (quoting *Lopez v. Gap, Inc.*, 883 F. Supp. 2d 400, 423

(S.D.N.Y. 2012)).  If true, Plaintiff's allegations in the Complaint that "Diadato and Getty were

responsible for the unauthorized use of her image by Allergan to advertise Botox and other

synthetic cosmetic products" would show bad faith on the part of Defendants.  (Compl. ¶ 68; *see

also id.* ¶ 48 ("Ms. Passelaigue was especially concerned that Allergan's use of her

image . . . would seriously interfere with her prospective assignments for . . . 'natural' cosmetic,

skincare, and other beauty products.  In fact, it is generally understood in the industry that

Allergan regularly advertises Botox with models who have used Botox, while other companies

maintain policies or practices precluding the hiring of models who are believed to have used

synthetic beauty products like Botox."); *id.* ¶ 123 ("Defendants Getty and Diodato engage

in . . . false or misleading representations that plaintiffs and class members use or otherwise

endorse or sponsor or are otherwise affiliated with Getty's purported licensees and/or their

products and services.").)  Because Plaintiff adequately alleges bad faith, she has sufficiently

pleaded unfair competition under New York law for the same reasons.

For the reasons stated in Part III.A, Plaintiffs' claims as to the 2004 Clinique photo shoot

are dismissed, and only Plaintiffs' claims as to the images from the 2009 Spiegel photo shoot remain at issue. Therefore, Defendants' motion to dismiss Plaintiff's unfair competition claim is denied only as to the 2009 Spiegel photo shoot.

## F. *Negligence*

Plaintiff alleges that Defendants breached their duty of care to obtain valid consent before using her photograph for commercial purposes. (Compl. ¶¶ 137–44.) However, Defendants correctly point out that New York Civil Rights Law Sections 50 and 51 preempt common law claims based on a right of privacy or publicity, such as Plaintiff's negligence claim here. *See Myskina v. Condé Nast Publ'ns, Inc.*, 386 F. Supp. 2d 409, 420 (S.D.N.Y. 2005); *Grodin v. Liberty Cable*, 664 N.Y.S.2d 276, 276 (1st Dep't 1997). Therefore, Defendants' motion to dismiss Plaintiff's negligence claim is granted, and that claim is dismissed.

## G. *Section 349*

Section 349 of New York's General Business Law makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in" the State of New York. N.Y. Gen. Bus. Law § 349(a). "To state a *prima facie* claim under Section 349, a plaintiff must allege that the defendant [i] engaged in consumer-oriented conduct; [ii] that the conduct was materially misleading; and [iii] that the plaintiff suffered injury as a result of the allegedly deceptive act or practice." *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 241 F. Supp. 3d 461, 483 (S.D.N.Y. 2017) (alterations in original) (quoting *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015)). "[T]he gravamen of the complaint must be consumer injury or harm to the public interest.'" *Conopco Inc. v. Wells Enters., Inc.*, No. 14 Civ. 2223(NRB), 2015 WL 2330115, at *6 (S.D.N.Y. May 13, 2015) (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)). A

deceptive practice "must be likely to mislead a reasonable consumer acting reasonably under the circumstances" in order to violate Section 349. *Grgurev* v. *Licul*, 229 F. Supp. 3d 267, 292 (S.D.N.Y. 2017) (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000)). "Accordingly, courts routinely reject attempts to fashion Section 349 claims from garden variety disputes between competitors." *A.V.E.L.A.*, 241 F. Supp. 3d at 484.

Plaintiff alleges that Getty "misrepresent[ed] to consumers and the public at large that Getty has the right to license and the public therefore could lawfully use plaintiff's and class members' portraits and/or pictures." (Compl. ¶ 122.) This conclusory allegation is insufficient to state a claim under Section 349. Nowhere does Plaintiff provide evidence of how the alleged misrepresentation actually targeted or harmed consumers. Indeed, the only consumer discussed, Allergan, is alleged to have itself infringed on Plaintiff's image. These allegations both separately and viewed together are insufficient to state a claim under Section 349. *See A.V.E.L.A.*, 241 F. Supp. 3d at 484–85 (finding insufficient allegations of consumer harm where defendants were allegedly "trying to confuse retailers and licensees" that they "own all intellectual-property rights" of plaintiff's estate, and stating that this "amount[s] to the kind of general confusion that falls outside of Section 349's scope"); *see also Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 542 (S.D.N.Y. 2012). Because Plaintiff makes "only conclusory allegations of impact on consumers at large," her Section 349 claim "must be dismissed." *Miller v. HSBC Bank U.S.A., N.A.*, No. 13 Civ. 7500, 2015 WL 585589, at *8 (S.D.N.Y. Feb. 11, 2015). Therefore, Defendants' motion to dismiss Plaintiffs' deceptive practices claim is granted.

### H.    *Class Action Claims*

As Defendants acknowledge, motions to strike class allegations at the motion to dismiss stage are "disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Wang v. Hearst Corp.*, No. 12 CV 793(HB), 2012 WL 2864524, at *3 (S.D.N.Y. July 12, 2012) (quoting *Chenensky v. N.Y. Life Ins. Co.*, No. 07 Civ. 11504(WHP), 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011)).  As stated above, Plaintiff has plausibly alleged claims under Section 51, the Lanham Act, and New York's Unfair Competition Law related to the photographs taken at the 2009 Spiegel photo shoot.  She also raises plausible class allegations related to the same claims. Defendants' arguments challenging the class are more properly considered at the motion for class certification stage.  *See Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012).  Therefore, Defendants' motion to strike the class allegations is denied.

### IV.    <u>Conclusion</u>

Accordingly, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  Defendants' motion is granted as to all counts with regard to the photographs taken at the 2004 Clinique photo shoot.  Defendants' motion is denied as to Counts 1, 3, 8, and 9 with regard to the photographs taken at the 2009 Spiegel photo shoot.  With respect to Counts 8 and 9, however, the claims for contributory negligence under the Lanham Act are dismissed.  Further,

Counts 2, 4, 5, 6, and 7 of the Complaint are dismissed.  Lastly, Defendants' motion to strike the

class allegations is denied.

SO ORDERED.

Dated: March 1, 2018
       New York, New York

Vernon S. Broderick
United States District Judge