I975pasC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    ELODIE PASSELAIGUE,

4              Plaintiff,                    New York, N.Y.

5         v.                                 16 Civ. 1362 (VSB)

6    GETTY IMAGES (US), INC., *et*
     *al.*,
7

8              Defendants.

     ------------------------------x
9
                                             September 7, 2018
10                                           4:05 p.m.

11   Before:

12                  HON. VERNON S. BRODERICK,

13                                           District Judge

14

15                      APPEARANCES

16

17   THE LAW OFFICE OF JACK FITZGERALD, P.C.
          Attorneys for Plaintiff
18   BY:  MELANIE R. PERSINGER

19   COWAN DeBAETS ABRAHAMS & SHEPPARD, LLP
          Attorneys for Defendants
20   BY:  SCOTT J. SHOLDER
     BY:  MARISSA B. LEWIS
21

22

23

24

25

I975pasC

1                    (Case called)

2                    THE DEPUTY CLERK:  State your appearance for the

3     record.

4                    MS. PERSINGER:  Okay.  Melanie Persinger on behalf of

5     plaintiffs.

6                    THE COURT:  For the defense?

7                    MR. SHOLDER:  Your Honor, Scott Sholder on behalf of

8     the defendants.

9                    MS. LEWIS:  Marissa Lewis, also on behalf of

10    defendants.

11                   THE COURT:  All right, thanks.

12                   So, we are here to discuss, certainly particularly,

13    discovery disputes.  So, what I plan to do is go through, in

14    essence -- well, are there any disputes that are now off the

15    table?

16                   MR. SHOLDER:  No.  I don't think so, your Honor.

17                   THE COURT:  So, what I plan to do is first address the

18    issue of bifurcation, then address the discovery disputes that

19    are -- I'm sorry, I didn't allow -- is that plaintiff's

20    counsel's understanding also, that each of the discovery

21    disputes are still live?

22                   MS. PERSINGER:  Yes, your Honor.

23                   THE COURT:  So, first I plan on discussing the

24    bifurcation issue and then discussing each of the requests that

25    are in dispute, basically going letter by letter.

I975pasC

1          With regard to the most recent letters, 88 and 89,

2     however, I think that more discussion needs to happen between

3     the parties with regard to that.  I'm not exactly sure what

4     actually happened, but it does seem to me that some additional

5     meet and confer with regard to those issues that were raised, I

6     guess it is in document 88 -- is it 88 --

7          MR. SHOLDER:  Yes, your Honor.

8          THE COURT:  -- that were initially raised.  I think

9     some more discussion with regard to those would make sense so

10    I'm not going to address those today.

11         Now, with regard to the request for bifurcation, as I

12    understand it, it's to address the one issue and am I correct

13    the defendants, the proposal would be just to take, I think was

14    it three depositions in connection with that?

15         MR. SHOLDER:  Your Honor, we actually, to date, have

16    taken the deposition of the plaintiff.

17         THE COURT:  Okay.

18         MR. SHOLDER:  We could potentially take a couple more

19    depositions of other witnesses to the signing of the model

20    release.  It is our position, though, that we have other

21    evidence including previous witness statements that were

22    provided to plaintiff's counsel two years ago concerning

23    witnesses who were there at the time in 2009 that the model

24    release was signed that we could potentially use in connection

25    with the summary judgment motion but we haven't -- we still

4

I975pasC

1    need to consider whether we want to take more depositions.  It

2    wouldn't be many, though.

3            THE COURT:  Let me ask this with regard to, because

4    again, I will tell you from my inclination it is not to have

5    bifurcation and I would exercise my discretion in that regard,

6    but out of a matter of curiosity, what was the plaintiff's

7    testimony about this specific issue that you contend would

8    resolve the matter?

9            MR. SHOLDER:  The plaintiff had no recollection at all

10   of the signing of the model release.

11           THE COURT:  Okay.

12           MR. SHOLDER:  There are very detailed allegations in

13   the complaint and in the opposition to the motion to dismiss

14   concerning what happened, when it happened, and who was there,

15   and what was said to her.  And, when asked, under oath, she

16   claimed to have no recollection of what happened or when it

17   happened or who said what to her.

18           THE COURT:  Okay.

19           MR. SHOLDER:  And our witness statements contradict

20   that and support our client's version of what happened and we

21   believe that deposition testimony also would support that side

22   of the story.

23           THE COURT:  All right.

24           Again, while I understand that that is your position

25   that it would, it is not clear to me that there still wouldn't

I975pasC

1   be issues of fact when it would come down to summary judgment

2   and that that would preclude the granting of summary judgment

3   on that.  And, even with that, that necessarily this particular

4   defect in the plaintiff's claim would necessarily wipe out the

5   class allegations in light of, again, what I understand the

6   defects are.

7          So, in light of those two issues and my discretion in

8   the matter, I am going to deny the application motion to

9   bifurcate.  There is no need to -- I think there was a -- there

10  may have been reference in the letter for further briefing.  We

11  don't need to further brief it.  I think I understand the issue

12  and so I am denying the request for bifurcation.

13         So, let's move now to the requests, and first which I

14  guess is document 69 which is the letter from the defendant

15  relating to, first, request 10, 11 and 13, I believe, and as I

16  understand it this is a request where the plaintiff had

17  indicated that documents are work product or privilege or

18  something like that.

19         I think in connection with this, and I will hear from

20  the parties, but what my inclination is -- well, let me ask

21  this first.  Has a privilege log been produced?

22         MS. PERSINGER:  Yes, your Honor.

23         THE COURT:  Okay.  In connection with that privilege

24  log, how many documents are we talking about that are on that

25  privilege log?

I975pasC

1          MS. PERSINGER:  I don't know offhand but I can pull it

2     up really quick.

3          MR. SHOLDER:  I have a copy of it.

4          MS. PERSINGER:  Notwithstanding the privilege log, the

5     privilege documents, we did produce 125 pages of e-mails with

6     potential class members so we did send documents and then

7     redacted some confidential information from those, some

8     privileged information from those and then logged others on our

9     privilege log.

10          THE COURT:  Do you have a sense, with regard to this

11     specific issue in your request that we are talking about -- 10,

12     11, and 13 -- concerning, do you have a sense of how many

13     documents are implicated, in other words how many documents on

14     the privilege log relate to that?

15          MR. SHOLDER:  Well, your Honor, we have a copy of the

16     privilege log in there, it looks like there were 47 entries.

17          THE COURT:  Okay.

18          MR. SHOLDER:  Some of them reference e-mail chains so

19     it could be potentially be more than 47 documents and of course

20     I will defer to plaintiff's counsel if she pulls it up.

21          I will just say that we have reviewed the privilege

22     log.  We haven't had an exchange of letters about this but I do

23     believe there are a number of entries that are problematic and

24     that potentially, at least in our view, should be

25     de-designated.

I975pasC

1            THE COURT:  So, this is what I propose that we do.

2     Since you now have the privilege log, I will ask you --

3     obviously I don't know how long you have had it but it doesn't

4     sound like it has been all that long.  Review it, make your

5     specific objections to the documents you believe are not

6     appropriately claimed as privilege or work product, and engage

7     in a meet and confer process.  And then, once that's been

8     distilled, if there is still disagreement, I will make a ruling

9     on the specific documents at issue.  But the parties should,

10    again, provide a joint letter indicating your respective

11    position with regard to each document and then I will make a

12    ruling on that.

13            I think in all likelihood I could probably -- well, I

14    will see once I get the letters whether I need to speak to the

15    parties or whether I can make a ruling based upon the letters

16    and the parties should also discuss whether or not they believe

17    it would be fruitful because, as I understand it, these are

18    documents that are being alleged to be work product.  Is that

19    right?  Or are some of them also attorney-client privilege?

20            MS. PERSINGER:  Some of them are attorney-client

21    privilege and remainder are work product.

22            THE COURT:  So, once I have reviewed the log I will

23    make a decision about whether or not I need to hear from the

24    parties and if I do, we might be able to deal with it over the

25    phone rather than having folks come in.  Okay.  So, I think

8

I975pasC

 1  that deals with those requests, 10, 11, and 13.

 2          The parties agree with regard to that?

 3          MS. PERSINGER:  Yes, your Honor.

 4          MR. SHOLDER:  Yes.  Thank you, your Honor.

 5          THE COURT:  Next I have request no. 5 which is copies

 6  of all model releases signed by you from January 1st, 2004, to

 7  the present.  Let me ask this, just as a practical matter from

 8  plaintiff.  I know -- well, let me ask first.  My understanding

 9  is that your client has produced all of these documents that

10  she currently has in her personal possession.

11          Is that correct?

12          MS. PERSINGER:  Yes; to my knowledge.

13          THE COURT:  Okay.  And by two your knowledge your

14  client has informed you that these are the only ones she was

15  able to find?

16          MS. PERSINGER:  That's correct.

17          THE COURT:  Okay.

18          MS. PERSINGER:  She did, during the deposition, she

19  mentioned some model releases for hair shows that she signed

20  recently and so I have reached out to her regarding whether she

21  retained copies of those.  I am waiting to hear back from her

22  on that but as far as the older model releases, she has

23  represented to me that she has produced everything she has.

24          THE COURT:  Okay.

25          The next question I have is for the defense with

I975pasC

1    regard to these particular, the model agencies at issue.  Let

2    me ask this.  This is for plaintiff's counsel, is there a

3    complete list of the different agencies that your client worked

4    for during the relevant time period?

5          MS. PERSINGER:  I don't believe that defendants served

6    an interrogatory to that effect but they did ask her at her

7    deposition and they've also subpoenaed three of the agencies,

8    so they are aware of her U.S. agencies that she used during the

9    relevant time period.

10          THE COURT:  Okay.  So, let me ask this.  To the extent

11    that you already -- this is for defense counsel -- already

12    subpoenaing the third-parties, I assume that part of those

13    requests, were they for documents?  Is that accurate?

14          MR. SHOLDER:  Yes.  We subpoenaed several of her

15    agencies for documents and received productions from all but

16    one, I believe.  But, as plaintiff's counsel noted, there are

17    several agencies, particularly with respect to certain niche

18    industries like hair and showroom-type jobs and European

19    agencies that we weren't aware of until the deposition.

20          THE COURT:  Okay.

21          MR. SHOLDER:  So, we haven't been able to secure

22    documents from them yet.

23          THE COURT:  And is it fair to say the documents that

24    you have gotten from the third-parties so far, that I guess the

25    two of the three that you have subpoenaed, have you gotten the

I975pasC

1    agent's model releases signed by the plaintiff?

2              MR. SHOLDER:  No.

3              We have received contracts and we have received some

4    financial documents.  There were no model releases in the

5    production and that may be a product of the fact that there is

6    a contract with the agencies and there may not have been a

7    model release involved in certain jobs.  But, to my

8    recollection --

9              We didn't receive anything, right?

10             MS. LEWIS:  No.

11             MR. SHOLDER:  There weren't any model releases.

12             THE COURT:  Okay.

13             So, as I understand it, you are still awaiting

14   production from one company; is that correct?

15             MR. SHOLDER:  I believe so, your Honor.

16             THE COURT:  And there are some additional agencies

17   mentioned during the deposition, plaintiff's deposition.  I

18   guess the question -- and these are all agencies that the

19   plaintiff is not currently working for or with, right?  Or am I

20   wrong about that?

21             MR. SHOLDER:  They could be both.  To the extent there

22   are European agencies that she either has worked with in the

23   past or is currently working with we aren't aware.  There were

24   a few names that came up but they weren't ones that we heard of

25   before.

I975pasC

```
1              THE COURT:  Okay.
2              So, I guess with regard to any agencies that the
3    plaintiff is currently working with, I think that the plaintiff
4    should either, to the extent she has them, but should request
5    the releases from those agencies she is currently working with.
6    With the ones that -- and I don't know which ones those are, I
7    will leave that to counsel to discuss -- with regard to the
8    agencies that she is no longer working with, several things.
9    Number one.  The defense should explore doing what you did with
10   the others, in other words third-party subpoenas.  I mean, for
11   any number of reasons but it is not clear to me, necessarily,
12   that, because, again, I don't know the ins and outs of the
13   agreements that the plaintiff may have had with these entities,
14   but that there would be any continuing obligation of the
15   agencies to the plaintiff.  I just don't know.  So, I would
16   direct that you seek subpoenas with regard to those.  One
17   caveat.  If some of those are in fact European, in other words
18   they have no connection to the United States and there is no --
19   and therefore any subpoena would have to be done, I think,
20   although I am not sure, through the Hague Convention, with
21   regard to those I would direct that the plaintiff -- and again
22   I don't know whether she is entitled to them or not -- but that
23   the plaintiff make a request to get copies of the model
24   releases from those agencies to the extent that they have such
25   documents.
```

I975pasC

1        Let me ask plaintiff's counsel.  I don't know how many

2   of the agencies may be European or not but --

3        MS. PERSINGER:  Your Honor, I'm not entirely sure

4   either but I just don't believe that those documents are really

5   relevant to this case because they're going to be governed by

6   different laws and they have different sort of industry

7   standards over there and she is doing completely different work

8   when she is over there.  I don't see how it is relevant to the

9   issues here regarding the model release that was signed.

10        THE COURT:  Again, and I understand that, but absent

11   me knowing which country it is and what the law is in those

12   countries, I think that -- and the potential overlap between

13   what the law is here and there, I'm not going -- I'm going to

14   direct the request be made and we will see whether or not --

15   again, I am not at all ruling that those documents would be

16   admissible.  They all would be produced with the understanding

17   that they're subject to further objection concerning as to

18   their relevancy.

19        Okay?

20        MS. PERSINGER:  Does that also include she does, like,

21   different type of work like showroom work which is basically

22   in-person modeling of designer dresses; there is no

23   photographs, no images that result from that.  Do I include

24   that type of work?

25        THE COURT:  No.  My, again, since this deals with

13

I975pasC

photographic images and use of photographic images, it would

not, in my mind, deal with her engagement to in-person

modeling, whether it is runway or other types of modeling.

Okay.  Next I have, which is from the second RFP,

request no. 1, which are all contracts, agreements, licenses,

or releases between plaintiff and any modeling agency, talent

agency, employment agency, and such.

Similarly, let me ask with regard to these entities,

were documents requested of these agencies?

MS. PERSINGER:  I believe plaintiff requested of her

directly former agency, the one right before the one she is

represented by now and I believe we did produce the agency

contract for that agency but I don't believe her other prior

agencies that she was able to request.

THE COURT:  Okay.  Let me ask this.  Were those

agencies identified during either in an interrogatory or prior

to the deposition?

MS. PERSINGER:  During deposition.  I believe these

documents were produced in response to the subpoenas because we

received all the copies of the documents produced in response

to the subpoena and I am pretty sure that her contact with each

of the agencies was produced.

THE COURT:  Okay.  Because I think my ruling would be

similar to the last ruling.  So, I don't know what the scope of

these, whether they're different entities involved here, but my

I975pasC

1    ruling would be the same with regard to here, with regard to

2    these entities, in other words pursue the third-party subpoena

3    route.  To the extent that some of them are foreign entities, I

4    will make the request that plaintiff make a request to those

5    entities.  Again, I don't know what the relationship is and

6    whether or not, what the response will be.  And then, once that

7    is done, if the plaintiff is unable to get them because for

8    some legal reason or there is refusal then defense counsel, you

9    need to decide whether or not you want to pursue getting those

10   documents using, I think, using the legal method available to

11   obtain documents from a foreign entity.  Okay?

12            MR. SHOLDER:  Yes.  Thank you, your Honor.

13            THE COURT:  All right.

14            Next.  So, it is defendant's first request and it's

15   request no. 22, which is all documents reflecting payments to

16   you for modeling work between 2004 and the present.

17            In reviewing this request I had a question for

18   plaintiff and it concerns -- and I have not admittedly gone

19   back to look at the complaint -- I almost said indictment, I

20   guess I have the prior criminal case on my mind -- but during

21   what period is the plaintiff seeking damages?

22            MS. PERSINGER:  She is seeking damages for the

23   photographs that were taken in 2005 and then also in 2009.

24            THE COURT:  Okay.  So, let me ask the defendants with

25   regard to the request, what's the relevancy, then, if the

I975pasC

1    damages are limited to that period?  What is the relevancy to

2    obtain payment records that are substantially outside of that

3    time frame?

4              MR. SHOLDER:  Your Honor, I will just first say that I

5    assume that opposing counsel meant 2004 and opposed to 2005

6    because the photo shoots are 2004 and 2009.  But, also, the

7    ruling on the motion to dismiss essentially wiped out the 2004.

8              THE COURT:  2004, yes.

9              MR. SHOLDER:  With respect to anything after 2009, the

10   advertisement at issue didn't appear until, I believe, 2016,

11   and the plaintiff's images appeared on the Getty Images website

12   somewhere in the, I think, 2010 or 2011 area; I don't remember

13   exactly off the top of my head.  But, if the claims involve

14   use, purportedly unlawful use by displaying on the website and

15   then another purportedly unlawful use by appearing in the ad,

16   her income should be relevant during those periods, too, to

17   show if there was any impact.

18             MS. PERSINGER:  If I might, your Honor?

19             THE COURT:  Yes.

20             MS. PERSINGER:  It is our position that, you know,

21   these jobs and her picture couldn't have been taken for that

22   campaign in the same manner currently, so what is relevant is

23   what she was making at the time the photos were taken.  And

24   modeling depends heavily on the model's age and appearance and

25   she doesn't look the same now and she is not working the same

I975pasC

1    type of jobs now as a result because she is a little bit older.

2    So, what she was making, what she was earning around the time

3    the photos were taken, it is actually going to be relevant to

4    what she should have been paid for those photos.

5           THE COURT:  Well, and I don't know the answer to this,

6    I don't know if she were to, if she independently had these

7    photos and she went out to market them whether or not -- I

8    mean, if what you are saying is it would be based on the fact

9    that she was, I don't know, however old, say, 30 at the time of

10   the photos but she is now selling them when she's 40 -- I mean,

11   I guess what I am saying is the following.  I don't know where

12   this is going to lead but if in fact we limit, if I limit the

13   time period here, it could limit the damages on the other end.

14   Again, I don't know how, whether the parties intend on

15   retaining experts or not and, again, obviously I am getting way

16   ahead of myself but what I am saying is it might lead to

17   precluding the plaintiff for seeking damages for certain

18   periods.

19          Again, because I haven't made a ruling -- I understand

20   what you are saying but I haven't made a ruling on that, we

21   haven't decided that.  So, I guess -- well, this is what I am

22   going to do.  Because of that, I am going to allow for these

23   documents for the period, again, in light of the ruling with

24   regard to the 2004 shoot, are those damages, is it your

25   position that those damages are still at issue or are they out

I975pasC

1    of the case?  Because I basically, as part of the motion to

2    dismiss, decided that issue.

3              MS. PERSINGER:  Well, as defense counsel mentioned

4    earlier, there is some confusion as to when the model release

5    was actually signed.  And so, it is our position that if it was

6    in fact signed in 2009, then the model release, per your

7    Honor's ruling, would only apply to that set of photos, in

8    which case the 2004 discovery would remain relevant.  I know it

9    is defendant's position that if it was signed in 2009 it would

10   apply to both sets of photos.  But, because the contract was

11   blank and there was no description of shoot or no visual

12   representation of shoot when the plaintiff signed it, I don't

13   believe it is reasonable for it to have even assigned in 2009

14   to apply to both sets of photographs.

15             So, there is a question outstanding as to, per your

16   Honor's ruling which, I guess, which set of photographs would

17   have been released.

18             MR. SHOLDER:  Your Honor, may I?

19             Just for the record I want to say that based on the

20   witness statements that I mentioned earlier, there is, and

21   likely will be if we take depositions, there will be testimony

22   that the understanding and the discussion at the time was that

23   both shoots would be covered.  So, I think the evidence will

24   show that if the release was signed in 2009, it released all

25   claims with respect to all images in both photo shoots.

I975pasC

1          THE COURT:  But with regard to this issue, I'm going

2   to, and by "this issue" I am referring to request no. 22 of

3   defendants with regard to their first document request, that it

4   would be payment records from 2009 to 2016.  And I understand

5   the argument raised with regard to that that's not the way

6   damages will be calculated because as the plaintiff, or as

7   models get older, what they can garner for the photographs

8   decreases.  But I think, again, I have not reached that issue.

9   And so, I will direct that those documents be produced, without

10  prejudice to any arguments later on that that's not an

11  appropriate -- the documents aren't appropriate for inclusion

12  in the calculation of damages.

13          MS. PERSINGER:  Your Honor, just to clarify.

14          Would that only apply to payments that reflect jobs

15  that resulted in images like we made the distinction before

16  that that would be in-person modeling or things like that?

17  Does that same restriction apply to this request as well?

18          THE COURT:  Let me hear from the defense -- yes, it

19  applies.  I don't think there is any -- I can't think of any

20  basis why -- I mean, obviously there may, and I don't know,

21  there may be some connection a model might garner a certain

22  amount but there may not be.  I don't know.  I mean, in other

23  words there might be models, I guess, whose images are taken of

24  their face who may not garner as much when they're doing runway

25  work.  So, no, it only applies to images.

I975pasC

1          MS. PERSINGER:  Thank you, your Honor.

2          MR. SHOLDER:  Your Honor, would this apply to the

3   agency payment records as well, including with respect to

4   foreign agencies?  Or would that be covered by the prior

5   discussion?

6          THE COURT:  I was, and again, this is an assumption I

7   was making with regard to the earlier request, I had thought

8   that the agency -- well, it would -- oh, you mean with regard

9   to payments with regard to those agencies?

10         MR. SHOLDER:  Yes.  Correct.

11         THE COURT:  I think this request, stand alone I think

12  would include, again, the images but, again, from 2009 to 2016

13  and it would cover those entities.

14         MR. SHOLDER:  Thank you.

15         THE COURT:  Okay.  I'm sorry.  My law clerk has

16  reminded me that there was another issue with regard to the

17  information that might be contained on these documents.

18         Number one, to the extent that the protective order

19  already in place doesn't cover the personal identifying

20  information or other sensitive information, I would ask the

21  parties to meet and confer about whether or not those materials

22  could be redacted and/or produced in some other limited

23  distribution fashion whether that's attorneys eyes only or

24  otherwise.  I don't know what the nature of that information

25  would be, but it seems to me that the protective order either

I975pasC

1  will cover it or you can amend the protective order or agree

2  that certain types of information can be redacted.  Okay?

3            MS. PERSINGER:  Yes.

4            MR. SHOLDER:  Yes.

5            THE COURT:  All right.

6            Next, with regard to, I think this is plaintiff's

7  first request to the Getty defendants, and this is request

8  no. 6, so all communications between the defendants and Corbis

9  related to the images including communications relating to

10  model releases for the images, and there is also request no. 12

11  here.  And I guess the question I have is why shouldn't I

12  reference the complaint for consideration as to what the scope

13  of discovery should be with regard to these requests?

14            MS. PERSINGER:  Was that directed to me, your Honor?

15            THE COURT:  It is.  I'm sorry.  Yes.

16            MS. PERSINGER:  Well, I think even if you do reference

17  the complaint, I think that these images clearly qualify.

18  Getty is now offering them for license, they were taken by Bill

19  Diodato.  Some of the putative class members that we have

20  identified in interrogatories have their photos from the same

21  identical photo shoot, on initially the website but now the

22  entire collection is on Getty's.  So, basically, if we didn't

23  get access to the documents related to these images we would

24  have some of the images from the photo shoot and not others

25  which is sort of an inconsistent result.  And they're also, I

I975pasC

1    assume, subject to the same model releases so they would be

2    under the same set of facts for each of the putative class

3    members for that photo shoot.

4              THE COURT:  And just so the record is clear, when you

5    say other websites, you are referring to the Corbis website?

6              MS. PERSINGER:  Yes.

7              THE COURT:  And then, after Corbis was sold, my

8    understanding is Getty then obtained the rights to or license

9    certain of those photos from the new acquiring entity which is

10   Visual China Group?

11             MS. PERSINGER:  I believe that's correct.

12             THE COURT:  Okay.  Let me hear from the defendants

13   with regard to this.

14             MR. SHOLDER:  Sure, your Honor.

15             I am likely going to reference back to the argument

16   that is in my letter.  I think it is pretty clear that the

17   Corbis images don't fit within the clear definition of the

18   class.  They were not available at the time the complaint was

19   filed, Corbis is not mentioned anywhere in the complaint,

20   Visual China Group is not mentioned anywhere in the complaint

21   to the best of my knowledge.  These images were not conveyed to

22   Getty Images.  They were not conveyed by Bill Diodato.  Bill

23   Diodato submitted them to Corbis, Corbis was acquired by Visual

24   China Group, and Getty Images ultimately secured the right to

25   distribute certain images that used to belong to Corbis and now

I975pasC

belong to Visual China Group.  It is three steps removed from anything having to do with the class as allegations and wasn't even at issue when the complaint was filed, and we think it is overbroad and it is expanding the scope of discovery to images that, as plaintiff's counsel mentioned, are likely duplicative. If they see models in both of these collections anyway they know who their potential class members are.

MS. PERSINGER:  They're not entirely duplicative, though.  They are differently different class members that are clearly professional models.  And, while it may be a few steps removed in how Getty acquired them, they knew that these photos were taken by Bill Diodato and, because there is overlap, they knew that they fell within the allegation of the complaint as being alleged to be unlawfully offered to license and they still chose, under those circumstances, to go ahead and offer them for license.

MR. SHOLDER:  Respectfully, I think that's quite a lot of assumptions in that allegation.

To the extent that there was an acquisition of the rights to distribute a certain collection, there is no evidence that Getty Images went through and said, well, those are the Bill Diodato images and, hey, remember there is that complaint out there?  We are going to take those images along with the rest of the Corbis collection anyway and distribute them notwithstanding the complaint.  I think that's completely

I975pasC

1    implausible.

2              I can't say for sure, and obviously if there is a

3    sixth deposition for a Getty Images representative, that's

4    fine, and we can discover that, but at this point I don't think

5    it is improper, or properly within the scope of discovery.

6    And, Corbis and Visual China Group are not in this case and

7    maybe they should be.  I don't know.

8              THE COURT:  Well, I think I understand the issue and I

9    am going to, at this stage, I'm not going to require the

10   production of information related to that.  Obviously, if

11   information develops either at a subsequent time either through

12   a 30(b)6 witness who testifies about how these are acquired and

13   what legwork went into that and what knowledge Getty Images had

14   at the time of what the images it was -- I'm going to say

15   purchasing but licensing at the time -- I am obviously not

16   precluding revisiting the issue at a later date.  But, for now,

17   I'm not going to require the production of these materials

18   related to this request 6 and request 12.

19             Okay.  And obviously this ruling applies to both

20   defendants; Getty Images and Diodato.

21             MR. SHOLDER:  Yes.  Thank you, your Honor.

22             THE COURT:  Next is I guess the royalty images, for

23   lack of a better term.  Here again I have reviewed the points

24   behind the parties.  We did have, I think, a rather extensive

25   discussion and exchange of letters with regard to the prior,

I975pasC

 1      the motion to compel, and here I do think this will be a

 2      broadening of my prior order and therefore I am going to

 3      decline at this time to extend the discovery with regard to the

 4      royalty-free images that have been requested by plaintiff.

 5              Now, next is plaintiff's first, I guess it is request

 6      no. 1:  All model releases for the images from plaintiff's

 7      first request.  Here I think that the -- and this is I guess

 8      specifically with regard to the Diodato defendants make the

 9      argument that it is burdensome or duplicative, but in light of

10      the allegations in the complaint and the fact that it's not

11      clear to me that despite the fact of Diodato's size, these

12      documents appear to be directly relevant and in light of the

13      allegations in the complaint, I am going to direct that these

14      documents be searched for and produced, and that any

15      duplication I find doesn't warrant not having the documents

16      search for and produced.

17              MR. SHOLDER:  Your Honor, can I ask for some

18      clarification with respect to what's the universe of documents

19      we are talking about?  Because at this point we have produced,

20      I believe, 550 images which I have comprised I am not sure how

21      many hundreds of model releases, but Bill Diodato and Diodato

22      Photography have engaged in a search for model releases and

23      because we had a discrete set of 13 or so putative plaintiffs

24      not including the named plaintiff and those have been produced,

25      it just seems to me to be unmanageable.  I don't know how he

25

I975pasC

1    would do that.  I don't think he has copies of these files

2    onsite.  To some degree they haven't been kept because he

3    usually discards files after five or seven years and relies on

4    the fact that he submitted the final versions to Getty Images.

5           I am just concerned that he is essentially going to

6    shut his business down to go and spend weeks in a storage unit

7    somewhere.  I don't know how to kind of mitigate the harm.

8           THE COURT:  Well, again.  I don't know how he keeps

9    these documents.  I understand what you are saying to me but in

10   light of the allegations here -- I know that certain of them

11   have been produced by the Getty defendants, but that doesn't

12   necessarily obviate the fact that to the extent that there are,

13   because as I understand it, there are some allegations that,

14   and I understand that you are saying that the final ones or

15   whatever was communicated to Getty, but I think plaintiffs are

16   entitled to actually see the documents from both sides.

17          I guess what I would suggest is the following:  As it

18   stands right now, I don't think you made a record that is

19   sufficient to show that it is in fact overly burdensome, that

20   there is, in fact, and I don't think there has been a

21   sufficient record as to what actually, what searches have

22   actually been conducted.

23          The other thing I would add to that is you mentioned

24   that he doesn't keep the records for more than five to seven

25   years.  Well, I hope that that practice has, with the filing of

I975pasC

this lawsuit, stopped.  So, by that I mean that there was a

freeze put in place with regard to the documents both in terms

of these documents but I was going to make this -- I was going

to make this comment in connection with the e-mails also which

we are going to discuss in a moment.

      So, I will maintain my ruling, subject to the, and

whether it is through, and I don't know whether it seems like

it would probably be Diodato himself, I don't know whether

there is a Diodato 30(b)6 witness I guess is what I'm saying.

But, to my mind, it hasn't been established that this is

something that would be overly burdensome to the extent that

that would outweigh, in my mind, the plaintiff's right to get

this through discovery.

      MR. SHOLDER:  If I may, one last thing?

      THE COURT:  Yes.

      MR. SHOLDER:  I understand the rationale of wanting to

see if there are any changes between whatever hard copy might

exist and what was submitted to Getty Images, but I guess one

point that I wanted to raise was that I don't know that I see

the relevance given that the fraud claims are gone,

particularly with respect to this plaintiff and assuming, which

I am certainly not conceding that people had similar

experiences, there is no fraud so I don't understand and I

would argue that there is no relevance to whatever differences

there might be.

I975pasC

1    I have put it on the record for whatever that is

2    worth.

3    THE COURT:  All right.  I am going to maintain my

4    ruling.

5    So, with regard to the next, we are going to

6    plaintiff's first request to the Diodato defendants and this is

7    communications and e-mails with models in the putative class.

8    I guess here again I have the same sort of reaction that I did

9    to the prior request.  I don't believe that there has been, A,

10    I believe that these records -- and these are, I'm sorry,

11    defendants' request 3 through 4, 7, 16 and 17.  I don't believe

12    that -- well, let me ask this question:

13    The defendants, in response, say that Diodato does not

14    generally e-mail models but, let me ask, are these requests

15    limited just to the e-mails between Diodato and the models or

16    Diodato, do they include e-mails from and to Diodato to the

17    agencies that may be relate to the models?  Do you understand

18    what I'm saying?  Because, as I understand the argument, the

19    defense is saying we usually communicate with the agencies, we

20    never communicate with the models.  But, to the extent that you

21    are communicating with the agencies about the very models that

22    we are talking about, do the requests include that?

23    MS. PERSINGER:  Yes, your Honor.  The requests are

24    communications relating to model releases for the images and

25    then relating to licensing or use of the images and concerning

I975pasC

1      providing the images to Getty.  Things like that.  So, it is

2      really just topical rather than the recipients of the e-mails.

3             THE COURT:  So, I guess what I would say is the

4      following.  That it may be that the search encompassed that, I

5      don't know, but I think with regard to this, and again my

6      reaction is similar to the prior request, is that right now

7      there hasn't been a record that (A) this would be duplicative

8      or overly burdensome.  I mean these are e-mails, they're

9      electronic records.  I don't know what search was conducted for

10     these materials.  Well, let me ask, was this something where --

11     well, do you have an understanding, how was the search

12     conducted for these e-mails?  And by that I mean was it just

13     simply a request to your client or was it a situation where

14     computers were imaged and other documents are received and then

15     your law firm did some form of word search?

16            What sort of search was performed here?

17            MR. SHOLDER:  Your Honor, to my recollection it would

18     be the former.  We spoke with our client, explained to him what

19     would be responsive, and I believe the search that was done was

20     to try to find e-mails referencing the plaintiff or the

21     potential class members that were referenced in the answer to

22     interrogatory no. 1.

23            THE COURT:  Okay.  So, what I guess what would I

24     direct is the following:  Is that that search, to the extent it

25     incident include sort of agency communications, that that be

I975pasC

1    expanded to include that because it seems to me that that is

2    within the ambit of these requests.  In addition, I think you

3    need to drill down a little bit more as to how, what exactly

4    your client did to actually get to these documents, where he

5    searched, and whether there are caches of e-mail and the like

6    in other locations.  So, for example, let's say that on his

7    personal computer, on the computer he uses at work he had a

8    habit of deleting certain e-mails up until -- I'm not saying

9    that there is any spoliation here but up until the time he got

10   a hold notice but that he uses some other platform, whether it

11   is Google, that would have those.  I think you need to, at a

12   minimum, you need to disclose that, what was done.  But,

13   certainly, I would like you to drill down a little bit more as

14   to how he conducted the search.  I understand that you gave him

15   certain instructions but I think that perhaps a little bit more

16   is required and it should be expanded to include the agencies

17   also.

18             MR. SHOLDER:  Yes, your Honor.

19             THE COURT:  Okay.

20             MS. PERSINGER:  I have one remaining question on the

21   e-mail communications.

22             THE COURT:  Yes.

23             MS. PERSINGER:  I believe your prior order already

24   ordered the defendants to produce documents relating to the

25   rights managed photos and those documents would include

I975pasC

1   communications like e-mails.  And so my question is or my

2   position is I don't think it is enough to search only the

3   specific potential class members that we listed in response to

4   interrogatories.  I think it should also include the models for

5   which the images which have been ordered to be produce and the

6   related documents to that.  It is our position that those have

7   already been ordered produced, those communications.

8           THE COURT:  I mean to the extent that my, in other

9   words there were things that were ordered produced that would

10  be encompassed within that?  Because I just don't know, I guess

11  I'm not sure exactly what you are referencing but I think to

12  the extent that what you are saying is that my prior order,

13  that these requests would be relevant in connection with the

14  documents I indicated should be produced in my prior order that

15  then they should be produced with regard to this.  In other

16  words, you are saying that the prior order with regard to

17  the -- I'm sorry.  It was rights?

18          MS. PERSINGER:  Managed, I believe.

19          THE COURT:  Okay, that those e-mails would be

20  encompassed in these requests.

21          MS. PERSINGER:  Yeah.  What I'm saying is because they

22  had to produce the documents relating to those models, I think

23  the relevant communications relating to those models would also

24  be responsive to the earlier order from the Court, and then

25  also they're responsive to the request we are addressing now.

I975pasC

 1    So, I think Bill Diodato should have to, if he is doing

 2    specific searches, not be limited to those 13 people we

 3    identified but have to search for communications with the

 4    models that their images have been, in our view, determined to

 5    be relevant and produced.

 6              THE COURT:  I think that's right.  So, to the extent

 7    that hasn't already happened, that should occur also.

 8              MR. SHOLDER:  Yes, your Honor.

 9              THE COURT:  So now to plaintiff's second request to

10    the Diodato defendants and these are requests 12, 13 and 15.

11              As I understand it is request 15, the Diodato

12    defendants have indicated they produced the contributor

13    agreement.  So, is request 15 still an issue?  Or not?

14              MS. PERSINGER:  Let me pull that up?

15              THE COURT:  Sure.

16              MS. PERSINGER:  Yes, that's all it covered.  That

17    should be -- I'm sorry.  Mr. Sholder, did your client actually

18    go ahead and produce that?  I don't know that I have seen it

19    come across.

20              MR. SHOLDER:  It had been produced by Getty Images so

21    I understand, per our discussion about the model releases, the

22    Court's reasoning behind a compelling production of both sets.

23              THE COURT:  Yes.

24              MR. SHOLDER:  But the contributor agreement is what it

25    is.  I think it wouldn't be a problem if I could have

I975pasC

1   Mr. Diodato send me a copy of it and produce another copy of

2   it.

3          THE COURT:  Let me ask is this.  Is there any

4   allegation -- is there any issue with regard to the, again, do

5   you need to get the document from the Diodato defendants also?

6   And, by "need," in other words is there some belief that it

7   could be somehow different in some way?

8          MS. PERSINGER:  I don't believe so, your Honor, unless

9   there is any handwritten notes or interpretations on there.  I

10  think those would be relevant and we would be entitled to

11  those, but if it is just an identical copy of what Getty

12  already produced I know that we really don't need it.

13         THE COURT:  Why don't you see?  And maybe your client

14  has it electronically but if he has a hard copy, which for

15  whatever reason he has made notations on it, that should be

16  produced.  But, otherwise, it need not be produced.

17         So, now request no. 12 and 13, and here again I guess

18  it is a similar sort of position that the defense is taking

19  that there is a burden involved but, again, I don't believe (A)

20  has an actual search been attempted for 12 and 13?  Do you

21  know?

22         MR. SHOLDER:  I don't know off the top of my head,

23  your Honor.

24         My recollection, when last speaking with the client

25  about this, is that it is essentially reflected in our letter

I975pasC

1    and that he keeps these documents for a limited period of time

2    and obviously there is a litigation hold in place

3              THE COURT:  Yes.

4              MR. SHOLDER:  But for documents of model releases from

5    2003 and 2004, I mean, he is a professional photographer.

6    Model releases are extremely common and I don't think he has

7    those from that long ago.  I can certainly confirm with him.

8              THE COURT:  This is what I will say in terms of that

9    because, again, I don't believe that there has an been an

10   adequate record made that this would be overly burdensome to

11   Diodato, in addition whether or not it would be overly

12   burdensome to produce more recent copies of the documents as

13   opposed to going all the way back which may require more

14   effort.

15             So, I'm going to require the production subject to the

16   defendant's ability to make a further record that in fact the

17   burdens of producing them outweigh, in other words the

18   proportionality that the burdens of producing outweigh the

19   relevancy of these documents.  But, I will also say that -- I

20   mean that may require, that that may require Mr. Diodato's

21   deposition as a 30(b)6 witness or someone's deposition as a

22   30(b)6 witness.  I don't know.  I mean, it sounds as if he is a

23   sole practitioner, basically, and maybe he has a staff, he has

24   some staff, but the staff may not be familiar with these sorts

25   of issues.

I975pasC

1          MR. SHOLDER:  Yes, I think he probably would be the

2     30(b)6 witness.  My concern though, your Honor, is that the

3     deposition of Mr. Diodato, whether as an individual or a

4     corporate representative, is not under our control.

5          THE COURT:  Yes.

6          MR. SHOLDER:  I am not going to call my own witness

7     for a deposition.  I suppose I could if I had to, but at some

8     point we were discussing scheduling of depositions.

9          THE COURT:  Well, to put a finer point on it, it is

10     your burden to show that it is overly burdensome.  So, while I

11     understand you have to do that in some way so I don't know how

12     you would do that and I know obviously it is not, you wouldn't

13     call your own witness but whether or not -- so, I won't

14     elaborate on how you should proceed in that way but it is your

15     burden to do that.  My ruling is that they should be produced

16     and subject to the ability to demonstrate that it is in fact

17     overly burdensome and under proportionality under the civil

18     rules you shouldn't have to produce them.

19          MR. SHOLDER:  Yes, sir.

20          THE COURT:  Okay?  All right.

21          Oh.  I think that was the last one.  Did I miss

22     something?  I think that covers it.

23          MR. SHOLDER:  Your Honor, there is our RFP no. 5 we

24     actually had on our list.

25          THE COURT:  I thought I did that second.  That was the

35

I975pasC

1    copies of model releases.

2              MR. SHOLDER:  This is documents regarding monetary

3    amounts and other consideration provided to you concerning the

4    images.

5              THE COURT:  What letter was that in?

6              MR. SHOLDER:  I might be wrong, your Honor.  Bear with

7    me, please?

8              THE COURT:  Sure.

9              MS. PERSINGER:  I thought that was RFP 22 relating to

10   the compensation.

11             MR. SHOLDER:  I have no. 5 but it may well be this was

12   an extraneous entry on my sheet here and we may have resolved

13   this one outside the motion to compel process.

14             THE COURT:  Okay.  Why don't you, if in fact there is

15   something that I missed that was in the letters, just let me

16   know.  We can hop on the phone, I can deal with that one fairly

17   quickly.

18             Let me ask, is there anything else that we need to

19   take up at this juncture?  From plaintiff's counsel?

20             MS. PERSINGER:  I don't believe so, your Honor.  I

21   don't have anything.

22             THE COURT:  From the defense?

23             MR. SHOLDER:  No, your Honor.  I think that's it.

24             THE COURT:  Okay.  I have obviously given you my oral

25   rulings.  I think, to be sure, you may want to order a copy of

I975pasC

1    the transcript but I think we have covered everything.

2            Is there anything else?  Nothing?

3            MR. SHOLDER:  No, your Honor.

4            THE COURT:  All right.  We will stand adjourned.

5    Thank you very much for coming in.  I think we were relatively

6    efficient.

7            Thank you very much.  Have a good weekend.

8                          o0o

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25