UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELODIE PASSELAIGUE, on behalf of
herself and all others similarly situated,

               Plaintiff,

     v.

GETTY IMAGES (US), INC., GETTY
IMAGES, INC., BILL DIODATO
PHOTOGRAPHY, LLC, and BILL
DIODATO,

               Defendants.

Case No. 16 Civ. 01362 (VSB) (BCM)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 2

ARGUMENT ............................................................................................................. 6

I.      THE LEGAL STANDARD FOR IMPOSING RULE 11 SANCTIONS ..................... 6

II.     THE COURT SHOULD IMPOSE SANCTIONS AGAINST PASSELAIGUE AND HER ATTORNEYS PURSUANT TO RULE 11(b)(3) ....................................... 8

      A.      The "Facts" Alleged in Passelaigue's Complaint and Reaffirmed in Her Opposition are Utterly Lacking in Evidentiary Support ..................... 8

            i.      Passelaigue's Attorney's Concocted the "Facts" ............................. 8

            ii.     Passelaigue's Attorney's Unreasonably Relied on Passelaigue's Version of the "Facts" ................................................. 10

      B.      The "Facts" Alleged in Passelaigue's Complaint and Reaffirmed in Her Opposition Are Not Predicated on a "Reasonable Inquiry" ............. 11

III.    BOTH MONETARY AND NON-MONETARY SANCTIONS ARE APPROPRIATE ....................................................................................................... 13

      A.      The Court Should Strike Passelaigue's Complaint In Its Entirety, and Dismiss Her Remaining Claims With Prejudice ..................................... 14

      B.      The Court Should Order Payment of Defendants' Reasonable Attorneys' Fees and Costs ................................................................................ 15

CONCLUSION ........................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                      <u>Page(s)</u>

*Abdelhamid v. Altria Grp., Inc.*,
    515 F. Supp. 2d 384 (S.D.N.Y. 2007)..................................................................13, 14, 15

*Abner Realty, Inc. v. Admin. of Gen. Servs. Admin*,
    No. 97 Civ. 3075, 1998 WL 410958 (S.D.N.Y. July 22, 1998) ..............................................15

*Association of Holocaust Victims for Restitution of Artwork & Masterpieces v.*
    *Bank Austria Creditanstalt Ag*,
    No. 04 Civ. 3600, 2005 WL 2001888 (S.D.N.Y. Aug. 19, 2005) ......................................6, 13

*In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*,
    712 F. Supp. 2d 255 (S.D.N.Y. 2010)......................................................................................10

*Big Bro. Sportswear, Inc. v. Third Rail, Inc.*,
    No. 97 Civ. 7927, 1997 WL 1113645 (S.D.N.Y. Dec. 2, 1997)...............................................12

*Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
    498 U.S. 533 (1991)..................................................................................................................14

*Calloway v. Marvel Entmn't Grp.*,
    854 F.2d 1452 (2d Cir. 1988)....................................................................................................10

*Colliton v. Cravath, Swaine & Moore LLP*,
    No. 08 Civ. 0400, 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008)..............................................9

*Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    No. 02 Civ. 2561, 2003 WL 22227956 (S.D.N.Y. Sept. 26, 2004)............................................1

*Estate of Calloway v. Marvel Entm't Grp.*,
    9 F.3d 237 (2d Cir. 1993).............................................................................................................9

*Gambello v. Time Warner Commc'ns*,
    186 F. Supp. 2d 209 (E.D.N.Y. 2002) .......................................................................................12

*Howard v. Klynveld Peat Marwick Goerdeler*,
    977 F. Supp. 654 (S.D.N.Y. 1997) .........................................................................12, 13, 15

*International Shipping Co., S.A. v. Hydra Offshore, Inc.*,
    875 F.2d 388 (2d Cir. 1989)........................................................................................................7

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
    No. 16 Civ. 1318, 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017)....................................10, 14

*Kiobel v. Millson*,
    592 F.3d 78 (2d Cir. 2010)...........................................................................................................8

*Kropelnicki v. Siegel*,
    290 F.3d 118 (2d Cir. 2002).........................................................................................7

*Levine v. Fed. Deposit Ins. Corp.*,
    2 F.3d 476 (2d Cir. 1993).............................................................................................9

*Magnotta v. Berry*,
    No. 91 Civ. 0531, 1996 WL 11238 (S.D.N.Y. Jan. 5, 1996)....................................12

*Margo v. Weiss*,
    213 F.3d 55 (2d Cir. 2000).......................................................................................7, 16

*Metro Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*,
    No. 00 Civ. 3613, 2004 WL 1943099 (S.D.N.Y. Aug. 27, 2004) ..........................9

*Murray v. Dominick Corp. of Canada, Ltd.*,
    117 F.R.D. 512 (S.D.N.Y. 1987) ...............................................................................14

*Nassau-Suffolk Ice Cream, Inc. v. Integrated Res., Inc.*,
    114 F.R.D. 684 (S.D.N.Y.1987) ................................................................................7

*O'Brien v. Alexander*,
    101 F.3d 1479 (2d Cir. 1996).....................................................................................8

*Oliveri v. Thompson*,
    803 F.2d 1265 (2d Cir. 1986).....................................................................................16

*In re Pennie & Edmonds LP*,
    323 F.3d 86 (2d Cir. 2003).........................................................................................11

*Perez v. Siragusa*,
    No. 05 Civ. 4873, 2008 WL 2704402 (E.D.N.Y. July 3, 2008) ...............................9

*Profile Publ'g & Mgmt. Corp. APS v. Musicmaker.com, Inc.*,
    242 F. Supp. 2d 363 (S.D.N.Y. 2003).......................................................................16

*Saltz v. City of N.Y.*,
    129 F. Supp. 2d 642 (S.D.N.Y. 2001).....................................................................7, 11

*United States v. Int'l Bhd. of Teamsters*,
    948 F.2d 1338 (2d Cir. 1991).....................................................................................11

*Watkins v. Smith*,
    No. 12 Civ. 4635, 2013 WL 655085 (S.D.N.Y. Feb. 22, 2013) ...............................9

**Rules & Statutes**

Fed. R. Civ. P. 11 ................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(b) .................................................................................................16

New York Civil Rights Law § 51 ...................................................................................15

**Other Authorities**

Fed. R. Civ. P. 11 Advisory Comm. Notes (1993 Amendment) ............................13, 14

Defendants Getty Images (US), Inc., Bill Diodato, and Bill Diodato Photography, LLC (collectively, the "Defendants") respectfully submit this memorandum of law in support of their Motion for Sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), against plaintiff Elodie Passelaigue ("Passelaigue") and her attorneys[1] in the above-captioned action.

## PRELIMINARY STATEMENT

Passelaigue and her attorneys, full of righteous indignation in February 2016, filed a Class Action Complaint (Dkt. No. 1) (the "Complaint" or "Cplt.") against the Defendants setting out very specific factual allegations concerning purported schemes to defraud innocent fashion models, dishonest and profit-hungry photographers, unscrupulous photo agencies, and a vast conspiracy of shady actors using assumed names to destroy the livelihoods of countless models. Passelaigue and her attorneys reaffirmed these wild contentions in their Opposition to Defendants' Motion to Dismiss, filed on June 26, 2016 (Dkt. No. 47) (the "Opposition"), and after two years of discovery, Passelaigue has yet to change her story in any of her court papers.

The problem is, by Passelaigue's own account, this story has absolutely no factual or evidentiary basis.  During her deposition, Passelaigue testified under oath that, despite standing behind the allegations in the Complaint (which she claims to have reviewed prior to filing), she had no recollection of any of the circumstances surrounding the key question in this case:  did she,

---

[1] Passelaigue's attorneys include not only the current named attorneys of the Law Office of Jack Fitzgerald, PC (namely Jack Fitzgerald, Melanie Persinger, and Trevor Flynn), but also their former colleague Thomas Canova, who is no longer with the firm, but had been the driving force behind this lawsuit from the start and was lead counsel at the time the papers relevant to the instant motion were filed.  *See Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 02 Civ. 2561 (KMW) (GWG), 2003 WL 22227956, at *3 (S.D.N.Y. Sept. 26, 2004) ("[A]n attorney's withdrawal from a case does not prevent the imposition of Rule 11 sanctions for papers filed prior to the withdrawal.") (collecting cases).  Mr. Canova is now employed by One LLP in California. *See* https://onellp.com/attorney/tom-canova/.

as she alleges, sign a model release during a 2004 photo shoot (and only release claims related to that shoot), or did she, as Defendants allege, sign it in 2009 (and release claims related to both the 2004 and 2009 shoots)?  Under oath, Passelaigue could not remember any of the detailed claims she made in her Complaint and her Opposition.

The revelations of Passelaigue's deposition lead to one of two conclusions: (1) she fabricated the story set forth in the Complaint and Opposition and forgot the story she made up; or (2) her attorneys fabricated the story set forth in the Complaint and Opposition and filed those papers before this Court with the goal of clearing federal pleading hurdles without regard for whether the allegations were based in reality.  In either circumstance, Passelaigue and her attorneys should be sanctioned under Rule 11 because the claims at the heart of the Complaint and the Opposition find no evidentiary support in the record, nor will they.  Defendants provided three witness statements to Passelaigue and her lawyers more than two years ago setting forth Defendants' version of the story, and no one else except Passelaigue can testify concerning her personal experience with Defendants.

Passelaigue has doomed her own case – a case that was meritless from the start and should never have been filed.  Defendants respectfully request that the Court strike the Complaint in its entirety and dismiss this case with prejudice and impose monetary sanctions on both Passelaigue and her attorneys, including without limitation, paying all of Defendants' attorney's fees to date as well as other monetary penalties the Court may deem appropriate.

## **FACTUAL BACKGROUND**

Passelaigue commenced this action against Defendants on February 22, 2016 for various claims relating to Defendants' purported licensing and sale of images of Passelaigue (the "Images") that were taken at a June 11, 2009 photo shoot for Spiegel, a women's clothing and

accessory company (the "2009 Spiegel Shoot"), and eventually used in a third-party advertisement for synthetic beauty products (the "Advertisement").   Passelaigue admits to signing a model release (the "Model Release") that unambiguously grants to Diodato the "unrestricted right" to use the Images taken at both the 2009 Spiegel Shoot and an earlier "underwater test shoot" for Clinique (the "2004 Clinique Shoot"), *see* Cplt. ¶¶ 27, 62-63, but claims such Model Release is "fraudulent." *See, e.g.*, Cplt. ¶¶ 62, 67, 71.   In particular, Passelaigue, by and through her attorneys, has adamantly asserted in the Complaint, in motion papers, and throughout the course of this litigation that the signing of the Model Release took place not at the 2009 Spiegel Shoot, but rather at the 2004 Clinique Shoot. *See, e.g.*, *id.* ¶¶ 27, 63 ("Passelaigue signed the release . . . as the Clinique underwater test shoot ended"). *See also, e.g.*, *id.* ¶ 38 ("At no point before, during, or after the Spiegel shoot, either that day or at any other time, did Ms. Passelaigue sign anything . . ."); *id.* ¶ 65 (Passelaigue "did not sign the [ ] Model Release . . . on June 11, 2009," but "[r]ather, she actually signed many years before . . .").

After reviewing the Complaint, interviewing witnesses, and reviewing relevant documentation (including the original Model Release), it became clear to Defendants, in or around March 2016, that Passelaigue's overarching allegation that the Model Release was signed at the 2004 Clinique Shoot (*see* Cplt. ¶¶ 20-33) was utterly lacking in evidentiary support.   *See* Declaration of Nancy E. Wolff dated September 6, 2018 ("Wolff Decl.") at ¶¶ 2-3.   Defendants' attorneys promptly advised Passelaigue's attorneys, by phone on March 16, 2016 and by letter dated April 1, 2016 written pursuant to Rule 11 (the "Rule 11 Letter"), that their investigation revealed that, contrary to Passelaigue's claims, the Model Release had been signed at the 2009 Spiegel Shoot. *See id.* ¶¶ 2-4 & Exh. A.   As proof, Defendants provided the signed written statements of three individuals who specifically recalled witnessing Passelaigue sign the Model

Release at the 2009 Spiegel Shoot, *see id.* ¶ 5 & Exhs. B-D, and pointed out that the Model Release – which bears a pre-printed date indicating the form was last revised on June 18, 2007 – could not have existed at the time of the 2004 Clinique Shoot.  *Id.* ¶¶ 3-4 & Exh. A.

Undeterred by common sense, documentary evidence, and three consistent accounts in direct contradiction of Passelaigue's story, on June 26, 2016, Passelaigue and her attorneys reaffirmed the allegations regarding the purported signing of the Model Release in 2004 in Passelaigue's Opposition to Defendants' Motion to Dismiss.  *See* Dkt. No. 47 at 1-2.  The critical import of Passelaigue's unsupported allegations regarding the signing of the Model Release is underscored by the Court's Order on Defendants' Motion to Dismiss.  *See* Dkt. No. 74.  The Court dismissed Passelaigue's Complaint in large part, holding that all claims relating to images of Passelaigue taken at the 2004 Clinique Shoot were barred because Passelaigue plausibly alleged that she signed the Model Release in 2004.  *See id.* at 7-8.  However, because Passelaigue cast doubt on the integrity of the Model Release by fabricated allegations of "doctoring," certain claims relating to the Images taken at the 2009 Spiegel Shoot were allowed to stand.  *Id.* at 8.

Discovery has since revealed that Passelaigue has failed to adduce any evidence substantiating her version of the "facts" beyond the realm of plausibility, and further, that her presumptively infallible memory underlying the Complaint and Opposition is anything but.  Notably, in the Complaint, Passelaigue alleges the circumstances surrounding the purported signing of the Model Release at the 2004 Clinique Shoot in painstaking detail.  *See* Cplt. ¶¶ 20-33.  Specifically, Passelaigue alleges, in relevant part:

- On February 9, 2004, "[a]fter the [Clinique underwater] test shoot was completed," Diodato showed Passelaigue "a form document titled 'Model Release,'" and asked her "if he could use photos from the test shoot for his portfolio and professional website simply as an example of his work."  *Id.* ¶ 23.

- Passelaigue claims she told Diodato he could use the test shoot photos, "but only for his portfolio and website." *Id.* ¶ 24.

- Diodato then allegedly took Passelaigue "into a different room where they were alone," and "directed her to sign the 'Model Release'" and "to fill in . . . her name, address, phone number, email address, and date of birth," but did not direct her to "date the release" or fill in her name. *Id.* ¶¶ 27-28.

- Passelaigue claims she signed the Model Release, and otherwise complied with Diodato's specific directions (*id.* ¶¶ 27-28), and "left the premises shortly thereafter." *Id.* ¶ 29.

However, during her deposition, while Passelaigue immediately recognized the Model Release, she not recall the circumstances in which she signed it. *See id.* Exh. F (excerpts from Deposition of Elodie Passelaigue dated August 13, 2018 ("Aug. 13 Tr.")), at 115:16-21, 118:19-119:22. After scanning through the Complaint at the start of her deposition, *see id.* at 11:4-17, acknowledging that she reviewed it prior to its filing, *see id.* at 11:11-18, and representing that she still stands behind all of the allegations therein, *see id.* at 11:19-23, Passelaigue testified as follows:

> MR. SHOLDER: Do you have a specific recollection [ ] about whether you signed [the Model Release] . . . [or] about whether you read it?
>
> PASSELAIGUE: No, I don't have a specific recollection of the date and time when this [Model Release] was actually signed.
>
> . . .
>
> MR. SHOLDER: Do you recall the circumstances of signing this release?
>
> PASSELAIGUE: No, I don't.

*See* Aug. 13 Tr. 119:16-22; *see also id.* at 126:24-127:1.[2]

Communications between Passelaigue and Wilhelmina International, Inc., her modeling agency at the time she discovered the Advertisement, bolster the fact that Passelaigue has very little, if any, recollection of signing the Model Release, and that she, on her own or with the help

---

[2] Notably, even with two opportunities to rehabilitate Passelaigue on cross-examination (her deposition took place over two days), Passelaigue's counsel stayed silent.

of her attorneys and/or agents, created the elaborate story she now calls "fact" in hindsight.  *See* Wolff Decl., Exh. E (e-mail chain with agent indicating that agent suggested the idea that the release was "doctored" and documenting speculation as to how the Images came to be used).

Passelaigue's sworn testimony of forgetfulness is a far cry from the granular detail set forth in her Complaint and later-filed Opposition, and together with other evidence that was reasonably available to Passelaigue and her attorneys at all relevant times, suggests that both Passelaigue and her attorneys have engaged in sanctionable conduct under Rule 11.

## ARGUMENT

## I.   THE LEGAL STANDARD FOR IMPOSING RULE 11 SANCTIONS

Rule 11 of the Federal Rules of Civil Procedure is intended to "deter baseless filings and curb abusive litigation" by imposing certain affirmative duties on each attorney who signs and submits a pleading, written motion, or other paper to a federal court.  *Association of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt Ag*, No. 04 Civ. 3600 (SWK), 2005 WL 2001888, at \*3 (S.D.N.Y. Aug. 19, 2005) (citation omitted).  Rule 11(b) provides, in pertinent part, that an attorney who presents such papers to a federal court thereby certifies that "to the best of [his or her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  In the event of a Rule 11(b) violation, the court may, in its broad discretion, "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R. Civ. P. 11(c)(1).

Rule 11 "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading [or other paper] before it is signed" to

ensure, among other things, that the factual contentions therein have evidentiary support. *International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir. 1989) (citation omitted). The applicable standard is "objective unreasonableness," *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000), meaning that sanctions are warranted (1) where it is clear no reasonable inquiry into the facts has been made, *see International Shipping*, 875 F.2d at 390; or if one has been made, (2) where no competent attorney could reasonably conclude, under the circumstances, that the claims were well-grounded in fact, *see Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002).

Furthermore, an attorney may not escape Rule 11 sanctions by blindly relying on his or her client's version of the "facts." If forced to rely solely on the client's representations, the attorney should "check closely the plausibility of the client's account" and "question [the client] thoroughly, not accepting the client's version on faith alone." *Nassau-Suffolk Ice Cream, Inc. v. Integrated Res., Inc.*, 114 F.R.D. 684, 689 (S.D.N.Y.1987) (citations omitted). "[I]f all the attorney has is his client's assurance that facts exist or do not exist, when a reasonable inquiry would reveal otherwise, he has not satisfied his [Rule 11] obligation." *Id. See also Saltz v. City of N.Y.*, 129 F. Supp. 2d 642, 646 (S.D.N.Y. 2001).

In this case, the operative documents for Rule 11 purposes are Passelaigue's Complaint and her Opposition to Defendants' Motion to Dismiss, which were signed by her attorneys and filed with the Court on February 22, 2016 and June 26, 2016, respectively. Because it is clear, based on Passelaigue's own deposition testimony, that critical allegations contained in these documents are based entirely on demonstrably implausible conjecture, if not outright fabrication, without any reasonable inquiry into the factual basis therefor, Rule 11 sanctions should be imposed against both Passelaigue and her attorneys.

## II.   THE COURT SHOULD IMPOSE SANCTIONS AGAINST PASSELAIGUE AND HER ATTORNEYS PURSUANT TO RULE 11(b)(3)

### A.   The "Facts" Alleged in Passelaigue's Complaint and Reaffirmed in Her Opposition are Utterly Lacking in Evidentiary Support

The imposition of Rule 11 sanctions is warranted because the critical "facts" regarding the signing of the Model Release at the 2004 Clinique Shoot alleged in Passelaigue's Complaint, and reaffirmed in her Opposition, find no basis in evidence.  *See Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010) (Rule 11 sanctions are appropriate when an "allegation is utterly lacking in support").  *See also O'Brien v. Alexander*, 101 F.3d 1479, 1480 (2d Cir. 1996) (Rule 11 extends not only to the contents of pleadings and motions at the time they are filed, but also "include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit.").   Regardless of whether Passelaigue's attorneys invented these factual contentions from whole cloth or asserted them in reliance on Passelaigue's fabrications, as alternatively assumed in Subsections (i) and (ii) below, Rule 11 sanctions are warranted here.

### i.   Passelaigue's Attorneys Concocted "Facts"

Passelaigue's lacking memory juxtaposed against the extremely detailed version of the "facts" set forth in her Complaint and Opposition suggests that the allegation that she signed the Model Release in 2004 is the brainchild of her attorneys.  *Compare* Aug. 13 Tr. at 117:23-118:5 *with* Cplt. ¶¶ 20-33 *and* Dkt. No. 47 at 1-2.  Passelaigue's attorneys presumably knew, or at least should have known, when they filed these papers that Passelaigue's claims must fail if she signed the Model Release at the 2009 Spiegel Shoot.  In a transparent attempt to circumvent "bad" facts and leverage the lenient pleading standards, Passelaigue's attorneys appear to have concocted "facts" that are not well-grounded, baselessly alleging, for example, that the Model Release was

"doctored" in order to explain how a form Model Release revised in 2007 could possibly have been signed in 2004.  *See* Cplt. ¶¶ 62, 67, 71.

It is clear that Rule 11 sanctions are warranted where, as here, facts have been "concocted." As the Second Circuit has stated, "the creativity of an attorney may not transcend the facts of a given case."  *Levine v. Fed. Deposit Ins. Corp.*, 2 F.3d 476, 479 (2d Cir. 1993) (holding that counsel "concocted 'facts' that were not well grounded, and therefore exceeded the bounds of conduct acceptable . . . [under] Fed. R. Civ. P. 11").  *See also, e.g.*, *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 Civ. 0400 (NRB), 2008 WL 4386764, at *14 (S.D.N.Y. Sept. 24, 2008) (imposing Rule 11 sanctions "given the dubious and contradictory factual allegations in the complaint"), *aff'd sub nom. Colliton v. Cravath, Swain & Moore LLP*, 356 F. App'x 535 (2d Cir. 2009) (citation omitted); *Watkins v. Smith*, No. 12 Civ. 4635 (DLC), 2013 WL 655085, at *9 (S.D.N.Y. Feb. 22, 2013), *aff'd*, 561 F. App'x 46 (2d Cir. 2014).

If this is, in fact, how events transpired, Passelaigue's counsel should bear the brunt of the sanctions, but Passelaigue herself is not absolved simply by pinning blame on her lawyers.  "It has long been the law in this Circuit that a client may be sanctioned for [her] lawyer's misconduct." *Metro Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union,* No. 00 Civ. 3613 (LAP), 2004 WL 1943099, at *25 (S.D.N.Y. Aug. 27, 2004).  *See also Perez v. Siragusa*, No. 05 Civ. 4873 (CPS) (JMA), 2008 WL 2704402, at *4 (E.D.N.Y. July 3, 2008) ("The acts and omissions of counsel are normally wholly attributable to the client and sanctions may be imposed against a party for her counsel's misconduct.") (internal quotation marks omitted).  *See also Estate of Calloway v. Marvel Entm't Grp.*, 9 F.3d 237, 239 (2d Cir. 1993) (affirming imposition of Rule 11 sanction, finding it is "entirely appropriate" to hold a represented party and her attorney jointly and severally liable for Rule 11 violation).

### ii.     Passelaigue's Attorneys Unreasonably Relied on Passelaigue's Version of the "Facts"

Rule 11 sanctions are equally warranted to the extent that the factual allegations surrounding the signing of the Model Release in 2004 are premised on Passelaigue's fabrications. This is because, even if, despite her recently-professed lack of memory, Passelaigue explicitly represented to her attorneys that she signed the Model Release at the 2004 Clinique Shoot, her attorneys' reliance on such representation is objectively unreasonable.   "While attorneys are entitled to rely on their clients' factual representations," it is well-established that "they may only do so if those representations are objectively reasonable."  *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16 Civ. 1318 (GBD) (BCM), 2017 WL 4712639, at *2 (S.D.N.Y. Sept. 28, 2017) (cleaned up and citations omitted).  *See also, e.g.*, *Calloway v. Marvel Entmn't Grp.*, 854 F.2d 1452, 1475 (2d Cir. 1988), *rev'd in part on other grounds sub nom.*, *Pavelic & LeFlore v. Marvel Entm't Grp.,* 493 U.S. 120 (1989) (imposing Rule 11 sanctions); *In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 263-64 (S.D.N.Y. 2010).

In light of all of the information available to them, it was not objectively reasonable for Passelaigue's attorneys to rely on any representations by Passelaigue that she signed the Model Release at the 2004 Clinique Shoot.  At least by the time Passelaigue's attorneys signed and submitted the Opposition to the Court, they had already been confronted with mounting evidence to the contrary, including:  (i) a copy of the unredacted Model Release, which makes clear that Passelaigue signed a pre-printed form that was last revised in 2007 (*see* Wolff Decl. ¶ 5); (ii) a signed statement from Max Miller, who was present at the 2009 Spiegel Shoot and "specifically remember[s]" Passelaigue signing the Model Release there (*id.* Exh. B at ¶¶ 3-7); (iii) a signed statement from Linda Hilfiker, who also attested to witnessing Passelaigue sign the Model Release at the 2009 Spiegel Shoot (*id.* Exh. C at ¶¶ 4-6); and (iv) a signed statement from Lauren Benward,

the fashion stylist whose signature appears on the Model Release, indicating that she remembers both the 2009 Spiegel Shoot and the model, namely, Passelaigue, and would not have signed as a witness to the Model Release unless she witnessed Passelaigue sign it (*id.* Exh. D at ¶¶ 3-4).

Even today, after Passelaigue's own deposition testimony confirmed the baselessness of the factual allegations in prior court filings, her attorneys continue to press this case.  A stipulation of voluntary dismissal should have been filed immediately after the conclusion of the deposition, if not two years ago.

That Passelaigue's attorneys have continued to advance their client's version of the "facts," knowing as of 2016, and at very least as of August 13, 2018, that their only evidentiary support – her word – has been rebutted by substantial evidence, is unreasonable and warrants the imposition of sanctions.  *See, e.g.*, *Saltz*, 129 F. Supp. 2d at 646 (imposing Rule 11 sanctions against attorney who filed a complaint based solely on his client's factual claims where the attorney "did not make any effort to determine whether his client's description" of facts comported with other evidence). *See also In re Pennie & Edmonds LP*, 323 F.3d 86, 90 (2d Cir. 2003) (Rule 11 sanctions "may be imposed if the lawyer's claim to have evidentiary support is not objectively reasonable"); *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1344 (2d Cir. 1991) (same).

**B.      The "Facts" Alleged in Passelaigue's Complaint and Reaffirmed in her Opposition are Not Predicated on a "Reasonable Inquiry"**

Even if Passelaigue's attorneys were somehow unaware of the lack of truthfulness of the factual allegations in the Complaint and Opposition, it is indisputable that they failed to take the steps necessary to meet Rule 11's "reasonable inquiry" standard.  A reasonable inquiry into the facts available to Passelaigue's attorneys prior to filing the Complaint would have revealed the significant flaws in Passelaigue's version of the "facts."  Passelaigue's attorneys needed only to

probe into Passelaigue's recollection to find that, in fact, she had no "specific recollection of the date and time when this [Model Release] was actually signed." Aug. 13 Tr. at 117:23-118:5.

At the very least, the evidence provided to Passelaigue's attorneys, including the three witness declarations, should have raised a red flag warning counsel that Passelaigue had fabricated her story, or if the attorneys independently concocted the story, that their sanctionable conduct would eventually be revealed. Yet, as noted above, even after her own deposition testimony torpedoed her case, Passelaigue and her attorneys continue to soldier on, giving no indication that they intend to withdraw the Complaint. This is despite the fact that no other support for Passelaigue's key allegations exists, and no further discovery will be able to supplement her complete lack of memory.

The complete failure to conduct a "reasonable inquiry" into the factual basis underlying Passelaigue's claims, and refusal to withdraw such claims despite the emergence of facts that cast serious doubt on the veracity of her allegations, warrants sanctions under Rule 11. *See, e.g.*, *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 667 (S.D.N.Y. 1997) (imposing Rule 11 sanctions where plaintiff's counsel "failed to make a reasonable inquiry into both the factual and legal basis of the claims against [defendant] before filing the complaint, [and] also refused to withdraw the complaint despite clear indications that such action was warranted"), *aff'd*, 173 F.3d 844 (2d Cir. 1999); *Big Bro. Sportswear, Inc. v. Third Rail, Inc.*, No. 97 Civ. 7927 (RPP), 1997 WL 1113645, at *1 (S.D.N.Y. Dec. 2, 1997) (imposing sanctions where "plaintiff failed to show that its factual contentions contradicted by defendants' opposing affidavits and exhibits had evidentiary support or were likely to have evidentiary support upon further discovery"); *Magnotta v. Berry*, No. 91 Civ. 0531 (DNE), 1996 WL 11238, at *5 (S.D.N.Y. Jan. 5, 1996) (imposing sanctions where attorneys failed to conduct a reasonable investigation into the facts); *Gambello v.*

*Time Warner Commc'ns*, 186 F. Supp. 2d 209, 229 (E.D.N.Y. 2002) (imposing sanctions where facts emerged during plaintiff's deposition that could have been and should have been obtained by plaintiff's counsel before bringing the claim).

***

In sum, documentary evidence and Passelaigue's own deposition testimony establishes that critical factual allegations made in Passelaigue's Complaint, reaffirmed in her Opposition, and adamantly maintained for over two years throughout the course of this entire litigation are wholly unsupported and not predicated on any reasonable inquiry into their veracity.  Accordingly, Rule 11 sanctions, against both Passelaigue and her attorneys, are warranted.

## III.     BOTH NON-MONETARY AND MONETARY SANCTIONS ARE APPROPRIATE

Once a court determines that Rule 11(b) has been violated, it has significant discretion to impose sanctions, against both attorneys and their clients, pursuant to Rule 11(c).  *See* Fed. R. Civ. P. 11 (c)(4).  *See also Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007) (noting that district courts have "significant discretion in determining what sanctions [ ] should be imposed") (quoting Fed. R. Civ. P. 11 Advisory Comm. Notes (1993 Amendment)).  "Both monetary and non-monetary sanctions are permitted." *Association of Holocaust Victims*, 2005 WL 2001888, at \*3.  In determining what sanctions are appropriate in the given circumstances, courts consider factors such as whether the improper conduct "infected the entire pleading" and the "effect it had on the litigation process in either time or expense."  *Id.* at \* 3 (citation omitted). *See also Howard*, 977 F. Supp. at 667 (A court has broad "discretion to fashion an appropriate sanction for a Rule 11 violation.").

The factual inaccuracies set forth in Passelaigue's Complaint and reaffirmed in her Opposition have infected this entire litigation.  Despite being informed of their falsity more than

two years ago and possessing documentary evidence establishing that the Model Release was signed in 2009, Passelaigue and her attorneys never withdrew the offending papers and never took any action to correct the allegations therein.   Even weeks after her deposition testimony definitively dismantled any remaining façade of a case, neither Plaintiff nor her attorneys have taken any corrective action.   A combination of monetary and non-monetary sanctions is required to deter repetition of such conduct or comparable conduct by others similarly situated.

A.     **The Court Should Strike Passelaigue's Complaint in Its Entirety, and Dismiss Her Remaining Claims with Prejudice**

Among the types of sanctions that a court may impose are "nonmonetary directives," Fed. R. Civ. P. 11(c)(4), such as "striking the offending paper," Fed. R. Civ. P. 11 Advisory Comm. Notes (1993 Amendment), and "dismissal of the action," *Abdelhamid*, 515 F. Supp. 2d at 392.   *See also Murray v. Dominick Corp. of Canada, Ltd.*, 117 F.R.D. 512, 515-16 (S.D.N.Y. 1987) (Rule 11 sanctions may include dismissal of a pleading, motion, or other paper); *Joint Stock*, 2017 WL 3671036, at *30 (sanctions may include dismissal of the action) (citation omitted).

It is appropriate, in this case, to strike Passelaigue's Complaint and dismiss all remaining claims with prejudice.   *See, e.g.*, *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533 (1991) (affirming dismissal with prejudice and monetary sanctions under Rule 11 where plaintiff and its attorneys failed to conduct a reasonable inquiry before filing suit).   Passelaigue's remaining claims hinge on the factual allegations at issue in this motion – namely, that she signed the Model Release at the 2004 Clinique Shoot – and presumably would have been dismissed with the rest of Passelaigue's claims were it as clear then, as it is now, that such allegations lack any evidentiary basis.   Even the Court made clear, in its ruling on Defendants' Motion to Dismiss, that if Passelaigue could not establish that the Model Release was signed at the 2004 Clinique Shoot, rather than the 2009 Spiegel Shoot, she would not be entitled to any relief. *See* Dkt. No. 74 at 7-8.

14

Furthermore, the need for deterrence in this case is particularly great.  Passelaigue and her attorneys have for years been liaising with a number of allegedly "similarly situated" models in pursuit of their "class action" allegations against Defendants.  As Defendants have argued from the beginning, the "class" allegations were asserted without basis, likely to increase defense costs and manufacture a basis for Plaintiff's attorneys to recoup their fees given that the New York right-of-publicity statute, New York Civil Rights Law § 51, does not provide for the recovery of attorney's fees as part of a damages award, and Lanham Act fee-shifting is rare.  Indeed, Plaintiff and her attorneys have consistently refused to provide any meaningful discovery from the unnamed class members, *see* Dkt. No. 88, which strongly suggests that such discovery would be damaging to Plaintiff's purported class.   Striking the Complaint and dismissing all claims is necessary to specifically deter Passelaigue and her attorneys as well as these unnamed models, and to generally deter anyone else contemplating engaging in conduct like that described above, including misuse of class action allegations.

### B.    The Court Should Order Payment of Defendants' Reasonable Attorney's Fees and Costs

A court may impose a range of monetary sanctions for violation of Rule 11.  *See* Fed. R. Civ. P. 11(c)(4); *Abdelhamid*, 515 F. Supp. 2d at 392 (monetary sanctions may include "a fine or penalty paid to the court, [and] an award of reasonable expenses and attorneys' fees incurred as a result of the misconduct").  The "typical sanction" is the "payment of the other party's reasonable attorneys' fees which were incurred as a result of the violation." *Howard*, 977 F. Supp. at 667 (citation omitted).  *See also Abner Realty, Inc. v. Admin. of Gen. Servs. Admin*, No. 97 Civ. 3075 (RWS), 1998 WL 410958 (S.D.N.Y. July 22, 1998) (similar).

Defendants should be permitted to recoup all the attorney's fees and costs that they have needlessly incurred in connection with defending against Passelaigue's baseless claims since this

litigation was commenced in February 2016.  Defendants have expended considerable resources including, without limitation, in connection with its Rule 12(b)(6) motion to dismiss, propounding and responding to discovery demands, engaging in multiple meet-and-confers and letter motions to compel, answering the Complaint, and preparing for and taking depositions.  Defendants expended all this time and effort only to find, more than two years later, that Passelaigue has "no specific recollection" of "facts" that form the basis of her claim.  Passelaigue and her attorneys should be forced to bear these fees and costs.

Given the egregiousness of the violations at issue here and the financial consequences Defendants have suffered, Passelaigue and/or her attorneys should pay all of Defendants' reasonable attorneys' fees and costs following directly from their sanctionable conduct, in an amount to be proven in subsequent submissions to the Court.[3]  *See, e.g.*, *Margo*, 213 F.3d at 65 ("district court acted well within its discretion in granting the defendants reimbursement for a portion of their attorneys' fees to compensate them for the waste of the court's and counsel's time"); *Profile Publ'g & Mgmt. Corp. APS v. Musicmaker.com, Inc.*, 242 F. Supp. 2d 363, 366-67 (S.D.N.Y. 2003) (awarding attorneys' fees as a Rule 11 sanctions when defense attorney objectively knew its claims were baseless and was so advised by plaintiff's attorney).  *See also Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir. 1986) ("[A] sanction for attorneys' fees may be imposed either on the attorney who signs a paper, or on the party he represents, or on both.").

---

[3] Defendants are prepared to submit detailed records concerning their fees and costs as far back as the Court may require.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants'
motion and impose sanctions on Passelaigue and her counsel pursuant to Rule 11 of the Federal
Rules of Civil Procedure, including striking the Complaint, dismissing this case with prejudice,
awarding Defendants their attorney's fees, and granting such other relief as this Court deems
appropriate.

Dated: October 29, 2018           COWAN, DeBAETS, ABRAHAMS
       New York, New York           & SHEPPARD LLP

                                         By:    /s/ Scott J. Sholder
                                                 Nancy E. Wolff
                                                 Scott J. Sholder
                                                 Marissa B. Lewis
                                                 41 Madison Avenue, 38th Floor
                                                 New York, New York 10010
                                                 Tel: (212) 974-7474
                                                 Fax: (212) 974-8474
                                                 nwolff@cdas.com
                                                 ssholder@cdas.com
                                                 mlewis@cdas.com

*Attorneys for Defendant Getty Images (US),
Inc., Getty Images, Inc., Bill Diodato
Photography, LLC, and Bill Diodato*