**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| ELODIE PASSELAIGUE, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>                v.<br><br>GETTY IMAGES (US), INC., BILL DIODATO PHOTOGRAPHY, LLC, and BILL DIODATO,<br><br>      Defendants. | Case No. 16-cv-01362-VSB-BCM |

 

 

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
PURSUANT TO FED. R. CIV. P. 11**

 

 

<span style="color:red">**REDACTED FOR PUBLIC FILING**</span>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iv

FACTS ........................................................................................................................................1

I.     THE PRE-FILING INVESTIGATION .....................................................................1

      A.     Plaintiff Discovers Her Photo Being Used to Advertise Botox .......................1

      B.     Counsel Spend More than 220 Hours, Over More than 8 Months, Investigating Plaintiff's and the Class's Claims, and Drafting the Complaint ......................................................................................................3

II.    THE LITIGATION .......................................................................................................5

      A.     Counsel Continue to Investigate Plaintiff's Claims ........................................5

      B.     In April 2016, Defendants Allege the Same Rule 11 Violations they Assert Here .....................................................................................................5

      C.     Defendants Move to Dismiss and the Parties Engage in Written Discovery .........................................................................................................6

      D.     The Court Partially Denies the Motion to Dismiss; Defendants Ask the Court to Bifurcate the Issue of the Model Release's Signing Date .................7

      E.     Defendants Take Plaintiff's Deposition, Ask Her to Mediate, then Partially Serve their Rule 11 Motion ................................................................8

      F.     The Court Denies Defendants' Bifurcation Request and Compels Discovery .........................................................................................................9

      G.     Plaintiff Offers to Amend the Complaint, But Defendants Refuse the Offer ...............................................................................................................10

      H.     Defendants and Their Witnesses Become Unavailable for Deposition ..........10

      I.     On September 19, the Parties Agree to Suspend Litigation Pending Mediation ......................................................................................................11

J.     Plaintiff Files Her Motion to Amend so it will be Resolved After the Mediation ........................................................................................11

K.     Plaintiff Takes Diodato's Deposition ...........................................................12

L.     The Parties Mediate; with No Settlement, Defendants File the Instant Motion ..........................................................................................................13

M.    Defendants Refuse to Produce Witnesses for Deposition .............................13

ARGUMENT ....................................................................................................................14

I.     DEFENDANTS' MOTION IS PROCEDURALLY DEFECTIVE ..........................15

A.     The Motion is Untimely .................................................................................15

B.     Defendants Failed to Provide Safe Harbor ...................................................15

i.     Defendants Provided No Safe Harbor to Thomas Canova ................15

ii.    Defendants Provided No Safe Harbor Regarding Plaintiff's Opposition .........................................................................................16

iii.   Because the Litigation Suspension Agreement Equitably Tolled Rule 11's Safe Harbor Period, Defendants Filed their Motion without Providing Plaintiff a Full 21 Days to Act.............................16

II.    DEFENDANTS' MOTION IS MERITLESS ...........................................................17

A.     Plaintiff's Counsel Conducted a Reasonable Inquiry and had a Reasonable Basis for Filing the Complaint ....................................................17

B.     Plaintiff's Allegations Are Not Lacking in Support and Isolated Factual Errors Do Not Undermine Her Claims; Rather, the Record is Replete with Evidence of Wrongdoing and Issues of Fact on whether She Released the 2009 Photos ...............................................................................19

C.     Nevertheless, Neither Plaintiff Nor Her Counsel "Later Advocated" the Allegation that Plaintiff Signed in 2004 ........................................................21

D.     The Relief Defendants Request is Improper...................................................22

III.    THE COURT SHOULD AWARD PLAINTIFF FEES ............................................22

    A.    No Competent Attorney Would Certify the Motion Under Rule 11(b)(2)-(3) ....................................................................................23

        i.    Defendants Knew Plaintiff did not "Fabricate" Her Story ................23

        ii.    The Motion is Based on Flimsy, Misrepresented Evidence ...............23

        iii.    Defendants Filed their Motion Despite that the Record had, in Light of Diodato's Deposition, Materially Changed Since They Served It ..........................................................................................24

        iv.    Plaintiff Offered and Attempted to Address the Claimed Violation .........................................................................................24

    B.    In Violation of Rule 11(b)(1), the Motion was for Brought Improper Purposes .....................................................................................24

## **TABLE OF AUTHORITIES**

**Cases**

*Barber v. Miller*,
146 F.3d 707 (9th Cir. 1998) .......................................................................... 24

*Carlton Group, Ltd. v. Tobin*,
2003 WL 21782650 (S.D.N.Y. July 31, 2003) ....................................... 19, 25, 26

*Castro & Co., LLC v. Diamond Offshore Servs. Ltd.*,
2018 WL 3406938 (N.D. Tex. June 21, 2018) ................................................. 27

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) ...................................................................................... 14

*Cox Operating, L.L.C. v. Settoon Towing, L.L.C.*,
2018 WL 4076351 (E.D. La. Aug. 27, 2018) .................................................. 24

*Eastway Constr. Corp. v. City of New York*,
762 F.2d 243 (2d Cir. 1985) ........................................................................... 26

*Equal Employment Opportunity Comm'n v. FedEx Ground Pkg. Sys., Inc.*,
2018 WL 4350249 (W.D. Pa. Sept. 12, 2018) .................................................. 28

*Estrada v. FTS USA, LLC*,
2018 WL 3697491 (S.D. Fla. July 20, 2018) ................................................... 26

*Goodwin v. MTA Bus Co.*,
2017 WL 1082408 (E.D.N.Y. March 22, 2017) ............................................... 23

*Hadges v. Yonkers Racing Corp.*,
48 F.3d 1320 (2d Cir. 1995) ........................................................................... 18

*Hoffman v. Bailey*,
2017 WL 1969540 (E.D. La. May 12, 2017) ................................................... 17

*In re M.B. Intern. W.W.L.*,
2014 WL 4160148 (S.D.N.Y. Aug. 15, 2014) ................................................. 16

*In re Pennie & Edmonds LLP*,
323 F.3d 86 (2d Cir. 2003) ............................................................................. 17

*In re Sony Corp. SXRD Rear Projection Television Mktg., Sales Practices & Prods. Liab.
Litig.*, 268 F.R.D. 509 (S.D.N.Y. 2010) ......................................................... 25

*Jeffreys v. Rossi*,
    275 F. Supp. 2d 463 (S.D.N.Y. 2003) ........................................................18, 19

*Kiobel v. Millson*,
    592 F.3d 78 (2d Cir. 2010) ........................................................ 21

*Knipe v. Skinner*,
    19 F.3d 72 (2d Cir. 1994) ........................................................ 15

*Kropelnicki v. Siegel*,
    290 F.3d 118, 131 (2d Cir. 2002) ........................................................ 14

*Lan v. Time Warner, Inc.*,
    2016 WL 6778180 (S.D.N.Y. Oct. 18, 2016) ................................................... 28

*Lawrence v. City of New York*,
    2018 WL 3611963 (S.D.N.Y. July 27, 2018) ................................................... 19

*Lawrence v. Richman Group of Conn. LC*,
    620 F.3d 153 (2d Cir. 2010) ........................................................ 27

*Lawson v. Rubin*,
    2018 WL 4861380 (E.D.N.Y. Oct. 5, 2018) ................................................... 24

*Lovell Family P'ship v. LG Preston Campbell, LLC*,
    2018 WL 4346725 (N.D. Tex. Aug. 10, 2018) ................................................... 24

*Malkan v. Mutua*,
    699 Fed. Appx. 81 (2d Cir. 2017) ........................................................ 28

*Mareno v. Jet Aviation of Am., Inc.*,
    970 F.2d 1126 (2d Cir. 1992) ........................................................ 23

*Martens v. Thomann*,
    273 F.3d 159 (2d Cir. 2001) ........................................................ 25

*Mealus v. Nirvana Spring Water N.Y. Inc.*,
    2015 WL 4546023 (N.D.N.Y. July 28, 2015) ................................................... 21

*Nakash v. U.S. Dep't of Justice*,
    708 F. Supp. 1354 (S.D.N.Y. 1998) ........................................................ 28

*Oliveri v. Thompson*,
    803 F.2d 1265 (2d Cir. 1986) ........................................................ 21

*Parker v. State of Conn.*,
   2006 WL 860115 (D. Conn. Mar. 31, 2006) .................................................. 21

*Photocircuits v. Marathon Agents, Inc.*,
   162 F.R.D. 449 (E.D.N.Y. 1995) ................................................................. 28

*Rates Tech. Inc. v. Mediatrix Telecom, Inc.*,
   2007 WL 2021905 (E.D.N.Y. Mar. 16, 2007) ................................................. 28

*Robinson v. Alutiq-Mele, LLC*,
   643 F. Supp. 2d 1342 (S.D. Fla. 2009) ......................................................... 29

*Rodick v. City of Schenectady*,
   1 F.3d 1341 (2d Cir. 1993) ......................................................................... 15

*Rounseville v. Zahl*,
   13 F.3d 625 (2d Cir. 1994) ......................................................................... 19

*Safe-Strap Co., Inc. v. Koala Corp.*,
   270 F. Supp. 2d 407 (S.D.N.Y. 2003) ........................................................... 15

*Sorenson v. Wolfson*,
   683 Fed. App'x 33 (2d Cir. 2017) ................................................................ 15

*Storey v. Cello Holdings, L.L.C.*,
   347 F.3d 370 (2d Cir. 2003) ....................................................................16, 21

*StreetEasy, Inc. v. Chertok*,
   752 F.3d 298 (2d Cir. 2014) ....................................................................... 16

*Ted Lapidus, S.A. v. Vann*,
   11 F.3d 91 (2d Cir. 1997) ........................................................................... 16

*Televideo Sys., Inc. v. Mayer*,
   139 F.R.D. 42 (S.D.N.Y. 1991) ................................................................18, 19

*U.S. ex rel. Hayes v. Allstate Ins. Co.*,
   686 F. App'x 23 (2d Cir. 2017) ................................................................... 25

*W.K. Webster & Co. v. Am. President Lines, Ltd.*,
   32 F.3d 665 (2d Cir. 1994) ......................................................................... 20

*Walker v. Blackground Records, LLC*,
   2017 WL 8186040 (C.D. Cal. 2017) ............................................................. 29

*Watkins v. Smith*,
　　2013 WL 655085 (S.D.N.Y. Feb. 22, 2013)...............................................14, 21

*Wigton v. Rosenthall*,
　　137 F.R.D. 4 (S.D.N.Y. 1991) ............................................................... 18

**Rules**

Fed. R. Civ. P. 11(b) ................................................................................ 24

Fed. R. Civ. P. 11(b)(3) ........................................................................20, 26

Fed. R. Civ. P. 11(c)(1)(A) ....................................................................... 26

Fed. R. Civ. P. 11(c)(2) ....................................................................18, 22, 24

Fed. R. Civ. P. 11(c)(4) ............................................................................ 24

**Other Authorities**

Fed. R. Civ. P. 11(b)-(c), advisory committee notes to the 1993 amendments.................. passim

Defendants' motion should be denied as procedurally defective, meritless, and frivolous.

**FACTS**

## I.    THE PRE-FILING INVESTIGATION

### A.    Plaintiff Discovers Her Photo Being Used to Advertise Botox

In summer 2014, Plaintiff learned her image was being used to advertise Botox, even though she had never modeled for Allergan. *See* Ex. 1,[1] Pl. Dep. Tr. 127:3-129:25; Ex. 2. She asked her agent, Daureen Castonguay, to investigate. Pl. Dep. Tr. 131:6-19. Ms. Castonguay knew the advertising agency for Botox and "reach[ed] out . . . [to] see . . . if they had any idea how the photo was appropriated and who had shot it." *Id.* 131:20-132:4. The agency "informed Ms. Passelaigue's agent that it had licensed the image from Getty." Compl. ¶ 49; Ex. 3 at WIL3. Getty "represented that it had a valid release," Compl. ¶ 50. "Insisting that it needed to protect the photographer's identity, Getty sent to Ms. Passelaigue's agent only a redacted copy," Compl. ¶ 50 & Ex. 2; *see also* Wolff Decl. Ex. E at WIL109; Pl. Dep. Tr. 115:116:22, 117:19-118:6. When Plaintiff saw it, she thought "the picture being used . . . is probably issued from the Spiegel photo shoot," but she "never saw the pics as it was intended either for a catalog or online," Wolff Decl. Ex. E at WIL108; *compare* Compl. ¶¶ 54-55. Ms. Castonguay "believe[d] that this person doctored the release and there is no way you could have signed for both photos which were shot years apart," Wolff Decl. Ex. E at WIL108. Ms. Passelaigue responded:

> Indeed, this is my signature for the Clinique under water shoot that happened on Monday February 9th, 2004 – I have to look in my drawers to see if I possess a copy of the release. The date that was appointed to the document you sent me was either missing from the original release and someone filled in the blanks or that person totally retouched it, but my name is written in my own hand writing and the signature is authentic.

> As you can tell, someone butchered the document by adding "& Spiegel photo shoot" in a darker marker type ink after the original ball point mention. You can also tell from the picture that one was shot much earlier than the other. I would never have been put in a situation to sign a co-release for a shoot happening on June 11th 2009 for Spiegel, a fashion

---

[1] All references to "Ex. ___" are to the concurrently-filed Declaration of Jack Fitzgerald.

1

brand, while I was signed to Ford Models, and another project shoot for Clinique Cosmetics (no affiliation between the two) 5 years prior, while I was signed to Karin Models.

I did shoot for Spiegel at Sun Studios from 10am until 4pm on June 11th, 2009, though and I have it date stamped in my computer.

Ex. 4 at P939; *compare* Compl. ¶ 56.

Ms. Passelaigue's records showed the Spiegel photographer was not "Adrianna Williams," but Bill Diodato. Ex. 5, *compare* Compl. ¶ 60. She retained attorney Cyrus Dugger who, on April 7, 2015, sent the redacted release to Getty's litigation counsel, Nancy E. Wolff, and wrote:

The two images included in this release were taken at two different test shoots, for two different clients, while my client was with two different agencies. [One photo] was taken on or about June 11, 2009 and [another] on or about February 9, 2004.

My client recalls signing a release for [the second] at the conclusion of the 2004 shoot, but specifically recalls not signing a release for [the first] during the June 11, 2009 shoot.

It appears that the model release provided by the photographer was "butchered"/doctored to use the signature from 2004 to appear to also release the 2009 image.

Ex. 6 at P416. Mr. Dugger requested the unredacted releases to "assist us in confirming whether or not the photographer is, . . . Bill Diodato," and demanded Getty "remove, stop licensing, and request that all current licensees remove [the photos]," *id.*



Ex. 7. He responded, ▮▮▮▮▮▮▮▮▮▮▮. Ex. 7 at BDP19. Ms. Sharp sent Mr. Dugger the unredacted release and summarized Diodato's statement. Ex. 6 at P412-14; *compare* Compl. ¶ 61. Mr. Dugger then asked her to provide "a copy of the relevant release for Getty Image 103434251," which he had not previously identified. Ex. 6 at P411. Before responding, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," Ex. 8. Diodato ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮" *Id.* Ms. Sharp so advised Mr. Dugger. Ex. 6 at P410.

Plaintiff later sought referral to another attorney, and began reaching out to other models

to determine whether any had similar experiences. *See* Fitzgerald Decl. ¶ 11; Exs. 11-12, Pl. Dep. Tr. 206:9-25; *compare* Compl. ¶ 68. At the time, Thomas Canova was associated with The Law Office of Jack Fitzgerald, ("LOJF"). Fitzgerald Decl. ¶13. Plaintiff was referred to Mr. Canova on June 5, 2015, and retained LOJF about a month later. *See* Ex. 13, Nos. 1-2, 11.

  **B.**  **Counsel Spend More than 220 Hours, Over More than 8 Months, Investigating Plaintiff's and the Class's Claims, and Drafting the Complaint**

  Following their initial call, Plaintiff sent Mr. Canova the questioned photos and release, and identified some potential witnesses. Fitzgerald Decl. ¶ 15. On June 13, she and counsel again spoke by phone. Ex. 13, Nos. 4, 88. On June 18, Plaintiff provided links to all "Adrianna Williams" photos on the Getty and Corbis websites and analysis showing over 450 models whose images appeared under that name, and identified model Phil Bram, whose photograph, taken by Diodato, ended up in a Gillette ad. Fitzgerald Decl. ¶ 16. Between June 22 and July 10, Mr. Canova and associate Melanie Persinger began researching potential causes of action. Ex. 13, Nos. 6, 8, 11, 46, 48-51. For several months, counsel continued to perform legal research and investigate facts while drafting a Complaint. *Id.*, Nos. 12-22, 52-64. This included talking with Mr. Bram, and a lengthy call with Plaintiff to further discuss some of the details of her case. *Id.*, Nos. 14-16, 56, 58.

  Ms. Persinger continued to work on an initial draft of the Complaint through mid-August 2015, *id.*, Nos. 59-62, which she and Mr. Canova completed in mid-September, *id.*, Nos. 17-22, 53, 57. On September 23, 2015, Mr. Canova sent Plaintiff this first draft, asking her to carefully review the factual allegations, directing her attention to the specific paragraphs alleging her experience, some highlighted to indicate areas warranting particular attention, and asking for a call to discuss the draft in detail. Fitzgerald Decl. ¶ 18. On October 5, Plaintiff provided revisions and suggested additions, and Mr. Canova proposed a follow-up call. *Id.* On October 8, Mr. Canova emailed Mr. Bram requesting further assistance in investigating the case, *id.*, and Mr. Fitzgerald

reviewed the draft Complaint. *See* Ex. 13, Nos. 23, 89. The next day, Mr. Bram identified another potentially-affected model named Farley, providing the contact information of her agent, Kathy Geraghty, who Mr. Canova spoke with that same day. Fitzgerald Decl. ¶ 19; Ex. 13, No. 24.

After discussing possible legal claims and defendants, *see* Ex. 13, No. 23, on October 12, 2015, Mr. Fitzgerald spent hours revising the Complaint. Mr. Canova reviewed it, *id.*, No. 25, and on October 14, counsel participated in an hourlong call with Plaintiff to again go through the Complaint, *id.*, Nos. 26, 71, 91. Mr. Canova redrafted for several more days. *Id.*, Nos. 27-29. On October 19, he sent Plaintiff a revised draft, again directing her attention to specific portions. Fitzgerald Decl. ¶ 20. On October 21, he again spoke with Ms. Geraghty. *Id.*; Ex. 13, No. 30.

Plaintiff reviewed the revised draft and, on October 22, 2015, again discussed with counsel. *Id.*, Nos. 29, 31, 72-73, 92. She then forwarded the 2015 summary of Diodato's statement, a 2015 exchange with model Lucia Fiala, and a 2008 exchange between Ms. Fiala and Diodato, which Ms. Fiala had given Plaintiff in 2015. Fitzgerald Decl. ¶ 21; *see also* Ex. 13, No. 31; Ex. 12, at P824-25, 36-44. Plaintiff and counsel spoke again, and Ms. Persinger did follow-up research. Ex. 13, Nos. 31, 73. After researching the various Getty entities, *id.*, Nos. 32, 93, in early November, Mr. Canova revised the Complaint again, Mr. Fitzgerald and Ms. Persinger reviewed it, and Mr. Fitzgerald made further revisions. *Id.*, Nos. 33, 74, 94. Ms. Persinger did more research, and Mr. Canova continued to revise in December, *id.*, Nos. 34-37, 75-81. On December 30, he sent Plaintiff another revised draft, again directing her attention to specific paragraphs and highlighted phrases, and requesting a call. Fitzgerald Decl. ¶ 22; Ex. 13, Nos. 38, 82. As she reviewed the Complaint, counsel continued to fine-tune it. Ex. 13, Nos. 39, 83, 95. On January 26, Plaintiff forwarded information relating to a 2014 Botox casting call. Fitzgerald Decl. ¶ 23; Ex. 14. On February 3, she reached out again to Wilhelmina, and Ms. Fiala. Fitzgerald Decl. ¶ 25. In response, on February 4, Wilhelmina Model Manager Jen Tourigny identified eight models on each of the Getty and

Corbis websites (with some overlap); Plaintiff then forwarded the exchange to Mr. Canova. *Id.*

On February 10, 2016, counsel began finalizing the Complaint, Ex. 13, Nos. 40, 85, then sent it to Plaintiff, asking her to review. Fitzgerald Decl. ¶ 11; Ex. 13, No. 41. Counsel made minor additional filing preparations. Ex. 13, Nos. 42, 86, 96. On February 18, Mr. Canova had a phone call with Ms. Fiala. Fitzgerald Decl. ¶ 27. On February 19, Plaintiff authorized the filing. *Id.* ¶ 28. On February 22, Mr. Canova signed and filed the Complaint. Ex. 13, Nos. 43, 87; Dkt. No. 1.

## II.    THE LITIGATION

### A.    Counsel Continue to Investigate Plaintiff's Claims

After filing, counsel continued to investigate, speaking in March 2016 to Lauren Benward, the stylist who supposedly witnessed Plaintiff sign; Simone Awor, a model who claimed Diodato conveyed nude photos of her to Getty from a shoot he promised would be just "implied nudity"; and several other models whose pictures appeared under "Adrianna Williams," some who had similar experiences with Diodato, including Haley Higgins, Mariel Booth, ███████████, ████████████████████████████████, Karol Marie, Kris Huegel (Buchholz), Chris Ryan, Andressa Costa, and Brittany Clybourn. *See* Ex. 13, Nos. 98-99, 101, 105-107; Exs. 15-40.

### B.    In April 2016, Defendants Allege the Same Rule 11 Violations they Assert Here

During a March 16, 2016 phone call, Defendants asserted certain allegations in the Complaint were inaccurate. *See* Wolff Decl. ¶¶ 2-3; Ex. 13, Nos. 104, 121. On March 23, Plaintiff and counsel discussed Defendants' claims. Ex. 13, Nos. 105, 135. Two weeks later, on April 1, Defendants sent a letter asserting a Rule 11(b)(3) violation, arguing "there is no factual support for most of the statements set forth in your pleading," Wolff Decl. Ex. A at 1. In support, Defendants provided "the signed written statements of . . . Max Miller, Linda Hilfiker, and Lauren Benward." Wolff Decl. ¶ 5 & Exs. B-D. Defendants gave Plaintiff seven days to "withdraw the . . . false factual allegations and legal claims," absent which they threatened "to formally serve a Rule 11

motion and start the clock to seek sanctions," Wolff Decl. Ex. A at 7. In an April 20, 2016, joint letter to the Court, Defendants said they intended to bring their motion. *See* Dkt. No. 35 at 3.

Following receipt of the letter, counsel asked New York fashion photographer Richard Agudelo to review the evidence and to opine on Plaintiff's claims. Ex. 13, Nos. 118, 131. Mr. Agudelo had shared time in a studio with Diodato and had firsthand experience with the way he handled model likenesses from test shoots. He opined that it was possible but unlikely that Diodato had falsified the revision date, so that it was probably signed in 2009. He noted that generic beauty shots like the Spiegel photos are the holy grail of stock photography because the photographer can sell them for years in different markets. After extensively reviewing the release, Mr. Agudelo felt certain Diodato had forged the "Description of Shoot" line to add in Spiegel after-the-fact. This was because the "Clinique Underwater Shoot" and "Spiegel" portions appeared to him to be written with different pens, with Diodato attempting to retrace the "Clinique" portion using the "Spiegel" pen, and abandoning the effort after reaching the "U" in "Underwater," perhaps because it may have begun to look suspicious. Finally, Mr. Agudelo had never seen a model release with two witness signatures, and felt it was very suspicious that Diodato's witnesses could not identify the second witness, despite their seemingly perfect memory otherwise. Fitzgerald Decl. ¶ 55.

## C.   Defendants Move to Dismiss and the Parties Engage in Written Discovery

On May 27, 2016, Defendants moved to dismiss, and the motion was fully briefed by July 14. Dkt. Nos. 44-45, 47, 50. Between May and September 2016, the parties engaged in written discovery, which resulted in motion practice. *See* Dkt. Nos. 55, 60. On September 20, they stipulated there had not yet been "a full and fair opportunity to prepare for and conduct depositions, nor conduct third party discovery, by the current fact discovery cut-off," and requested a six-month extension, which the Court granted. Dkt. No. 62 at 3-5. Between October 2016 and March 2017, the parties served, responded, and met-and-conferred over a second round of discovery requests,

and Plaintiff noticed Getty and Diodato for deposition. *See* Dkt. No. 68 at 2; Fitzgerald Decl. ¶ 56. While awaiting the Court's Rule 12 decision, the parties again stipulated to extending case deadlines, which the Court granted on April 5, 2017. Dkt. Nos. 66-67. In May 2017, Defendants noticed Plaintiff's deposition, and the parties again stipulated to extending the case deadlines, which the Court granted on July 21. Dkt. No. 68. On November 14, the parties filed another stipulated request for an extension, *see* Dkt No. 72 at 6, and on November 30, each filed a motion to compel. Dkt. Nos. 69-71. On February 5, 2018, the Court granted the November 14 request, tethering the discovery cut-off to the date it decided the Rule 12 or Rule 37 motions. Dkt. No. 72.

**D.    The Court Partially Denies the Motion to Dismiss; Defendants Ask the Court to Bifurcate the Issue of the Model Release's Signing Date**

On March 1, 2018, the Court partially denied Defendants' motion to dismiss. Dkt. No. 73. Defendants filed their Answers on March 29. Dkt. Nos. 78-79. They then argued that "for the remaining three claims to be dismissed in their entireties," they "need only establish that the Release was actually signed, and is therefore applicable to, the 2009 Spiegel photo shoot," and requested "that the Court bifurcate the issue of . . . whether the Release applies to the photographs taken at the 2009 Spiegel photo shoot [] from the remaining claims, issues, and topic[s]," Dkt. No. 81 at 2. Plaintiff responded that "even accepting defendants' position that it was signed in 2009, plaintiff's and the class's claims would move forward," since "it would be unreasonable to read the Model Release as binding plaintiff regarding both photo shoots," and since "discovery has revealed that Diodato also provided to Getty, and Getty offered for license, an image of plaintiff taken at a third shoot . . . that even the completed Model Release does not reference, and for which 'Diodato admits that he did not obtain a specific model release for . . . .'" *Id.* at 2-3 (record citation omitted). Accordingly, Plaintiff argued, "the case would move forward for at least one of plaintiff's images, as well as the class's claims, even if defendants [sic] position were correct," *id.* at 3.

**E.      Defendants Take Plaintiff's Deposition, Ask Her to Mediate, then Partially Serve their Rule 11 Motion**

Defendants took Plaintiff's deposition on August 13 and 14, 2018. She testified that she had reviewed the Complaint before it was filed, it was accurate to the best of her knowledge "just scanning through it right now," and she "still stand[s] behind all of the allegations in the Complaint," Pl. Dep. Tr. 11:4-23. Hours later, defense counsel provided Plaintiff with the release. *See generally id.* at 115-118:6. She testified she had not located a copy in her records. *Id.* 118:12-18; *see also id.* at 12:21-17:24 (describing documentation Plaintiff maintains). Reviewing the release, she testified, "[i]t looks like my signature signed in a hurry," *Id.* at 119:5-6. When asked if she read the release before signing, Plaintiff responded, "I would think I would have if I signed it," *id.* at 119:11-14. When pressed if she has "a specific recollection of . . . about whether you read it," Plaintiff snapped a non-responsive answer: "Do I have a specific recollection? No, I don't have a specific recollection of the date and time when this was actually signed." *Id.* at 119:16-22.[2]

Apparently content with this soundbite despite the ambiguous question and non-responsive answer, rather than follow up, counsel immediately changed topics, asking Plaintiff to "talk a bit about the Clinique test shoot" by "tell[ing] me your recollection of that day." *Id.* at 120:3-5. Plaintiff then described the *shoot* in some detail, but had not understood the question to call for information about what happened *after* the shoot, as described in her Complaint. *See id.* at 120:6-124:5. Despite his question not eliciting testimony concerning the events after the shoot concerning the release, counsel did not to ask a single additional question about those events. Instead, he just repeated the same broad and ambiguous question about Spiegel. *Id.* at 124:6-8. Again, Plaintiff

---

[2] By this point in the litigation, of course, Plaintiff had been confronted with Defendants' evidence suggesting that her memory of signing in 2004 may be mistaken. Plaintiff's response thus reflects only that, on the one hand, she has no memory of signing in 2009, while on the other hand, she has been told that her memory of signing in 2004 is wrong. One way of expressing that notion is the conclusion plaintiff arrived at: *I guess I don't have a specific recollection.*

testified about the actual shoot, but her memory was less detailed than her memory of the Clinique shoot despite "hav[ing] had to think about that shoot because of this case." *See id.* 125:18-19, 21-22. As Plaintiff testified about the 2009 shoot, counsel asked, "Do you recall the circumstances of signing this release?" *Id.* at 126:24-25. Because her best memory is and always has been that she signed it in 2004, she responded, "No, I don't." *Id.* at 127:2. Counsel asked no follow-up questions, again changing subjects. For the remainder of the deposition counsel asked *no* specific questions about the circumstances surrounding Plaintiff's signing the release. Fitzgerald Decl. ¶ 57.

On August 15, 2018, Defendants wrote "to reiterate . . . the proposal that in-house counsel from Getty Images suggested. . . that we revisit the idea of mediation," Ex. 41 at 3. Plaintiff provided some proposed dates. *Id.* at 2. Getty rejected them and suggested alternatives. *Id.* at 1-2. On August 28, Getty sent a follow-up email suggesting a mediator. *Id.* at 1. When Plaintiff had not responded by September 6, 2018, Defendants served on LOJF and its three attorneys a pre-filing copy of its current motion. *See* Dkt. No. 98 at 3; Ex. 42 at 2. Defendants did not serve the other target of their motion, Mr. Canova. *See* Mot. at 1 n.1.

### F.  The Court Denies Defendants' Bifurcation Request and Compels Discovery

During a September 7, 2018 hearing, Defendants asserted Plaintiff testified she "had no recollection at all of the signing of the model release." *See* Ex. 43, Sept. 7, 2018 Hrg. Tr. 4:6-10. Counsel argued, as now, that despite "very detailed allegations in the complaint," Plaintiff "claimed to have no recollection of what happened," and that the "witness statements . . . support our client's version," *id.* at 4:12-22. The Court responded, "while I understand that is your position . . . it is not clear to me that there still wouldn't be issues of fact . . . that would preclude the granting of summary judgment on that." *Id.* at 4:24-5:3. The Court also noted that such a defect, if true, would not necessarily doom the class claims. And it denied Defendants' bifurcation request. *See id.* at 5:3-9. Finally, it compelled further discovery from both sides. *See* Dkt. No. 90.

### G.   Plaintiff Offers to Amend the Complaint, But Defendants Refuse the Offer

Counsel forwarded the Rule 11 motion to Plaintiff and considered its contentions and state of the evidentiary record. On September 12, counsel wrote, "[a]lthough we disagree with the merits of your client's Rule 11 motion, please confirm that your client consents, pursuant to Fed. R. Civ. P. 15(a)(2), to our filing an amended Complaint to address issues raised in your client's motion." Ex. 42. Counsel also offered mediation dates, including October 25. *Id.* Defendants would "not consent to an amendment of the complaint this deep into the case," believing instead "that the case should be dismissed with prejudice." *Id.* at 1. They advised, "[y]ou are free to make a motion to amend, and we will oppose." *Id.* But they said they were "available October 25 for mediation," *id.*

### H.   Defendants and Their Witnesses Become Unavailable for Deposition

In July 2018, the parties had attempted to schedule the long-ago noticed depositions. *See* Ex. 44. Defendants said Getty's Rule 30(b)(6) witness was available on August 28, and Diodato after September 10. On July 31, they said Diodato was available September 14, and Getty September 19. *Id.* at 2. Given Defendants' refusal to consent to amendment, on September 13, Plaintiff said she "would like to take defendants' depositions shortly," and inquired when Diodato would complete the Court-ordered production. Ex. 45 at 2. Defendants stated "Getty Images[']  30(b)(6) witness is no longer available this month," and would not be available "until at least next month." *Id.* at 1. They said they did not know when Diodato's production would be complete. *Id.* And they bemoaned Plaintiff's apparent lack of interest in mediation, saying they were "not willing to continue to kick the can down the road, while incurring additional defense costs," they intended "to file the Rule 11 motion no later than October 8," and were now "willing to mediate only if the mediation occurs prior to that date," so that "October 25 is no longer an option." *Id.* Anticipating having to respond to an October 8 motion, on September 13, Plaintiff sent out for service deposition subpoenas directed to Miller, Hilfiker, and Benward. Exs. 46-48.

I.       **On September 19, the Parties Agree to Suspend Litigation Pending Mediation**

On September 14, the parties spoke and again considered mediating on October 25. Plaintiff advised that, if Defendants filed their Rule 11 motion, she would not mediate until it was resolved, which Defendants agreed to consider. On September 19, Defendants wrote, upset that Hilfiker had received a deposition subpoena, and stating she was not available on the date noticed, September 25. But they were "attempting to confirm whether [Diodato] will be available prior to [Plaintiff's] proposed mediation date," and advised that "[t]he Getty Images 30(b)(6) witness will not be available prior to 10/25." Ex. 49 at 3. Plaintiff explained the subpoenas were "in part based on your Rule 11 papers," but noted that "[y]our email . . . suggests your client may no longer intend to file its Rule 11 motion on October 8, and to mediate on October 25," in which case "we can obviously proceed with the depositions we need to take in a more deliberate fashion." *Id.* at 2. Defendants could not yet provide dates for declarants, but said "Diodato . . . is available to be deposed on October 24, and both he and Getty Images will agree to a mediation on October 25," *id.* at 1. They said they would "hold off until after October 25 to file the Rule 11 motion assuming all other litigation activity other than Bill's deposition is suspended until after mediation. If you insist on taking 4 depositions prior to October 25 . . . there will be no money left for Getty Images to pay any settlement . . . ." *Id.* Thus, 13 days had passed between September 6, when Defendants served the motion, and September 19, when the parties agreed to suspend litigation activity.

J.       **Plaintiff Files Her Motion to Amend so it will be Resolved After the Mediation**

As soon as Defendants refused on September 13 to stipulate to Plaintiff amending her complaint, counsel began preparing a letter advising the Court of Plaintiff's wish to amend, which Plaintiff was prepared to file before the expiration of the 21-day safe harbor period. Fitzgerald Decl. ¶ 67. Plaintiff held off because the parties' discussions regarding mediation had progressed, *id.*, but filed the letter on October 18, so a resolution would occur, only if necessary, after the

mediation. *See* Dkt. No. 95. The next day, Defendants accused Plaintiff of violating the litigation

suspension agreement. Ex. 50 at 2. Because the agreement was made with respect to discovery,

counsel had not considered that it might cover Plaintiff's motion to amend. Counsel nevertheless

acceded to Defendants' position, stating that Plaintiff would withdraw the motion and "not refile

it until after the mediation if necessary." *Id.* at 1. Plaintiff did so that same day. Dkt. No. 96.

### K.    Plaintiff Takes Diodato's Deposition

Plaintiff took Diodato's deposition on October 24, 2018. 
Ex. 51, Diodato Dep. Tr. 53:2-13, 169:15-18.
*see id.* at
61:17-62:7.
*See id.* at 94:10-95:8, 96:11-15, 100:10-22.
and
*Id.* at 98:15-23.
. at 98:24-99:8.

*Id.* at 100:23-25, 150:12-15.

*See id.* at 187:13-24.
, *see id.* at 181:11-23,

Diodato's  testimony  was  sometimes  nonsensical,

frequently contradictory—both to his own and other non-party witnesses' testimony—and in some

instances, his memory was demonstrably false. *See* Fitzgerald Decl. ¶¶ 70-73. Diodato's memory

was also lacking when it came to other events around this time. *See* Diodato Dep. Tr. 79:4-80:17, 83:12-84:10, 155:23-156:7, 158:5-9, 181:11-182:6, 200:20-201:10, 228:21-23.

> **L.      The Parties Mediate; with No Settlement, Defendants File the Instant Motion**

The day after Diodato's deposition, the parties mediated before the Hon. Kathleen Roberts (Ret.). They did not settle, but at the end of the day, Defendants presented a final offer, and the parties later agreed Plaintiff could have until Monday, October 29, 2018, at 9:00 a.m. EST to accept or reject it. She rejected it on Sunday, October 28, at around 10:00 p.m. EST. Fitzgerald Decl. ¶ 74. Defendants filed this motion at 11:25 a.m. the following morning. Dkt. Nos 98-100.

> **M.      Defendants Refuse to Produce Witnesses for Deposition**

After Defendants filed the motion, on October 29, Plaintiff re-noticed Getty's deposition for November 7 and served document subpoenas on Miller, Hilfiker, and Benward. Ex. 56. The same day, Defendants raised some discovery issues and asked Plaintiff to "provide your availability for a meet-and-confer to discuss by no later than this Friday, November 2, 2018." Ex. 57 at 8. Wanting a resolution on her request for deposition dates for Getty, Miller, Hilfiker, and Benward, Plaintiff agreed to a November 2 call, *id.* at 7, but Defendants pushed the call to the following week, *id.* at 6. Plaintiff asked counsel to confirm Getty's deposition would proceed on November 7. *See id.* at 5. Counsel represented that Getty's "30(b)(6) witness is not available on November 7," and stated it was "waiting to hear back on the witness's availability and will provide you with a proposed date as soon as we can. It will likely be in December 2018." *Id.* at 4.

Plaintiff then advised she "would like Getty's deposition before our Rule 11 response is due," asked Defendants to "agree to continue our deadline to respond until your client can produce a witness," and requested "dates ASAP for Miller, Hilfiker, and Benward," *id.* at 3-4. Defendants questioned the relevance of Getty's testimony, and advised that "Miller and Hilfiker are traveling and have work and family commitments over the next two months and will not be available until

the week of January 7," and that they had "not heard back from Benward." *Id.* at 3. Plaintiff asked Defendants to "stipulate to our Rule 11 response deadline being continued to sometime after we take Miller's, Hilfiker's, and Benward's depositions in or around the week of January 7," *id.* at 2. Defendants would not consent because "[y]ou had the 21-day safe harbor under the Rule, and we agreed to further delay our filings so you could depose Diodato and engage in mediation." *Id.* at 1. They offered Getty's deposition in December—weeks after this opposition was due. *Id.*

On November 8, Miller, Hilfiker, and Benward broadly objected to Plaintiff's document subpoenas, and Defendants' counsel asserted that because "Ms. Benward has informed us that she has no relevant knowledge or recollection beyond what is stated in her sworn declaration[] . . . no deposition is necessary." Ex. 58 at 1. Plaintiff said she "nevertheless wish[es] to depose Ms. Benward. Please either provide a date, or state that you refuse to produce her so that we may proceed accordingly." *Id.* Defendants have not responded. Fitzgerald Decl. ¶ 77.

## ARGUMENT

Rule 11 "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "[T]he challenged papers are judged by a standard of objective unreasonableness." *Watkins v. Smith*, 2013 WL 655085, at *5 (S.D.N.Y. Feb. 22, 2013) (citations omitted). Under this standard, relevant to Defendants' motion, "[a] pleading, motion or other paper violates Rule 11" when "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact," *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (internal quotation marks omitted). The Second Circuit has a "policy of restraint when awarding sanctions" under Rule 11. *Sorenson v. Wolfson*, 683 Fed. App'x 33, 35 (2d Cir. 2017) (citation omitted). Because they "should be imposed with caution," *Knipe v. Skinner*, 19 F.3d 72,

78 (2d Cir. 1994), "district courts [must] resolve all doubts in favor of the signer," *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993). And "[e]ven when Rule 11 is violated, 'sanctions . . . are discretionary, not mandatory.'" *Sorenson*, 683 Fed. App'x at 35 (quotations omitted).

## I.    DEFENDANTS' MOTION IS PROCEDURALLY DEFECTIVE

### A.    The Motion is Untimely

A Rule 11 motion "should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." Fed. R. Civ. P. 11(b)-(c), advisory committee notes to the 1993 amendments ["1993 ACNs"]. When "the 'inappropriate paper' averred to is the complaint . . . the party which hopes to secure sanctions for the submission of that pleading should move for sanctions promptly after the complaint is filed." *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 413 n.3 (S.D.N.Y. 2003). Here, Defendants first asserted on April 1, 2016 a Rule 11 violation based the Complaint's allegations, but did not file this motion until <u>942 days</u> later, seeking all the fees and costs they incurred in the interim. The motion is untimely. *See In re M.B. Intern. W.W.L.*, 2014 WL 4160148, at *4 (S.D.N.Y. Aug. 15, 2014).

### B.    Defendants Failed to Provide Safe Harbor

#### i.    Defendants Provided No Safe Harbor to Thomas Canova

"In accordance with the principles of due process and Rule 11 itself, the *subject* of a sanctions motion 'must receive specific notice of the conduct alleged to be sanctionable and the standard by which the conduct will be assessed, and an opportunity to be heard on that matter.'" *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 310 (2d Cir. 2014) (emphasis added) (quoting *Ted Lapidus, S.A. v. Vann*, 11 F.3d 91, 97 (2d Cir. 1997)). "This notice requirement permits the subjects of sanctions motions to confront their accuser and rebut the charges leveled against them in a pointed fashion." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 389 (2d Cir. 2003).

Defendants' motion is partially directed at Mr. Canova as "the driving force behind this

lawsuit," and "lead counsel at the time the papers relevant to the instant motion were filed." Mot. at 1 n.1. Mr. Canova signed the challenged pleadings. *See* Dkt. Nos. 1, 47. Defendants know he "is now employed by One LLP," a different law firm, Mot. at 1 n.1, but did not serve him, providing neither notice nor safe harbor. The motion should be denied. *Cf. Hoffman v. Bailey*, 2017 WL 1969540, at *8-9 (E.D. La. May 12, 2017) (Denying sanctions against party and its former counsel where "counsel were not served with or given notice of this motion aimed against them.").

### ii.      Defendants Provided No Safe Harbor Regarding Plaintiff's Opposition

Defendants ask the Court to sanction Plaintiff and her counsel for restating the Complaint's allegations in a June 2016 Opposition to Defendants' Motion to Dismiss. *See* Mot. at 1-2, 4, 6-8, 10-11, 13. But "[t]he Advisory Committee . . . contemplated that Rule 11 motions would be deemed untimely if filed too late to permit correction or withdrawal," *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003). Such motions are therefore "untimely . . . when the lawyer sought to be sanctioned lack[s] an opportunity to correct or withdraw the challenged submission." *Id.* (citations omitted). Because Defendants served this motion more than six months after the Rule 12 Order, Rule 11 sanctions cannot be assessed for statements in Plaintiff's Opposition.

### iii.      Because the Litigation Suspension Agreement Equitably Tolled Rule 11's Safe Harbor Period, Defendants Filed their Motion without Providing Plaintiff a Full 21 Days to Act

Defendants served their motion on September 6, the parties agreed to suspend litigation on September 19, and that suspension was lifted on, at the earliest, October 26 (the day after mediation). When Plaintiff filed on October 18 papers seeking leave to amend, Dkt. No. 95, Defendants took the position this violated the agreement, *i.e.*, that plaintiff had no right between September 19 and October 26 to seek leave to amend. When Plaintiff withdrew the motion in reliance on that position, she stated expressly that she intended to "refile it . . . after the mediation if necessary." *See* Ex. 50 at 1. Yet, when Plaintiff rejected Defendants' final settlement offer on

October 28, Defendants rushed to file their motion before noon the next day. Because of the agreement, however, according to their own litigation position, Defendants provided Plaintiff only 16 days (September 6 to 19, then October 26 to 28) to act pursuant to Fed. R. Civ. P. 11(c)(2). Because Plaintiff withdrew her remedial motion in reliance on that position, the interim time should not count against her 21 days; instead the 37 days between September 19 and October 26 should be equitably tolled, rendering Defendants' motion filed prior to the safe harbor expiration.

## II.    DEFENDANTS' MOTION IS MERITLESS

### A.    Plaintiff's Counsel Conducted a Reasonable Inquiry and had a Reasonable Basis for Filing the Complaint

Under Rule 11, attorneys must "conduct a reasonable inquiry into the law and facts before signing pleadings, written motions, and other documents," 1993 ACNs. "An attorney's burden of investigating the factual basis of all claims it brings is not an onerous one," *Televideo Sys., Inc. v. Mayer*, 139 F.R.D. 42, 47 (S.D.N.Y. 1991): he "is entitled to rely on the objectively reasonable representations of the client," *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329-30 (2d Cir. 1995), "without having to assess his credibility," *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 481 (S.D.N.Y. 2003) (citation omitted). And Rule 11 "does not require that an attorney interview every possible witness prior to filing," but only that "the claim is 'well grounded in fact' after 'reasonable inquiry.'" *Wigton v. Rosenthall*, 137 F.R.D. 4, 6 (S.D.N.Y. 1991). "Whether an attorney's conduct was reasonable should be determined without the benefit of hindsight, based on what was objectively reasonable to believe at the time the pleading . . . was submitted." *Carlton Group, Ltd. v. Tobin*, 2003 WL 21782650, at *3 (S.D.N.Y. July 31, 2003) (citation omitted). Circumstantial evidence is sufficient to support allegations. *Rounseville v. Zahl*, 13 F.3d 625, 633 (2d Cir. 1994).

Here, LOJF spent more than 220 hours, over 8 months, investigating, researching, and pleading the case before filing. This included multiple interviews of Plaintiff; reviews of her

communications and documentary evidence; conversations with other models and industry professionals; and extensive legal research. Counsel went through four drafts before finalizing the Complaint, always directing Plaintiff's attention to specific issues for further discussion. These are the hallmarks of a reasonable investigation. *See*, *e.g.*, *Jeffreys*, 275 F. Supp. 2d at 480-82 (investigation reasonable where counsel "conducted numerous interviews with their client and found him to be consistent and credible in his account," and "engaged in an extensive investigation of [plaintiff's] claims, including review of medical and documentary evidence, non-client interviews, and a site inspection"); *Lawrence v. City of New York*, 2018 WL 3611963, at *3-4 (S.D.N.Y. July 27, 2018); *Televideo Sys., Inc.*, 139 F.R.D. at 47-48. Following the investigation, counsel had a reasonable basis to assert on Plaintiff's behalf legal claims based on Defendant's use of her 2009 Spiegel images without consent. Plaintiff has consistently recalled signing the release in 2004 in relation to Clinique. *See* Ex. 4, Ex. 6 at P416. She has likewise maintained it would be "inappropriate" and "unheard of" to sign a single release concerning different photos shot years apart for different clients. *See* Compl. ¶ 56. If true, someone necessarily must have in some manner "doctored" (*i.e.*, changed) the release Plaintiff signed.

Although counsel was entitled to rely on Plaintiff's memories, it delved deeper, speaking to other models and industry professionals, which left counsel satisfied the allegation would "likely have evidentiary support after a reasonable opportunity for further investigation or discovery," Fed. R. Civ. P. 11(b)(3); *compare* Compl. at 1 (where Plaintiff "lacks personal knowledge," her allegations are "upon information and belief, including the investigation of her counsel"). The reasonableness of counsel's judgment in alleging Plaintiff did not release rights to the 2009 Spiegel images because she signed in 2004 for Clinique, such that the release must have been falsified to appear to release the 2009 images, is also demonstrated by evidence adduced after filing, like the sincere, contemporaneous reactions of other industry professionals. *See* Wolff Decl. Ex. E at

18

WIL108; Ex. 6 at P416; Fitzgerald Decl. ¶ 55 (Mr. Agudelo's opinions). Plaintiff's allegation that it is "unheard of in the industry for the same release to cover two different shoots" is also borne out by the evidence: ████████████████████████████████████ ████████████████████████████████ *See* Fitzgerald Decl. ¶ 78 & Ex. 59. Thus, as Mr. Dugger's April 2015 email alone demonstrates, this is not a case where "a competent attorney could not form a reasonable belief that the pleading is well grounded in fact," *see W.K. Webster & Co. v. Am. President Lines, Ltd.*, 32 F.3d 665, 670 (2d Cir. 1994).

**B.  Plaintiff's Allegations Are Not Lacking in Support and Isolated Factual Errors Do Not Undermine Her Claims; Rather, the Record is Replete with Evidence of Wrongdoing and Issues of Fact on whether She Released the 2009 Photos**

"Rule 11 is violated only when it is 'patently clear that a claim has absolutely no chance of success.'" *Parker v. State of Conn.*, 2006 WL 860115, at *2 (D. Conn. Mar. 31, 2006) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986)). Thus, "sanctions are not warranted where the 'evidentiary support is merely weak and the claim is unlikely to prevail.'" *Mealus v. Nirvana Spring Water N.Y. Inc.*, 2015 WL 4546023, at *6 (N.D.N.Y. July 28, 2015) (quotation omitted). "With respect to factual contentions contained in submissions to the court, 'sanctions may not be imposed unless a particular allegation is utterly lacking in support.'" *Watkins*, 2013 WL 655085, at *5 (quoting *Storey*, 347 F.3d at 388). However, "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement," nor "extend[s] to isolated factual errors, committed in good faith, so long as the pleading as a whole remains well grounded in fact." *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010) (quotations omitted); *see also Parker*, 2006 WL 860115, at *3 (no sanctions where "factual errors . . . do not render the complaint as a whole frivolous").

As alleged in the Complaint, Plaintiff's case theory was twofold: first, Diodato defrauded her into releasing the 2004 Clinique photos; second, she never voluntarily released the 2009

Spiegel photos. The Court dismissed Plaintiff's fraudulent inducement theory. Dkt. No. 74 at 8-10. Plaintiff alleged she did not voluntarily release the 2009 Spiegel images based on her recollection of signing the release in 2004 with respect to Clinique. The totality of the evidence now suggests Plaintiff most likely signed in 2009—at least, Plaintiff has not (yet) adduced evidence, beyond her own testimony, that would demonstrate she signed in 2004.

Defendants' motion is premised on their contention that the signing date is the sole dispositive issue of fact that would resolve the voluntariness of Plaintiff's purported release of the 2009 Spiegel photos. *See* Mot. at 1-2 (calling this "the key question"). That is simply untrue. While the evidence suggests Plaintiff signed in 2009, it also fully supports her allegation that she did so only in relation to the 2004 Clinique images—meaning Diodato added "Spiegel" in later, without Plaintiff's consent, making it falsely *appear* that she released both. This includes the evidence that:



*See* Fitzgerald Decl. ¶¶ 72-73. The doubt these facts raise is amplified by evidence that other models claim to have been similarly victimized by Diodato, *see id.* ¶¶ 79-86, and that Defendants employ sloppy, *ad hoc*, "fast and loose" model release practices, *see id.* ¶ 78. Moreover, much of the Complaint is supported by the evidence adduced so far. *See id.* ¶ 87 & Ex 61.

### C.   Nevertheless, Neither Plaintiff Nor Her Counsel "Later Advocated" the Allegation that Plaintiff Signed in 2004

Defendants advocate sanctions because, "[d]espite being informed of their falsity more than two years ago . . . Passelaigue and her attorneys never withdrew the offending papers and never took any action to correct the allegations therein." Mot. at 14. Rule 11(b), however, "does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses." 1993 ACNs. "Rule 11 . . . imposes no continuing duty on the parties or their attorneys," *Mareno v. Jet Aviation of Am., Inc.*, 970 F.2d 1126, 1128 (2d Cir. 1992); *see also Goodwin v. MTA Bus Co.*, 2017 WL 1082408, at *4 (E.D.N.Y. March 22, 2017). Defendants have not shown that (other than in the "facts" section of Plaintiff's Rule 12 Opposition), Plaintiff or her counsel "later advocate[ed]" in a pleading, motion, or other paper, the allegation that she signed in 2004. *See* Fed. R. Civ. P. 11(b). Rather, in response to the Rule 11 motion, Plaintiff and her counsel "acknowledge[d] candidly that [Plaintiff] does not currently have evidence to support [] specified allegation[s]," *see Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998) (quoting 1993 ACNs), and indicated their intention to "appropriately correct[]" the Complaint, *see* Fed. R. Civ. P. 11(c)(2); *compare* Dkt. No. 95 at 1

("it now seems likely . . . she signed the Model Release in 2009"). Sanctions should not lie. *Cox Operating, L.L.C. v. Settoon Towing, L.L.C.*, 2018 WL 4076351, at *2 (E.D. La. Aug. 27, 2018).

### D.     The Relief Defendants Request is Improper

Rule 11 sanctions "must be limited to what suffices to deter repetition of conduct," Fed. R. Civ. P. 11(c)(4). Defendants, however, request as *partial* sanctions "all of [their] reasonable attorneys' fees and costs," Mot. at 16. They do not even attempt to show how this is limited—and it is not. *See Lovell Family P'ship v. LG Preston Campbell, LLC*, 2018 WL 4346725, at *4 (N.D. Tex. Aug. 10, 2018); *cf. Lawson v. Rubin*, 2018 WL 4861380, at *4 (E.D.N.Y. Oct. 5, 2018). Rather, if the Court found a violation, that would suffice here to deter repetition by attorneys who take seriously their professional reputations. *See In re Sony Corp. SXRD Rear Projection Television Mktg., Sales Practices & Prods. Liab. Litig.*, 268 F.R.D. 509, 521 (S.D.N.Y. 2010).[3]

Defendants also request dismissal. In this Circuit, a "court must make a finding of 'willfulness, bad faith, or fault' before dismissing a complaint as a sanction." *U.S. ex rel. Hayes v. Allstate Ins. Co.*, 686 F. App'x 23, 27 (2d Cir. 2017) (quotation omitted). While Defendants accuse Plaintiff's attorneys of "invent[ing] these factual contentions from whole cloth or assert[ing] them in reliance on Passelaigue's fabrications," Mot. at 8, they offer no evidence for this specious claim.

## III.     THE COURT SHOULD AWARD PLAINTIFF FEES[4]

"A party may seek reimbursement of its reasonable expenses and attorney's fees incurred in opposing a frivolous Rule 11 motion," *Carlton Group, Ltd.*, 2003 WL 21782650, at *7 (citing

---

[3] "[I]n determining whether a party has complied with the dictates of Rule 11, a court may consider, *inter alia*, 'whether the person has engaged in similar conduct in other litigation.'" 1993 ACNs; *see also Martens v. Thomann*, 273 F.3d 159, 177-78 (2d Cir. 2001). Neither LOJF nor Mr. Canova has ever been sanctioned under Rule 11. To the contrary, two federal judges have recently opined favorably on LOJF's candor and professional ethics. Fitzgerald Decl. ¶ 97-99.

[4] Pursuant to Fed. R. Civ. P. 11(c)(2), Plaintiff requests $97,759 in fees incurred for opposing the motion. *See* Fitzgerald Decl. ¶¶ 100-106.

Fed. R. Civ. P. 11(c)(1)(A)). If "a competent attorney would have concluded that it was 'destined to fail,'" a sanctions motion "itself constitutes a violation of rule 11," *id.*, at *8 (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 & n7 (2d Cir. 1985)).

### A.      No Competent Attorney Would Certify the Motion Under Rule 11(b)(2)-(3)

#### i.      Defendants Knew Plaintiff did not "Fabricate" Her Story

Defendants accuse Plaintiff or her counsel of "fabricating" her memory of signing in 2004. Mot. at 2, 7-8. But their litigation counsel, Ms. Wolff, received from Plaintiff's previous attorney an email in 2015 asserting that Plaintiff signed in 2004 and did not release the 2009 images. Ex. 69. Defendants may dispute its accuracy, but their counsel knew the Complaint was pleaded consistently with Plaintiff's best genuine memory, not "fabricated." *See* Fed. R. Civ. P. 11(b)(3).

#### ii.      The Motion is Based on Flimsy, Misrepresented Evidence

"Motions for sanctions under Rule 11 level serious claims, and too often they are filed before there is a clear record to support the motion." *Estrada v. FTS USA, LLC*, 2018 WL 3697491, at *3 (S.D. Fla. July 20, 2018). Here, Defendants' entire motion rests on their self-serving characterization of just two questions and answers during Ms. Passelaigue's deposition; and they use alterations to misrepresent the first, quoting Plaintiff's deposition transcript as follows:

> MR. SHOLDER:   Do you have a specific recollection [ ] about whether you signed [the Model Release] . . . [or] about whether you read it?
>
> PASSELAIGUE:  No, I don't have a specific recollection of the date and time when this [Model Release] was actually signed.

Mot. at 5 (quoting Pl. Dep. Tr. 119:16-22). Defendants' brief thus represents that counsel's question was if Plaintiff had "a specific recollection" about *both* whether she (a) signed the release, and (b) read the release. That is false, as counsel actually *corrected* himself from initially asking about signing, to instead asking *only* about reading: "Do you have a specific recollection of about whether you signed it -- I'm sorry, about whether you read it?" Pl. Dep. Tr. 119:11-18.

### iii.   Defendants Filed their Motion Despite that the Record had, in Light of Diodato's Deposition, Materially Changed Since They Served It

Defendants served their motion based on the record as of September 6, but that changed dramatically when Plaintiff deposed Diodato. Defendants failed to consider whether, following the deposition, their motion could still be filed in good faith under Rules 11(b)(2) and (3).

### iv.   Plaintiff Offered and Attempted to Address the Claimed Violation

"Rule 11's safe harbor provision seeks to reduce, if not eliminate, the unnecessary expenditure of judicial time and adversary resources." *Lawrence v. Richman Group of Conn. LLC*, 620 F.3d 153, 158 (2d Cir. 2010). Accordingly, "[i]f, during this period, the alleged violation is withdrawn or appropriately corrected, [a Rule 11] motion should not be filed," *Castro & Co., LLC v. Diamond Offshore Servs. Ltd.*, 2018 WL 3406938, at *2 (N.D. Tex. June 21, 2018). Here, because Plaintiff first "offered the remedy the rule encourages," then in fact sought to amend her Complaint—then reaffirmed upon withdrawing her request at Defendants' behest that she would refile it after mediation if necessary—Defendants' motion never should have been filed. *See Lan v. Time Warner, Inc.*, 2016 WL 6778180, at *7 (S.D.N.Y. Oct. 18, 2016); *cf. Rates Tech. Inc. v. Mediatrix Telecom, Inc.*, 2007 WL 2021905, at *7 (E.D.N.Y. Mar. 16, 2007); *Photocircuits v. Marathon Agents, Inc.*, 162 F.R.D. 449, 452 (E.D.N.Y. 1995).

### B.   In Violation of Rule 11(b)(1), the Motion was for Brought Improper Purposes

"A request for sanctions under Rule 11 is not a tactical device," *Nakash v. U.S. Dep't of Justice*, 708 F. Supp. 1354, 1370 (S.D.N.Y. 1998), and "adversaries should not use Rule 11 to strong-arm an opponent," *Equal Employment Opportunity Comm'n v. FedEx Ground Pkg. Sys., Inc.*, 2018 WL 4350249, at *11 (W.D. Pa. Sept. 12, 2018). A district court has "the discretion to find that [a] sanctions motion was frivolous, and filed only to harass," *Malkan v. Mutua*, 699 Fed. Appx. 81, 84 (2d Cir. 2017). There are several indicia Defendants' motion is tactical, not genuine.

First, Defendants insisted the only way Plaintiff could remedy the violation was to dismiss her claims with prejudice, despite that their challenge was limited to a few factual allegations, and that "[t]he Rule does not authorize the movant to place conditions on the withdrawal or require the withdrawal to be with prejudice," *Robinson v. Alutiq-Mele, LLC*, 643 F. Supp. 2d 1342, 1351 (S.D. Fla. 2009). They also used the litigation suspension agreement in an attempt to deprive Plaintiff of her Rule 11(c)(2) right to correct her pleading. And they filed the instant motion seeking all their fees and costs, and prejudicial dismissal. Thus, rather than use Rule 11 properly as a tool to trim frivolous claims or unsupported factual allegations, Defendants have wielded the Rule like a club, to intimidate Plaintiff into going away.

Second, the timing of the motion's service and filing indicates Defendants were using it as a threat, first to convince a reluctant Plaintiff to attend mediation, then to convince her to accept their last settlement offer—then to punish her for not doing so. *Cf. Walker v. Blackground Records, LLC*, 2017 WL 8186040, at *8 (C.D. Cal. 2017) (Defendants' conduct made it "clear that the instant Rule 11 Motion was filed for an improper purpose," because, if the moving attorney "truly believed that the FAC was frivolous within the meaning of Rule 11, then why was he, on behalf of his clients, willing to represent to the court that the parties were engaged in settlement discussions? If the case was frivolous, why even engage in settlement discussions?").

Third, Defendants seek to sidestep the case schedule and deprive Plaintiff of Rule 56(d)'s protections, by trying to effectively obtain summary judgment through Rule 11. Defendants assert Plaintiff's deposition testimony "doomed her own case," so "the Court should strike the Complaint in its entirety and dismiss this case with prejudice," Mot. at 2. But "Rule 11 motions . . . should not be employed . . . to test the sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." 1993 ACNs. Defendants' conduct is especially unseemly where they have obstructed access to the witnesses whose testimony establishes their supposed defense.

25

Dated: November 13, 2016     <u>/s/ Jack Fitzgerald</u>
JACK FITZGERALD (JF 3831)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (*pro hac vice*)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (*pro hac vice*)
*melanie@jackfitzgeraldlaw.com*
**THE LAW OFFICE OF JACK FITZGERALD, PC**
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555
***Attorneys for Plaintiff and the Proposed Class***