**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELODIE PASSELAIGUE, on behalf of herself and all others similarly situated, | |
| Plaintiffs, | |
| v. | Case No. 1:16-cv-01362 (VSB)(BCM) |
| GETTY IMAGES (US), INC., BILL DIODATO PHOTOGRAPHY, LLC, and BILL DIODATO, | |
| Defendants. | |

**DECLARATION OF JACK FITZGERALD IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR SANCTIONS**

**REDACTED FOR PUBLIC FILING**

I, Jack Fitzgerald, declare:

1.      I am a member in good standing of the State Bars of New York and California; and of the United States District Courts for the Southern and Eastern Districts of New York, the Northern, Central and Southern Districts of California, and the Western District of Wisconsin; and of the United States Courts of Appeal for the Second, Eighth, and Ninth Circuits. I make this declaration based on my own personal knowledge.

### Plaintiff's Opposition to Defendants' Rule 11 Motion

2.      Attached hereto as Exhibit 1 is a true and correct copy of excerpts from the transcript of Plaintiff Elodie Passelaigue's August 13 and 14, 2018 deposition ("Pl. Dep. Tr."). Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing the attached excerpts publicly.

3.      Attached hereto as Exhibit 2 is a true and correct copy of a document produced by third party Wilhelmina in response to Defendants' subpoena, bearing production numbers WIL194-96.[1]

4.      Attached hereto as Exhibit 3 is a true and correct copy of a document produced by Wilhelmina bearing production numbers WIL2-5.

5.      Attached hereto as Exhibit 4 is a true and correct copy of a document produced by Plaintiff bearing production numbers P939-43. This is a complete version of document produced by Wilhelmina bearing production numbers WIL112-15, which cuts off some of the text.

6.      Attached hereto as Exhibit 5 is a true and correct copy of a document produced by Plaintiff bearing production number P15. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

---

[1] In referencing documents' production numbers, we drop any leading zeroes.

7.     Attached hereto as <u>Exhibit 6</u> is a true and correct copy of a document produced by Plaintiff bearing production numbers P410-17. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

8.     Attached hereto as <u>Exhibit 7</u> is a true and correct copy of a document produced by Defendant Bill Diodato, bearing production numbers BDP19-21. Because Defendant designated this document "CONFIDENTIAL," pursuant to the Protective Order, Plaintiff moves to file this document under seal.

9.     Attached hereto as <u>Exhibit 8</u> is a true and correct copy of a document produced by Defendant Bill Diodato, bearing production number BDP14. Because Defendant designated this document "CONFIDENTIAL," pursuant to the Protective Order, Plaintiff moves to file this document under seal.

10.     In approximately late April 2015, Plaintiff began seeking referral to a new attorney.

11.      Exhibits 9 and 10 are intentionally skipped. Attached hereto as <u>Exhibit 11</u> is a true and correct copy of a document produced by Plaintiff bearing production numbers P31-39. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

12.     Attached hereto as <u>Exhibit 12</u> is a true and correct copy of a document produced by Plaintiff bearing production numbers P824-56. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

13.     In June 2015, attorney Thomas Canova was associated with this firm, The Law Office of Jack Fitzgerald, PC ("LOJF").

14.     Until Mr. Canova left the firm in 2017, he acted as lead counsel in this matter. Mr. Canova's usual business practice, both in this case and others, was to forward to me virtually every email he either sent or received relating to a case (Mr. Canova also always copied himself on these emails). As a result, while I was not personally deeply involved in the pre-filing investigation, I do have in my possession a rich email record from which a procedural history of LOJF's investigatory work is well-documented. As part of Plaintiff's opposition to Defendants' Rule 11 motion, I reviewed this record, which is comprised of approximately 114 emails between June 2015 and February 2016. It is based on this review that I am able to attest in this declaration to facts occurring during the pre-filing time period. Because these emails contain or reflect attorney work product and attorney-client privileged communications, however, I do not attach them to this declaration, but I am happy to provide them to the Court for its *in camera* review, upon request.

15.     Following an initial call between Plaintiff and Mr. Canova, Plaintiff sent Mr. Canova the questioned photos and Model Release, and identified some potential witnesses.

16.     On June 18, 2015, Plaintiff provided LOJF links to all "Adrianna Williams" photos on the Getty and Corbis websites and analysis showing over 450 models whose images appeared under that name, and identified model Phil Bram, whose photograph, taken by Diodato, ended up in a Gillette ad.

17.     Attached hereto as <u>Exhibit 13</u> is a true and correct copy of the hourly time records for work performed by LOJF attorneys prior to filing this action on February 22, 2016. Whereas for a fee motion, LOJF might reconcile time entries, revise typographical errors, and exercise billing judgment in cutting hours, for purposes of this exercise, my office has created this document by combining each attorney's raw time records, as they were kept in the usual course of business, without any alteration. The time entries are individually numbered for ease of reference in

Plaintiff's Memorandum. Information reflecting attorney-client communications or attorney work product has been redacted for public filing, and an unredacted version submitted to the Court *in camera*.

18.     On September 23, 2015, Mr. Canova sent Plaintiff a first draft of a Complaint, asking her to carefully review the factual sections, directing her attention to the specific paragraphs alleging her experience, some highlighted to indicate areas warranting particular attention, and asking for a call to discuss the draft allegations in detail. On October 5, Plaintiff, provided revisions and suggested additions, and Mr. Canova proposed a follow-up call.

19.     On October 9, 2015, Phil Bram identified to LOJF another potentially-affected model named Farley, providing the contact information of her agent, Kathy Geraghty, who Mr. Canova spoke with that same day.

20.     On October 19, 2015, Mr. Canova sent Plaintiff a revised draft of the Complaint, again directing her attention to specific portions. On October 21, Mr. Canova again spoke with Ms. Geraghty.

21.     On October 22, 2015, Plaintiff forwarded the 2015 summary of Diodato's statement that Getty's paralegal had sent to Mr. Dugger, a 2015 exchange with model Lucia Fiala, and a 2008 exchange between Ms. Fiala and Diodato, which Ms. Fiala had given Plaintiff in 2015.

22.     On December 30, 2015, Mr. Canova sent Plaintiff another revised draft of the Complaint, again directing her attention to specific paragraphs and highlighted phrases and requesting a call.

23.     On January 26, 2016, Plaintiff forwarded to Mr. Canova information from a 2014 Botox casting call.

24.     Attached hereto as Exhibit 14 is a true and correct copy a document produced by

Plaintiff bearing production numbers P2-3. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

25.     On February 3, 2016, Plaintiff reached out again to Wilhelmina, and again to Ms. Fiala. In response to her request for help identifying models with "Adrianna Williams" photos, on February 4, 2016, Wilhelmina Model Manager Jen Tourigny reviewed the Getty and Corbis websites and identified eight models on each website (with some overlap); Plaintiff then forwarded the exchange to Mr. Canova.

26.     On February 11, 2016, Mr. Canova sent Plaintiff a near-final version of the Complaint, asking her to perform a final review and to either identify anything further needing correction, or provide authorization to file.

27.     On February 18, 2016, Mr. Canova had a phone call with Ms. Fiala.

28.     On February 19, 2016, Plaintiff confirmed that she had reviewed the Complaint, and authorized its filing.

29.     Attached hereto as Exhibit 15 is a true and correct copy of a March 2016 email from Elodie Passelaigue to Simone Awor, bearing production number P815. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

30.     Attached hereto as Exhibit 16 is a true and correct copy of a March 2016 email chain between Elodie Passelaigue and Mariel Booth, bearing production numbers P816-19. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

31.     Attached hereto as Exhibit 17 is a true and correct copy of an April 2016 email chain between Elodie Passelaigue and Kris Huegel, bearing production numbers P822-23.

Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

32.      Attached hereto as <u>Exhibit 18</u> is a true and correct copy of a February 2016 email exchange between Elodie Passelaigue, Thomas Canova, and Lucia Fiala, bearing production numbers P864-68. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly, with limited personally identifying information redacted.

33.      Attached hereto as <u>Exhibit 19</u> is a true and correct copy of a February 2016 email exchange between Karol Marie and Elodie Passelaigue, bearing production numbers P874-75. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

34.      Attached hereto as <u>Exhibit 20</u> is a true and correct copy of a March 2016 email chain between Thomas Canova and Lauren Benward Krause, bearing production numbers P876-78. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

35.      Attached hereto as <u>Exhibit 21</u> is a true and correct copy of a March 2016 email chain between Haley Higgins and Elodie Passelaigue, bearing production numbers P879-80. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

36.      Attached hereto as <u>Exhibit 22</u> is a true and correct copy of a March 2016 email from Simone Awor to Elodie Passelaigue, bearing production number P881. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

37.     Attached hereto as <u>Exhibit 23</u> is a true and correct copy of a March 2016 email chain between Simone Awor and Elodie Passelaigue, bearing production number P882-83. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

38.     Attached hereto as <u>Exhibit 24</u> is a true and correct copy of a March 2016 email chain between Elodie Passelaigue and Chris Ryan, bearing production numbers P884-85. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly, with limited personally identifying information redacted.

39.     Attached hereto as <u>Exhibit 25</u> is a true and correct copy of a February-May 2016 email chain between Elodie Passelaigue, Thomas Canova, and Mariel Booth, bearing production numbers P889-95. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

40.     Attached hereto as <u>Exhibit 26</u> is a true and correct copy of a March 2016 email chain between Mariel Booth and Elodie Passelaigue, bearing production number P896. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

41.     Attached hereto as <u>Exhibit 27</u> is a true and correct copy of a March-April 2016 email chain between Elodie Passelaigue and Brittany Clybourn, bearing production numbers P897-98. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

42.     Attached hereto as <u>Exhibit 28</u> is a true and correct copy of a March 2016 email chain between Elodie Passelaigue and Andressa Costa, bearing production numbers P899-901.

Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly, with limited personally identifying information redacted.

43.     Attached hereto as Exhibit 29 is a true and correct copy of a March 2016 email chain between Tom Canova and Chris Ryan, bearing production numbers P903-905. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

44.     Attached hereto as Exhibit 30 is a true and correct copy of a March 2016 email chain between Wilhelmina staff, Chris Ryan, and Elodie Passelaigue, bearing production numbers P906-908. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly, with limited personally identifying information redacted.

45.     Attached hereto as Exhibit 31 is a true and correct copy of an April-May 2016 email chain between Elodie Passelaigue, Andressa Costa, and Thomas Canova, bearing production numbers P909-13. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly, with limited personally identifying information redacted.

46.     Attached hereto as Exhibit 32 is a true and correct copy of an August 2017 email chain between Elodie Passelaigue and Mariel Booth, bearing production numbers P928-31. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

47.     Attached hereto as Exhibit 33 is a true and correct copy of a model release for Simone Awor, bearing production number BDP46. Because Defendant designated this document

"HIGHLY CONFIDENTIAL," pursuant to the Protective Order, Plaintiff moves to file this document under seal.

48.     Attached hereto as <u>Exhibit 34</u> is a true and correct copy of a set of photos of Mariel Booth, bearing production numbers GI345-52.

49.     Attached hereto as <u>Exhibit 35</u> is a true and correct copy of a set of photos of Mariel Booth, bearing production numbers GI450-69.

50.     Attached hereto as <u>Exhibit 36</u> is a true and correct copy of a model release for Mariel Booth, bearing production number GI570. Because Defendant designated this document "HIGHLY CONFIDENTIAL," pursuant to the Protective Order, Plaintiff moves to file this document under seal.

51.     Attached hereto as <u>Exhibit 37</u> is a true and correct copy of a model release for Haley Higgins, bearing production number GI576. Because Defendant designated this document "HIGHLY CONFIDENTIAL," pursuant to the Protective Order, Plaintiff moves to file this document under seal.

52.     Attached hereto as <u>Exhibit 38</u> is a true and correct copy of a model release for Mariel Booth, bearing production number GI704. Because Defendant designated this document "HIGHLY CONFIDENTIAL," pursuant to the Protective Order, Plaintiff moves to file this document under seal.

53.     Attached hereto as <u>Exhibit 39</u> is a true and correct copy of a February 2015 email chain between Haley Higgins, Getty Images staff, and Bill Diodato, bearing production numbers GI1101-104. Because Defendant designated portions of this document "CONFIDENTIAL," pursuant to the Protective Order, Plaintiff moves to file an unredacted version of this document under seal, and publicly files a partially redacted version.

54.    Attached hereto as Exhibit 40 is a true and correct copy of a January 2014 email chain between Alice Bertay, Sarah Foster, and Bill Diodato, bearing production numbers GI1477-80. Because Defendant designated this document "CONFIDENTIAL," pursuant to the Protective Order, Plaintiff moves to file this document under seal.

55.    Following receipt of Defendants' April 1, 2016 letter, Mr. Canova and Ms. Persinger asked New York fashion photographer Richard Agudelo to review the evidence and to opine on Plaintiff's claims. Mr. Agudelo had shared time in a studio with Diodato and had firsthand experience with the way Diodato and his associates handled model likenesses from test shoots. He opined that it was possible, but unlikely that Diodato had falsified the revision date, so that it was probably signed in 2009. He noted that generic beauty shots like the Spiegel photos are the holy grail of stock photography because the photographer can sell them for years in different markets. After extensively reviewing the release, Mr. Agudelo felt certain that Diodato had forged the "Description of Shoot" line to add in Spiegel after-the-fact. This was because the "Clinique Underwater Shoot" and "Spiegel" portions appeared to him to be written with different pens, with Diodato attempting to retrace the "Clinique" portion using the "Spiegel" pen, and abandoning the effort after reaching the "U" in "Underwater," perhaps because it may have begun to look suspicious. Finally, Mr. Agudelo noted he had never seen a model release with two witness signatures, and felt it was very suspicious that none of Diodato's witnesses could identify the second witness, despite their seemingly perfect memory otherwise.

56.    Between October 2016 and March 2017, the parties served, responded, and met-and-conferred over a second round of discovery requests, and Plaintiff noticed Getty and Diodato for deposition.

57.    I have reviewed the full transcript of Plaintiff's deposition, which took place on

August 13 and 14, 2018. After asking Plaintiff on the first day to describe each of the Clinique and Spiegel photo shoots, for the remainder of the first day and the entire second day, counsel asked Plaintiff no specific questions about the circumstances surrounding her signing the Model Release.

58.     Attached hereto as <u>Exhibit 41</u> is a true and correct copy of an email chain dated August 14-28, 2018, between counsel for the parties, with the subject line, "Redacted version of P00030."

59.     Attached hereto as <u>Exhibit 42</u> is a true and correct copy of an email chain dated September 6-13, 2018, between counsel for the parties, with the subject line, "Passelaigue v. Getty Images, et al. – FRCP 11."

60.     Attached hereto as <u>Exhibit 43</u> is a true and correct copy of excerpts of the transcript of the September 7, 2018 hearing in this case.

61.     Attached hereto as <u>Exhibit 44</u> is a true and correct copy of an email chain dated July 17, 2018 to August 2, 2018, between counsel for the parties, with the subject matter, "RE: Passelaigue v. Getty Images et al. – Upcoming depositions."

62.     Attached hereto as <u>Exhibit 45</u> is a true and correct copy of an email chain dated September 13, 2018, between counsel for the parties, with the subject line, "Defendant Depositions."

63.     Attached hereto as <u>Exhibit 46</u> is a true and correct copy of a September 13, 2018 deposition subpoena to Max Miller, which Defendants' counsel were authorized to and did accept service of.

64.     Attached hereto as <u>Exhibit 47</u> is a true and correct copy of a September 13, 2018 deposition subpoena to Linda Hilfiker, which was personally served on her.

65.     Attached hereto as <u>Exhibit 48</u> is a true and correct copy of a September 13, 2018

deposition subpoena to Lauren Benward, which was personally served on her.

66.     Attached hereto as <u>Exhibit 49</u> is a true and correct copy of an email chain dated September 18-20, 2018, between counsel for the parties, with the subject line, "Passelaigue v. Getty Images (US), Inc., et al."

67.     As soon as Defendants refused on September 13 to stipulate to Plaintiff amending her complaint, we began preparing a letter advising the Court of Plaintiff's wish to amend, which Plaintiff was prepared to file before the expiration of the 21-day safe harbor period. Plaintiff held off because the parties' discussions regarding mediation had progressed.

68.     Attached hereto as <u>Exhibit 50</u> is a true and correct copy of an email chain dated October 19, 2018, between counsel for the parties, with the subject line, "Passelaigue – Motion to Amend Complaint / Rule 11."

69.     Attached hereto as <u>Exhibit 51</u> is a true and correct copy of excerpts from the transcript of the October 24, 2018 deposition of Defendant Bill Diodato ("Diodato Dep. Tr."). Because Defendants designated this document "CONFIDENTIAL," pursuant to the Protective Order, Plaintiff moves to file this document under seal.

70.     Diodato's testimony was sometimes nonsensical, frequently contradictory—both to his own and other non-party witnesses' testimony—and in some instances, his memory was demonstrably false.

71.     Diodato's demonstrably false memories include the following:

        a.     ***People present at the Spiegel Shoot.*** Several times Diodato testified that

█████████████████████████████████████

██████████. *See* Ex. 51, Diodato Dep. Tr. 11:4-17, 276:8-15, 277:14-23. Yet,

█████████████████████████████████████

███████████████. It does not appear, however, that either is the mystery Model Release witness. A true and correct copy of that invoice, produced by Diodato and bearing production number BDP32, is attached hereto as Exhibit 52. Because Defendant designated this document "CONFIDENTIAL," pursuant to the Protective Order, Plaintiff moves to file this document under seal.

        b.     ***The Spiegel Assignment.*** Diodato testified it was ████████████

████████████████████████████████████████████

███. *See* Ex. 51, Diodato Dep. Tr. at 38:19-39:3. However, in August 2014, Plaintiff's agent at Ford reviewed her records, and "[t]he chart said that shoot was for waist downs with Bill Diodato." A true and correct copy of that communication, produced by Plaintiff bearing production number P16, is attached hereto as Exhibit 53. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

72.    Diodato's contradictions include the following:

        a.     ***Whether Diodato has said he would use photos only for his website or portfolio before asking someone to sign a model release.*** ████████████████

████████████████████████████████████████. *See* Ex. 51, Diodato Dep. Tr. 8:22-9:5. Statements from two models, however—one in 2008—contradict his testimony. In an April 2008 email, Lucia Fiala wrote to Diodato, "As much as I remember from that shoot, you asked me to sign the release so you could use the images for your website." Ex. 51, P824-56 at P841. In another email, Mariel Booth wrote "when I may have signed the release, [Diodato] definitely did not say it was for stock photography rights. He said it would be used for his personal website, etc." Ex. 32, P928-31 at 928. *See also* Ex. 51, Diodato Dep. Tr. 161:3-162:15

- 13 -

( ███████████████████████████████████████████████████

███████████████████████ ).

      b.    ***Whether Diodato showed Plaintiff a Clinique photo in 2009, and whether***
***Plaintiff was sorry for Diodato regarding Clinique.*** In his April 2015 written account, Diodato
says ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████,” Ex. 7 at BDP19. Diodato never
mentioned either of these details during his deposition—nor did Miller, Hilfiker, or Benward in
their declarations, despite Diodato's statement that " █████████████████████████████

█████████████," *id.*, and his testimony that all three (though no intern) " ███████████████

███████████████████████████████████" Ex. 51, Diodato Dep. Tr.
25:17-27:5.

      c.    ***When Diodato decided to ask Plaintiff for releases to the Clinique and***
***Spiegel photos.*** In her March 2016 declaration, Linda Hilfiker indicated Diodato decided to seek
Plaintiff's release for both the Clinique and Spiegel shoots when he found out she was to be the
model. *See* Wolff Decl. Ex. C ¶ 4. Max Miller's testimony suggests Diodato intended primarily to
seek a release relating to Spiegel, and only raised Clinique later. In a February 2016 email, Miller
wrote that he " ████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████." In his April 2016 declaration, he also recollected Diodato "asking
Ms. Passelaigue about the Clinique shoot around that time" that she was filling out and signing the
release. *See* Wolff Decl. Ex. B ¶ 6. Diodato, by contrast, testified that he primarily was concerned

with obtaining Plaintiff's release of the Clinique photos, and only added Spiegel to the release when he thought of asking her to take additional "beauty" shots after lunch. Diodato Dep. Tr. 24:10-25:4. A true and correct copy of Max Miller's February 2016 email, produced by Bill Diodato bearing production number BDP28, is attached hereto as <u>Exhibit 54.</u> Because Defendant designated this document "CONFIDENTIAL," pursuant to the Protective Order, Plaintiff moves to file this document under seal.



       d.       ***Whether the morning's shoot was finished when Miller returned with the Release.*** Diodato testified both that he had, and that ████████████████████████ ████████████████████████ Ex. 51, Diodato Dep. Tr. 24:18-22 (██ ████████████████████████); *id.* at 28:10-19, 32:2-7 (████████████████████).

       e.       ***The Order the Release was filled in, signed, and witnessed.*** Diodato testified both that ████████████████████████. *See* Ex. 51, Diodato Dep. Tr. 10:9-15 ████████████████████████ ████████████████████████); *id.* at 24:22-25:3 ████████ ████; *see also id.* at 33:13-34:5, 35:24-36:17, 37:15-38:9.

       f.       ***When Miller gave Plaintiff a photocopy of the Release.*** Diodato alternatively testified that ████████████████████████ ████████████████, *id.* at 40:19-41:3; and ████████████████ ████████, *id.* at 10:21-11:3. Miller, for his part, never mentions making a photocopy. *See* Wolff Decl. Ex. B. Plaintiff testified she had not located a copy in her records. Ex. 1 Pl. Dep. Tr. 118:12-18.

       g.       ***Whether Diodato showed Plaintiff the Spiegel "beauty" pictures.*** Diodato

testified that, ███████████████████████████████████████████

███████████████████████. *See* Ex. 51, Diodato Dep. Tr. 10:21-11:3, 41:4-18, 246:23-247:15.

In an August 2014 email to her Wilhelmina agent when the two were trying to understand the

redacted release, Plaintiff wrote, "I never saw the [Spiegel] pics as [the Spiegel shoot] was intended

either for a catalog or online." Wolff Decl. Ex. E at WIL108. And Diodato's 2015 account notes

███████████████████████████████████████ but never mentions

offering her copies of the Spiegel shots. *See* Ex 7 at BDP19.

        h.    **Diodato's reason for using the pseudonym Adrianna Williams.** Diodato



testified that ██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████   *See* Ex. 51, Diodato Dep. Tr. at 224:2-8. He also testified, however, that ████████

███████████████████████████████████████████████

██████████████████████████████  *id.* at 221:5-8.

    73.    Illogical events and questionable statements relating to Diodato and his story

include the following:

        a.    **Miller's needing to retrieve a release from Diodato's office.** According to

Hilfiker, Diodato decided to seek Plaintiff's release days before the shoot happened. *See* Wolff

Decl. Ex. C ¶ 4. In 2015, Diodato said he ███████████████████████

███████████████████. *See* Ex 7 at BDP19. Yet, Diodato testified ██████████████

██████████████████████████████  Ex. 51, Diodato Dep. Tr.

30:14-17.

        b.    **The Release's strange witnesses.** Max Miller and Linda Hilfiker are two of

Diodato's most trusted confidants and, between 2009 and 2013, witnessed his model releases more frequently than anyone else. *See infra* ¶ 78(e). Hilfiker swears she "sat around the table as the Model Release was signed," Wolff Decl. Ex. C ¶ 5, and Miller avers he "recall[s] sitting at a table in the studio with several other people," and "was present when the Model Release was signed." Wolff Decl. Ex. B ¶ 6. It makes no sense, then, that Diodato would ask to witness the release instead a still-unidentified intern, and stylist he had never or rarely worked with before. This is especially troubling where Benward's declaration cleverly avoids swearing that she actually witnessed Plaintiff sign the Release—and even more so where Defendants are now refusing to produce her for deposition claiming she lacks relevant knowledge.[2] And it becomes downright suspicious where no one has been able to identify the other witness since Plaintiff first raised questions in 2014, yet Hilfiker and Miller claim to remember seeing the witnesses sign the release, *see* Ex. 51, Diodato Dep. Tr. 269:10-24, 275:15-277:11; *compare* Ex. 7 at BDP19 (Diodato writing

███████████████████████████████████████████████████████

██████████████); Wolff Decl. Ex. D ¶ 6 (Plaintiff "signed her name before the witnesses signed their own names"); Wolff Decl. Ex. B ¶ 6 (Plaintiff "signed her name, and then the witnesses . . . also signed").

        c.      ***Diodato's claimed closeness with Ms. Passelaigue (justifying his rare personal involvement in obtaining her release) and other models.*** On more than one occasion

---

[2] Just after the lawsuit was filed, Diodato emailed Benward, ████████████████████████████████████
████████ Ex. 51, Diodato Dep. Tr. 18:11-16, his email ███████████████████████
███████████, suggesting the two had spoken, perhaps by phone, prior to their email exchange. A true and correct copy of Diodato's email to Benward, produced by Diodato bearing production number BDP25, is attached hereto at <u>Exhibit 55.</u> Because Defendant designated this document "CONFIDENTIAL," pursuant to the Protective Order, Plaintiff moves to file this document under seal.

that Diodato's behavior was questioned by a model, he claimed to have had a close relationship with her, and to be surprised and hurt by her reaction. *See* Ex. 51, Diodato Dep. Tr. 68:22-25

███████████████████████████████████████████████████████████████████

██████████████████); *id.* at 77:3-16 (███████████████████████████████

████████████████████████████████████); *id.* at 151:3-153:9

(████████████████████████████████████████████████████████████████████

████████). This seemingly feigned familiarity infects Diodato's communications about Ms.

Passelaigue. He photographed her once in 2003, ███████████████████████

██████████████████████████████████, *id.* 257:11-24,

again in 2004, and a third time in 2009. Plaintiff alleged that, in 2009, she did not remember him.

Compl. ¶ 35. And she testified she remembered "the photographer was an odd person that had

never been on the team before whom I now know as Bill Diodato." Ex. 1, Pl. Dep. Tr. 123:12-15.

Diodato ███████████████████████████████████████. Ex. 51,

Diodato Dep. Tr. 252:14-22. Yet, in 2015, Diodato wrote ███████████████████

██████████████████████ Ex. 7 at BDP19.

      d.   ***The importance of the description of shoot on Plaintiff's release.*** Diodato

testified that ███████████████████████████████████████████████████

██████████████████ being released, Ex. 51, Diodato Dep. Tr. 111:23-25, but also admits that

██████████████████████████████. *Id.* at 267:11-14. Elsewhere, he

testified that ███████████████████████████████████, *id.* at 115:18-

116:7; 120:11-121:4, █████████████████████ i.e. long after the 2009 Spiegel

shoot, since ███████████████████████████████████, *id.* at

121:5-17.

74.     The day after Diodato's deposition, October 25, 2018, the parties mediated before the Hon. Kathleen Roberts (Ret.). They did not settle, but at the end of the day, Defendants presented a final offer, and the parties later agreed Plaintiff could have until Monday, October 29, 2018, at 9:00 a.m. EST to accept or reject it. She rejected it on Sunday, October 28, at around 10:00 p.m. EST.

75.     Attached hereto as Exhibit 56 is a true and correct copy of an October 29, 2018 notice of intent to serve document subpoenas that my office served on Defendants, after which my office served, through counsel, the subpoenas themselves.

76.     Attached hereto as Exhibit 57 is a true and correct copy of an email chain dated October 29 – November 5, 2018, between counsel for the parties, with the subject line, "Passelaigue v. Getty Images (US), Inc. et al. – Outstanding discovery matters."

77.     Attached hereto as Exhibit 58 is a true and correct copy of an email chain dated November 8-9, 2018, between counsel for the parties, with the subject line, "Passelaigue v. Getty Images (US), Inc., et al. – Responses to subpoenas." As of the date of this declaration, Defendants' counsel have not responded to my request on November 9 that they "either provide a [deposition] date [for Lauren Benward], or state that you refuse to produce her so that we may proceed accordingly."

78.     Defendants in this case produced 156 substantively distinguishable model releases.[3] My office reviewed all model releases produced by defendants to deduplicate, organize, and identify trends across the production. Attached hereto as Exhibit 59 is an exhibit comprised of

---

[3] Defendants produced approximately 200 total model releases. After removing exact duplicates, my office identified 182 releases for review. A subset of these were distinguishable only on the basis of non-substantive differences, such as the inclusion of a model's birth year on one version of two otherwise identical releases, and were also removed. The analysis in this declaration was made based on a review of the 156 releases identified as substantially unique documents.

true and correct copies of these releases, as produced by Defendants, appearing in numerical order by production number, with Getty's production first, then Diodato's. Because Defendants designated these documents "HIGHLY CONFIDENTIAL," pursuant to the Protective Order, Plaintiff moves to file these documents under seal. A review of the releases demonstrates the following.







79.     Plaintiff has developed substantial evidence that other professional models and putative class members have been similarly victimized by Diodato.

80.     ***Lucia Fiala.*** In April 2015 Lucia Fiala forwarded to Ms. Passelaigue an April 2008 email chain between model Lucia Fiala and Bill Diodato (then later his staff) in which Ms. Fiala, after having discovered her photo being used in a "major ad for a mineral water in the Czech and Slovak Republic," accused Diodato of being "so desperate, that you chase the models at the photoshoots with some strange contracts written under German law and then sell the pictures to the European agencies." Ex. 11 at P38. Diodato responded, "[a]ssuming [Fiala's] image is being sold in the stock arena," and stating that it "is a reality of our ever changing business" that "many agents contact photographers looking for images that are sitting in the filing cabinets so they may sell them." *Id.* at P37. Ms. Fiala then stated, "[a]s much I remember from that shoot you asked me to sign the release so you can use the images for your web site." *Id.* at P36. And she told Diodato that "[f]inding myself in the ad, that basically says, that I look good for being 97 years old because I drink the mineral water was humiliating. Not to mentioned [sic], that I wasn't paid for it, because

you scammed me…" *Id.* Finally, Ms. Fiala noted, "I know you call yourself an artist with a great

reputation, my own experience, however, is different. I've never met a photographer that did

anything even remotely similar…" *Id.* at P34. Later, in April 2015, Ms. Fiala told Ms. Passelaigue:

> I found out in 2008, when at home (in Slovakia) i found myself promoting a mineral
> water. I had no idea what the hell was going on and contacted the mineral company
> through my lawyer at home. they nastily came back to me telling me that they
> bought the image and threatening me to sue for defamation (really interesting).
> when I got back to Bill, he sent me something I signed in 2006 when shooting Good
> Housekeeping with him [ . . . ] that being said, I actually did sign smth – i was quite
> stupid and he gave me this release at the photoshoot claiming he needed it for
> himself. since it has been quite some time, i do not remember exactly what he
> explained to me, if i knew what he'll do, i would never sign anything.

Ex. 12 at P824. Another email from Ms. Fiala to Ms. Passelaigue noted, "Yes, there are many

similarities, he pretty much told me the same. When you look at that release that I signed, to me it

looks put together and photocopied later, however, at that time, it was very hard to fight back." *Id*

at P826.

81.     ***Phil Bram.*** Mr. Bram also described to Ms. Passelaigue his experience with

Diodato. "I had no idea that he slipped that form into the release that day. I was shooting up to 3-

4 jobs a week then and he put one past me. Dana reamed me out for it, for not paying attention,

but it was a sinister move." Previously, Mr. Bram had told Wilhelmina's counsel, Ali Grace, in an

email about "Gillette Unauthorized Use" of his photo, that "[t]his has been a thorn in my side for

sometime." Ex. 12 at P846-7. Emails sent in 2010-2011 between Karen Medina of Wilhelmina

Models and Bill Diodato noted that Mr. Bram's " ███████████████████████████████████

███████████████████████████████████████████ ". A true and correct

copy of the communications between Karen Medina and Bill Diodato, produced by Defendant Bill

Diodato bearing production number BDP49-52, is attached hereto as <u>Exhibit 60</u>. Because

Defendant designated this document "CONFIDENTIAL," pursuant to the Protective Order,

Plaintiff moves to file this document under seal.

82.    **Simone Awor.** After seeing nude photos of herself on Corbis (another stock photography company that previously offered additional Bill Diodato images later acquired and offered for license by Getty) appearing under the name "Adrianna Williams," model Simone Awor wrote, "I remember this shoot. It was for some beauty product and they specifically said the final images used would be implied nudity only. My nipples and full rear would Not be shown." Ex. 23, P882-83 at P882. Nor does Simone Awor's model release ███████████████████████ ███████████████████████████████████████████. Ex. 33, at BDP46.

83.    **Haley Higgins.** In 2015, after Ms. Higgins discovered her photos on Getty, she contacted Getty stating "████████████████████████████████████████ ████████████████ Ex. 39 at GI1104. Ms. Higgins also stated that the model release "█ ████████." *Id.* at GI1102. Diodato, however, refused to remove the photos stating that █ ████████████████ *Id.* at 1101. Ms. Higgins later informed Plaintiff of her experience stating, "My photos are for sale on Getty (without my consent) as well." Ex. 21 at P879. She continued, "The photographer is BILL DIODATO, he uses the 'alias' Adrianna Williams as a fake name on their website. . . . I never remember Bill telling me he would use my image for this! I'm upset about it." *Id.* at P880. Haley Higgins's model release ███████████████ ██████ Ex. 37 at GI576.

84.    **Mariel Booth.** In an August 2017 email to Ms. Passelaigue, Ms. Booth states, "I know that Bill Diodato sold my images to Getty without my knowledge, which is highly irritating and disappointing, because I knew him on a personal level and he still 'duped' me. . . . I'm pretty sure he tricked me into signing a waiver at the shoot in question. I vaguely remember being convinced to sign something by him and his ex wife. I never usually sign paperwork at a shoot but.. I trusted him, ha!!" Ex. 32 at P929. She subsequently noted that "when I (may have) signed

the release- he definitely did not say it was for stock photography rights- he said it would be used for his personal website, etc. but I should have read the fine print. He's a jerk." *Id.* at P928. Ms. Booth also provided more details about her experience:

> The shoot was for sunglasses for an eyewear magazine. Then we did some (a lot) of "test" shots for "us" which he never gave to me. I basically worked for free and gave him free images of myself under the the understanding that he would provide me with copies for my book. When I asked him about it in person a few months later he laughed and said he was disorganized and he'd probably never edit them or give them to me. Great guy. Class act.

*Id.* ███████████████████████████████████████████████████████, Exs. 36, 38 [GI570, GI704]. Diodato also submitted *identical* releases for two different sets of photos, submitted a year and a half apart, and from at least two different photo shoots, as one is a series of photos modeling different glasses—showing Ms. Booth with shoulder length blonde hair and minimal makeup, Ex. 34, while the other pictures Ms. Booth wearing formal gowns, different wigs or formal updos, extravagant jewelry, and much more dramatic makeup, Ex. 35. Diodato also testified ██████████████████████████. Ex. 51, Diodato Dep. Tr. at 200:20-201:13. Indeed, in submitting the photographs to Getty, Diodato indicated that the two sets of photos had different "created dates," one in September 2005 and the other in February 2013.

85.   ***Zoe Sulmont, Alma Vancauwenberghe, Kira Aubier-Hatch, and Ella Leila.***
These young girls participated in a photo shoot for Kid-in (an online fashion magazine focusing on children), from which Diodato later submitted to Getty. Alice Bertay, a New York based stylist with a successful career in the fields of fashion and advertising, contacted Diodato to tell him that ████████████████████████████████████████████████████████████ ████████████████████████. Ex. 40 at GI1479-80. Diodato avoided any direct contact with Ms. Bertay, but had his employee, Amaury, ████████████████████. Ms. Bertay responded to Amaury that ██████████████████████████████████████████████████

- 25 -



*Id.* at GI1478 (emphasis added). Ms. Bertay also made clear that ████████████████ ████████████████████████████ *Id.* at GI1479.

86.    ***Karol Marie.*** After learning that her photographs were on Getty under the name "Adrianna Williams," Ms. Marie stated, "I gave no permission for anyone to have selling rights to these photos. I also do not know this photographer." Ex. 19 at P874.

87.    Much of the original Complaint is well supported by evidence in the case. Attached hereto as <u>Exhibit 61</u> is a table comparing the Complaint's allegations to supporting evidence.

88.    Attached hereto as <u>Exhibit 62</u> is a true and correct copy of an agreement between Plaintiff and Proctor & Gamble, bearing production numbers P5-9. Because Plaintiff designated this document "CONFIDENTIAL" pursuant to the Protective Order, Plaintiff moves to file this document under seal.

89.     Attached hereto as <u>Exhibit 63</u> is a true and correct copy of website printouts showing clients and photographers Plaintiff has modeled for, bearing production numbers P10-14.

90.     Attached hereto as <u>Exhibit 64</u> is a true and correct copy of evidence of payments Plaintiff has received for modeling jobs, bearing production numbers P22-23, P40-42, P45-48, P49-52, P104. Because Plaintiff designated these documents "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" pursuant to the Protective Order, Plaintiff moves to file these documents under seal.

91.     Attached hereto as <u>Exhibit 65</u> is a true and correct copy of Plaintiff's agreement with Elite Modeling Agency, bearing production numbers P24-30. Because Plaintiff designated this document "HIGHLY CONFIDENTIAL" pursuant to the Protective Order, Plaintiff moves to file this document under seal.

92.     Attached hereto as <u>Exhibit 66</u> is a true and correct copy of agreements between Plaintiff's agency, Karin, and Clinique, for Plaintiff's modeling services, bearing production numbers P53-85. Because Plaintiff designated this document "HIGHLY CONFIDENTIAL" pursuant to the Protective Order, Plaintiff moves to file this document under seal.

93.     Attached hereto as <u>Exhibit 67</u> is a true and correct copy of an article titled "EXCLUSIVE INTERVIEW: French Supermodel ELODIE PASSELAIGUE," bearing production numbers P479-83.

94.     Attached hereto as <u>Exhibit 68</u> is a true and correct copy of a February 9, 2004 calendar entry for "Clinique → test for aquarium shot," bearing production number P4. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

95.     Attached hereto as <u>Exhibit 69</u> is a true and correct copy of an April 2015 email

between Cyrus Dugger and Nancy Wolff, bearing production number P388. Although Plaintiff initially designated this document "CONFIDENTIAL," she is withdrawing her designation and filing this document publicly.

96.     Attached hereto as <u>Exhibit 70</u> is a true and correct copy of email communications between Plaintiff and Doreen Castonguay, bearing production numbers WIL218-19.

97.     Neither LOJF or, as far as I know, Mr. Canova, has ever been sanctioned under Rule 11. To the contrary, two federal judges have recently opined favorably on LOJF's candor and professional ethics.

98.     Recently the Northern District of California's Honorable Vincent Chhabria—as well as defense counsel—specifically acknowledged LOJF's candor in pleading at a recent hearing on a motion to dismiss a class action involving Toyota automobiles. The Court stated "it's absolutely to your credit from an ethical standpoint and a standpoint of being a professional that you have explained the situation", and defense counsel added "I completely agree [that] Mr. Fitzgerald . . . was responsible in pleading what he knows." A true and correct copy of excerpts from the September 27, 2018 hearing transcript are attached hereto as <u>Exhibit 71</u>, with the relevant portions appearing at 14:16-18 and 22:1-3.

99.     Similarly, during an April 2018 final approval hearing in which an objector asserted LOJF had a conflict of interest based on its consulting with an ethics attorney regarding a potential conflict, the Honorable Audrey G. Fleissig opined of LOJF, "the fact that an attorney consults with someone to make sure that they are on solid ground is not an admission of a conflict. That is a lawyer taking prudent steps when they have an obligation to a class. . . . So I take that as a sign of responsible behavior by class counsel . . . ." A true and correct copy of an excerpt from the April 17, 2018 hearing transcript is attached hereto as <u>Exhibit 72,</u> with the relevant portion appearing at

58:11-18.

## Plaintiff's Request for Fees

100.    Any competent attorney recognizes the seriousness of being charged with a Rule 11 violation, and the attention sometimes required to rebut such a charge. From the time Defendants served their motion on October 29, 2018, LOJF has been working virtually non-stop on opposing the motion.

101.    Because Defendants seek dismissal of Plaintiff's action with prejudice, their motion acts effectively as a Rule 56 motion for summary judgment. Demonstrating that Plaintiff's claims were not lacking evidentiary support required us to cull, examine, distil, and summarize a substantial evidentiary record during the last two weeks. Part of this included reviewing Diodato's deposition transcript, which we only first received on November 5. The attention given to this matter has deprived LOJF's attorneys of substantial time that could have been dedicating to litigating the merits of this and other cases. For the 14 days after Defendants filed their motion, I personally worked on this motion for 11.5 or more hours during 7 of those days. Because the nature of the work performed opposing the motion is apparent from the Rule 11 opposition and supporting papers themselves, I am not filing the firm's timekeeping records (which reflect essentially legal research, reviewing the evidence, and brief drafting), but we will be happy to submit the records at the Court's requests.

102.    As a result, LOJF's lodestar through November 12, 2018 as it relates to opposing defendants' Rule 11 motion is $97,759, as set forth below. This does not include the time LOJF spent today, November 13, completing the motion and preparing to file (the entire day for all attorneys and staff).

| Timekeeper | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Jack Fitzgerald | Partner | $650 | 113.5 | $73,775 |

| Timekeeper | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Trevor Flynn | Associate | $500 | 9.8 | $4,900 |
| Melanie Persinger | Associate | $440 | 26.4 | $11,616 |
| Val Erze | Paralegal | $195 | 38.4 | $7,488 |
| | | | **Total** | **$97,759** |

103.    The rates set forth above are, for myself, Mr. Flynn, and Ms. Persinger identical to

rates approved on September 5, 2017 by the Hon. A. Kathleen Tomlinson, Magistrate Judge for

the Eastern District of New York in *Elkind v. Revlon Consumer Products Corporation*, Case No.

cv-14-02484-JS-AKT, a consumer fraud class action. True and correct copies of the motion for

fees and the Order of Judge Tomlinson, approving these rates, are attached hereto as <u>Exhibit 73</u>.

104.    These rates are also *lower* than the recently approved rates for myself, Mr. Flynn,

and Ms. Persinger by the Hon. Audrey G. Fleissig, District Court Judge for the Eastern District of

Missouri, who approved rates of $715 per hour for Mr. Fitzgerald, $550 per hour for Mr. Flynn,

and $485 per hour for Ms. Persinger for work done in the Los Angeles Market in the matter of

*Rawa et al. v. Monsanto Company*, Case No. 4:17-cv-01252-AGF. True and correct copies of the

Supplemental Declaration of Jack Fitzgerald in Support of Motion for Attorneys' Fees, Costs, and

Incentive Awards and the Court's Order granting final approval are attached hereto as <u>Exhibit 74</u>.

105.    Regarding Ms. Erze's rate, in *Ferrick v. Spotify USA Inc.*, 2018 WL 2324076, at

*10 (S.D.N.Y. May 22, 2018), the Court approved rates of between $125-$275 for legal assistants,

paralegals, and summer associates, demonstrating that her rate of $195 per hour is reasonable.


I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge. Executed this 13th day of November, 2018, in San Diego, California.


By:    /s/ Jack Fitzgerald
       Jack Fitzgerald