# Exhibit 1

# ORIGINAL

1

1

2      UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK
3      ------------------------------------------X
       ELODIE PASSELAIGUE, on behalf of herself
4      and all others similarly situated,

5                                    PLAINTIFF,

6
                    -against-          Case No:
7                                      16-cv-01362

8      GETTY IMAGES (US), INC., GETTY IMAGES,
       INC., BILL DIODATO PHOTOGRAPHY, LLC, and
9      BILL DIODATO,

10                                   DEFENDANTS.
       ------------------------------------------X
11

12                    DATE:  August 13, 2018

13                    TIME:  10:30 A.M.

14

15

16              CONFIDENTIAL VIDEOTAPED

17     DEPOSITION of the Plaintiff, ELODIE

18     PASSELAIGUE, taken by the Defendants,

19     pursuant to a Court Order and to the

20     Federal Rules of Civil Procedure, held at

21     the offices of Cowan, DeBaets, Abrahams &

22     Sheppard, LLP, 41 Madison Avenue, New York,

23     New York 10010, before Joshua B.

24     Edwards, RDR, CRR, CLR, a Notary Public of

25     the State of New York.

E. PASSELAIGUE - Confidential

1
2    to mark as Defense Exhibit 1 for

3    identification.

4            (Defense Exhibit 1, Complaint,

5        marked for identification.)

6        Q.    Do you recognize this document?

7    You can flip through it.  Take your time.

8        A.    (Perusing.)  It is one of the

9    many documents that were drafted on my

10   behalf.

11       Q.    Did you review it at any point

12   before it was filed?

13       A.    Sure I did.

14       Q.    And is everything in it

15   accurate, to the best of your knowledge?

16       A.    To the best of my knowledge.

17   But I'm just scanning through it right now.

18   So unless I read it all --

19       Q.    But to be clear, you still

20   stand behind all of the allegations in the

21   Complaint?

22       A.    I still stand behind all of the

23   allegations in the Complaint, yes.

24       Q.    I am going to hand you two

25   documents that we will mark for

```
1              E. PASSELAIGUE - Confidential
2      identification as Defense Exhibit 2,
3      collectively.  These are both just the
4      document demands.
5                  (Defense Exhibit 2, document
6              demands, marked for identification.)
7          Q.    Do you recognize these
8      documents?
9          A.    For the purpose of this
10     interrogation, I am going to say yes.  But
11     again, I'm scanning.
12         Q.    You can look through them.
13         A.    (Witness perusing.)
14         Q.    Do you recognize them?
15         A.    I do recognize the documents.
16         Q.    Okay.  Do you know what they
17     are?
18         A.    One is a response to the
19     objections, and the other one is an
20     objection to the request of documentation.
21         Q.    Did you collect documents in
22     connection with this lawsuit?
23         A.    I had to.
24         Q.    So that's a "yes"?
25         A.    That's a "yes."
```

1              E. PASSELAIGUE - Confidential

2          Q.     Where did you search for those

3      documents?

4          A.     In my archives.

5          Q.     Can you tell me what that

6      means.

7          A.     That means I keep an archive of

8      my contracts, for instance.  I have an

9      archive of call sheets.  I have an archive

10     of pictures.  Yeah.

11         Q.     Is this a physical archive or

12     an electronic archive?

13         A.     It's physical.

14         Q.     Did you have any computer files

15     that you searched?

16         A.     Back in 2004, I did not.

17         Q.     Do you have one now?

18         A.     Of the documentation?  Some of

19     documents are scanned, but most of my

20     archive is physical.

21         Q.     You mentioned an archive of

22     call sheets.  Do you recall whether you

23     produced those call sheets in connection

24     with this lawsuit?

25         A.     I don't have call sheets for

```
 1              E. PASSELAIGUE - Confidential
 2     all of the jobs that I have done, because
 3     we are looking at a career of 17 years.
 4     You need to remember that, back then, we
 5     weren't doing things via e-mail.  I needed
 6     to go to my agency to pick up my call sheet
 7     physically.  It wasn't sent to me via
 8     e-mail.  So some of these papers were
 9     discarded.  Some of them were, for some
10     reason, kept.
11         Q.    The ones that were kept, do you
12     recall whether you provided those to your
13     attorney to send to us?
14         A.    I have -- I have one, I
15     believe, for Avon.  And I have a digital
16     call sheet for Spiegel.
17             MR. SHOLDER:  To the extent
18             that any of these call sheets weren't
19             produced, we would ask that they be
20             produced after the deposition.  I
21             don't recall receiving a digital call
22             sheet.
23             MR. FLYNN:  Okay.  And I can't
24             represent whether or not that has
25             been produced or whether there was
```

1            E. PASSELAIGUE - Confidential

2        any relevant documents to produce.

3        But we will certainly take a look.

4            MR. SHOLDER:  That's fine.  We

5        can talk offline.

6        Q.     You mentioned that some

7    documents may have been discarded.  Was

8    that just your normal process of cleaning

9    out your records?

10       A.     Not pertaining to this case.

11       Q.     Okay.

12       A.     Sure.  If you have go-sees on a

13   daily basis, you are not going to keep the

14   call sheet.  It's not a job.  It's a

15   go-see.  So you have a call sheet declining

16   how many appointments you will have during

17   the day.  It's called a call sheet as well.

18            And it could be just me meeting

19   with a prospective client that I am not

20   necessarily going to work with.  Those

21   definitely get discarded.

22       Q.     What's a go-see?

23       A.     Go-see is an appointment where

24   I am going to come and see you and you are

25   going to see my face and you are going to

1                    E. PASSELAIGUE - Confidential

2      decide if you like me or not for your

3      prospective project.

4           Q.     Is that a term of art in the

5      industry?

6           A.     Yeah, it is.

7           Q.     Did you instruct anybody else

8      to search their records for documents that

9      might have been responsive in this case?

10          A.     I had a hard time -- yes, I

11     did.

12          Q.     Who did you speak to about

13     that?

14          A.     I spoke to foreign models.

15          Q.     Anybody else?  Any of your

16     former agents?

17          A.     I requested help from Karin

18     Models who was supervising the Clinique

19     campaign for me.  But they have no

20     archives.

21          Q.     Do you have a manager?

22          A.     No, I don't.

23          Q.     Okay.  Was there anybody else

24     that you instructed or spoke to with

25     respect to collecting documents?

```
 1              E. PASSELAIGUE - Confidential
 2        A.     That I recall, it was Ford
 3   because they were in charge of Spiegel, and
 4   it was Karin Models, now MC Squared, with
 5   -- regarding Clinique.
 6        Q.     So Karin Models doesn't exist
 7   anymore?
 8        A.     When I was with them they were
 9   Karin Models, and they have become MC
10   Squared.
11        Q.     Do you know if that was just a
12   renaming or --
13        A.     It's a parting of a bigger
14   corporation that was international.  And
15   the French head office decided they didn't
16   want to be associated with the American
17   office.
18        Q.     Is MC Squared the American
19   office now?
20        A.     Yes.
21        Q.     Are the documents you produced
22   complete and accurate, to the best of your
23   knowledge?
24        A.     Yes.
25        Q.     I am going to hand you what we
```

1              E. PASSELAIGUE - Confidential

2        Q.    Are there other agencies that

3   are, for lack of a better term, lower-tier?

4        A.    There are, but there are also

5   other high-caliber agencies.   There are

6   both.

7        Q.    What do you consider the

8   agencies that you have been represented by?

9   What kind of top-tier or --

10       A.    Oh, yeah.

11       Q.    Yeah?

12       A.    Oh, yeah.   They are at the top.

13             MR. SHOLDER:   I am marking for

14        identification as Defense Exhibit 11

15        a copy of a Model Release.

16             (Defense Exhibit 11, Model

17        Release, was marked for

18        identification as of this date.)

19       Q.    Do you recognize this document?

20       A.    I do recognize this document,

21   yes.

22       Q.    This is a true and correct

23   copy, to the best of your knowledge?

24       A.    It's the copy that I was

25   provided -- sorry.

1          E. PASSELAIGUE - Confidential

2               MR. FLYNN:  Sorry, I am just

3          going to interpose a late objection.

4          It calls for a legal conclusion.  But

5          continue.

6     A.     It's the second copy that I

7  was -- that my agent, I believe, obtained

8  from Getty Images.

9     Q.     The second copy?

10    A.     Yes.  The first one was -- had

11  paragraphs that were blanked.

12    Q.     This copy of the release came

13  from your agency, to the best of your

14  recollection?

15    A.     I forget if it was the first

16  agent that worked on the case or if it was

17  my agency that eventually got it; one of

18  the two.  But it was the second release

19  that we obtained.  The first one did not

20  make mention of Bill Diodato at all.  It

21  was all blanked out on that side.  I had

22  other things blanked out, but I forget.

23               MR. SHOLDER:  Marking for

24          identification as Defense Exhibit 12

25          another copy of the model release.

```
 1              E. PASSELAIGUE - Confidential
 2                  (Defense Exhibit 12, Model
 3            Release, was marked for
 4            identification as of this date.)
 5        Q.    (Counsel handing.)
 6        A.    Thank you.
 7        Q.    You're welcome.
 8              Do you recognize this copy of
 9    the model release?
10        A.    No.  I was under the impression
11    it was the other side that was blanked out.
12    I have to look in my archives.
13        Q.    Why don't I show you the one
14    that I think you are talking about and we
15    will go from there.
16        A.    Oh, yes, that's it.
17              MR. SHOLDER:  We will mark this
18            Defense Exhibit 13.
19                  (Defense Exhibit 13, Model
20            Release with redactions, was marked
21            for identification as of this date.)
22        Q.    Do you recognize this copy?
23        A.    Mm-hmm.
24        Q.    Is this the copy of the model
25    release that Getty Images provided to you
```

1        E. PASSELAIGUE - Confidential

2    initially?

3        A.    Yes, it is, the copy that left

4    us very puzzled as to who had taken -- who

5    had taken those pictures, who had taken the

6    one picture we could not identify.

7        Q.    If you go back to D. 12, the

8    one I just gave you before, do you have any

9    idea where this release came from?

10        A.    It has to have come from either

11    a photographer or Getty.

12        Q.    Did you have a copy of this

13    release at all --

14        A.    No.

15        Q.    -- at any time?

16        A.    No.

17        Q.    Did you check your records?

18        A.    Yeah, I did.

19        Q.    We can look back at D. 11,

20    which is the unredacted version.  That's

21    your signature on the line that says "for

22    model only"?

23        A.    Mm-hmm.  Looks like my

24    signature, yes.

25        Q.    Well, it looks like your

1          E. PASSELAIGUE - Confidential
2     signature and is, I guess, are two
3     different things.  So do you believe that
4     this is, in fact, your signature?
5          A.    It looks like my signature
6     signed in a hurry, so yes, I believe it
7     would be my signature, but it would have
8     been signed in a very big hurry.  If you
9     compare to the contract, the Ford Model
10    contract, my last name is legible.
11         Q.    Did you read the release before
12    you signed it?
13         A.    I would think I would have if I
14    signed it.  I usually read anything that I
15    sign.
16         Q.    Do you have a specific
17    recollection of about whether you signed
18    it -- I'm sorry, about whether you read it?
19         A.    Do I have a specific
20    recollection?  No, I don't have a specific
21    recollection of the date and time when this
22    was actually signed.
23         Q.    If you could take a look at
24    Exhibit D. 4, back at the beginning of the
25    file somewhere.  You can put that one aside

```
 1              E. PASSELAIGUE - Confidential
 2    for now, now that I think of it.
 3                Let's talk a bit about the
 4    Clinique test shoot.  Can you tell me your
 5    recollection of that day.
 6         A.    Yes.  I remember the photo
 7    studio was Fast Ashleys in Brooklyn.  It
 8    was -- it never happened for us to shoot in
 9    New York.  So it was the only shoot that
10    Clinique ever organized.  It was not meant
11    to produce an outcome that would use --
12    that would be used for commercial purposes.
13                It was more of a -- it was more
14    of a test, because the concept was
15    difficult to take pictures of.  The concept
16    was to have the model immersed in a
17    full-body-sized fish tank.  So you needed
18    to have a photo studio that was big enough
19    to accommodate that fish tank, that
20    quantity of water too, because it's very
21    nice but you have to empty that tank.
22                So you needed to have that, see
23    how the light reflects and distorts.  As
24    you can see in this the picture, the bottom
25    half, the immersed part is much wider than
```

1                E. PASSELAIGUE - Confidential

2       the top half.  So all of these details are

3       the kind of details we were looking to --

4       to capture prior to actually having the

5       whole team present and on the clock.

6                    I mean, it was not my decision,

7       clearly.  It was the decision of the art

8       director.  But that's what they were

9       looking to test is how feasible that

10      concept was.  The photographer for Clinique

11      was not present that day on the shoot,

12      which was unheard of.  I don't know why.

13      The makeup artist was not present.  The

14      hair stylist was not present.

15                   Everybody was based in Paris.

16      So it was a reduced team:  The art

17      director, myself, Merrily and clearly Bill

18      Diodato.  I don't remember if there was

19      anybody else that was there.

20          Q.    Who is Merrily?

21          A.    Merrily was in charge of -- I

22      think her title was art buyer, but she was

23      in charge of hiring models.

24          Q.    For Clinique?

25          A.    For Clinique.

1                E. PASSELAIGUE - Confidential

2        Q.    Do you remember if there was

3    anybody else present other than who you've

4    already told me?

5        A.    I don't remember anybody else

6    being present.  But I know for sure the

7    regular actors of that story, the makeup

8    artist, hair stylist, photographer were not

9    present.  The model maker was not present,

10   either.

11       Q.    How long did that shoot last?

12       A.    I don't know.  I want to say a

13   whole day, but it could have been a short

14   day.  I'm not sure.

15       Q.    So you told me the name of the

16   studio.  Do you remember what the studio

17   looked like?

18       A.    Well, it's kind of a legendary

19   studio because it used to be a car garage

20   for collectible vehicles.  And it was

21   turned into a studio.  And at the time it

22   still had some of the vehicles in there.

23             So, yeah, and also I didn't

24   know how to get there because I never

25   traditionally shot in Brooklyn for

```
1              E. PASSELAIGUE - Confidential
2    anything.  Again, they had chosen the
3    studio for specific reasons.  Usually we
4    shot in Manhattan.
5         Q.    Do you remember anything else
6    about the shoot?
7         A.    What do I remember?  I didn't
8    have proper hair and makeup.  I didn't even
9    remember there was a flower, but clearly in
10   the picture you can see there's a flower.
11   I remember the size of the tank.
12              I remember -- I remember the
13   photographer was an odd person that had
14   never been on the team before whom I now
15   know as Bill Diodato.  But that day, it
16   seemed to me like it was the first time I
17   have meeting him.  Time will tell that I
18   had worked with him prior, and I didn't
19   remember him.  What else?  I don't even
20   remember if we had lunch or not.  So that's
21   not helping us determine if it was a long
22   day or not.
23        Q.    That's okay.  Whatever you can
24   remember.
25        A.    I remember I was wearing a
```

1          E. PASSELAIGUE – Confidential

2     bathing suit.

3          Q.    I should hope so, in a tank of

4     water.

5          A.    I believe that's it.

6          Q.    What do you recall about the

7     June 2000 -- the June 11, 2009, Spiegel

8     shoot?

9          A.    Spiegel?  I forget the name of

10    the studio, but I can visualize it.  It's

11    one of those -- it's that one photo studio,

12    it might have been Sun Studios.  It's

13    located -- when you are in Midtown around

14    34th Street, you have, you have some kind

15    of, like, highway/tunnel exit or entrance

16    that passes by.  It was the top floor, I

17    think.  It was waist-down, meaning

18    unrecognizable, meaning my face was not

19    exposed and makeup was not supposed to be

20    applied.

21          It was, I know now, I don't

22    know if I would have recalled that just

23    from seeing the -- from seeing the picture,

24    I couldn't tell where it had been taken

25    from.  But I know now the Spiegel shoot was

```
 1              E. PASSELAIGUE - Confidential
 2   only a half day.  Um, clearly it was Bill
 3   shooting it, Diodato.
 4              What else do I remember?  There
 5   was a stylist on this job because clearly
 6   when you're doing waist-down, you need to
 7   have the pants fit correctly.  The emphasis
 8   is on that.
 9        Q.    Do you remember who the stylist
10   was?
11        A.    No idea.
12        Q.    Was anybody else present aside
13   from the photographer and the stylist?
14        A.    It was a big team.  I would
15   believe that the client would have been
16   present.  I think it was a pretty big team.
17   I don't remember it being a small team, but
18   I don't remember all the details of that
19   shoot anyway.
20              And I don't remember the names
21   of any -- I mean, I have had to think about
22   that shoot because of this case.  I don't
23   remember the names of the people that were
24   present.  They are not people that I worked
25   with regularly.
```

```
 1              E. PASSELAIGUE - Confidential
 2        Q.    Do you recall if there was
 3   anybody there, any photo assistant or any
 4   lighting technician?
 5        A.    There probably would have been
 6   because on that type of shoot, the
 7   photographer is not alone.
 8        Q.    When, approximately, would it
 9   have started in the morning?
10        A.    If it's a half day, we would
11   have started anywhere from eight o'clock to
12   nine o'clock in the morning.
13        Q.    And when you say "half day,"
14   what does that mean exactly?
15        A.    It means they don't need me for
16   the whole day.  They only need me until
17   they break for lunch.
18        Q.    Which would be about what time?
19        A.    12:00 or 1:00, noon or 1:00.
20   Typically on these shoots when they are
21   half day, one model is in the morning.
22   Another model or two other models are at a
23   different time.
24        Q.    Do you recall the circumstances
25   of signing this release?
```

1            E. PASSELAIGUE - Confidential

2        A.     No, I don't.

3        Q.     When did you first find out

4    about the Allergan ad?

5        A.     The year it ran, which right

6    now I can't even remember if it was 2013,

7    20 -- I have no idea.  I think it was

8    around 2013.  I can't even tell you the

9    time of the year.

10           What I can tell you is I was

11   working at Bergdorf Goodman and I had both

12   clients and models telling me, yay,

13   congratulations on your Botox ad.  And I

14   was like what?  Yeah, I saw you on the

15   Botox campaign.  That must be great.  And I

16   said it must be someone that looks like me

17   because I never worked for Botox before.

18   And I didn't think anything about it until

19   somebody actually handed me a screenshot.

20           And I was, like, yes, that is

21   actually me.  You are correct.  And then

22   that raised a big question, like, how did

23   that picture get appropriated by Botox,

24   which is what I thought it was at the time?

25           Turns out it is Brilliant

1            E. PASSELAIGUE - Confidential
2    Distinctions.  And who had shot the
3    picture, because if I'm not selling the
4    rights to that, clearly I don't have a
5    right to sell the picture.  But if -- if I
6    don't know who shot it, then I don't know
7    who had the right.
8            So I had to find out who had
9    taken the picture to find out who had the
10   right to sell the picture and/or which
11   client had ordered that image, because it
12   could have come from the client's part too.
13   It could have been the client or the
14   photographer.
15       Q.    You mentioned that clients and
16   models had come up to you and mentioned the
17   ad to you.  Do you remember who those
18   people were?
19       A.    I don't remember who it was.
20   It was someone that was working that day,
21   but I can't even remember the date, so to
22   backtrack that is a little difficult.  I
23   know I was working at Bergdorf Goodman very
24   clearly when it was first brought up to me.
25       Q.    Would it make sense that you

```
1              E. PASSELAIGUE - Confidential
2     found out in August of 2014?
3         A.     I was -- I found out much
4     earlier than the case was submitted, if
5     that's what you are --
6         Q.     Well --
7         A.     I don't know what August 2014
8     is referring to is what I should say.
9         Q.     I can show you the paragraph in
10    the Complaint, but I can represent
11    paragraph 39 of the Complaint indicates you
12    first learned of it in August of 2014.
13        A.     Okay.
14        Q.     I just want to confirm that's
15    still your recollection.
16        A.     I honestly don't remember the
17    exact year or date when I found out.
18        Q.     And you don't recall who told
19    you about it?
20        A.     Who told me?  The two people
21    that told me the very first time, I know
22    one was working at Bergdorf Goodman and I
23    know the other one was a model that was
24    working on a similar project at Bergdorf
25    Goodman.
```

```
 1              E. PASSELAIGUE - Confidential
 2                Are you aware of any other
 3    publications of this advertisement aside
 4    from it being on the Allergan website?
 5        A.    I'm not aware of any other.
 6        Q.    Did you reach out to Allergan
 7    to ask them to take your image off of their
 8    website?
 9        A.    The way I went about it was I
10    contacted Doreen from Wilhelmina who is no
11    longer at Wilhelmina.  She's retired.  But
12    she was my agent at Wilhelmina at the time.
13    And I said, look, I have a problem.
14    There's a picture of me being used for
15    Botox on this website called Brilliant
16    Distinctions.  And I have no idea who shot
17    it, who sold it.  I have never gotten paid
18    for it, so I don't know what -- where do we
19    start?
20                Doreen's first reaction was
21    that she knew who was the advertising
22    agency for Botox, and indeed I also knew
23    because I had gone to castings for that
24    casting company.  And it was -- she said it
25    was Grey Advertising and she would reach
```

```
 1              E. PASSELAIGUE - Confidential
 2     out to Grey and see from there if they had
 3     any idea how that photo was appropriated
 4     and who had shot it.
 5              Q.    So it's fair to say that the
 6     outreach to Grey or Allergan was through
 7     your agent?
 8              A.    At first, yes, it was
 9     definitely Doreen that called Grey.
10              Q.    Are you aware whether that
11     advertisement was subsequently taken down
12     off the website?
13              A.    I kept checking.  Eventually it
14     was taken down.
15              Q.    Do you know when that was?
16              A.    I don't.
17                    (Sneezing.)
18                    MR. SHOLDER:  Bless you.
19              Q.    Going back to the Spiegel
20     shoot, are you aware whether -- well, let
21     me withdraw that.
22                    Do you know someone by the name
23     of Linda Hilfiker?
24              A.    It rings a bell.  I can't place
25     it, but it seems like I know that last
```

# ORIGINAL

1

2  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
3  ------------------------------------------X
   ELODIE PASSELAIGUE, on behalf of herself
4  and all others similarly situated,

5                              PLAINTIFF,

6         -against-            Case No:
                               16-cv-01362
7
   GETTY IMAGES (US), INC., GETTY IMAGES,
8  INC., BILL DIODATO PHOTOGRAPHY, LLC, and
   BILL DIODATO,
9
                              DEFENDANTS.
10 ------------------------------------------X

11

12                  DATE: August 14, 2018

13                  TIME: 11:53 A.M.

14

15          CONTINUED VIDEOTAPED DEPOSITION

16 of the Plaintiff, ELODIE PASSELAIGUE, taken

17 by the Defendants, pursuant to a Court

18 Order and to the Federal Rules of Civil

19 Procedure, held at the offices of Cowan,

20 Debaets, Abrahams & Sheppard, LLP, 41

21 Madison Avenue, Suite 38, New York, New

22 York 10010, before Scott Torrance, a Notary

23 Public of the State of New York.

24

25

                              E. PASSELAIGUE

1
2       motivated by other things and the only

3       thing they knew I was doing was working on

4       this case.

5              So, I will definitely attribute

6       this case to having seriously injured

7       myself with the agency and -- yeah, I'm

8       going to leave it at that.

9          Q.    You were previously represented

10      by a different lawyer; right?

11         A.    In the very, very, very early

12      stage, I reached to -- I contacted the

13      model alliance who had referred me to a

14      lawyer, who was actually absolutely

15      inexperienced with dealing with that kind

16      of cases, and, um, that's going to make

17      somebody at Getty laugh, and laughed

18      telling me that he was worried that --

19         Q.    Well, hold on a second.  I

20      don't want you to tell me --

21         A.    Okay.

22         Q.    -- anything that's privileged.

23         A.    Okay.

24         Q.    Was this Cyrus Dugger?

25         A.    Absolutely.

# Exhibit 2



**Re: Here are the two brilliant distinction...**
Elodie PASSELAIGUE [elodiepass@hotmail.com]

**Sent:** Thursday, July 31, 2014 11:36 AM
**To:** Daureen Castonguay

Thank you do much Daureen!

Sent from my iPhone

On Jul 31, 2014, at 11:33 AM, "Daureen Castonguay" <Daureen.Castonguay@wilhelmina.com> wrote:

> This is exactly what I was thinking...the more girls I have spoken with, and them saying they never
> worked with her, I was coming to the same conclusion. I am going to call John
> from Grey to see if they happen to get a copy of the signed releases when they use a photo. My
> fear is/was that the girls sign or agents signed the photographers release at the time
> of the shoot. If that were the case, then it legally can be done...no matter what your wishes
> were...after we gather as much info as possible, I am going to speak with our in house
> attorney with regards to this...
> I will keep update you after I speak with John.
> Xo
> daureen

> **From:** Elodie PASSELAIGUE [mailto:elodiepass@hotmail.com]
> **Sent:** Thursday, July 31, 2014 11:22 AM
> **To:** Daureen Castonguay
> **Subject:** Re: Here are the two brilliant distinction...

> Thank you so much Daureen for locating this person. It is ironic because the only
> photographer I ever worked with in LA is Steve Earle - then again, people travel for
> work, of course.

> Please forgive me if you think that I am coming to a conclusion too soon. I have gone
> through "Mrs Williams" website and I found out that a lot of my girlfriends were on it, yet
> I found no picture of myself, and noticed that most portraits were not campaign worthy
> (more like testing shots, lighting shots, or before pictures, ie: before makeup application:
> very clean).

> Keeping that in mind, plus the fact that this person has sold a picture of me to Allergan
> with no regard to the rights to my personal image nor the fact that maybe I did not want to
> be associated to a product like Botox (ie: it is my decision to make whether I do or don't
> want to be associated with such brand as it can affect future work, never should a
> legitimate photographer own the right to dispose of my image that way). Keeping also in
> mind the fact that "she" has no legitimate website, ie: no
> "adriannawilliamsphotography.com", and that google searches link her strictly to websites
> that are platforms to display and retail her art, I believe very strongly that this person is a
> fraud, a "catfish".

> He/she could be a behind the scenes photographer that ends up taking the same pictures
> as the head photographer on set, he/she could also be an assistant taking behind the scenes
> pictures. ...I just do not believe that these pictures are legitimately his/hers to dispose of.
> This theory would then explain why no one remembers his/her name. Then again, that
> person could have invented him/herself the name "Adrianna Williams" to make an extra
> buck selling behind the scenes images to royalty free website, or even better, he /she
> could very well never have touched a camera in his/her life and have stolen all these
> images.

> Let me know your thoughts on this.                            WIL-0194

> Most grateful for your help,

Elodie.

Sent from my iPhone

On Jul 31, 2014, at 10:15 AM, "Daureen Castonguay"
<Daureen.Castonguay@wilhelmina.com> wrote:

> Okay sweetheart, further investigation, shows that she lives in California, it's crazy
> when you go to her sight and others like it (getty etc.) it seems like most of the
> photos on there are
> hers, yet no one remembers working with her.
> Xo
> d
>
> **From:** Elodie PASSELAIGUE [mailto:elodiepass@hotmail.com]
> **Sent:** Wednesday, July 30, 2014 8:01 PM
> **To:** Daureen Castonguay
> **Subject:** RE: Here are the two brilliant distinction...
>
> Hi Daureen!
>
> I checked my call sheets for the Silpada booking that occurred on April
> 24th/25th 2012 in Kansas City via Ford Miami, but the name of the
> photographer is not on it, so I called upon the agent that had made this
> booking for me and I am waiting for an answer.
>
> Elodie.
>
>
> > From: Daureen.Castonguay@wilhelmina.com
> > To: elodiepass@hotmail.com
> > Date: Wed, 30 Jul 2014 14:43:10 -0400
> > Subject: RE: Here are the two brilliant distinction...
> >
> > Hi Sweetheart
> > Please forgive me, I am truly going thru every booking and photo...
> > Just because you are wearing that necklace , what about the Spilada shoot
> > you did in Kansas City? (not thru us or I could check) Does that ring a bell.
> > Xo
> > d
> >
> > -----Original Message-----
> > From: Elodie PASSELAIGUE [mailto:elodiepass@hotmail.com]
> > Sent: Wednesday, July 30, 2014 2:04 PM
> > To: Daureen Castonguay
> > Subject: Re: Here are the two brilliant distinction...
> >
> > Hi Daureen!
> >
> > No, I didn't shoot any editorial prior to joining the agency. I was pregnant
> > right before and only did one maternity job for Ann Taylor Loft.
> >
> > Elodie.
> >
> > Sent from my iPhone
> >
> > > On Jul 30, 2014, at 1:07 PM, "Daureen Castonguay"
> > <Daureen.Castonguay@wilhelmina.com> wrote:
> > >

WIL-0195

> > Hi Elodie
> > Just thinking off the top of my head, did you happen to do any editorial shoots right before you came to Wilhelmina. ?? With your longer hair.
> > Xo
> > daureen
> >
> > -----Original Message-----
> > From: Elodie PASSELAIGUE [mailto:elodiepass@hotmail.com]
> > Sent: Monday, July 21, 2014 2:03 PM
> > To: Daureen Castonguay
> > Subject: Here are the two brilliant distinction...
> >
> > ...sections that feature my picture. I cannot recall whom might have taken this shot but I will keep looking through the material I have.
> >
> > Thank you for your help Daureen!
> >
> > Elodie.
> >



WIL-0196

# Exhibit 3



Office Outlook Web Access    Type here to search    This Folder ▼ 🔍    📖 Address Book    📑 Options    ❓    Log Off

📧 Mail
📅 Calendar
👤 Contacts

🗑 **Deleted Items** (3892)
📝 **Drafts** [1]
📥 **Inbox** (12)
Junk E-mail
📤 **Sent Items**

Click to view all folders ≫

📁 Manage Folders...

📨 Reply    📨 Reply to All    📨 Forward    📥 Move    ✖ Delete    🚫 Junk    Close    ◄ ► ⬆ ✖

### RE: Brilliant Distinctions Talent Help- Elodie Passelaigue

**Daureen Castonguay**

To help protect your privacy, some content in this message has been blocked. If you are sure that this message is from a trusted sender and you want to re-enable the blocked features, click here.

**Sent:** Monday, March 30, 2015 10:26 AM
**To:**    Elodie PASSELAIGUE [elodiepass@hotmail.com]

You are very welcome
Xo
d

**From:** Elodie PASSELAIGUE [mailto:elodiepass@hotmail.com]
**Sent:** Sunday, March 29, 2015 5:24 PM
**To:** Daureen Castonguay
**Subject:** Re: Brilliant Distinctions Talent Help- Elodie Passelaigue

Thank you so very much Daureen!

Elodie.

Sent from my iPhone

On Mar 29, 2015, at 3:07 PM, Daureen Castonguay <Daureen.Castonguay@wilhelmina.com> wrote:

> Hi Sweetheart
> Here is all the information you requested.  Scroll down and you will see the purchase
> information.
> Hope all is well.
> Xoxoxo
> daureen
>
> **From:** Bekiaris, John [mailto:jbekiaris@grey.com]
> **Sent:** Tuesday, July 29, 2014 7:32 PM
> **To:** Daureen Castonguay
> **Subject:** Fwd: Brilliant Distinctions Talent Help- Elodie Passelaigue
>
> Daureen-
> Please see below. The image was acquired as stock footage and paid for. Call me
> tomorrow if you have any questions.
>
> Sent from my iPhone
>
> Begin forwarded message:
>
>> **From:** "DeBuona, Kara" <kdebuona@grey.com>
>> **Date:** July 29, 2014 at 6:50:47 PM EDT
>> **To:** "Bekiaris, John" <jbekiaris@grey.com>
>> **Cc:** "Zenobi, Peter" <pzenobi@grey.com>, "Wanamaker, Sharon"
>> <swanamaker@grey.com>, "Schanck, Jacquelyn" <jschanck@grey.com>
>> **Subject: FW: Brilliant Distinctions Talent Help- Elodie Passelaigue**
>>
>> FYI John see below info to share with the agent!
>>
>> Kara DeBuona
>> Account Supervisor
>> **GREY** Famously effective since 1917
>> W +1 212 546 1588

WIL-0002

grey.com/disclaimer

**From:** Lao_Kellie <Lao_Kellie@Allergan.com>
**Date:** Tuesday, July 29, 2014 6:48 PM
**To:** Grey <kdebuona@grey.com>
**Cc:** Shurtz_Heidi <Shurtz_Heidi@Allergan.com>, "Jennifer Bittner
(Jennifer.Bittner@mxm.com)" <Jennifer.Bittner@mxm.com>, Jacquelyn Schanck
<jschanck@grey.com>, Peter Zenobi <pzenobi@grey.com>, "Wanamaker, Sharon"
<swanamaker@grey.com>
**Subject:** FW: Brilliant Distinctions Talent Help- Elodie Passelaigue

Hi Kara –

Please see below from Jennifer at MXM re: rights acquired to the model's image. If
her agent has further questions, please direct them to Jennifer
(Jennifer.bittner@mxm.com).
Thanks!
Kellie

**From:** Jennifer Bittner [mailto:Jennifer.Bittner@mxm.com]
**Sent:** Tuesday, July 29, 2014 3:45 PM
**To:** Shurtz_Heidi; Lao_Kellie
**Cc:** Sharin Bartz
**Subject:** Re: Brilliant Distinctions Talent Help- Elodie Passelaigue

Hi Heidi,

We purchased the image from Getty – 1 year, Rights Managed – details are below.

Let me know if you need anything else.

Image #/Description: 103434252 Beauty Portrait of Brunette Woman
Photographer/Artist: Adrianna Williams
Start Date: 2014-05-28
Duration: Up to 1 year
End Date: 2015-05-28
Usage: Web - Corporate and promotional site
Size: Up to 1/2 page
Location: Home page
Industry Description: Pharmaceuticals & Supplements
Territory Description: USA
Rights Exclusivity: No Exclusivity

**Jennifer Bittner**
Group Account Director
MXM

**p:** 424.672.9383   **m:** 310.733.9702   **e:** jennifer.bittner@mxm.com

**From:** Shurtz_Heidi <Shurtz_Heidi@Allergan.com>
**Date:** Tuesday, July 29, 2014 3:02 PM
**To:** Lao_Kellie <Lao_Kellie@Allergan.com>, Jennifer Bittner
<Jennifer.Bittner@mxm.com>
**Cc:** Sharin Bartz <Sharin.Bartz@mxm.com>
**Subject:** RE: Brilliant Distinctions Talent Help- Elodie Passelaigue

Jennifer – can you let me know how we contracted with this model/image?

**Heidi Shurtz**
Sr. Manager, CRM
Allergan

WIL-0003

(o) 714-246-6792

**From:** Lao_Kellie
**Sent:** Tuesday, July 29, 2014 3:01 PM
**To:** Shurtz_Heidi
**Subject:** FW: Brilliant Distinctions Talent Help- Elodie Passelaigue

Heidi – please see below. Model's agent contacted Grey. Let me know if you want
Grey to negotiate usage.

**From:** DeBuona, Kara [mailto:kdebuona@grey.com]
**Sent:** Tuesday, July 29, 2014 2:58 PM
**To:** Lao_Kellie; Wilkie_Kerrie
**Cc:** Zenobi, Peter; Schanck, Jacquelyn; Wanamaker, Sharon
**Subject:** Brilliant Distinctions Talent Help- Elodie Passelaigue

Hi Kellie,
Our talent team received the note below from Elodie Passelaigue's agent. She is the
brunette talent that is currently featured on the Brilliant Distinctions website
(screenshot attached), and her agent states that she has never worked for Allergan.
Could you please let us know who from the Brilliant Distinctions team we should
redirect the agent to in order to resolve this?

Thank you so much!
Best,
Kara

Kara DeBuona

Account Supervisor

**GREY** Famously effective since 1917

W +1 212 546 1588

grey.com

On 7/29/14 5:14 PM, "Daureen Castonguay"
<Daureen.Castonguay@wilhelmina.com> wrote:

Hello John
I hope you are well.  I am not sure if you can help me with this, but I
know this is a division of the same company that handles Juvederm / Botox
so thought might be able to point
me in the right direction.  My model Elodie is on the web sight  for
Brillant Distinctions/Allergan and she has never worked for them.
I am just trying to find out who I can speak with to find out where the
photo came from.
Any help would be greatly appreciated.
Xo
daureen

This e-mail, including any attachments, is meant only for the intended recipient and may be
a confidential communication or a communication privileged by law. If you received this e-
mail in error, any review, use, dissemination, distribution, or copying of this e-mail is
strictly prohibited. Please notify the sender immediately of the error by return e-mail and
please delete this message from your system. Thank you in advance for your cooperation.

This electronic message, including any attachments, may contain proprietary,
confidential or privileged information for the sole use of the intended recipient(s). You
are hereby notified that any unauthorized disclosure, copying, distribution, or use of
this message is prohibited. If you have received this message in error, please
immediately notify the sender by reply e-mail and delete it.
WIL-0004

<image001.png>

<image001.png>



WIL-0005

# Exhibit 4



**From:** Elodie PASSELAIGUE <elodiepass@hotmail.com>
**Sent:** Friday, August 8, 2014 8:43 PM
**To:** Daureen Castonguay
**Subject:** Re: Model release for 103434252

Thank you Daureen!

Indeed, this is my signature for the Clinique under water shoot that happened on Monday February 9th, 2004 - I have to look in my drawers to see if I possess a copy of the release. The date that was appointed to the document you sent me was either missing from the original release and someone filled in the blanks or that person totally retouched it, but my name is written in my own hand writing and the signature is authentic.

As you can tell, someone butchered the document by adding "& Spiegel photo shoot" in a darker marker type ink after the original ball point mention. You can also tell from the picture than one was shot much earlier than the other. I would never have been put in a situation to sign a co-release for a shoot happening on June 11th 2009 for Spiegel, a fashion brand, while I was signed to Ford Models, and another project shot for Clinique Cosmetics (no affiliation between the two) 5 years prior, while I was signed to Karin Models.

I did shoot for Spiegel at Sun Studios from 10am until 4pm on June 11th, 2009, though and I have it date stamped in my computer. So, that person had some accurate information - maybe they were covering behind the scenes on both jobs, maybe they were assisting on both.

Back in the days when I was shooting for Clinique cosmetics I was using a Palm Treo phone which broke abruptly leaving me without the computerized calendar information that would be related to that job. Stupidly, I also recently deleted the entire folder of emails related to Karin Models - but I have a hand written version of my schedule, as I was writing my bookings into an agenda back then. I also have computer dated proof that my last job with Karin Models was on

P00939

September 22nd, 2005 for Matrix Brandology - because I have an email addressed to one of my agents at Ford models, which states exactly that, ie: proof that the Clinique Underwater Photoshoot in question happened prior. I also have my vendor balance details from Karin Models for that year stating that I worked for Clinique on February 9th, 2004, and it has an invoice number 10134 on it. So there is ground to prove in a court of law that I am telling the truth.

Please let me know your thoughts,

Elodie.

P00940

# Karin Models of America, LLC
## Vendor Balance Detail
### As of December 31, 2004



| Type | Date | Num | Memo |
|------|------|-----|------|
| Bill | 01/19/2004 | 10047 AXIS FILMS | AXIS FILMS 10047 |
| Bill | 02/08/2004 | 10124 MACKAGE | MACKAGE 10124 |
| Bill | 02/12/2004 | 10166 FUSHA | FUSHA 10166 |
| Bill | 02/06/2004 | 10089 CLINIQUE | CLINIQUE 10089 |
| Bill | 02/11/2004 | 10163 STELLA MCCARTN | STELLA MCCARTNEY 10163 |
| Bill | 02/12/2004 | 10157 STELLA MCCARTN | STELLA MCCARTNEY 10157 |
| Bill | 02/15/2004 | 10176 YVES SAINT LAU | YVES SAINT LAURENT 10176 |
| Bill | 02/16/2004 | 10177 YVES SAINT LAU | YVES SAINT LAURENT 10177 |
| Bill | 03/15/2004 | 10263 CLINIQUE | CLINIQUE 10263 |
| Bill | 03/16/2004 | 10264 CLINIQUE | CLINIQUE 10264 |
| Bill | 02/09/2004 | 10134 CLINIQUE | CLINIQUE 10134 |
| Bill | 02/28/2004 | 10225 CLINIQUE | CLINIQUE 10225 |
| Bill | 01/09/2004 | 10015 JAMES THOMAS | JAMES THOMAS 10015 |
| Bill | 04/08/2004 | 10317 CLINIQUE | CLINIQUE 10317 |
| Bill | 02/19/2004 | 10193 DOUGLAS DUBLER | DOUGALS DUBLER PHOTOGRAP |
| Bill | 04/21/2004 | 10361 URBAN OUTFITTE | URBAN OUTFITTERS 10361 |
| Bill | 05/13/2004 | 10432 CELIA KRITHARI | CELIA KRITHAIOTI 10432 |
| Bill | 05/18/2004 | 10451 LADIES HOME JO | LADIES HOME JOURNAL 10451 |
| Bill | 05/14/2004 | 10434 CLINIQUE | CLINIQUE 10434 |
| Bill | 05/26/2004 | 10484 DENNIS BASSO | DENNIS BASSO 10484 |
| Bill | 06/02/2004 | 10513 CLINIQUE | CLINIQUE 10513 |
| Bill | 06/10/2004 | 10559 ORGANIC STYLE | ORGANIC STYLE 10559 |
| Bill | 06/10/2004 | MANI/PEDI 10559 | ORGANIC STYLE MANI/PEDI |
| Bill | 06/18/2004 | 10594 CLINIQUE | CLINIQUE 10594 |
| Bill | 06/24/2004 | 10617 CL | CLINIQUE 10617 |
| Bill | 07/01/... | | |

February **2004** • Février • Februar • Febbraio • Febrero

**9**

**Monday** • Lundi • Montag • Lunedì • Lunes

NYC (11:30 am)

8 Clinique → test for

9 aquarium shot

10

11 p. — $250 bathing suit

12

Evening

paid

**10**

**Tuesday** • Mardi • Dienstag • Martedì • Martes

8        1

9        2

10       3

11       4

12       5

Sent from my iPhone

Sent from my iPhone
On Aug 8, 2014, at 2:03 PM, "Daureen Castonguay" <Daureen.Castonguay@wilhelmina.com> wrote:

Hello Elodie
I reached out to Getty Images and this is the release they sent me for the image that is up on Brilliant
Distinctions..  Is that your signature?  I am ccing Ali Grace , our attorney here,
she and I have spoken about the issue.
Xo
daureen

**From:** Getty Images Service - N.America [mailto:Service.NA@gettyimages.com]
**Sent:** Friday, August 08, 2014 1:58 PM
**To:** Daureen Castonguay
**Subject:** Model release for 103434252

Hello Daureen,

My name is Kevin and I am in the service department at Getty Images.  I have attached a redacted copy
of the requested model release.  We do this for all releases as we do not want any personal information
of the photographer or client to be available.  If you have any questions please let myself or Sarah know
and we will be happy to help!  Thank you for your time.

**Kevin Marren**
Kevin.Marren@gettyimages.com


<release.jpg>

P00943

# Exhibit 5

Outlook.com – elodiepass@hotmail.com

bay181.mail.live.com/?tid=cm3shLICwJYU-Uzv0Lq3ykmw2&fid=flsearch&srch=1&skws=spiegel&sfld=fl22yvw9cPs0ur3mHSeLCLNw2&sdr=4&satt=0

Outlook.com – e...

**Outlook.com**    (+) New    Reply | ▾    Delete    Archive    Junk | ▾    Sweep    Move to ▾    Categories ▾    •••    Elodie PASSELAIGUE

Thursday, June 11                                                                    ↑ ↓ ✕

LauraMcKenna FORD   6/10/09
To: elodiepass@hotmail.com ▾

9:00- 11:00 (holding until 1:00)

Sunwest Studio

450 W. 31st

10th floor

X 9 + 10th aves

ph: Bill Diodato

Spiegel- 250 per hour

Clean hair/no makeup

spiegel

KOHL'S

BONUS BUYS

ENDS APRIL 28.

PLUS, GET
$10 KOHL'S cash

CONFIDENTIAL
P00015

# Exhibit 6



Cyrus E. Dugger
The Dugger Law Firm, PLLC
154 Grand St. New York, NY 10013
www.theduggerlawfirm.com
Tel: (646) 560-3208
Fax: (646) 390-4524

_____

From: Cynthia Sharp <Cynthia.Sharp@gettyimages.com>
Sent: Friday, May 1, 2015 5:46 PM
To: Cyrus Dugger
Subject: RE: Elodie Passelaigue & Getty Images Nos. 103434252; 103434254; 103434250

Hi Cyrus,

The release associated with that image is the same as the one previously provided. I've also confirmed that the Brilliant Distinctions use is valid. Allergan licensed the image from us directly, and the use is within the scope of the license.

Sincerely,

Cynthia



Cynthia Sharp
Senior Paralegal
Getty Images, Seattle
T: (206) 925-6753

From: Cyrus Dugger [mailto:cd@theduggerlawfirm.com]
Sent: Friday, May 01, 2015 12:20 PM
To: Cynthia Sharp
Subject: Re: Elodie Passelaigue & Getty Images Nos. 103434252; 103434254; 103434250


Hi Cynthia,

CONFIDENTIAL

P00410

Will you be sending the model release relied upon for the use of Getty Image 103434251, which image Bill Diodato also took of my client and posted on Getty Images.



Best,


Cyrus E. Dugger
The Dugger Law Firm, PLLC
154 Grand St. New York, NY 10013
www.theduggerlawfirm.com<http://www.theduggerlawfirm.com>
Tel: (646) 560-3208
Fax: (646) 390-4524
_____
From: Cyrus Dugger
Sent: Tuesday, April 28, 2015 9:25 AM
To: Cynthia Sharp
Subject: Re: Elodie Passelaigue & Getty Images Nos. 103434252; 103434254; 103434250


Cynthia,


I hope that you are doing well.


Thank you for your assistance - the below is very helpful.


Can you please also send a copy of the relevant model release for Getty Image 103434251.


That is also an image of my client taken by Bill Diodato.


We would very much appreciate the sales history for the Brilliant Distinctions campaign image, as well as my client's other images taken by Diodat and submitted to Getty.


Best,


Cyrus E. Dugger
The Dugger Law Firm, PLLC

2

154 Grand St. New York, NY 10013
www.theduggerlawfirm.com<http://www.theduggerlawfirm.com>
Tel: (646) 560-3208
Fax: (646) 390-4524
_____

From: Cynthia Sharp <Cynthia.Sharp@gettyimages.com<mailto:Cynthia.Sharp@gettyimages.com>>
Sent: Monday, April 20, 2015 9:10 PM
To: Cyrus Dugger
Subject: RE: Elodie Passelaigue & Getty Images Nos. 103434252; 103434254; 103434250

Cyrus, thanks for your patience. As background, Bill tells me he has photographed Elodie multiple times and has only positive memories of working with her, so he was especially surprised and disappointed to hear that she disputes the validity of the release he obtained from her in 2009 for the Clinique underwater photo and the three Spiegel shoot photos. His hope is that the explanation below will help her remember the circumstances in which she signed the release.

Bill says no release was obtained at the time of the 2004 Clinique test shoot and that the 2009 release, obtained at the Spiegel shoot, covered all four images. When he saw Elodie at the 2009 shoot for Spiegel, they chatted a bit and he mentioned that Clinique had decided not to use the underwater image. He therefore asked her if she would sign a release for both the Spiegel photos and the Clinique underwater photo, which she did.  He offered to give her the finished retouched underwater image in exchange for the release, but she said she had an image that looked similar from a shoot she did with Guido Mocafico, also for Clinique.  All four images were associated with the one release in Getty Images' systems and ingested on the same day – August 18, 2010.

I assume Bill would not have a problem with us contacting the two witnesses to the release, if need be, but I would need to check with him before offering that to you as an option if his explanation, combined with the additional details previously redacted, don't jog Elodie's memory.

I have not yet received a sales history for the image used on the Brilliant Distinctions site to confirm whether it's a use licensed by Getty Images.  Once I have that, I will check back with you.

Sincerely,

Cynthia



Cynthia Sharp
Senior Paralegal
Getty Images, Seattle
T: (206) 925-6753

From: Cyrus Dugger [mailto:cd@theduggerlawfirm.com]
Sent: Friday, April 17, 2015 2:53 PM
To: Cynthia Sharp
Subject: Re: Elodie Passelaigue & Getty Images Nos. 103434252; 103434254; 103434250


Hi Cynthia,

CONFIDENTIAL

Just following up to get information on your conversation with Mr. Diodato.



Best,


Cyrus E. Dugger
The Dugger Law Firm, PLLC
154 Grand St. New York, NY 10013
www.theduggerlawfirm.com<http://www.theduggerlawfirm.com>
Tel: (646) 560-3208
Fax: (646) 390-4524
_____
From: Cynthia Sharp <Cynthia.Sharp@gettyimages.com<mailto:Cynthia.Sharp@gettyimages.com>>
Sent: Friday, April 17, 2015 11:40 AM
To: Cyrus Dugger
Subject: RE: Elodie Passelaigue & Getty Images Nos. 103434252; 103434254; 103434250

No problem, here you go. I spoke to Bill Diodato yesterday and will provide more detail  regarding our conversation later today.
Thanks,
Cynthia



Cynthia Sharp
Senior Paralegal
Getty Images, Seattle
T: (206) 925-6753

From: Cyrus Dugger [mailto:cd@theduggerlawfirm.com]
Sent: Friday, April 17, 2015 8:34 AM
To: Cynthia Sharp
Subject: Re: Elodie Passelaigue & Getty Images Nos. 103434252; 103434254; 103434250

Cynthia,

If that is Getty's position there should not be an issue providing an unredacted copy of the release and confirming that the photographer is Bill Diodato (despite the attribution to Adriana Williams), as we also requested.

Please confirm whether or not Getty Images will comply with the aspect of our request seeking an undredacted copy of the release and seeking confirmation that the identity of the contributor is Bill Diodato.

My client's counsel from Wilhelmina was only provided a redacted copy – which I forwarded to you.

If Getty Images maintains that it has no reason to believe that this release was a forgery, Getty Images should have no problem providing an unredacted copy of the model release it is relying on to continue to utilize my client's images.

To withhold an unredacted copy would serve to frustrate my client's ability to protect her rights and investigate the use of her images, and the redaction of this release cannot be supported by any contrary privacy interest (statutory or otherwise), particularly here, where a photographer decides to sell and/or licensee the images of another for a profit.

4

CONFIDENTIAL

Indeed, if my client signed the release, as you suggest, she would have already seen it, and providing a copy of it could not be prejudicial to Getty Images or the contributor.

If Getty Images does not provide an unredacted copy of the model release it is relying on, as well as identify the name of the contributor, by the close of business on Wednesday April 22nd, we will assume Getty Images is declining to comply with our requests.

Best,


Cyrus E. Dugger
The Dugger Law Firm, PLLC
154 Grand St. New York, NY 10013
www.theduggerlawfirm.com<http://www.theduggerlawfirm.com>
Tel: (646) 560-3208
Fax: (646) 390-4524
_____
From: Cynthia Sharp <Cynthia.Sharp@gettyimages.com<mailto:Cynthia.Sharp@gettyimages.com>>
Sent: Wednesday, April 15, 2015 9:28 PM
To: Cyrus Dugger
Subject: RE: Elodie Passelaigue & Getty Images Nos. 103434252; 103434254; 103434250

Dear Cyrus,

Thanks for following up. I am waiting to hear back from the contributor of the images at issue, who, in his contract with us, represents and warrants that the releases he provides to us are valid. On the face of it, there is no apparent doctoring of the release that we can discern. In our experience, it is not unusual for photographers to contact models after a shoot in order to obtain releases, so the fact that a release dated June 2009 was provided for shoots that took place at different times prior to that is not, in itself, evidence of invalidity.

Therefore, at this point, we have no reason to believe we cannot rely on our contributor's representations, other than a claim to the contrary by your client.  Should we learn that in fact the releases are not valid for the three identified images, we will of course take prompt and appropriate action.

In the meantime, we appreciate your patience while we give our contributor a few more days to respond.  I will revisit the matter at the end of the week.

Sincerely,

Cynthia


Cynthia Sharp
Senior Paralegal
Getty Images, Seattle
T: (206) 925-6753

From: Cyrus Dugger [mailto:cd@theduggerlawfirm.com]
Sent: Wednesday, April 15, 2015 1:59 PM
To: Cynthia Sharp
Subject: Re: Elodie Passelaigue & Getty Images Nos. 103434252; 103434254; 103434250

CONFIDENTIAL                                                                P00414

Cynthia,

What is the status of Getty's response to our below requests.

Currently, the images are still on Getty's website and an image is still being used by a Getty licensee on the Brilliant Distinctions website.

As noted below, these images have not been validly released.

Best,

Cyrus E. Dugger
The Dugger Law Firm, PLLC
154 Grand St. New York, NY 10013
www.theduggerlawfirm.com<http://www.theduggerlawfirm.com>
Tel: (646) 560-3208
Fax: (646) 390-4524
_____
From: Cynthia Sharp <Cynthia.Sharp@gettyimages.com<mailto:Cynthia.Sharp@gettyimages.com>>
Sent: Wednesday, April 08, 2015 4:34 PM
To: Cyrus Dugger
Subject: RE: Elodie Passelaigue & Getty Images Nos. 103434252; 103434254; 103434250

Dear Mr. Dugger,

Getty Images acknowledges receipt of the message below, along with the attached JPG.  I'll be back in touch shortly with a more substantive response, after we've had a chance to investigate a bit more, but in the meantime, please don't hesitate to contact me directly with any additional questions or concerns.

Thank you.

Sincerely,

Cynthia

Cynthia Sharp
Senior Paralegal
Getty Images

605 Fifth Avenue South, Suite 400
Seattle, WA 98104

CONFIDENTIAL

P00415

T: (206) 925-6753
F: (206) 925-5623
cynthia.sharp@gettyimages.com<mailto:cynthia.sharp@gettyimages.com>
www.gettyimages.com<http://www.gettyimages.com/>

This message may contain privileged or confidential information and is intended only for the individual named.  If you are not the named addressee or an employee or agent responsible for delivering this message to the intended recipient, you should not disseminate, distribute, or copy this email or any attachments hereto.   Please notify the sender immediately by email if you have received this email by mistake and delete this email and any attachments from  your system without copying or disclosing the contents.   Email transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses.  The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of email transmission.  If verification is required, please request a hard-copy version.
Getty Images, 605 Fifth Ave. S., Ste. 400, Seattle, WA 98104, USA,
www.gettyimages.com<http://www.gettyimages.com/>


From: Cyrus Dugger [mailto:cd@theduggerlawfirm.com]
Sent: Tuesday, April 07, 2015 12:35 PM
To: Nancy E. Wolff
Subject: Elodie Passelaigue & Getty Images Nos. 103434252; 103434254; 103434250

Nancy,

Please find the attached release provided by Getty Images (Kevin Marren) on or about August 8, 2014 to an attorney for Wilhelmina Models following an inquiry regarding the use of Getty Image No. 103434252 in the Brilliant Distinctions web advertising campaign on behalf of my client Elodie Passelaigue.

The two images included in this release were taken at two different test shoots, for two different clients, while my client was with two different agencies.  Getty Images No. 103434252 was taken on or about June 11, 2009 and Getty Images No. 103435150 was taken on or about February 9, 2004.

My client recalls signing a release for Getty Images No. 103435150 at the conclusion of the 2004 shoot, but specifically recalls not signing a release for Getty Images No. 103434252 during the June 11, 2009 shoot.

It appears that the model release provided by the photographer was "butchered"/doctored to use the signature from 2004 to appear to also release the 2009 image.

Getty Images Nos. 103434254; 103434250 were also taken at the same 2009 shoot as Getty Images No. 103434252 and were also not released.

What we would like to receive from Getty Images are the unredacted versions of the model releases provided to Getty by the photographer(s) for Getty Images Nos. 103434252, 103434254; 103434250, as well as the dates of submission.

As we discussed, receiving unredacted versions of these releases will assist us in confirming whether or not the photographer is, as it currently appears, Bill Diodato.

We also request that Getty Images remove, stop licensing, and request that all current licensees remove Getty Images Nos. 103435150, 103434254; 103434250 given the absence of a valid model release for these images.

Best,

CONFIDENTIAL                                              P00416

Cyrus E. Dugger
The Dugger Law Firm, PLLC
154 Grand St. New York, NY 10013
www.theduggerlawfirm.com<http://www.theduggerlawfirm.com>
Tel: (646) 560-3208
Fax: (646) 390-4524

CONFIDENTIAL

P00417

# Exhibit 7

**Filed Under Seal**

# Exhibit 8

## Filed Under Seal