# Exhibit 51

## Filed Under Seal

# Exhibit 52

## Filed Under Seal

# Exhibit 53

Outlook...

## Outlook.com

(+) New    Reply | ⌄    Delete    Archive    Junk | ⌄    Sweep    Move to ⌄    Categories ⌄    •••    Elodie PASSELAIGUE

[Janet Rohan]

## Re: Speigel June 11th, 2009                                    ↑ ↓ ✕

**Janet Rohan**  8/21/14
To: Elodie PASSELAIGUE ⌄

Hi,
The chart said that shoot was for waist downs with Bill Diadato.
Janet


Janet Rohan
Ford Models, Inc. I Director of Women Direct
57 West 57th Street, Penthouse, New York, NY 10019
Main 212-219-6100 i P. 212-219-6145
 C. 201-998-1707 I F: 212-966-1531
jrohan@fordmodels.com
www.fordmodels.com
www.fordmodelsblog.com

ORGANIC VALLEY

Eat well on
the go with
organic snacks

# Exhibit 54

## Filed Under Seal

# Exhibit 55

## Filed Under Seal

# Exhibit 56

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELODIE PASSELAIGUE, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>          v.<br><br>GETTY IMAGES (US), INC., GETTY IMAGES, INC., BILL DIODATO PHOTOGRAPHY, LLC, and BILL DIODATO,<br><br>      Defendants. | Case No. 16-cv-01362-VSB-BCM<br><br>**NOTICE OF INTENT TO SERVE DOCUMENT SUBPOENAS**<br><br>Judge: Hon. Vernon S. Broderick |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Federal Rule of Civil Procedure 45(a)(4), plaintiff Elodie Passelaigue hereby provides notice of her intent to serve the attached document subpoenas on the following recipients:

- Max Miller (Exhibit 1)
- Linda Hilfiker (Exhibit 2)
- Lauren Benward Krause (Exhibit 3)

Dated: October 29, 2018      /s/ Jack Fitzgerald
                                   JACK FITZGERALD (JF 3831)
                                   *jack@jackfitzgeraldlaw.com*
                                   TREVOR M. FLYNN (*pro hac vice*)
                                   *trevor@jackfitzgeraldlaw.com*
                                   MELANIE PERSINGER (*pro hac vice*)
                                   *melanie@jackfitzgeraldlaw.com*
                                   **THE LAW OFFICE OF JACK FITZGERALD, PC**
                                   Hillcrest Professional Building
                                   3636 Fourth Avenue, Suite 202

San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Attorneys for Plaintiff and the Proposed Class***

# Exhibit 1

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Southern District of New York

| | |
|---|---|
| Elodie Passelaigue | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   16-cv-01362-VSB-BCM |
| Getty Images (US), Inc. et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                    Max Miller

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment 1

| Place: Cowan, DeBaets, Abrahams & Sheppard LLP 41 Madison Avenue, 38th fl., New York, NY 10010 (or electronically to Plaintiff's counsel) | Date and Time: 11/08/2018 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:       10/29/2018

|  |  |  |
|---|---|---|
| *CLERK OF COURT* | OR | /s/ Jack Fitzgerald |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Elodie Passelaigue
_____ , who issues or requests this subpoena, are:

 Jack Fitzgerald; The Law Office of Jack Fitzgerald, PC, 3636 Fourth Ave., Ste. 202, San Diego, CA 92103; jack@jackfitzgeraldlaw.com; (619) 692-3840

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.    16-cv-01362-VSB-BCM

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| ELODIE PASSELAIGUE, on behalf of herself and all others similarly situated, |
| |
|     Plaintiff, |
| |
|                         v. |
| |
| GETTY IMAGES (US), INC., GETTY IMAGES, INC., BILL DIODATO PHOTOGRAPHY, LLC, and BILL DIODATO, |
| |
|     Defendants. |

Case No. 16-cv-01362-VSB-BCM

**ATTACHMENT 1 TO SUPBOENA TO MAX MILLER**

## <u>Attachment 1 - Definitions</u>

1.     Pursuant to the Local Civil Rules for the Southern and Eastern Districts of New York, this Attachment incorporates by reference the Uniform Definitions in Discovery Requests set forth in Local Civil Rule 26.3(c), regardless of whether or not those defined terms appear below in capital letters.

2.  In addition, the following definitions shall apply:

     a.    "YOU," "YOUR," and "MAX MILLER" shall mean the entity responding to this document subpoena, *i.e.*, Max Miller, and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, present and former directors, employers, employees, attorneys, agents, other representatives, and all other PERSONS acting under their control or on their behalf.

b.    "PLAINTIFF" means plaintiff Elodie Passelaigue and, where applicable, any employers, employees, attorneys, agents, other representatives and all other PERSONS acting under her control or on her behalf.

c.    "BILL DIODATO" means defendant Bill Diodato, and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, and present and former directors, employers, employees, attorneys, agents, other representatives and all other PERSONS acting under his control or on his behalf.

d.    "BILL DIODATO PHOTOGRAPHY, LLC" means defendant Bill Diodato Photography, LLC, and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, and present and former directors, employers, employees, attorneys, agents, other representatives and all other PERSONS acting under their control or on their behalf.

e.    "GETTY" means defendant Getty Images (US), Inc., and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, and present and former directors, employers, employees, attorneys, agents, other representatives and all other PERSONS acting under their control or on their behalf.

f.     "CORBIS" means Corbis Corporation and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, and present and former directors, employers, employees, attorneys, agents, other representatives and all other PERSONS acting under their control or on their behalf.

g.     "MODEL RELEASES" means any document purporting to convey to a photographer any rights concerning an image, including without limitation ownership or usage rights, e.g. but not limited to the type of document constituting the Model Release attached to the Complaint as Exhibit 3 (Dkt. No. 1, at 63).

h.     CLINIQUE UNDERWATER TEST SHOOT means the photography shoot described in paragraphs 20-33 of the Complaint and resulting in the images offered for license by GETTY under "Creative #" 103435148, 103435150, 103435151, and 103435152.

i.     SPIEGEL BEAUTY SHOOT means the photography shoot described in paragraphs 34-38 of the Complaint and resulting in the images offered for license by GETTY under "Creative #" 103434250, 103434252, and 103434254.

j.     AVON SHOOT means the photography shoot which resulted in the image offered for license by GETTY under "Creative #" 103434251.

## Attachment 1 – Instructions

1.     These Document Requests are continuing, and YOU are required to supplement YOUR responses seasonably.

2.     If YOU object to any Request, state with specificity all grounds for YOUR objection; any ground not stated in an objection shall be deemed waived.

3.     If YOU assert a claim of privilege in objecting to any Request, and do not provide a response or withhold information in full or in part on the basis of such assertion:

   a.     In the objection to the Request, identify the privilege being claimed or asserted;

   b.     Provide the following information in the objection, unless divulging such information would cause disclosure of the allegedly privileged information: (A) the type of DOCUMENT; (B) the general subject matter of the DOCUMENT; (C) the date of the DOCUMENT; and (D) other information sufficient to identify the DOCUMENT including the author(s), addressee(s), copyholder(s) (including "blind" copyholders), and, where not apparent, the relationship of the author(s) to the addressee(s) and copyholder(s).

4.     The singular form of a word should be interpreted as plural wherever necessary to bring within the scope of the request any information that might otherwise be construed outside its scope.

5.     The words "and" and "or" shall be construed either disjunctively or conjunctively wherever necessary to bring within the scope of this request any information that might otherwise be construed outside its scope.

6.     All defined terms noted above shall be considered defined, regardless of whether they are presented in all capital letters, initial capital letters, or without any capital letters.

7.     In responding to these Document Requests, YOU are required to furnish all DOCUMENTS available to YOU, including DOCUMENTS in the possession, custody, or control of YOUR attorneys, officers, agents, employees, accountants, consultants, representatives, or any PERSONS directly or indirectly employed by YOU or otherwise connected with YOU or YOUR attorneys or anyone else subject to YOUR control. All DOCUMENTS that are responsive, in whole or in part, to any portion of these Document Requests shall be produced in their entirety, including all attachments.

8.     ALL DOCUMENTS should be produced as they are kept in the ordinary course of business or should be organized and labeled to correspond to the specific requests to which they are responsive. All DOCUMENTS should be produced in any file folder or carton in which they have been maintained, and should be stored, clipped, stapled, or otherwise arranged in the same form and manner in which they were found.

9.     In the event that any DOCUMENT responsive to any Request has been destroyed or discarded, identify that DOCUMENT by stating the title (if known) and nature of the DOCUMENT, and furnish a list signed by the attorney of record giving the

following information with respect to each DOCUMENT: (a) any addressor or addressee; (b) any indicated or blind copies; (c) the DOCUMENT'S date, subject matter, number of pages, and attachments or appendices; (d) all PERSONS to whom the DOCUMENT was distributed, shown, or explained; (e) its date of destruction or discard and the manner of destruction or discard; and (f) the PERSONS authorizing and the PERSONS carrying out such destruction or discard.

## Attachment 1 – Requests for Documents and Objects

Request No. 1

Any email COMMUNICATIONS from your personal email CONCERNING PLAINTIFF, BILL DIODATO, BILL DIODATO PHOTOGRAPHY, LLC, GETTY, MODEL RELEASES, CORBIS, the CLINIQUE UNDERWATER TEST SHOOT, the SPEIGEL BEAUTY SHOOT, or the AVON SHOOT.

Request No. 2

To the extent not produced in response to the above request, any responsive DOCUMENTS in YOUR possession CONCERNING PLAINTIFF, BILL DIODATO, BILL DIODATO PHOTOGRAPHY, LLC, GETTY, MODEL RELEASES, CORBIS, the CLINIQUE UNDERWATER TEST SHOOT, the SPEIGEL BEAUTY SHOOT, or the AVON SHOOT.

Dated: October 29, 2018          /s/ Jack Fitzgerald
                                 JACK FITZGERALD (JF 3831)

*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (*pro hac vice*)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (*pro hac vice*)
*melanie@jackfitzgeraldlaw.com*
**THE LAW OFFICE OF JACK FITZGERALD, PC**
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Attorneys for Plaintiff and the Proposed Class***

# Exhibit 2

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | | |
|---|---|---|
| Elodie Passelaigue | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  16-cv-01362-VSB-BCM |
| Getty Images (US), Inc. et al. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                            Linda Hilfiker

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment 1

| Place: Cowan, DeBaets, Abrahams & Sheppard LLP 41 Madison Avenue, 38th fl., New York, NY 10010 (or electronically to Plaintiff's counsel) | Date and Time: 11/08/2018 10:00 am |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   10/29/2018

|  | | |
|---|---|---|
| *CLERK OF COURT* | OR | |
| | | /s/ Jack Fitzgerald |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Elodie Passelaigue
                                                                    , who issues or requests this subpoena, are:

Jack Fitzgerald; The Law Office of Jack Fitzgerald, PC, 3636 Fourth Ave., Ste. 202, San Diego, CA 92103; jack@jackfitzgeraldlaw.com; (619) 692-3840

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   16-cv-01362-VSB-BCM

### PROOF OF SERVICE
#### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ELODIE PASSELAIGUE, on behalf of
herself and all others similarly situated,

      Plaintiff,

              v.

GETTY IMAGES (US), INC., GETTY
IMAGES, INC., BILL DIODATO
PHOTOGRAPHY, LLC, and BILL
DIODATO,

      Defendants.

---

Case No. 16-cv-01362-VSB-BCM

**ATTACHMENT 1 TO SUPBOENA TO
LINDA HILFIKER**

## <u>Attachment 1 - Definitions</u>

1.    Pursuant to the Local Civil Rules for the Southern and Eastern Districts of New York, this Attachment incorporates by reference the Uniform Definitions in Discovery Requests set forth in Local Civil Rule 26.3(c), regardless of whether or not those defined terms appear below in capital letters.

2.  In addition, the following definitions shall apply:

    a.    "YOU," "YOUR," and "LINDA HILFIKER" shall mean the entity responding to this document subpoena, *i.e.*, Linda Hilfiker, and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, present and former directors, employers, employees, attorneys, agents, other representatives, and all other PERSONS acting under their control or on their behalf.

b.     "PLAINTIFF" means plaintiff Elodie Passelaigue and, where applicable, any employers, employees, attorneys, agents, other representatives and all other PERSONS acting under her control or on her behalf.

c.     "BILL DIODATO" means defendant Bill Diodato, and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, and present and former directors, employers, employees, attorneys, agents, other representatives and all other PERSONS acting under his control or on his behalf.

d.     "BILL DIODATO PHOTOGRAPHY, LLC" means defendant Bill Diodato Photography, LLC, and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, and present and former directors, employers, employees, attorneys, agents, other representatives and all other PERSONS acting under their control or on their behalf.

e.     "GETTY" means defendant Getty Images (US), Inc., and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, and present and former directors, employers, employees, attorneys, agents, other representatives and all other PERSONS acting under their control or on their behalf.

f.     "CORBIS" means Corbis Corporation and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, and present and former directors, employers, employees, attorneys, agents, other representatives and all other PERSONS acting under their control or on their behalf.

g.     "MODEL RELEASES" means any document purporting to convey to a photographer any rights concerning an image, including without limitation ownership or usage rights, e.g. but not limited to the type of document constituting the Model Release attached to the Complaint as Exhibit 3 (Dkt. No. 1, at 63).

h.     CLINIQUE UNDERWATER TEST SHOOT means the photography shoot described in paragraphs 20-33 of the Complaint and resulting in the images offered for license by GETTY under "Creative #" 103435148, 103435150, 103435151, and 103435152.

i.     SPIEGEL BEAUTY SHOOT means the photography shoot described in paragraphs 34-38 of the Complaint and resulting in the images offered for license by GETTY under "Creative #" 103434250, 103434252, and 103434254.

j.     AVON SHOOT means the photography shoot which resulted in the image offered for license by GETTY under "Creative #" 103434251.

## **Attachment 1 – Instructions**

1.      These Document Requests are continuing, and YOU are required to supplement YOUR responses seasonably.

2.      If YOU object to any Request, state with specificity all grounds for YOUR objection; any ground not stated in an objection shall be deemed waived.

3.      If YOU assert a claim of privilege in objecting to any Request, and do not provide a response or withhold information in full or in part on the basis of such assertion:

> a.      In the objection to the Request, identify the privilege being claimed or asserted;
>
> b.      Provide the following information in the objection, unless divulging such information would cause disclosure of the allegedly privileged information: (A) the type of DOCUMENT; (B) the general subject matter of the DOCUMENT; (C) the date of the DOCUMENT; and (D) other information sufficient to identify the DOCUMENT including the author(s), addressee(s), copyholder(s) (including "blind" copyholders), and, where not apparent, the relationship of the author(s) to the addressee(s) and copyholder(s).

4.      The singular form of a word should be interpreted as plural wherever necessary to bring within the scope of the request any information that might otherwise be construed outside its scope.

5.      The words "and" and "or" shall be construed either disjunctively or conjunctively wherever necessary to bring within the scope of this request any information that might otherwise be construed outside its scope.

6.      All defined terms noted above shall be considered defined, regardless of whether they are presented in all capital letters, initial capital letters, or without any capital letters.

7.      In responding to these Document Requests, YOU are required to furnish all DOCUMENTS available to YOU, including DOCUMENTS in the possession, custody, or control of YOUR attorneys, officers, agents, employees, accountants, consultants, representatives, or any PERSONS directly or indirectly employed by YOU or otherwise connected with YOU or YOUR attorneys or anyone else subject to YOUR control. All DOCUMENTS that are responsive, in whole or in part, to any portion of these Document Requests shall be produced in their entirety, including all attachments.

8.      ALL DOCUMENTS should be produced as they are kept in the ordinary course of business or should be organized and labeled to correspond to the specific requests to which they are responsive. All DOCUMENTS should be produced in any file folder or carton in which they have been maintained, and should be stored, clipped, stapled, or otherwise arranged in the same form and manner in which they were found.

9.      In the event that any DOCUMENT responsive to any Request has been destroyed or discarded, identify that DOCUMENT by stating the title (if known) and nature of the DOCUMENT, and furnish a list signed by the attorney of record giving the

following information with respect to each DOCUMENT: (a) any addressor or addressee; (b) any indicated or blind copies; (c) the DOCUMENT'S date, subject matter, number of pages, and attachments or appendices; (d) all PERSONS to whom the DOCUMENT was distributed, shown, or explained; (e) its date of destruction or discard and the manner of destruction or discard; and (f) the PERSONS authorizing and the PERSONS carrying out such destruction or discard.

## Attachment 1 – Requests for Documents and Objects

Request No. 1

Any email COMMUNICATIONS from your personal email CONCERNING PLAINTIFF, BILL DIODATO, BILL DIODATO PHOTOGRAPHY, LLC, GETTY, MODEL RELEASES, CORBIS, the CLINIQUE UNDERWATER TEST SHOOT, the SPEIGEL BEAUTY SHOOT, or the AVON SHOOT.

Request No. 2

To the extent not produced in response to the above request, any responsive DOCUMENTS in YOUR possession CONCERNING PLAINTIFF, BILL DIODATO, BILL DIODATO PHOTOGRAPHY, LLC, GETTY, MODEL RELEASES, CORBIS, the CLINIQUE UNDERWATER TEST SHOOT, the SPEIGEL BEAUTY SHOOT, or the AVON SHOOT.

Dated: October 29, 2018        /s/ Jack Fitzgerald
                               JACK FITZGERALD (JF 3831)

*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (*pro hac vice*)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (*pro hac vice*)
*melanie@jackfitzgeraldlaw.com*
**THE LAW OFFICE OF JACK FITZGERALD, PC**
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Attorneys for Plaintiff and the Proposed Class***

# Exhibit 3

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | | |
|---|---|---|
| Elodie Passelaigue | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No.   16-cv-01362-VSB-BCM |
| Getty Images (US), Inc. et al. | ) | |
| | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                       Lauren Benward Krause

_____

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment 1

| Place: 11775 Sonoma Highway<br>Glen Ellen, CA 95442<br>(or electronically to Plaintiff's counsel) | Date and Time:<br><br>11/08/2018 10:00 am |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     10/29/2018
_____

|  | | |
|---|---|---|
| _CLERK OF COURT_ | | |
| | OR | /s/ Jack Fitzgerald |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_  Elodie Passelaigue

_____ , who issues or requests this subpoena, are:

Jack Fitzgerald; The Law Office of Jack Fitzgerald, PC, 3636 Fourth Ave., Ste. 202, San Diego, CA 92103; jack@jackfitzgeraldlaw.com; (619) 692-3840

**Notice to the person who issues or requests this subpoena**

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   16-cv-01362-VSB-BCM

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ELODIE PASSELAIGUE, on behalf of
herself and all others similarly situated,

      Plaintiff,

             v.

GETTY IMAGES (US), INC., GETTY
IMAGES, INC., BILL DIODATO
PHOTOGRAPHY, LLC, and BILL
DIODATO,

      Defendants.

---

Case No. 16-cv-01362-VSB-BCM

**ATTACHMENT 1 TO SUPBOENA TO
LAUREN BENWARD KRAUSE**

## <u>Attachment 1 - Definitions</u>

1.    Pursuant to the Local Civil Rules for the Southern and Eastern Districts of New York, this Attachment incorporates by reference the Uniform Definitions in Discovery Requests set forth in Local Civil Rule 26.3(c), regardless of whether or not those defined terms appear below in capital letters.

2.  In addition, the following definitions shall apply:

    a.   "YOU," "YOUR," and "LAUREN BENWARD KRAUSE" shall mean the entity responding to this document subpoena, *i.e.*, Lauren Benward Krause, and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, present and former directors, employers, employees,

attorneys, agents, other representatives, and all other PERSONS acting under their control or on their behalf.

b.      "PLAINTIFF" means plaintiff Elodie Passelaigue and, where applicable, any employers, employees, attorneys, agents, other representatives and all other PERSONS acting under her control or on her behalf.

c.      "BILL DIODATO" means defendant Bill Diodato, and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, and present and former directors, employers, employees, attorneys, agents, other representatives and all other PERSONS acting under his control or on his behalf.

d.      "BILL DIODATO PHOTOGRAPHY, LLC" means defendant Bill Diodato Photography, LLC, and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, and present and former directors, employers, employees, attorneys, agents, other representatives and all other PERSONS acting under their control or on their behalf.

e.      "GETTY" means defendant Getty Images (US), Inc., and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, and present and former

directors, employers, employees, attorneys, agents, other representatives and all other PERSONS acting under their control or on their behalf.

   f. "CORBIS" means Corbis Corporation and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, and present and former directors, employers, employees, attorneys, agents, other representatives and all other PERSONS acting under their control or on their behalf.

   g. "MODEL RELEASES" means any document purporting to convey to a photographer any rights concerning an image, including without limitation ownership or usage rights, e.g. but not limited to the type of document constituting the Model Release attached to the Complaint as Exhibit 3 (Dkt. No. 1, at 63).

   h. CLINIQUE UNDERWATER TEST SHOOT means the photography shoot described in paragraphs 20-33 of the Complaint and resulting in the images offered for license by GETTY under "Creative #" 103435148, 103435150, 103435151, and 103435152.

   i. SPIEGEL BEAUTY SHOOT means the photography shoot described in paragraphs 34-38 of the Complaint and resulting in the images offered for license by GETTY under "Creative #" 103434250, 103434252, and 103434254.

j.      AVON SHOOT means the photography shoot which resulted in
the image offered for license by GETTY under "Creative #" 103434251.


## Attachment 1 – Instructions

1.      These Document Requests are continuing, and YOU are required to
supplement YOUR responses seasonably.

2.      If YOU object to any Request, state with specificity all grounds for YOUR
objection; any ground not stated in an objection shall be deemed waived.

3.      If YOU assert a claim of privilege in objecting to any Request, and do not
provide a response or withhold information in full or in part on the basis of such assertion:

a.      In the objection to the Request, identify the privilege being
claimed or asserted;

b.      Provide the following information in the objection, unless
divulging such information would cause disclosure of the allegedly
privileged information: (A) the type of DOCUMENT; (B) the general
subject matter of the DOCUMENT; (C) the date of the DOCUMENT; and
(D) other information sufficient to identify the DOCUMENT including the
author(s), addressee(s), copyholder(s) (including "blind" copyholders),
and, where not apparent, the relationship of the author(s) to the addressee(s)
and copyholder(s).

4.      The singular form of a word should be interpreted as plural wherever necessary to bring within the scope of the request any information that might otherwise be construed outside its scope.

5.      The words "and" and "or" shall be construed either disjunctively or conjunctively wherever necessary to bring within the scope of this request any information that might otherwise be construed outside its scope.

6.      All defined terms noted above shall be considered defined, regardless of whether they are presented in all capital letters, initial capital letters, or without any capital letters.

7.      In responding to these Document Requests, YOU are required to furnish all DOCUMENTS available to YOU, including DOCUMENTS in the possession, custody, or control of YOUR attorneys, officers, agents, employees, accountants, consultants, representatives, or any PERSONS directly or indirectly employed by YOU or otherwise connected with YOU or YOUR attorneys or anyone else subject to YOUR control. All DOCUMENTS that are responsive, in whole or in part, to any portion of these Document Requests shall be produced in their entirety, including all attachments.

8.      ALL DOCUMENTS should be produced as they are kept in the ordinary course of business or should be organized and labeled to correspond to the specific requests to which they are responsive. All DOCUMENTS should be produced in any file folder or carton in which they have been maintained, and should be stored, clipped, stapled, or otherwise arranged in the same form and manner in which they were found.

9.      In the event that any DOCUMENT responsive to any Request has been destroyed or discarded, identify that DOCUMENT by stating the title (if known) and nature of the DOCUMENT, and furnish a list signed by the attorney of record giving the following information with respect to each DOCUMENT: (a) any addressor or addressee; (b) any indicated or blind copies; (c) the DOCUMENT'S date, subject matter, number of pages, and attachments or appendices; (d) all PERSONS to whom the DOCUMENT was distributed, shown, or explained; (e) its date of destruction or discard and the manner of destruction or discard; and (f) the PERSONS authorizing and the PERSONS carrying out such destruction or discard.

## Attachment 1 – Requests for Documents and Objects

Request No. 1

Any email COMMUNICATIONS from your personal email CONCERNING PLAINTIFF, BILL DIODATO, BILL DIODATO PHOTOGRAPHY, LLC, GETTY, MODEL RELEASES, CORBIS, the CLINIQUE UNDERWATER TEST SHOOT, the SPEIGEL BEAUTY SHOOT, or the AVON SHOOT.

Request No. 2

To the extent not produced in response to the above request, any responsive DOCUMENTS in YOUR possession CONCERNING PLAINTIFF, BILL DIODATO, BILL DIODATO PHOTOGRAPHY, LLC, GETTY, MODEL RELEASES, CORBIS, the

CLINIQUE UNDERWATER TEST SHOOT, the SPEIGEL BEAUTY SHOOT, or the

AVON SHOOT.


Dated: October 29, 2018          /s/ Jack Fitzgerald
                                 JACK FITZGERALD (JF 3831)
                                 *jack@jackfitzgeraldlaw.com*
                                 TREVOR M. FLYNN (*pro hac vice*)
                                 *trevor@jackfitzgeraldlaw.com*
                                 MELANIE PERSINGER (*pro hac vice*)
                                 *melanie@jackfitzgeraldlaw.com*
                                 **THE LAW OFFICE OF JACK FITZGERALD, PC**
                                 Hillcrest Professional Building
                                 3636 Fourth Avenue, Suite 202
                                 San Diego, California 92103
                                 Phone: (619) 692-3840
                                 Fax: (619) 362-9555

                                 ***Attorneys for Plaintiff and the Proposed Class***

# Exhibit 57

| | |
|---|---|
| **From:** | Scott Sholder |
| **To:** | Jack Fitzgerald (jack@jackfitzgeraldlaw.com); melanie@jackfitzgeraldlaw.com |
| **Cc:** | Nancy Wolff; Marissa Lewis |
| **Subject:** | RE: Passelaigue v. Getty Images (US), Inc., et al. - Outstanding discovery matters |
| **Date:** | Monday, November 5, 2018 8:24:01 PM |
| **Attachments:** | image002.png |

Jack,

Further to my e-mails below, we have conferred with our client and do not consent to adjourning the date for opposing the Rule 11 motion to January 2019.  You had the 21-day safe harbor under the Rule, and we agreed to further delay our filing so you could depose Diodato and engage in mediation.  You've been aware of the possibility of this Rule 11 motion for more than two years given, among other things, our initial Rule 11 letter.  It is our belief that the court can and should consider the pending motion on the current record.  Of course, if you need a brief extension because your schedule does not permit a response in the allotted time, we are happy to consider that, but will not consent to any further extensions conditioned on discovery milestones.

As to the Getty Images 30(b)(6) witness, he can be available on the following dates in Seattle: December 4, 5, 11, or 12.  Please advise as to your availability and we will look into making appropriate arrangements.

We can set up a time later this week to meet and confer on the remaining issues.  My Friday is pretty open at this point.

-Scott

> Scott Sholder
> Cowan, DeBaets, Abrahams & Sheppard LLP
> *tel: 212-974-7474*
> ssholder@cdas.com

**From:** Scott Sholder
**Sent:** Friday, November 02, 2018 10:35 PM
**To:** jack@jackfitzgeraldlaw.com; Marissa Lewis <MLewis@cdas.com>; 'Melanie Persinger' <melanie@jackfitzgeraldlaw.com>
**Cc:** Nancy Wolff <NWolff@cdas.com>
**Subject:** RE: Passelaigue v. Getty Images (US), Inc., et al. - Outstanding discovery matters

Jack,

I did not say we were not in touch with Ms. Benward.  We have contacted her and I said we have not heard back yet.  Do not put words in my mouth, and do not lecture me concerning alleged opacity in representation of and communication with clients – you are uniquely not in a position to do that.

Also, all three of your subpoenas fail to provide adequate time to collect and produce documents.

Ten days for response and compliance is not a reasonable timeframe and subjects all three subpoenas to potential motions to quash under Rule 45(d). The witnesses will respond to the subpoenas in due course and produce documents (if any) subject to our forthcoming objections, but your timeline is, as I'm sure you know, untenable, and you will not prevail on a motion to compel whether against Ms. Benward or anyone else.

Finally, I did not answer your request for a stay because even if in theory I were inclined to agree, I do not have client authorization. I've passed your request along to our client and will let you know when I hear back.

-Scott

---

**From:** Jack Fitzgerald <jack@jackfitzgeraldlaw.com>
**Sent:** Friday, November 2, 2018 10:03 PM
**To:** Scott Sholder <ssholder@cdas.com>; Marissa Lewis <mlewis@cdas.com>; 'Melanie Persinger' <melanie@jackfitzgeraldlaw.com>
**Cc:** Nancy Wolff <NWolff@cdas.com>
**Subject:** RE: Passelaigue v. Getty Images (US), Inc., et al. - Outstanding discovery matters

Scott,

You avoided addressing my request.

There are lots of reasons Getty's testimony may be relevant, but I assume you do not, in any event, dispute the relevance of the three witnesses whose declarations you have proffered in support of the motion. Accordingly, please confirm that Defendants will stipulate to our Rule 11 response deadline being continued to sometime after we take Miller's, Hilfiker's, and Benward's depositions in or around the week of January 7, and we will prepare a stipulation to get on file early next week.

Regarding Ms. Benward, just a few weeks ago, following our serving her personally with at deposition subpoena, you advised that you represented her and asked that we direct all service on her to you. It disturbing that you apparently are not in touch with her, since we—at your direction—served the recent document subpoena on her, which calls for production of documents on November 8. Please be advised that if we do not receive shortly a proposed deposition date for Benward, or responsive documents in her possession on November 8, we will have little choice but to file a miscellaneous action moving to compel her response to the subpoenas.

Regards,
Jack

_____

Jack Fitzgerald

**The Law Office of Jack Fitzgerald, PC**

Hillcrest Professional Building

3636 Fourth Avenue, Suite 202

San Diego, California 92103

(p) 619-692-3840

(f)  619-362-9555

(c) 650-440-3170

www.jackfitzgeraldlaw.com

---

**From:** Scott Sholder <ssholder@cdas.com>
**Sent:** Friday, November 2, 2018 6:46 PM
**To:** jack@jackfitzgeraldlaw.com; Marissa Lewis <mlewis@cdas.com>; 'Melanie Persinger' <melanie@jackfitzgeraldlaw.com>
**Cc:** Nancy Wolff <NWolff@cdas.com>
**Subject:** RE: Passelaigue v. Getty Images (US), Inc., et al. - Outstanding discovery matters

I don't see the relevance between your Rule 11 response and a Getty Images 30(b)(6) given that the allegations that were either made up or misremembered had to do with Diodato, not Getty Images, and you already deposed Diodato.

Miller and Hilfiker are traveling and have work and family commitments over the next two months and will not be available until the week of January 7.  We have not heard back from Benward.

We can discuss these matters next week, except for Monday; I will be in a deposition all day (hence why I was unavailable today).

> Scott Sholder
> Cowan, DeBaets, Abrahams & Sheppard LLP
> *tel: 212-974-7474*
> ssholder@cdas.com

---

**From:** Jack Fitzgerald <jack@jackfitzgeraldlaw.com>
**Sent:** Friday, November 2, 2018 8:20 PM
**To:** Marissa Lewis <mlewis@cdas.com>; 'Melanie Persinger' <melanie@jackfitzgeraldlaw.com>
**Cc:** Scott Sholder <ssholder@cdas.com>
**Subject:** RE: Passelaigue v. Getty Images (US), Inc., et al. - Outstanding discovery matters

We would like Getty's deposition before our Rule 11 response is due. Will you agree to

continue our deadline to respond until your client can produce a witness?

We have also asked for dates ASAP for Miller, Hilfiker, and Benward (which is one of the reasons it was important to us to have the call today) – please advise.

Regards,
Jack


_____

Jack Fitzgerald

**The Law Office of Jack Fitzgerald, PC**

Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103

(p) 619-692-3840
(f)  619-362-9555
(c) 650-440-3170

www.jackfitzgeraldlaw.com

---

**From:** Marissa Lewis <mlewis@cdas.com>
**Sent:** Friday, November 2, 2018 5:16 PM
**To:** Melanie Persinger <melanie@jackfitzgeraldlaw.com>
**Cc:** jack@jackfitzgeraldlaw.com; Scott Sholder <ssholder@cdas.com>
**Subject:** RE: Passelaigue v. Getty Images (US), Inc., et al. - Outstanding discovery matters

Hi Melanie,

The timing of my response was due to circumstances outside of our control.  It appears you may have misread my initial email; to the extent it was unclear, I did not ask that the meet-and-confer be held by November 22, 2018, but rather, that you provide your availability by today.  Considering no meet-and-confer would have been necessary had the deficiencies been remedied by today's deadline, we did not account for a call in this week's schedule.  In any event, we look forward to a productive meet-and-confer on these issues at some point next week.

As for deposition scheduling, Getty Images has informed us that its 30(b)(6) witness is not available on November 7, 2018.  We are waiting to hear back on the witness's availability and will provide you with a proposed date as soon as we can.  It will likely be in December 2018.

Regards,

Marissa

| Marissa Lewis
| Cowan, DeBaets, Abrahams & Sheppard LLP
| *tel:* 212-974-7474
| mlewis@cdas.com

**From:** Melanie Persinger [mailto:melanie@jackfitzgeraldlaw.com]
**Sent:** Friday, November 02, 2018 12:46 PM
**To:** Marissa Lewis <mlewis@cdas.com>
**Cc:** jack@jackfitzgeraldlaw.com; Scott Sholder <ssholder@cdas.com>
**Subject:** RE: Passelaigue v. Getty Images (US), Inc., et al. - Outstanding discovery matters

Hi Marissa,

It's a little disappointing that your initial email insisted on a teleconference by today, November 2, 2018, even threatening to seek the Court's involvement if we did not reply in a timely manner, but when we responded the very next day that we are available for a call today, you waited until Thursday evening to tell us you're not actually available. Nevertheless, if you are not available for a call today, we will provide our availability for early next week, but we ask that you first confirm that Getty will be providing a witness for the noticed 30(b)(6) deposition on November 7, 2018.

Regards,

_____

Melanie Persinger

**The Law Office of Jack Fitzgerald, PC**
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103

(p) 619-692-3840
(f)  619-362-9555

www.jackfitzgeraldlaw.com

**From:** Marissa Lewis <mlewis@cdas.com>
**Sent:** Thursday, November 1, 2018 3:01 PM
**To:** Melanie Persinger <melanie@jackfitzgeraldlaw.com>
**Subject:** RE: Passelaigue v. Getty Images (US), Inc., et al. - Outstanding discovery matters

Hi Melanie,

Thank you for the follow-up.  Scott would like to be on the call but will be preparing for a deposition tomorrow.  Please propose times for a call next week instead and I will coordinate with Scott.

Marissa

Marissa Lewis
Cowan, DeBaets, Abrahams & Sheppard LLP
*tel:* *212-974-7474*
mlewis@cdas.com

**From:** Melanie Persinger [mailto:melanie@jackfitzgeraldlaw.com]
**Sent:** Thursday, November 01, 2018 5:54 PM
**To:** Marissa Lewis <mlewis@cdas.com>
**Subject:** RE: Passelaigue v. Getty Images (US), Inc., et al. - Outstanding discovery matters

Hi Marissa,

Just following up on my below email regarding scheduling a meet and confer call tomorrow, November 2, 2018.

Regards,

_____

Melanie Persinger

**The Law Office of Jack Fitzgerald, PC**

Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103

(p) 619-692-3840
(f)  619-362-9555

www.jackfitzgeraldlaw.com

**From:** Melanie Persinger <melanie@jackfitzgeraldlaw.com>
**Sent:** Tuesday, October 30, 2018 12:39 PM
**To:** 'Marissa Lewis' <mlewis@cdas.com>; 'jack@jackfitzgeraldlaw.com' <jack@jackfitzgeraldlaw.com>
**Cc:** 'trevor@jackfitzgeraldlaw.com' <trevor@jackfitzgeraldlaw.com>; 'Nancy Wolff'

<[NWolff@cdas.com](mailto:NWolff@cdas.com)>; 'Scott Sholder' <[ssholder@cdas.com](mailto:ssholder@cdas.com)>
**Subject:** RE: Passelaigue v. Getty Images (US), Inc., et al. - Outstanding discovery matters

Hi Marissa,

We are in receipt of your below email raising various discovery issues. Given the other discovery issues raised by plaintiff, we think it makes sense to have a call on Friday November 2, 2018 to discuss all remaining outstanding discovery issues. To that end, please provide us with your availability this Friday.

Regards,


_____
Melanie Persinger

**The Law Office of Jack Fitzgerald, PC**
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103

(p) 619-692-3840
(f)  619-362-9555


[www.jackfitzgeraldlaw.com](http://www.jackfitzgeraldlaw.com)



---

**From:** Marissa Lewis <[mlewis@cdas.com](mailto:mlewis@cdas.com)>
**Sent:** Monday, October 29, 2018 3:39 PM
**To:** [jack@jackfitzgeraldlaw.com](mailto:jack@jackfitzgeraldlaw.com); Melanie Persinger <[melanie@jackfitzgeraldlaw.com](mailto:melanie@jackfitzgeraldlaw.com)>
**Cc:** [trevor@jackfitzgeraldlaw.com](mailto:trevor@jackfitzgeraldlaw.com); Nancy Wolff <[NWolff@cdas.com](mailto:NWolff@cdas.com)>; Scott Sholder
<[ssholder@cdas.com](mailto:ssholder@cdas.com)>
**Subject:** Passelaigue v. Getty Images (US), Inc., et al. - Outstanding discovery matters

Dear Jack and Melanie,

We are writing with regard to numerous discovery matters that remain unresolved, despite our previous attempts to address many of them:

- Discovery Issues Raised in September 18, 2018 Letter:  You have neither responded nor taken any steps to remedy the many discovery deficiencies identified in our September 18, 2018 letter, a copy of which is attached.  Please immediately remedy the issues identified therein by, among other things, providing an amended privilege log; producing copies and/or unredacted copies of all documents improperly designated as privileged; and producing all documents mentioned during Plaintiff's deposition (including all those listed in our email

dated August 28, 2018, which is also attached).

- <u>Putative Class Members' Discovery Responses:</u>  Putative class members Phil Bram, Andressa Costa, and Brittany Clybourn have yet to respond to Defendants First Sets of Document Requests and Interrogatories dated July 2, 2018.  The deadline for response expired nearly three months ago and accordingly any and all objections have been waived.  Please immediately provide these responses.  As you know, Defendants served discovery demands on these models in particular because we are under the impression that you represent each of them for purposes of this action.  Our impression is based on your explicit representations, dating back as early as August 9, 2017.  However, if we are mistaken as to such representation, please immediately advise so that we can procure the necessary discovery through other channels.

- <u>Order to Contact Modeling Agencies for Documents:</u>  During the conference held on September 7, 2018, the Court directed Plaintiff to contact all of her current modeling agencies (regardless of location) and all of her former modeling agencies located outside the U.S. to request production of documents, including model releases and payment-related documentation, responsive to Defendants' Document Request Nos. 5 and 22 (First Set) and Document Request No. 1 (Second Set).  *See* Transcript dated Sept. 7, 2018 at 11:2-25, 12:23-14:11.  Please immediately produce all documents that you have obtained through these agencies.  In addition, please provide a record of each agency that you have contacted in furtherance of the Court's Order to date.  In particular, for each agency you have contacted in this regard, please provide:  (i) the agency's name and contact information, including the name and contact information of your specific agency contact; (ii) the time period during which Plaintiff is or was represented by such agency; (iii) a summary of your attempt(s) to contact such agency pursuant to the Court's Order, including the date(s); (iv) a summary of any response(s) by such agency, including the date(s) and the name(s) and contact information of the individual(s) who responded on the agency's behalf; and (v) the status or outcome of such contact, including, for example, whether the agency has provided or will soon provide the requested documents.

- <u>Plaintiff's Failure to Answer Second Set of Interrogatories:</u>  We have not received any response to Defendants' Second Set of Interrogatories, which was served on Plaintiff on September 18, 2018.  Plaintiff has waived any and all objections to such Interrogatories by virtue of her failure to respond within the time period allowed.  Please immediately provide responses.

We ask that you either remedy the above-mentioned issues or provide your availability for a meet-and-confer to discuss by <u>no later than this Friday November 2, 2018</u>.  We have been exceedingly patient in the past, but with the mediation now behind us and discovery in full swing, we will not hesitate to seek the Court's involvement if we do not hear from you in a timely manner.

Regards,
Marissa



Marissa Lewis
Associate
Cowan, DeBaets, Abrahams & Sheppard LLP
41 Madison Avenue, 38th fl., New York, NY 10010
*tel:* 212-974-7474 / *fax:* 212-974-8474
mlewis@cdas.com / www.cdas.com

*** *This e-mail and any files transmitted with it are confidential. Its contents are intended solely for the Recipient(s) indicated and may also be privileged or otherwise protected by work product immunity or other legal rules. If you are not the intended Recipient you are hereby notified that disclosing, copying, distributing or taking any action in reliance on the contents of this e-mail is strictly prohibited. If you have received this e-mail in error, please delete this e-mail from your system and notify Cowan, DeBaets, Abrahams & Sheppard LLP immediately by e-mail.* *** [v4141]*

# Exhibit 58

| | |
|---|---|
| **From:** | Jack Fitzgerald |
| **To:** | "Marissa Lewis"; "Melanie Persinger" |
| **Cc:** | "trevor@jackfitzgeraldlaw.com"; "Scott Sholder" |
| **Subject:** | RE: Passelaigue v. Getty Images (US), Inc., et al. - Responses to subpoenas |
| **Date:** | Friday, November 9, 2018 9:30:00 AM |
| **Attachments:** | image002.png |

Marissa —

We nevertheless wish to depose Ms. Benward. Please either provide a date, or state that you refuse to produce her so that we may proceed accordingly.

Regards,
Jack


_____


Jack Fitzgerald

**The Law Office of Jack Fitzgerald, PC**

Hillcrest Professional Building

3636 Fourth Avenue, Suite 202

San Diego, California 92103


(p) 619-692-3840

(f)  619-362-9555

(c) 650-440-3170


www.jackfitzgeraldlaw.com

**From:** Marissa Lewis <mlewis@cdas.com>
**Sent:** Thursday, November 8, 2018 3:31 PM
**To:** jack@jackfitzgeraldlaw.com; Melanie Persinger <melanie@jackfitzgeraldlaw.com>
**Cc:** trevor@jackfitzgeraldlaw.com; Scott Sholder <ssholder@cdas.com>
**Subject:** Passelaigue v. Getty Images (US), Inc., et al. - Responses to subpoenas

Dear Jack and Melanie,

Please find attached responses and objections to the subpoenas *duces tecum* issued to Lauren Benward, Linda Hilfiker, and Max Miller.

We have connected with Ms. Benward regarding her proposed deposition.  Ms. Benward has informed us that she has no relevant knowledge or recollection beyond what is stated in her sworn declaration; therefore, no deposition is necessary.

Regards,
Marissa



Marissa Lewis
Associate
Cowan, DeBaets, Abrahams & Sheppard LLP
41 Madison Avenue, 38th fl., New York, NY 10010
*tel: 212-974-7474 / fax: 212-974-8474*
mlewis@cdas.com / www.cdas.com

*** *This e-mail and any files transmitted with it are confidential. Its contents are intended solely for the Recipient(s) indicated and may also be privileged or otherwise protected by work product immunity or other legal rules. If you are not the intended Recipient you are hereby notified that disclosing, copying, distributing or taking any action in reliance on the contents of this e-mail is strictly prohibited. If you have received this e-mail in error, please delete this e-mail from your system and notify Cowan, DeBaets, Abrahams & Sheppard LLP immediately by e-mail. *** [v4141]*

# Exhibit 59

## Filed Under Seal

# Exhibit 60

## Filed Under Seal

# Exhibit 61

| Compl. ¶ | Allegation | Evidence Supporting Allegation |
|---|---|---|
| 17-18 | Plaintiff Elodie Passelaigue is a professional, internationally-renowned fashion model. She currently is represented by the world-famous New York modeling agency, Wilhelmina Models. In the past, she has been represented by other prominent modeling agencies . . . . (Compl. ¶ 17);<br><br>Ms. Passelaigue has been photographed by many of the world's leading fashion photographers. Her client list is a virtual "who's who" of high-end fashion and beauty icons, including Cartier, Christian Dior, Yves St. Laurent, Giorgio Armani, Hermes, Harry Winston, Vera Wang, and Prada (Compl. ¶ 18) | • Fitzgerald Decl. Ex. 62, P5-9 (agreement between Plaintiff and Proctor & Gamble concerning Clairol Nice 'N Easy branded products)<br><br>• Fitzgerald Decl. Ex. 63, P10-13, P14 (website printouts showing clients and photographers Plaintiff has modeled for)<br><br>• Fitzgerald Decl. Ex. 64, P22-23, P40-42, P45-48, P49-52, P104 (evidence of payments Plaintiff received for modeling jobs)<br><br>• Fitzgerald Decl. Ex. 65, P24-30 (Plaintiff's agreement with Elite Modeling Agency)<br><br>• Fitzgerald Decl. Ex. 66, P53-85 (agreements between Plaintiff's agency, Karin, and Clinique, for Plaintiff's modeling services)<br><br>• Fitzgerald Decl. Ex. 67, P479-83 (article titled "EXCLUSIVE INTERVIEW: French Supermodel ELODIE PASSELAIGUE," with photo containing caption, "One of the Clinique campaigns that helped her to be propelled into the eyes of the average person")<br><br>• Fitzgerald Decl. Ex. 1, Passelaigue Dep. Tr. at 29:18-41:21, 66:2-68:25, 71:6-75:10, 100:14-104:2, 115:7-12 (detailing modeling career and earnings) |
| 20 | One advertising campaign for which Clinique was interested in hiring Ms. Passelaigue in early 2004 was expected to involve images of her in water, showing part of her face above water, with part of her face and neck underwater. | • Fitzgerald Decl. Ex. 68, P4 (February 9, 2004 calendar entry for "Clinique → test for aquarium shot," starting at 11:30 a.m.)<br><br>• Fitzgerald Decl. Ex. 51, Diodato Dep. Tr at 9:25-10:3 ("In 2004 I photographed her for a test shoot for Clinique…"), 251:3-252:13 (describing the particulars of the test shoot). |
| 23, 27, 28, 29, 38 | On February 9, 2004, Ms. Passelaigue posed for the Clinique underwater test photos in New York, which were taken by Diodato. After the test shoot was completed, Diodato asked Ms. Passelaigue if he could use photos from the test shoot for his portfolio and professional website simply as an example of his work. He showed her a form document titled "Model Release," representing . . . that if she was willing to allow him to use the | • Fitzgerald Decl. Ex. 69, P388 (April 2015 email in which Ms. Passelaigue's former counsel, Cyrus Dugger, tells Getty's present counsel, Nancy Wolff, that "[m]y client recalls signing a release for Getty Images No. 103435150 at the conclusion of the 2004 shoot, but specifically recalls not signing a release for Getty Images No. 103434252 during the June 11, 2009 shoot.")<br><br>• Fitzgerald Decl. Ex. 12, P827 (April 2015 email in which Ms. Passelaigue tells a model colleague, "Bill Diodato made me sign a |

| Compl. ¶ | Allegation | Evidence Supporting Allegation |
|---|---|---|
| | photos only for his portfolio and website, she just needed to sign the Model Release form. (Compl. ¶ 23)<br><br>After Ms. Passelaigue agreed to allow Diodato to use the test shots only for his portfolio and website, Diodato took Ms. Passelaigue into a different room where they were alone, and directed her to sign the "Model Release" document where indicated, which she did. (Compl. ¶ 27)<br><br>Diodato also directed Ms. Passelaigue to fill in only a few additional items where indicated, specifically her name, address, phone number, email address, and date of birth, which she did. Ms. Passelaigue was not directed to, and did not date the release under her signature and name where indicated. (Compl. ¶ 28)<br><br>When Ms. Passelaigue left the premises shortly thereafter, the Model Release form contained no signature of a photographer or any witness, did not set forth a photographer name in the two places where indicated, did not set forth the "Description of Shoot" where indicated, did not have a mark in the box indicating the model is at least 18 years old, and did not "Attach a Copy of a Photo ID or Visual Reference" where indicated. (Compl. ¶ 29)<br><br>At no point before, during, or after the Spiegel shoot, either that day or at any other time, did Ms. Passelaigue sign anything, nor give Diodato or anyone else any permission to sign anything on her behalf, purporting to provide a release or rights of any kind to Diodato concerning the Spiegel photos. (Compl. ¶ 38) | voucher on a light test that we were doing for Clinique Cosmetics, he also claimed that it was for his personal promotion and then proceeded to sell both the pictures from said shoot and those from a waist down shoot that took place years later via a different agency to Getty Images for a profit. [ . . . ] Also, I was wondering if there was any mention of Bill Diodato's legal representation on the release that you signed. You see, I do not have a copy of mine which is what makes my case tricky because the voucher that Bill Diodato has used to sell my images has been altered to suit the product of both shoots; in other words: Bill added stuff to the object line to make it seem like I signed one voucher for both jobs even though they were shot 4 years apart for two distinct clients and via two very distinction agencies.").<br><br>• Fitzgerald Decl. Ex. 7, BDP19-21 (April 2015 email from Getty representative to Diodato noting Plaintiff "says she recalls signing a release for image 103435150 at a shoot that took place in February 2004, but claims that no valid release exists for [other] images . . . .").<br><br>• Fitzgerald Decl. Ex. 4, WIL112-15 (upon first seeing the Model Release in August 2014, Plaintiff stating to her agent, "Indeed, this is my signature for the Clinique under water shoot that happened on Monday February 9th, 2004.")<br><br>• Fitzgerald Decl. Ex. 1, Passelaigue Dep. Tr. at 137:21-138:7 ("The address was my address. The phone number, as I said, has changed a while prior. It's my handwriting, though. The e-mail address was valid and still is. The birth year is inaccurate. The date is not my handwriting. The printed name is my handwriting. The signature looks like my signature, but as I said, really signed in a hurry because usually it's more legible than that. The rest is not me, clearly.").<br><br>• Wolff Decl. Ex. C ¶ 6 (Mr. Diodato filled out the 'Description of Shoot,' which is his general practice, filled in the date and signed his name…") |

| Compl. ¶ | Allegation | Evidence Supporting Allegation |
|---|---|---|
| | | • Fitzgerald Decl. Ex. 51, Diodato Dep. Tr. 268:9-12 ("I'm fairly certain that I wrote the date in when I gave it to her. She had -- the date was already filled in when she took possession of the release."), 268:23-269:4 (Diodato does not know who checked the box next to "I represent and warrant that I am at least eighteen years of age."), 49:20-50:3, 267:2-4 (Indicating when Plaintiff signed the release, there were no pictures in the visual description area on the top right corner of the release) <br><br> • Wolff Decl. Ex. B ¶ 8 (indicating the photos were attached to the release after the shoot). |
| 30, 31 | Ms. Passelaigue did not agree, and never would have agreed, to allow Diodato or anyone other than Clinique to use the test photos to advertise cosmetics or other commercial products (including possibly in competition with or otherwise adversely to Clinique), since the test shoot and resulting photos were commissioned and paid for by Clinique as a feasibility study for a Clinique ad campaign. (Compl. ¶30) <br><br> As Ms. Passelaigue and Diodato well knew, Ms. Passelaigue herself did not have any such rights to convey, but instead all such rights to the photos were owned exclusively by Clinique. To then agree to provide those same rights to someone else— indeed, rights that she never even had—would not only possibly destroy Ms. Passelaigue's relationship with Clinique, an important client, but could seriously damage her reputation and compromise her entire career as a professional model. Accordingly, Ms. Passelaigue would never even contemplate doing so, and any suggestion to the contrary defies common sense. (Compl. ¶31) | • Fitzgerald Decl. Ex. 51, Diodato Dep. Tr. 253:5-254:24 ("This [Clinique] was shot for a client, and there's a whole process that needs to happen before I can even consider licensing a picture that I was hired for by someone else") |
| 34 | On June 11, 2009 . . . Ms. Passelaigue was hired to do a photo shoot in New York for Spiegel, a women's clothing and accessory company. Diodato was the photographer. | Fitzgerald Decl. Ex. 5, P15 (Outlook.com calendar entry for June 11, 2009 nothing "Spiegel," and "ph: Bill Diodato") |

| Compl. ¶ | Allegation | Evidence Supporting Allegation |
|---|---|---|
| 36 | Spiegel hired Ms. Passelaigue only for "waist down" photos . . . . | • Fitzgerald Decl. Ex. 53, P16 (August 21, 2014 email from plaintiff's Ford Models agent, Janet Rohan, to plaintiff stating that the Spiegel "chart said that shoot was for wait downs with Bill Diodato") |
| 37 | Upon completion of the Spiegel shoot, Ms. Passelaigue changed her clothes and left promptly to get to her next modeling assignment that day. | • Fitzgerald Decl. Ex. 53, Passelaigue Dep. Tr. at 215:23-217:6 (Plaintiff explaining why she may have had another assignment following the Spiegel shoot), 119:5-10 (Plaintiff explaining her signature on the model release looks rushed in comparison to her signature on other documents). |
| 39, 46 | In about August 2014, Ms. Passelaigue learned for the first time that headshot images of her were being used in an advertising campaign for Botox, a prescription-only medicine manufactured by pharmaceutical giant Allergan, which is injected into muscles and used to temporarily improve the appearance of moderate to severe "crow's feet" lines and frown lines between the eyebrows. (Compl. ¶ 39)<br><br>Because Allergan had never hired Ms. Passelaigue, she was confused about how it obtained the photos of her. When she initially saw the Botox advertisement featuring her image, she did not recognize the photo as having come from a particular photo shoot or relating to a particular client (Compl. ¶ 46) | • Fitzgerald Decl. Ex. 2, WIL194-96 (email communications beginning July 21, 2014, between Plaintiff and her agent, Daureen Castonguay, regarding discovery of Allergan ad)<br><br>• Fitzgerald Decl. Ex. 70, WIL218-19 (email communications between Plaintiff and her agent, Daureen Castonguay reflecting confusion about source of Allergan photo) |
| 40 | Ms. Passelaigue first learned of Allergan's use of her image to advertise Botox when someone asked if she had ever modeled for Botox, and despite that Ms. Passelaigue never did, insisted that her picture was on a Botox website. Ms. Passelaigue responded that was not possible, at which point she was shown a website page for something called "Brilliant Distinctions," that advertised Botox with a photo of Ms. Passelaigue. In the days following, others also pointed out that Ms. Passelaigue was now modeling for Botox. | Fitzgerald Decl. Ex. 1, Passelaigue Dep. Tr. 127:3-129:25, 149:11-20 (testifying to story of discovering Allergan ad when alerted to it by others) |

| Compl. ¶ | Allegation | Evidence Supporting Allegation |
|---|---|---|
| 47 | Ms. Passelaigue was quite concerned. Not only was her image being used for commercial purposes to sell synthetic cosmetic medicines by a company that never hired her or otherwise paid for her modeling services, but depending on the circumstances, such use might violate contracts she had with her actual clients, or otherwise compromise and damage those relationships and her career. | Fitzgerald Decl. Ex. 2, WIL194-96 at WIL194 ("[T]his person has sold a picture of me to Allergan with no regard to the rights to my personal image nor the fact that maybe I did not want to be associated to a product like Botox (ie: it is my decision to make whether I do or don't want to be associated with such brand as it can affect future work, never should a legitimate photographer own the right to dispose of my image that way).") |
| 49 | Ms. Passelaigue contacted her agent, who knew that Grey Advertising was the ad agency for Botox. Grey Advertising informed Ms. Passelaigue's agent that it had licensed the image from Getty. | • Fitzgerald Decl. Ex. 1, Passelaigue Dep. Tr. 131:6-132:9 (testifying to story of Plaintiff's agent contacting Grey about Allergan ad)<br><br>• Fitzgerald Decl. Ex. 2, WIL194-96 (email communications beginning July 21, 2014, between Plaintiff and her agent, Daureen Castonguay, regarding discovery of Allergan ad) |
| 54, 55 | Ms. Passelaigue immediately recognized one photo, appearing on the right, from the Clinique underwater test shoot assignment. The other photo, appearing on the left, Ms. Passelaigue recognized as having come from the same photo shoot as the photo being used by Allergan to advertise Botox, but she still was unable to associate the photo with a specific prior client assignment or photo shoot. (Compl. ¶ 54)<br><br>The identification of "Spiegel Beauty" in Description of Shoot" was a possible clue as to the origin of this other photo, and Ms. Passelaigue's former agent at Ford Models confirmed that the Spiegel shoot occurred on June 11, 2009. But Ms. Passelaigue remained confused because her former agent also identified the Spiegel shoot as "waist down" only. (Compl. ¶ 55) | • Wolf Decl. Ex. E, WIL108-109, at WIL108 (deducing possible photos shoots from which photos on redacted release were derived)<br><br>• Fitzgerald Decl. Ex. 4, P939-43<br><br>• Fitzgerald Decl. Ex. 53, P16 (email from Ford agent indicating the Spiegel shoot was "waist down") |
| 56 | Further, as Ms. Passelaigue has always understood, it is totally inappropriate and unheard of in the industry for the same release to cover two different shoots, for two different clients, on two different dates – indeed five years apart – and especially with those shoots during times while being represented by two different agents at two different modeling agencies. | Fitzgerald Decl. Ex. 4, P939-43 ("I would never have been put in a situation to sign a co-release for a shoot happening on June 11th 2009 for Spiegel, a fashion brand, while I was signed to Ford Models, and another project shoot for Clinique Cosmetics (no affiliation between the two) 5 years prior, while I was signed to Karin Models.") |

| Compl. ¶ | Allegation | Evidence Supporting Allegation |
|---|---|---|
| 57 | Ms. Passelaigue's agent (and/or her agent's attorney) eventually convinced Getty to identify the supposed photographer of the image used for the Botox advertising. Yet Getty continued to conceal Diodato's identity by falsely representing that the photographer was Adrianna Williams. At about the same time, Ms. Passelaigue discovered photos of herself on Getty's website being offered for sale or license, including one apparently from the same shoot as the photo used by Allergan to advertise Botox and two photos from the Clinique underwater test shoot, as depicted on the following page: | Fitzgerald Decl. Ex. 2, WIL194-96 at WIL195 (Plaintiff's agent saying of Adrianna Williams on August 8, 2014, "when you go to her sight [sic] and others like it (getty etc.) it seems like most of the photos on there are hers, yet no one remembers working with her." |
| 58 | These photos, along with photos of countless other models, were on Getty website pages identifying the photographer of these shots as Adrianna Williams. But Ms. Passelaigue had never worked with a photographer named Adrianna Williams. Ms. Passelaigue's agent asked other models if they had ever worked with or even heard of a photographer named Adrianna Williams. None had. | Fitzgerald Decl. Ex. 2, WIL194-96 at WIL195 (Plaintiff's agent noting, "further investigation, shows that she lives in California, it's crazy when you go to her sight and others light it (getty etc.) it seems like most of the photos on there are hers, yet no one remembers working with her.")<br><br>Fitzgerald Decl. Ex. 2, WIL194-96 at WIL195 (Plaintiff's agent noting, "the more girls I have spoken with, and them saying they never worked with her, I was coming to the same conclusion," i.e. that "Adrianna Williams" was an invented name). |
| 51, 52, 63, | Diodato fraudulently added "& Spiegel Beauty" on the line for "Description of Shoot," and also fraudulently added under Ms. Passelaigue's signature the date of the Spiegel shoot of "6-11-09," even though Ms. Passelaigue signed the release five years earlier as the Clinique underwater test shoot ended. In fact, as Ms. Passelaigue has always understood, it is customary in the industry that releases are not signed in a retroactive manner, such that Ms. Passelaigue would not have signed a release at a 2009 Spiegel shoot that also included a 2004 Clinique shoot. | Fitzgerald Decl. Ex. 69, P388 (April 2015 email in which Ms. Passelaigue's former counsel, Cyrus Dugger, tells Getty's present counsel, Nancy Wolff, stating, "The two images included in this release were taken at two different test shoots, for two different clients, while my client was with two different agencies. . . . My client recalls signing a release . . . at the conclusion of the 2004 shoot, but specifically recalls not signing a release . . . during the June 11, 2009 shoot. It appears that the model release by the photographer was 'butchered'/doctored to use the signature from 2004 to appear to also release the 2009 image.") |
| 95 | [D]efendants' unlawful behavior has caused Ms. Passelaigue to be falsely associated with Allergan and its synthetic beauty products, including Botox, causing damage to her reputation and prospective business relationships and opportunities. | • Fitzgerald Decl. Ex. 1, Passelaigue Dep. Tr. at 150:13-22, 153:2-5 (describing client who believed Plaintiff had used Botox due to Allergan ad) |

| Compl. ¶ | Allegation | Evidence Supporting Allegation |
|---|---|---|
| | | • Fitzgerald Decl. Ex. 1, Passelaigue Dep. Tr. at 187:20-190:19 (describing how, upon learning her photograph was used to advertise Brilliant Distinctions, Plaintiff's agent "said to me . . . this is not good news," and noted certain clients with more holistic brands would decline to hire her, without expressly stating it is because of their belief that she has used Botox). <br><br> • Fitzgerald Decl. Ex. 1, Passelaigue Dep. Tr. at 191:15-194:24 (describing brands Plaintiff is aware are unlikely to hire a model believed to have taken Botox) |

# Exhibit 62

## Filed Under Seal

# Exhibit 63





Credits

PORTFOLIO  |  SCHEDULE  |  AGENCIES  |  CLIENTS  |  PHOTOGRAPHERS / DIRECTORS  |  BIO  |  BLOG  |  CONTACT



Larry Travis



Malina Corpadean, Clin d'Oeil Magazine

A Magazine
A Prendre ou a Laisser
Acura
Aerosoles
Agnona
Akris
Alfred Angelo
Alvin Valley
American Baby Magazine
Amy Zerner
Anderson Hannant
Angel Sanchez
Ann Demeulemeester
Ann Taylor
Annabelle Magazine
Anne Barge
Anthony Manfredonia
Arc. The Hotel
Arena Magazine
Armando Piquer
Artech
Atil Kutoglu
Atmosphere Magazine
Avon

B Michael
Balenciaga
Barbara Bui
Barrie Pace
Bealls
Belks
Bergdorf Goodman
Better Homes and Garden
Biba Magazine
Birnbaum and Bullock
Bidz Magazine
Blue Blood TV Series
Bottega Veneta
Brides.com
Brunello Cucinelli
Bulgari

Cabi Notion
Caitie and Marc
Calvin Klein
Cargo Magazine
Carmen Marc Valvo

Ecco Shoes
Eileen Fisher
Elegance
Elegant Bride Magazine - USA
Elegant Bride Magazine - Canada
Elizabeth Arden's Red Door Spa
Elle Magazine - USA
Endemol
Epson
Etro
Eva
Exclusively Misook

Figaro Magazine
Fisher Price
Five Story
Flare Magazine
Florida International Magazine
Flyer Magazine
Fox 5
Francesco Biasia
Francois Nars - Motu Tane
Frederic Fekkai
Frederick's of Hollywood
Fusha

Gaelyn and Cianfarani
Gala Magazine
Garnier Movida
Gavin Rajah
Gerbe Hosiery
Gianfranco Ferre
Gigi Burris
Gioia Magazine
Giorgio Armani
Girls TV Series
Givenchy
Glamour Magazine - UK
Godiva Chocolate
Goldwell
Good Housekeeping Magazine
Good Morning New York
Graff
Greg Norman

H&M
Haider Ackermann
Hammy The Bear Movie

L'Oréal Matrix
L'Oréal Paris
L'Oréal Professional Body
Lafayette 148
Ladies' Home Journal
Lady Ice
Lanvin
Le Bon Marche
Lida Baday
Liverpool
Loft by Ann Taylor
Long Elegant Legs
Lord and Taylor
Lorena Sarbu
Loro Piana
Louis Vuitton
Lovesac
Lucky Magazine

Mackage
Macy's Midwest
Macy's South
Macy's West
Mantles at The Bay
Marc Bouwer
Marc Montano
Marchesa
Marella Ferrera
Margaret M
Marie France Magazine
Marisa Minicucci
Marsh's
Marshall Field's
Marshalls
Mary Jane Denzer
Mary Kay
Max Mara
Máxima Magazine
Melanie Birkett
Michael and Hushi
Michael J Fox Show
Michael Kors
Michael Soheil
Michelle Copelman
Micromax Informatics
Milly
Mimi Bizjak

Quinto & Co

Ralph Lauren
Ralph Lauren Black Label
RedCats USA
Redken
Reem Acra
Regis Salons
Richard's
Richard Tyler
Roaman's
Robert Danes
Robert Tonner
Roberta Freymann
Roberto Cavalli
Room 608
Rosa Clará Bridal
Rosie Assoulin
Rouge Magazine
Rubin Chapelle

Saks Fifth Avenue
Sea Island Magazine
Sephora
Sharon Wauchob
Shin Choi
Shwatzkopf
Silia by Leyla Basakinci
Silpada Jewelers
Skip Hop
Soft Surroundings
Somerset County Magazine
Sonia Rykiel US
Sophie Théallet
Sotheby's
South Sea Pearl Consortium
Spiegel
Stage Stores
Steinmart
Stella MacCartney
Strenesse
Surface Magazine

Talbots
Talbot Runhof
Talulah
Target
TF1

Carolina Herrera
Cartier
Casual Living
Celia Krithari
Celine
CF Goldman
Chado Ralph Rucci
Chadwick Bell
Chamilia Jewelry
Chanel
Charlotte
Châtelaine Magazine
Chicago Style Magazine
Chico's
Chloe
Christian Dior
Christopher Deane
Christopher Sholar
Clairol Nice n' easy
Clin d'Oeil Magazine
Clinique Cosmetics
Concepto by Angel Sanchez
Conrad C
Cream Magazine
Crystal Siemensr
Cutter and Buck
Cynthia Steffe

D Weddings Magazine
De Beers Jewelers
Delpozo
Denis Basso
Derek Lam
Designer Loft
Dessy Bridal
Deutsch Magazine
Devon & Jones
DHC
Dillards
Dior
Dolce and Gabana
Domino Mag
Donna Karan
Douglas Hannant
Douglas Perfumeries
Dries Van Notten

Hampton's Cottage and Gardens
Harper's Bazaar Magazine - USA
Harper's Bazaar Magazine - Russia
Harry Winston
Hee Kim
Hermes
Heroes Magazine
Hewlett Packard
Hilary Radley
Hirshleifer's
Holt Renfrew

Iluminage
Isabel Toledo
Isabella Bird
Io Donna Magazine

J. Mendel
Jacques Dessange
James Coviello
James Thomas
Jean Charles de Castelbajac
Jean-Louis David
Jean-Louis Desforges
Jen Bel
Jenny Lee
Jersey Alakazia
Jill Stuart
Joan Vass
John Barrett
John Sahag
Jordache

Kathy Hilton
Kathy Kuo
Kaufman Franco
Kesia Estwick
Kim Hicks
Kim Hirsh
Kohls

Mishook
Mitchell's
Moët Chandon
Mon Cheri Bridal
Mona
Monique Luillier
Morgan Le Fay
Morgan Stanley
Morrocan Oil

Naeem Khan
Neiman Marcus
National Fur Council of Canada
Neo2 Magazine
Neutrogena
New York and Company
New York Magazine
New York Moves
New York Times
Nico and Adrian
Nigel Hamill
Nordstrom

O. Seunghee
Ocean Drive Magazine
Ogilvy
Oliver's Deal Movie
Oprah Magazine
Organic Style Magazine
Oscar de la Renta
Oui Magazine
Oyster Magazine

Pamella Roland
Panasonic
Pantene
Parents Magazine
Paul Stewart
Paule Ka
PDN Magazine
Peserico
Peter Som
Phase One
Philadelphia Magazine
Phildar Hosiery
Phyto
Piazza Sempione
Pixi Cosmetics
Planet Magazine
Plein Sud

Thaki Yarns
The Cloisters Magazine
The Good Wife TV Series
The Hudson's Bay Company
The Other Woman Movie
The Plaza Hotel
The Leather Connection
The Leftovers Movie
The Limited
The Plaza Hotel
The Soho House
The Territory Ahead
Thom Browne
Toronto Life Fashion Magazine
Town and Country Magazine
Twion

Urban Outfitters
US Polo Association

Valentino
Vellum Magazine
Vera Wang
Victoria Magazine
Viv Mag
VIV Magazine
Vogue Nippon
Vogue Pelle
Vogue Spain
Vogue USA

WWD
W Magazine
Waters and Waters
Wedding Bells Magazine
Wella
White Collar TV Series
Women Within

Xeniya

Yves St Laurent

Zink Magazine
Zoo Zoom Magazine
Zuhair Murad

5 to 7 Movie
808 Magazine

P00012

Polux-Lutz
Pond's
Pool Magazine
Prada
Prive
Pronovias

© 2015 elodie. All Rights Reserved. Powered by **Lestoree.com**

Max Abadian
Arthur Adams
Bryan Adams
Richard Aqudelo
Rui Aguiar
Jaime Aguilar
Juan Alagrin
Jeff Alexander
Arcadius
Coco Amardeil
Pasha Antonov
Guy Aroch
Maude Arsenault

Andrew Balfour
Ondrea Barbe
Serge Barbeau
Nigel Barker
Della Bass
Jamie Beck
Alex Beauchesne
Steve Beckrouet
Vera Belyavskaya
Elias Benarohe
David Black
Daniel Boardman
Jim Bottomley
Susan Bowlus
Manon Boyer
Iris Brosch
Alex Brown
Innis Brown
Peter Brown
Peter Buckingham
Richard Burbridge
Kevin Burg
Augustus Butera

Andre Carrara
Henri Castro
Kip Chapelle
Walter Chin
Colleen Chrzanowski
J.L. Clark
Robert Collins
Ron Contarsy
Joe Comick
Justin Cooper
Malina Corpadean
Matthew Cronin

Nic D'amico
Nuri Davnish
Kit Defever
Paul De Luna
Donna DeMari
Jack Deutsch
Robert Diadul
Bill Diodato
Khoa Dodinh
Andre Drykin
Douglas Dubler
Joel Dumoulin

Stephen Eastwood
Brian Edwards
Steve Erle

Baldomero Fernandez
Michael Filonow
Eric Fischer
Charles Flores
Marili Forastieri
Douglas Foulke
Jim Franco
Anne Constance Frenoy

Daniel Gabbay
Bruno Gaget
Julio Gaggia
Antoine Galey
Jayson Gallop
Mateo Garcia
Jacques Gavard
Christian Geisselmann
Tryan George
Blair Getz Mezibov
Mario Godlewski
Claudia Goetzelmann
Alvaro Goveia
Alexandra Grablewski
Charles Gullung

Gail Hadani
Bradley Hanson
Barry Harris
Bode Helm
Jim Henkens
Ben Hertzog
Pat Hill
Francis Hills
Greg Hinsdale
Marc Hispard
Nir Hod
Anthony Horth
Troy House
James Houston
Paul Howell
John Huba

Saloi Jeddi
Michael Johnson
Jodi Jones
Christophe Jouany
Gabor Jurina

Serge Khalfon
Max Kim-Bee
Caroline Knopf
Joshua Kogan
Christopher Kolk
Nick Krasznai
Brian Kraus
Sergio Kurhajec

Jean-Philippe Lacube
Joel Larson
Jeff Licata
Luai Liegai
Fabrizio Lo Guidicci
Simon Lopez
Frederic Lucano
Elliston Lutz

Rob Mandolene
Marco Marezza
Charles Masters
Ericka McConnell
Steven Mead
Justin Melnick
Fabiola Menchelli
Fernando Milani
Bill Miles
Chris Millscher
Caitlin Mitchell
Guido Mocafico
Matthew Monteith
Peter Morneau
Douglas Mott
Eva Muller

Nagi
Dylan Nelson
Roger Neve
Chris Nicholls
Luca Nicolao
Todd Norwood

Michael James O'Brien
Jeff Olson
Kate Orne

Anthony Parmelee
Dorothy Parker
Greg Paupst
Karen Pearson
Tiff Pemberton
Jason Penney
Frederic Penvern
Loic Peach
Joe Pytka

Gonzalo Ramos-Solis
Stephanie Rausser
Philippe Regard
Coliena Rentmeester
Alberto Rizzo
Willis Roberts
Daniel Robillard
Jean-Pierre Rodella

Brian Sassmann
Philippe Salomon
Pedro Sandoval
Blanca Santa Maria
Howard Schatz
TJ Scott
Shamila
Mark Shultz
Sarah Silver
Nelson Simoneau
Andreas Sirch
Lucien Sirois
Gary Sloan
Greg Sorensen
Pauline St Denis
Dieter Strasser
Stratis and Beva
Jenn Stuart

Francis Taieb
Mei Tao
Logan Thomas
Richard Thomas
Michael Thompson
Annabelle Tiaffay
Larry Travis
Fabrice Trombert
Mark Tully
Malcolm Tweedy
Anthony Two Moons
Bill Tyler

Jean Valade
Michael Vex
Veretta
Lisa Vosper

Aaron Ward
Michael Waring
Albert Watson
Melanie Watson
Norman Watson
Isa Went
George Whiteside
Claus Wickrath
Tom Wool
Tony Wu

© 2015 elodie. All Rights Reserved. Powered by Lestoree.com

# Exhibit 64

## Filed Under Seal

# Exhibit 65

## Filed Under Seal

# Exhibit 66

## Filed Under Seal

# Exhibit 67

# Dre DeCarlo

<u>UNCATEGORIZED</u>

# EXCLUSIVE INTERVIEW: French Supermodel ELODIE PASSELAIGUE

<u>FEBRUARY 17, 2010</u> | <u>DRE DECARLO</u> | <u>LEAVE A COMMENT</u>



*One of the Clinique campaigns that helped her to be propelled into the eyes of the average person*

*Elodie Passelaigue,* being born in a country which she says that being a model is not seen as a respectable career choice. Passelaigue was born and raised in *Salon-de-Provence (a tiny medieval town in Rhone Valley, South of France), Provence, France* until 18 years of age with no movie theatre or shopping malls (at that time) within her small district. So, she lived a very humble childhood picking pears and apples with her close friends while running through the nearby fields. Elodie is the daughter of two Club Med' G.O.s, and the eldest of four girls. To this date, her three sisters, nephew, grandma and mom still remain in the South of France, from where they all watch her accomplish her dream of traveling the world.

*by Frederic Lucano*

P00479

When I asked her about what she thoughts about many persons, especially parents, saying that modeling really ISN'T a lucrative career.

-She responded, " We'd be dumb NOT to do (be models) it!  Because at the stage that we (her and her close su-permodel friends) are at in our lives, we make more money than most people at any level, in any position, at any co-operation in the world! We're travelling the world, seeing things that people only DREAM of seeing and doing things that people could only DREAM of doing in their lifetime and then they ask you why!!??"

*–caught mid-laugh during a shoot for her new **Marshalls** campaign–*

### Dre- When did you start modeling?

**Elodie-** *I started modeling when I was about 21 in Canada. Back in France, my then boyfriend and my mom were bugging me to send my pictures to a contest (Karin Models). I saw it on TV and I saw fliers for it and I guess I gave in (chuckle). So, eventually, I got some pictures done, because I had a friend in the arts programme at my university. About 4-5 months later, I was asked to go to Karin Models and they basically told me that I was one of the finalists. But then told me to come back because I was really skinny, like smaller than I am right now and the same height! I was about to leave for Canada so I said to myself that this isn't going to happen. So, on my way to Canada, my mom says, "You know, you should keep in touch with these people and ask for information on agen-cies in Canada!" And I'm like, "Come on mom! I'm leaving for Canada, and that's a big enough change!"*

*by Chris Nicholls*

*But then I met this guy from **Ottawa Life Magazine,** and I started doing some work for them and some other high-end jobs in Canada. I eventually moved to New York and at first I was with **Karin Models** and then I switched over to **Elite Model Management, and now I'm with Ford Model Management New York**.*

*by Nigel Barker, of America's Next Top Model fame*

While in Canada, Elodie had to pay for her studies on her own. On week days, she worked as a parking attendant on the University lot; on weekends, she made popcorn for the on-campus movie theater crowd. Eventually, she found a job as a sales representative and front desk associate at a boutique hotel in Ottawa – across the Rideau River from Hull: ARC, The Hotel.

It is at the end of June 2000, during a trip to Toronto, that she paid her lucky visit to Elmer Olsen at Elite Toronto – a contact she had been given years before, when she became a finalist of the Jacques Dessange Model Look of the Year contest, organized in partnership with Karin Models in Paris. On that Friday after-noon when she first met "E.O.", the magic took place: Elmer fell "in love" with her look. She was instantly introduced to the Canadian market as the "hot new thing" of the moment. She got her first test shoot with

P00480

photographer Alvaro Goveia the next day and started working with the same photographer for Holt Ren-
frew's Christmas Catalog the following Monday.



*by Larry Travis*

…In three days, she had achieved what takes years, or at least months, for most to accomplish: she had
launched her modeling career and was already earning dividends!

*by Chris Nicholls*                    *by Chris Nicholls*

She even touched base on supermodels who think that because they have a title, that it gives them the
right to be nasty to people-

***"You have to be careful how you are with people because all of it can be taken away from you in a heart-
beat! You can't be nasty like that! When your look fade, your health is gone and you've been nasty to peo-
ple all your life then your life is ruined! And you never know who your real friends are!"***

*–Below are all of her Clinique campaigns. Tell me if  you recognize a few*

P00481

*Now, here's a **SHORT** list of the clients that she has had the privilege of working with:*

*Angel Sanchez*

*Ann Taylor*

*Avon*

*Balenciaga*

*Bergdorf Goodman*

*Calvin Klein*

*Giorgio Armani*

*Glamour Magazine – UK*

*Sephora*

*Sotheby's*

*Marshalls*

*Max Mara*

*H&M*

*Carolina Herrera*

*Cartier*

*Celia Krithari*

*Celine*

*Chanel*

*Hampton's Cottage and Gardens*

*Harper's Bazaar Magazine – USA*

*Harper's Bazaar Magazine – Russia*

*Harry Winston*

*Hermes*

*Christian Dior*

*Clinique Cosmetics*

P00482

*Ralph Lauren*

*Stella McCartney*

*L'Oreal Paris*

*Dolce and Gabana*

*Domino Mag*

*Donna Karan*

*Vogue Nippon*

*Vogue Pelle*

*Vogue Spain*

*Vogue USA*

*….. and the list goes on. For more, please visit http://www.elodiepass.com (http://www.elodiepass.com)*

*STAY TUNED FOR THE DRE DECARLO CELEB PROMO PICS (**by LoganThomas**) WITH ELODIE HER-SELF!!*

About these ads (https://wordpress.com/about-these-ads/)



$13.97

Garanimals Baby
Toddler Boy Jerse...

◀ **DRE DECARLO**   ◀ **ELODIE PASSELAIGUE**   ◀ **LOGAN THOMAS**
   Follow

# Follow "Dre DeCarlo"

Build a website with WordPress.com

P00483

# Exhibit 68

## February 2004 • Février • Februar • Febbraio • Febrero

**9**
**Monday • Lundi • Montag • Lunedì • Lunes**



NYC (11:30 am)
8  Clinique → tent for
9       aquarium shot
10                     3
11 p. — 250 bathing suit
12                     5

Evening    paid

**10**
**Tuesday • Mardi • Dienstag • Martedì • Martes**

8                1
9                2
10               3
11               4
12

CONFIDENTIAL

# Exhibit 69

This message may contain privileged or confidential information and is intended only for the individual named.  If you are not the named addressee or an employee or agent responsible for delivering this message to the intended recipient, you should not disseminate, distribute, or copy this email or any attachments hereto.   Please notify the sender immediately by email if you have received this email by mistake and delete this email and any attachments from  your system without copying or disclosing the contents.   Email transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses.  The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of email transmission.  If verification is required, please request a hard-copy version.
Getty Images, 605 Fifth Ave. S., Ste. 400, Seattle, WA 98104, USA, www.gettyimages.com<http://www.gettyimages.com/>


From: Cyrus Dugger [mailto:cd@theduggerlawfirm.com]
Sent: Tuesday, April 07, 2015 12:35 PM
To: Nancy E. Wolff
Subject: Elodie Passelaigue & Getty Images Nos. 103434252; 103434254; 103434250

Nancy,

Please find the attached release provided by Getty Images (Kevin Marren) on or about August 8, 2014 to an attorney for Wilhelmina Models following an inquiry regarding the use of Getty Image No. 103434252 in the Brilliant Distinctions web advertising campaign on behalf of my client Elodie Passelaigue.

The two images included in this release were taken at two different test shoots, for two different clients, while my client was with two different agencies.  Getty Images No. 103434252 was taken on or about June 11, 2009 and Getty Images No. 103435150 was taken on or about February 9, 2004.

My client recalls signing a release for Getty Images No. 103435150 at the conclusion of the 2004 shoot, but specifically recalls not signing a release for Getty Images No. 103434252 during the June 11, 2009 shoot.

It appears that the model release provided by the photographer was "butchered"/doctored to use the signature from 2004 to appear to also release the 2009 image.

Getty Images Nos. 103434254; 103434250 were also taken at the same 2009 shoot as Getty Images No. 103434252 and were also not released.

What we would like to receive from Getty Images are the unredacted versions of the model releases provided to Getty by the photographer(s) for Getty Images Nos. 103434252, 103434254; 103434250, as well as the dates of submission.

As we discussed, receiving unredacted versions of these releases will assist us in confirming whether or not the photographer is, as it currently appears, Bill Diodato.

We also request that Getty Images remove, stop licensing, and request that all current licensees remove Getty Images Nos. 103435150, 103434254; 103434250 given the absence of a valid model release for these images.

Best,

Cyrus E. Dugger
The Dugger Law Firm, PLLC
154 Grand St. New York, NY 10013
www.theduggerlawfirm.com<http://www.theduggerlawfirm.com>
Tel: (646) 560-3208

2

CONFIDENTIAL

# Exhibit 70



**RE: Brilliant distinction**

Daureen Castonguay

Sent: Thursday, July 24, 2014 10:57 AM
To:   Elodie PASSELAIGUE [elodiepass@hotmail.com]

XOXOX

**From:** Elodie PASSELAIGUE [mailto:elodiepass@hotmail.com]
**Sent:** Thursday, July 24, 2014 10:52 AM
**To:** Daureen Castonguay
**Subject:** Re: Brilliant distinction

Thank you Daureen!

Well, I do not recall ever being booked for any of these brands. I went through my accounting spread sheets for 2010 and 2011 (my last 2 years with Ford) and did not find anything there either. Therefore, this morning, I decided to contact Janet Rohan to ask if Allergan's Botox, Jevéderm, Latisse, SkinMedica or the Brilliant Distinctions program ever contracted me for a booking.

I am hoping to hear back from her within the next week.

I will let you know what her answer is.

Elodie.

Sent from my iPhone

On Jul 24, 2014, at 10:32 AM, "Daureen Castonguay" <Daureen.Castonguay@wilhelmina.com> wrote:

> Thanks Elodie. The shot doesn't look like what is on the site. There are 5 different products suggested at the top of the website – maybe it is one of the other products that you did rather than Allergan. Many times these types of clients when sending a release include "all" of their brands. One that I would look into for sure is Skinmedica because I do remember a casting for that product prior to your arrival here. Maybe you did that while you were at Ford. I will continue to try to figure out how else we can investigate this.
>
> Happy Birthday to Elea! Hope you had a great day!
>
> Xo
>
>
> **From:** Elodie PASSELAIGUE [mailto:elodiepass@hotmail.com]
> **Sent:** Thursday, July 24, 2014 12:40 AM
> **To:** Daureen Castonguay
> **Cc:** Elodie PASSELAIGUE
> **Subject:** Brilliant distinction
>
> Hi Daureen!
>
> Sorry it too me an extra 24h to follow up with this: yesterday was Elea's third birthday and was entirely dedicated to making her day perfect.
>
> Here is the shot that I took once my hair was done on the Chopard shoot. I know that my hair was done up at some point but the shot was taken indoors - not on a white wall like the Brilliant distinction shot suggests - and I forget very much what the jewelry looked like. Plus, my face in the Allergan picture looks fuller - which tells me that it must have been shot right before or right after Elea was born.

WIL-0218

Just to be sure, could we maybe contact Jamie Beck at Ann Street Studio and inquire about some visuals - we could definitely use them if they have any...

On my end, I am going through my tax documents to see if I can identify anything from the Ford days that might correspond to an Allergan booking.

Thank you again Daureen for helping me with this.



WIL-0219

# Exhibit 71

PAGES 1 - 25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VINCE CHHABRIA

ALEJANDRO NAVA AND SHANTNU          )
MALHOTRA, ON BEHALF OF THEMSELVES,  )
ALL OTHERS SIMILARLY SITUATED,      )
AND THE GENERAL PUBLIC,             )
                                    )
            PLAINTIFFS,             )
                                    )
  VS.                               ) NO. 18-CV-01423 VC
                                    )
KOBE STEEL, LTD., KOBE STEEL USA    )
INC., KOBE STEEL INTERNATIONAL      )
(USA) INC., KOBE ALUMINUM           )
AUTOMOTIVE PRODUCTS, LLC,           )
SHINSHO CORPORATION, SHINSHO        )
AMERICAN CORPORATION, TOYOTA        )
MOTOR CORPORATION, TOYOTA           )
MOTOR SALES, U.S.A., INC., AND      )
TOYOTA MOTOR ENGINEERING &          )
MANUFACTURING NORTH AMERICA,        )
INC.,                               )
                                    ) SAN FRANCISCO, CALIFORNIA
            DEFENDANTS.             ) THURSDAY
                                    ) SEPTEMBER 27, 2018
_____)


**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC**

**SOUNDRECORDING  10:04 A.M. - 10:31 A.M.**


(APPEARANCES ON FOLLOWING PAGE)


*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
                  *RETIRED OFFICIAL COURT REPORTER, USDC*

```
1   STEEL FALSIFIED THE DATA ON THE QUALITY OF ITS STEEL, IT WENT
2   INTO THESE TOYOTA CARS, TOYOTA KNEW ABOUT IT, TOYOTA DIDN'T
3   DISCLOSE IT, KOBE DIDN'T DISCLOSE IT, AND AS A RESULT OF THE
4   SUBSTANDARD STEEL BEING IN THE CARS, THE CARS ARE LESS SAFE.
5           MR. FITZGERALD:  RIGHT.
6           THE COURT:  RIGHT?  AND I WOULD THINK THAT I WOULD
7   SAY TO THAT:  ALL RIGHT, WELL, YOU'VE GOTTEN PAST 12(B)(6), YOU
8   PLED THE CARS ARE LESS SAFE.  MAYBE YOU HAVE TO EXPLAIN WHY YOU
9   BELIEVE THE CARS ARE LESS SAFE.
10          MR. FITZGERALD:  YEAH.
11          THE COURT:  BUT ASSUMING YOU DID THAT, GET PAST
12  12(B)(6), MAYBE THE ALLEGATION THE CARS ARE LESS SAFE IS TRUE,
13  MAYBE IT'S NOT TRUE.  WE'LL FIND OUT AT SUMMARY JUDGMENT OR AT
14  TRIAL.  BUT WE'RE IN THIS STRANGE SITUATION WHERE YOU HAVE --
15  AND IT'S TO YOUR CREDIT, BY THE WAY.
16          I MEAN, IT'S ABSOLUTELY TO YOUR CREDIT FROM AN
17  ETHICAL STANDPOINT AND A STANDPOINT OF BEING A PROFESSIONAL
18  THAT YOU HAVE EXPLAINED THE SITUATION, BUT THE SITUATION YOU
19  EXPLAINED IS THAT WE DON'T KNOW YET.  IN LIGHT OF THAT, I'M
20  TRYING IMAGINE HOW YOU WOULD BE ABLE TO AMEND YOUR COMPLAINT TO
21  GET AROUND THE ALLEGATION YOU'VE ALREADY MADE IN THIS
22  ITERATION.
23          MR. FITZGERALD:  I DON'T KNOW THAT WE WOULD BE ABLE
24  TO AMEND THE COMPLAINT UNDER RULE 11 TO ALLEGE WHAT YOU JUST
25  REITERATED.  WHAT WE COULD DO AT THIS POINT, WHAT WE LEARNED IN
```

1           BY THE WAY, I COMPLETELY AGREE WITH MR. FITZGERALD.

2    MAYBE WE'LL DISAGREE ONE DAY BUT -- WITH HIM -- BUT HE WAS

3    RESPONSIBLE IN PLEADING WHAT HE KNOWS, AND WHAT HE KNOWS IS

4    THAT THEY DON'T KNOW ANYTHING ABOUT THIS.

5           THE THING THAT STRIKES ME AS MAYBE A REASON

6    MILITATING AGAINST RIPENESS IS THAT THE COMPLAINT ALLEGES -- I

7    THINK THIS IS PARAGRAPH 89 -- THAT SOME -- THAT THE AFFECTED

8    VEHICLES GO WAY BACK TO 2003.  AND SO THAT'S, LIKE, 15 YEARS.

9           IF SOMETHING -- AND THE NINTH CIRCUIT HAS TALKED

10   ABOUT, YOU KNOW, ISSUES LIKE THIS.  IF SOMETHING WERE TO

11   MANIFEST AND WERE THIS SORT OF WIDESPREAD PROBLEM, IT WOULD

12   HAVE MANIFESTED BY NOW.  AND I THINK ADDING THAT TO THE "WE

13   DON'T KNOW" AND THE FACT THAT THE ONLY --

14          THE COURT:  WELL, I DON'T KNOW ABOUT THAT, BECAUSE WE

15   DON'T KNOW -- I MEAN, MAYBE THE VEHICLES THAT WENT BACK TO --

16   WHAT YEAR DID YOU SAY?

17          MR. PARASHARAMI:  AGAIN, WE'RE NOT SAYING THIS, BUT

18   THEY ARE SAYING IN THE COMPLAINT 2003 AS THE EARLIEST DATE --

19          (SIMULTANEOUS COLLOQUY.)

20          THE COURT:  WELL, BUT MAYBE A LITTLE BIT OF STEEL

21   WENT INTO AN UNIMPORTANT PART OF THE CAR IN 2003, BUT MAYBE A

22   LOT MORE DEFECTIVE STEEL WENT INTO MORE IMPORTANT PARTS OF THE

23   CAR IN 2015.

24          MR. PARASHARAMI:  RIGHT.  NO.  I THINK WHAT THEY'RE

25   SAYING IS THEY DON'T KNOW.  THE ONLY THING THEY'VE SAID IS THAT

# Exhibit 72

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOSHUA RAWA, ELISABETH MARTIN,      )
ROBERT RAVENCAMP, AMY WARD,         )
CYNTHIA DAVIES, CHRISTOPHER         )
ABBOTT, OWEN OLSON, JEANNIE A.      )
GILCHRIST, ZACHARY SHOLAR, MATTHEW  )
MYERS, JOHN W. BEARD, JR., and      )
MICHAEL OVERSTREET on behalf of     )
themselves, all others similarly   )
situated, and the general public,   )
                                    )
     Plaintiffs,                    )
                                    )
     v.                             )
                                    )
                                    ) Case No 4:17-CV-1252 AGF
MONSANTO COMPANY,                   )
                                    )
     Defendant.                     )

FAIRNESS HEARING
BEFORE THE HONORABLE AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE
APRIL 17, 2018

APPEARANCES:
For Plaintiffs:      John Joseph Fitzgerald, IV, Esq.
                     THE LAW OFFICES OF JACK FITZGERALD, PC
                     Hillcrest Professional Building
                     3636 Fourth Avenue, Suite 202
                     San Diego, CA  92103

                     Kevin J. Dolley, Esq.
                     LAW OFFICES OF KEVIN J. DOLLEY, LLC
                     2726 South Brentwood Boulevard
                     St. Louis, MO  63144

(Appearances Continued on page 2)

REPORTED BY:         SHANNON L. WHITE, RMR, CRR, CSR, CCR
                     Official Court Reporter
                     United States District Court
                     111 South Tenth Street, Third Floor
                     St. Louis, MO  63102
                     (314) 244-7966
PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

Rawson et al v. Monsanto Company

58

```
 1            THE COURT:  But I have seen none of that, and I am
 2   not going to take into account here your hearsay description
 3   of an unsigned report from some other expert.
 4            MR. WOODS:  I understand.  I get it.
 5            THE COURT:  You want to show me what constitutes a
 6   conflict of interest here and the case law that supports that,
 7   I'll take a look at it.
 8            MR. WOODS:  Okay.  Well, again, I think it's again
 9   acknowledged by Mr. Fitzgerald there's an issue of ethics
10   here.
11            THE COURT:  Well, but the fact that an attorney
12   consults someone to make sure that they are on solid ground is
13   not an admission of a conflict.  That is a lawyer taking
14   prudent steps when they have an obligation to a class.
15            MR. WOODS:  I understand that, Your Honor.
16            THE COURT:  So I take that as a sign of responsible
17   behavior by class counsel and not some admission that a
18   conflict exists.
19            MR. WOODS:  I understand that.  That's why we're
20   asking for to see whatever information was provided and to
21   present our own as part of discovery here.
22            THE COURT:  All right.
23            MR. WOODS:  That is our request.
24            THE COURT:  All right.  And do you have any such
25   presentation to make here today?
```

# Exhibit 73

**IN THE UNITED STATES COURT**

**FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ANNE ELKIND and SHARON ROSEN, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>              v.<br><br>REVLON CONSUMER PRODUCTS CORPORATION,<br><br>    Defendant. | Case No. 2:14-cv-02484-JS-AKT<br><br>Magistrate Judge: Hon. A. Kathleen Tomlinson |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

---

# TABLE OF CONTENTS

I.    **SUMMARY OF RELEVANT SETTLEMENT PROVISIONS** ...................................... 1

II.    **LEGAL STANDARD** ..................................................... 2

III.    **CLASS COUNSEL ARE ENTITLED TO ATTORNEYS' FEES AND COSTS UNDER APPLICABLE CALIFORNIA AND NEW YORK LAW** ............................ 2

    A.  CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT REQUIRES ATTORNEYS' FEES AND COSTS TO BE AWARDED TO A "PREVAILING PLAINTIFF" ..................................... 3

    B.  NEW YORK'S FALSE ADVERTISING LAW ENTITLES A "PREVAILING PLAINTIFF" TO RECOVERY OF REASONABLE ATTORNEYS' FEES ..................................... 4

    C.  PLAINTIFFS ARE "PREVAILING" AND "SUCCESSFUL" PARTIES UNDER CALIFORNIA AND NEW YORK LAW ..................................... 4

    D.  THE SETTLEMENT PROVIDES FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE/ENHANCEMENT AWARDS ..................................... 5

IV.    **CLASS COUNSEL'S REQUESTED FEES ARE FAIR AND REASONABLE** ....... 6

    A.  CLASS COUNSEL'S REQUESTED FEES AND COSTS ARE FAIR AND REASONABLE UNDER THE PERCENTAGE OF THE FUND/COMMON FUND METHOD ..................................... 7

    B.  THE REQUESTED FEES AND COSTS SATISFY THE GOLDBERGER FACTORS ..................................... 9

        1.  *The Substantial Time and Labor Expended by Class Counsel* ..................................... 9

        2.  *The Magnitude and Complexities of the Case, and Risks of Continued Litigation* .... 11

        3.  *The Quality of Representation, and Exceptional Benefits to the Class* ..................... 13

        4.  *Fee Requested in Relation to the Settlement, and Public Policy Considerations* ...... 15

    C.  THE REQUESTED FEES AND COSTS ARE REASONABLE UNDER A LODESTAR CROSS-CHECK ..................................... 15

        1.  *Class Counsel's Hourly Rates are Reasonable, and Have Been Approved by Numerous Federal and State Courts* ..................................... 16

        2.  *Class Counsel's Hours Expended Were Reasonable and Necessary for the Successful Prosecution of this Case* ..................................... 22

V.    **THE REQUESTED COSTS ARE FAIR AND REASONABLE** ............................ 23

VI.    **THE REQUESTED ENHANCEMENT AWARDS ARE FAIR AND**
       **REASONABLE** ......................................................................................................... 24

VII.   **CONCLUSION** .......................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.*,
   407 F.3d 65 (2d Cir. 2005) ................................................................... 17

*Alnutt v. Cleary*,
   27 F. Supp. 2d 395 (W.D.N.Y. 1998) ................................................... 23

*Alyeska Pipeline Serv. Co. v. Wilderness Soc.*,
   421 U.S. 240 (1975) ............................................................................... 2

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of
   Elections*, 522 F.3d 182 (2d Cir. 2008) ......................................... 16, 17

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany*,
   493 F.3d 110 (2d Cir. 2007) ............................................................ 16, 17

*Baron v. Commercial & Industrial Bank of Memphis*,
    Fed. Sec. L. Rep. (CCH) ¶ 97,132 (S.D.N.Y. 1979) ............................. 8

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ......................................................... 11

*Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*,
    480 F. Supp. 1195 (S.D.N.Y. 1979) ...................................................... 8

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
   2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ............................... 6, 15, 24

*Blum v. Stenson*,
   465 U.S. 886 (1984) ............................................................................. 16

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ........................................................................... 2, 7

*Brazil v. Dell Inc.*,
   2012 WL 1144303 (N.D. Cal. Apr. 4, 2012) ........................................ 14

*Bruno v. Quten Research Inst., LLC*,
    2013 WL 990495 (C.D. Cal. Mar. 13, 2013) ........................................ 20

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007) ................................................................ 6, 7

*Champion Produce, Inc. v. Ruby Robinson Co.*,

    342 F.3d 1016 (9th Cir. 2003)................................................................ 2

*Cioffi v. New York Community Bank*,

    465 F. Supp. 2d 202 (E.D.N.Y. 2006).................................................. 23

*Clark v. Cameron-Brown Co.*,

    Fed. Sec. L. Rep. (CCH) ¶ 98,014 (M.D.N.C. 1981)............................. 8

*DiSorbo v. City of Schenectady*,

    2004 WL 115009 (N.D.N.Y. Jan. 9, 2004) .......................................... 23

*Frank v. Eastman Kodak Co.*,

    228 F.R.D. 174 (W.D.N.Y. 2005) ......................................................... 8

*Gallucci v. Boiron, Inc.*,

    2012 WL 5359485 (S.D. Cal. Oct. 31, 2012) .............................. 20, 21

*Goldberger v. Integrated Res., Inc.*,

    209 F.3d 43 (2d Cir. 2000)....................................................... *passim*

*Graciano v. Robinson Ford Sales, Inc.*,

    144 Cal. App. 4th 140 (2006) ................................................................ 4

*Graham v. DaimlerChrysler Corp.*,

    34 Cal. 4th 553 (2004) .......................................................................... 4

*Grant v. Martinez*,

    973 F.2d 96 (2d Cir. 1992) .................................................................. 22

*Greene v. Emersons, Ltd.*,

    Fed. Sec. L. Rep. (CCH) ¶ 93,263 (S.D.N.Y. May 20, 1987).................. 8

*Grodensky v. Artichoke Joe's Casino*,

    171 Cal. App. 4th 1399 (2009) .............................................................. 4

*Hayward v. Ventura Volvo*,

    108 Cal. App. 4th 509 (2003)................................................................ 3

*Heng Chan v. Sung Yue Tung Corp.*,

    2007 WL 1373118 (S.D.N.Y. May 8, 2007).................................... 4, 22

*Hensley v. Eckerhart*,

    461 U.S. 424 (1983) ........................................................................ 5, 22

*In re Agent Orange Prod. Liab. Litig.*,
    818 F.2d 226 (2d Cir. 1987) ............................................................................ 17

*In re Ampicillin Antitrust Litig.*,
    526 F.Supp. 494 (D.D.C. 1981) .......................................................................... 8

*In re Apple Computer, Inc. Derivative Litig.*,
    2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ..................................................... 6

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................. 5

*In re Consumer Privacy Cases*,
    175 Cal. App. 4th 545 (2009) ............................................................................ 6

*In re Ferrero Litig.*,
    2012 WL 2802051 (S.D. Cal. July 9, 2012) ............................................... 20, 21

*In re Franklin Nat'l Bank Sec. Litig.*,
    Fed. Sec. L. Rep. (CCH) ¶ 97,571 (E.D.N.Y. 1980) ........................................ 8

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) .............................................................. *passim*

*In re New York City Municipal Sec. Litig.*,
    Fed. Sec. L. Rep. (CCH) ¶ 91, 419 (S.D.N.Y. 1984) ...................................... 8

*In re Quaker Oats Labeling Litig.*,
    2014 WL 12616763 (N.D. Cal. July 29, 2014) ............................................... 20

*In re Vitamin C Antitrust Litig.*,
    2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ................................................. 24

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) .................................................................... 8

*Indep. Fed'n of Flight Attendants v. Zipes*,
    491 U.S. 754 (1989) ........................................................................................... 5

*Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*,
    25 F. Supp. 2d 127 (E.D.N.Y. 1998) ................................................................ 4

*Ingram v. Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) ...................................................................... 6

*Johnson v. Ga. Highway Exp., Inc.*,
  488 F.2d 714 (5th Cir. 1974) ................................................................. 17

*Kanter v. Warner-Lambert Co.*,
  265 F.3d 853 (9th Cir. 2001) ................................................................. 4

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (2001) ......................................................................... 12

*Kim v. Euromotors W./The Auto Gallery*,
   149 Cal. App. 4th 170 (2007) .............................................................. 3

*Luessenhop v. Clinton Cnty.*,
  558 F. Supp 2d 247 (N.D.N.Y. 2008) .................................................... 23

*Lunday v. City of Albany*,
  42 F.3d 131 (2d Cir. 1994) ..................................................................... 4

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................... 8

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) ................................................................. 8

*Maywalt v. Parker & Parsley Petroleum Co.*,
  963 F. Supp. 310 (S.D.N.Y. 1997) ....................................................... 8

*McDaniel v. Cnty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) ................................................................. 11

*McDaniel v. Cnty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) ................................................................. 7

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (2009) ........................................................................... 3

*Mills v. Electric Auto–Lite Co.*,
  396 U.S. 375 (1970) ................................................................................. 2

*N.Y. Gaslight Club, Inc. v. Carey*,
  447 U.S. 54 (1980) ................................................................................... 5

*Nigh v. Humphreys Pharmacal Inc.*,
  2013 WL 5995382 (S.D. Cal. Oct. 23, 2013) ...................................... 20

vi

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*,
 2016 WL 1573319 (S.D. Cal. Apr. 18, 2016) ....................................................... 19

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
 2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb. 9, 2010) ......................................... 15

*Perdue v. Kenny A. ex rel. Winn*,
 559 U.S. 542 (2010) ............................................................................................... 16

*Polk v. N.Y. State Dep't of Corr. Servs*.,
 722 F.2d 23 (2d Cir. 1983) ..................................................................................... 17

*Quaratino v. Tiffany & Co.*,
 166 F.3d 422 (2d Cir. 1999) ...................................................................................... 7

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
 977 F.2d 47 (2d Cir. 1992) ........................................................................................ 4

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ....................................................................... 8

*Suffolk v. Long Island Lighting Co*.,
 907 F.2d 1295 (2d Cir. 1990) .................................................................................... 7

*Sylvester v. City of New York*,
 2006 WL 3230152 (S.D.N.Y. Nov. 8, 2006) ........................................................... 22

*U.S. v. Vilus*,
 419 F. Supp. 2d 293 (E.D.N.Y. 2005) ...................................................................... 13

*Vaccarino v. Midland Nat. Life Ins. Co.*,
 2014 WL 4782603 (C.D. Cal. Sept. 22, 2014) ....................................................... 19

*Velez v. Novartis Pharm. Corp*.,
 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ......................................... 7, 8, 15, 23

*Vizcaino v. Microsoft Corp*.,
 290 F.3d 1043, 1049 (9th Cir. 2002) ....................................................................... 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005) ........................................................................................ 7

*Zinman v. Avemco Corp.*,
 Fed. Sec. L. Rep. (CCH) ¶ 96,325 (E.D.Pa. 1978) .................................................. 8

## STATUTES

21 U.S.C. §§ 301, *et seq.* ............................................................................ 10

CAL. BUS. & PROF. CODE §§ 17500, *et seq.* ............................................... 17

CAL. CIV. CODE § 1760 ................................................................................. 3

CAL. CIV. CODE § 1780(e) ...................................................................... 3, 24

CAL. CIV. CODE §§ 1750, *et seq.* ........................................................... 2, 18

CAL. CIV. PROC. CODE § 1021.5 .................................................................. 2

CAL. CIV. PROC. CODE § 1033.5 ................................................................ 24

N.Y. GEN. BUS. L. § 350-e .......................................................................... 4

N.Y. GEN. BUS. L. §§ 350, *et seq.* .............................................................. 2

## TREATISES

4 NEWBERG ON CLASS ACTIONS (4th ed.) § 12:3 ........................................ 6

Richard Posner, ECONOMIC ANALYSIS OF LAW (4th ed. 1992) ................... 12

## REGULATIONS

21 C.F.R. §§ 1.1, *et seq.* ............................................................................ 10

CAL. HEALTH & SAFETY CODE §§ 109875, *et seq.* ..................................... 11

This Motion for Attorneys' Fees, Costs, and Incentive Awards ("Fee Motion") comes before the Court pursuant the Settlement (ECF No. 10),[1] Preliminary Approval Order (ECF No. 120), and the operative Scheduling Orders (ECF Nos. 121, 123), which set a Final Approval Hearing for August 1, 2017 at 10:00 a.m. in the above-entitled Court, including consideration of any application for attorneys' fees, costs, and incentive awards. Plaintiffs/Class Representatives Anne Elkind and Sharon Rosen, by and through their undersigned counsel of record ("Class Counsel"), hereby respectfully move this Court for entry of an Order granting an award of attorneys' fees and costs to Class Counsel, as well as incentive awards to both Class Representatives of $5,000.00 each.

## I. SUMMARY OF RELEVANT SETTLEMENT PROVISIONS

Subsequent to the Court's granting of preliminary approval, Defendant Revlon paid $900,000.00 into a Qualified Settlement Fund ("QSF"), created and maintained by the Claims Administrator. *See* Class Action Settlement Agreement ("Sett. Agmt.") § III(D)(1), Dkt. No. 110. Pursuant to the terms of the instant Settlement, and subject to Court approval, Defendant agreed to pay Enhancement Awards, also known as incentive or service awards, to both Class Representatives of up to $5,000.00 each, out of the QSF, as compensation for the responsibilities and work attendant to those roles, and in recognition of their service to the Class. *Id.* § II(P), III(D)(2)(i). The Settlement further entitles Plaintiffs to seek an award of attorneys' fees and costs for Class Counsel in the amount remaining from the QSF after satisfying all Settlement Payments to Authorized Claimants, Class Representative Enhancement Awards, and Class Notice and Administrative Expenses ("Fee Award"). *Id.* § III(D)(2)(k). Regarding the attorneys' fees sought through this Motion, the firms comprising Class Counsel have a fee splitting agreement: Sixty percent (60%) to the Law Offices of Ronald A. Marron, APLC (the "Marron Firm"), and forty percent (40%) to the Law Office of Jack Fitzgerald, PC

---

[1] Unless otherwise noted, capitalized terms have the same meaning as in the proposed Class Action Settlement Agreement.

(the "Fitzgerald Firm"); *see also* Memo. of Law in Support of Jt. Mot. for Prelim. Approval. (Prelim. Approval Mot.), ECF No. 109-1, at 5. Defendant shall bear its own attorneys' fees and costs. Sett. Agmt. § III(D)(2)(k).

## II.   LEGAL STANDARD

Although the "American Rule" generally prohibits a prevailing litigant in federal litigation to recover attorneys' fees in the absence of statutory authority, "[t]here is a salient exception to this general rule that applies where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 275 (1975)). "In that situation, the attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund." *Id.* (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). "The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Id.* (citing *Boeing Co.*, 444 U.S. at 478; *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 392 (1970)).

## III.   CLASS COUNSEL ARE ENTITLED TO ATTORNEYS' FEES AND COSTS UNDER APPLICABLE CALIFORNIA AND NEW YORK LAW

"An award of attorneys' fees incurred in a suit based on state substantive law is generally governed by state law." *See Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1024 (9th Cir. 2003). Here, Plaintiffs invoke the following applicable California and New York fee-shifting statutes: (1) California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) California's Private Attorney General Statute, Cal. Civ. Proc. Code § 1021.5; and (3) New York's False Advertising Law, N.Y. Gen. Bus. L. §§ 350, *et seq.*

## A. California's Consumers Legal Remedies Act Requires Attorneys' Fees and Costs to be Awarded to a "Prevailing Plaintiff"

Under the CLRA "the court *shall* award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section." Cal. Civ. Code § 1780(e) (emphasis added).

> The legislative policy to allow prevailing plaintiffs reasonable attorneys' fees is clear. Section 1780 provides remedies for consumers who have been victims of unfair or deceptive business practices. The provision for recovery of attorney's fees allows consumers to pursue remedies in cases . . . where the compensatory damages are relatively modest.

*Hayward v. Ventura Volvo*, 108 Cal. App. 4th 509, 512 (2003). "[T]he availability of costs and fees to prevailing plaintiffs is integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute." *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 644 (2009). Thus, this provision must "be liberally construed and applied to promote [the CLRA's] underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *See* Cal. Civ. Code § 1760; *accord Hayward*, 108 Cal. App. 4th at 512-13 ("section 1760 expressly directs [courts] to liberally construe section 1780 to protect consumers"). "Accordingly, an award of attorney fees to 'a prevailing plaintiff' in an action brought pursuant to the CLRA is mandatory, even where the litigation is resolved by a pre-trial settlement agreement, absent an enforceable agreement to the contrary." *Kim v. Euromotors W./The Auto Gallery*, 149 Cal. App. 4th 170, 178-79, 181 (2007).[2]

---

[2] Additionally, California Civil Procedure Code "section 1021.5 authorizes an award of attorney fees to a 'private attorney general,' that is, a party who secures a significant benefit for many people by enforcing an important right affecting the public interest." *Serrano v. Stefan Merli Plastering Co.*, 52 Cal. 4th 1018, 1020 (2011). Fees are awarded when: (1) the action "has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuiary, has been conferred on the general public or a large class of persons", and (3) "the necessity and financial burden of private enforcement . . . are such as to make the award appropriate." *Id.* (citations omitted).

**B. New York's False Advertising Law Entitles a "Prevailing Plaintiff" to Recovery of Reasonable Attorneys' Fees**

Under New York's False Advertising Law, "[t]he court may award reasonable attorney's fees to a prevailing plaintiff." N.Y. Gen. Bus. L. § 350-e. "A decision in this regard should take into the factors ordinarily considered by New York courts when evaluating requests for attorneys' fees, including the time and skill required in litigating the case, the complexity of issues, the customary fee for the work, and the results achieved." *Indep. Living Aids, Inc. v. Maxi-Aids, Inc*., 25 F. Supp. 2d 127, 132 (E.D.N.Y. 1998) (citing *Riordan v. Nationwide Mut. Fire Ins. Co*., 977 F.2d 47, 54 (2d Cir. 1992)).

**C. Plaintiffs are "Prevailing" and "Successful" Parties under California and New York Law**

Courts treat the terms "prevailing plaintiff" in the CLRA, and "successful party" in California's Private Attorneys General Statute, synonymously, because "[t]he language in the two provisions is not materially different." *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 858 (9th Cir. 2001). "In order to effectuate" the policy underlying section 1021.5, and consistent with the construction of comparable statutes, the California Supreme Court has "taken a broad, pragmatic view of what constitutes a 'successful party.'" *Graham v. DaimlerChrysler Corp*., 34 Cal. 4th 553, 565 (2004). "[A] party need not prevail on every claim to be considered a successful party within the meaning of the statute." *Grodensky v. Artichoke Joe's Casino*, 171 Cal. App. 4th 1399, 1437 (2009); *see also Graciano v. Robinson Ford Sales, Inc*., 144 Cal. App. 4th 140, 153 (2006) ("It is settled that plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.").

Similarly, the Second Circuit has recognized that it is not merely successful efforts that are compensable, but even time related to unsuccessful claims may be compensable. *See Heng Chan v. Sung Yue Tung Corp.*, No. 03 CIV. 6048 (GEL), 2007 WL 1373118, at *6 (S.D.N.Y. May 8, 2007) (quoting *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994)). Importantly, "the court's

discretion to deny a fee award to a prevailing plaintiff is narrow." *N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 68 (1980). Indeed, "in the absence of special circumstances a district court not merely 'may' but *must* award fees to the prevailing plaintiff." *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989) (emphasis added).

Here, Plaintiffs are the prevailing and successful party because their lawsuit, initiated over three years ago, achieved its main objective of remedying false and deceptive advertising of Revlon's line of DNA Advantage cosmetic Products. As discussed in further detail below, the agreed-upon Settlement, if approved in finality, will result in, *inter alia*: (1) monetary relief to all Class Members who timely complete and return a valid executed Claim Form; (2) a complete discontinuance of the manufacturing, promotion, and sales of Revlon's DNA Advantage Products; and (3) Defendant's enforceable agreement to refrain from recommencing the manufacturing, promotion, and sales of its DNA Advantage Products. Sett. Agmt. §§ III(C)-(E). Injunctive relief, such as this, that is "'socially beneficial' . . . justif[ies] a fee award under" the CLRA. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011). By achieving their main objectives sought in bringing suit, Plaintiffs are successful and prevailing parties.

**D. The Settlement Provides for Attorneys' Fees, Costs, and Incentive/Enhancement Awards**

"A request for attorney's fees should not result in a second major litigation. Ideally . . . litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). That is what has been done here—in addition to resolving the claims for damages and other relief, the Parties also entered into a settlement regarding Plaintiffs' claims for attorneys' fees, costs, and incentive awards. *See* Section II, *supra*; Sett. Agmt. § III(D).

Courts across the nation routinely acknowledge that parties may settle claims for attorneys' fees in a class action by entering into an agreement—like the present case—that the defendant will pay a plaintiff's attorneys' fees. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 CIV. 2207 JGK,

2010 WL 3119374, at *5 (S.D.N.Y. Aug. 6, 2010) ("An agreed upon award of attorneys' fees and expenses is proper in a class action settlement, so long as the amount of the fee is reasonable under the circumstances."); *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 553 (2009) (a fee agreement "'serves to facilitate settlements and avoids a conflict, and yet it gives the defendant a predictable measure of exposure and total monetary liability for the judgment and fees in a case. To the extent it facilitates completion of settlements, this practice should not be discouraged."); 4 NEWBERG ON CLASS ACTIONS (4th ed.) § 12:3 ("Defendants in a class action settlement may properly agree to pay the plaintiffs' attorneys' fees and expenses").

Where, as here, the Parties have negotiated an arms' length settlement, "[a] court should refrain from substituting its own value for a properly bargained-for agreement." *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (courts "should give substantial weight to a negotiated fee amount, assuming that it represents the parties' best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees." (citation omitted)).

## IV. CLASS COUNSEL'S REQUESTED FEES ARE FAIR AND REASONABLE

"[B]oth the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases." *Goldberger*, 209 F.3d at 50; *see also Bellifemine*, 2010 WL 3119374, at *6; *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007) ["*Merck-Medco*"]. "The percentage method 'calculates the fee award as some percentage of the settlement fund created for the benefit of the class.'" *Bellifemine*, 2010 WL 3119374, at *6 (citing *Merck-Medco*, 504 F.3d at 249). Conversely,

> [t]he lodestar method uses a presumptively reasonable fee, which is computed by multiplying the number of hours each attorney has expended by the hourly rate attorneys of similar skill charge in the area; then it applies to that figure a multiplier which factors in the litigation risks and other considerations.

*Velez v. Novartis Pharm. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010). In the Second Circuit, courts have generally expressed a preference for the percentage of the fund method (also known as the common fund method), along with a lodestar cross-check to ensure the reasonableness of the requested percentage. *Id.*; *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."); *Goldberger*, 209 F.3d at 47-50; *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).

## A. Class Counsel's Requested Fees and Costs are Fair and Reasonable under the Percentage of the Fund/Common Fund Method

"It is by now well established that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing*, 444 U.S. at 478; *see also Merck-Medco*, 504 F.3d at 249. The percentage of the fund method can be used even where attorneys' fees are also awardable pursuant to statutory fee-shifting provisions. *See*, *e.g.*, *Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1397 (2d Cir. 1990) (awarding fees using common fund rather than fee-shifting provision of RICO Act). It is also true that principles underlying the lodestar methodology in fee-shifting cases call generally for approval of a full lodestar fee award when plaintiffs' counsel act as private attorneys general in enforcing important public rights and prevail. *See e.g., Quaratino v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999) (awarding fee based on lodestar far exceeding damages award to plaintiff).

"The federal courts have established that a standard fee in complex class action cases like this one, where plaintiffs' counsel have achieved a good recovery for the class, ranges from ***20 to 50 percent*** of the gross settlement benefit." *Velez*, 2010 WL 4877852, at *21 (emphasis added); *accord In re Marsh ERISA Litig.*, 265 F.R.D. 128, 149 (S.D.N.Y. 2010) ("Traditionally, courts in this Circuit

and elsewhere have awarded fees in the 20%–50% range in class actions.") (citing *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)).[3]

"District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater." *Velez*, 2010 WL 4877852, at *21. This is especially true where the fund is not a "mega recovery." *See In re Marsh ERISA Litig.*, 265 F.R.D. at 149.

To account for both incurred attorneys' fees and reimbursement of costs, Class Counsel here seek the QSF's remainder after satisfying all Settlement Payments to Authorized Claimants, Enhancement Awards, and Class Notice and Administrative Expenses. Sett. Agmt. § III(D)(2)(k). Due to the unusually high rate of claims returned here, the total dollar amount of Settlement Payments for Authorized Claims already exceeds, and therefore is limited to, the Settlement Payment Maximum of $400,000.00.[4] *See id.* § III(D)(2)(f). As set forth in the Settlement and Preliminary Approval Motion,

---

[3] *See also e.g., In re New York City Municipal Sec. Litig.,* Fed. Sec. L. Rep. (CCH) ¶ 91, 419, at 98,085 (S.D.N.Y. 1984) (fees and disbursements: almost **33%** of $13,450,000 settlement); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fees of **33.3%** of 11.5 million settlement fund); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (**33.33%** awarded); *Maywalt v. Parker & Parsley Petroleum Co*., 963 F. Supp. 310, 313 (S.D.N.Y. 1997) (**33.4** % of settlement); *In re Franklin Nat'l Bank Sec. Litig.,* [1980 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,571, at 97,988 (E.D.N.Y. 1980) (Chief Judge Weinstein awarded plaintiffs' counsel **34%** of the class recovery); *Clark v. Cameron-Brown Co.,* [1981 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 98,014 (M.D.N.C. 1981) (**35%** of $2.85 million settlement); *Baron v. Commercial & Industrial Bank of Memphis,* [1979–80 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,132, at 96,244 (S.D.N.Y. 1979) (**36%** of $900,000 settlement); *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 188–89 (W.D.N.Y. 2005) (awarding **38.26%**); *In re Ampicillin Antitrust Litig.*, 526 F.Supp. 494 (D.D.C. 1981) (**45%** of $7.3 million settlement fund awarded in fees and expenses); *Greene v. Emersons, Ltd*., [1987] Fed. Sec. L. Rep. (CCH) ¶ 93,263 (S.D.N.Y. May 20, 1987) (**46.2%** of common fund awarded as fees and expenses); *Zinman v. Avemco Corp.,* [1978 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,325, at 93,092–93 (E.D.Pa. 1978) (**50%** of $260,000 settlement awarded); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp*., 480 F. Supp. 1195 (S.D.N.Y. 1979) (**53%** of settlement fund awarded).

[4] In any case, "this Circuit has ruled that '[a]n allocation of fees by percentage should therefore be awarded on the basis of total funds made available whether claimed or not.'" *Velez*, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) (citing *Masters v. Wilhelmina Model Agency, Inc*., 473 F.3d 423, 437 (2d Cir. 2007)).

it is estimated that Class Notice and Administrative Expenses will range between approximately $65,000.00 and $85,000.00. Sett. Agmt. § III(D)(2)(j); Prelim. Approval Mot. at 5. Assuming that such expenses will reach the higher end of $85,000.00, as is likely, and further assuming the Class Representatives will be awarded the maximum sought of $5,000.00 each in Enhancement Awards, a total of $405,000.00 would remain for any award of attorneys' fees and costs to Class Counsel.[5] This would amount to forty-five percent (45%) of the total Settlement Fund, well within the 20 to 50 percent range generally applied in this Circuit and others. *See supra* Section IV(A) n.2.[6]

In sum, the percentage of the QSF sought for fees and costs is consistent with many fee-only awards granted in similar class actions with funds of similar size, and not "mega recoveries." Class Counsel's request is also supported by the *Goldberger* factors courts generally consider in assessing the reasonableness of a common fund or lodestar class action fee award, as illustrated below.

**B. The Requested Fees and Costs Satisfy the Goldberger Factors**

Regardless of whether the common fund or lodestar method is used, courts are guided by the following factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50.

**1.** <u>***The Substantial Time and Labor Expended by Class Counsel***</u>

For over three years now, Class Counsel have devoted tremendous time and effort to ensuring the successful resolution of this Action on behalf of the Class, and will continue to devote substantial

---

[5] $900,000 (Settlement Fund) - $400,000 (Settlement Payout Maximum) - $85,000 (estimated Class Notice and Administrative Expenses maximum) - $10,000 (Enhancement Awards maximum) = $405,000.

[6] On the other hand, in the unlikely event the Court were to deny Enhancement Awards altogether, and Class Notice and Administrative Expenses only amounted to $65,000.00, a slightly higher total of $435,000.00 would remain for a Fee Award [$900,000 (Settlement Fund) - $400,000 (Settlement Payout Maximum) - $65,000 (estimated Class Notice and Administrative Expenses minimum) - $0 (Enhancement Awards minimum) = $435,000]. This would amount to 48.33% of the Fund, also within the acceptable range.

time and effort to ensure successful implementation of the Settlement's terms. In particular, through July 5, 2017, Class Counsel have expended 1767.6 total hours on this case (1717.3 attorney hours, 17.9 law clerk hours, and 33.4 paralegal/legal assistant hours), as well as $50,442.96 in total costs. *See* Declaration of Ronald A. Marron ("Marron Decl.") filed concurrently herewith ¶¶ 11-13; Declaration of Jack Fitzgerald ("Fitzgerald Decl.") filed concurrently herewith ¶¶ 3-5; *see also* Appendices 1-3 hereto.

As detailed in the Preliminary Approval Motion and accompanying declarations, Class Counsel engaged in extensive pre-filing investigation and research as to the claims arising from Revlon's manufacture, distribution, and advertising of the Products before formally initiating this class action in April 2017. *See* Marron Decl. ¶¶ 4-9; Fitzgerald Decl. ¶ 3. Thereafter, the Parties engaged in extensive discovery, including the exchange of written discovery requests and responses in accordance with the schedules set by the Court. Class Counsel also reviewed over 100,000 pages of documentary evidence, including highly confidential documents, regarding the Products' sales, advertising, labeling, and product testing, as well as Defendant's company finances and organization. *See* Marron Decl. in Support of Prelim. Approval Mot. ("Marron Decl. ISO MPA"), ECF No. 109-2, at ¶¶ 25, 27; Fitzgerald Decl. in Support of Prelim. Approval Mot. ("Fitzgerald Decl. ISO MPA"), ECF No. 109-5, at ¶ 2. Additionally, Class Counsel engaged in lengthy analysis of the laws of several states applicable to the advertising and labeling claims here, as well as detailed factual and legal analyses regarding the unlawful and deceptive nature of Defendant's representations. Marron Decl. ISO MPA ¶ 26. Similarly, Class Counsel conducted a detailed and comprehensive review of Food and Drug Administration ("FDA") guidance documents regarding the Products and similar cosmetics products; the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301, *et seq*., and its implementing regulations, 21 C.F.R. §§ 1.1, *et seq*. (collectively, "FDCA"); the FDCA's numerous changes over the years; Federal

Trade Commission ("FTC") advertising standards and their applicability to the Products' labeling claims at issue here; the California Sherman Food, Drug and Cosmetic Law (Cal. Health & Safety Code §§ 109875, *et seq*.); and scientific articles purportedly supporting the Products' efficacy. Marron Decl. ISO MPA ¶ 27. Furthermore, percipient witness depositions were taken, numerous third party subpoenas were served, experts were retained, and expert reports were exchanged, showing vigorous opposition between the Parties throughout this litigation. *Id*. ¶ 28. Class Counsel also engaged in substantial briefing regarding Defendant's motions to dismiss, alleging a host of affirmative defenses. *See* ECF Nos. 18-22, 31, 36, 42-47, 53-54, 75-79.

On August 27, 2015, Class Counsel attended an in-person mediation before the Honorable Peter Lichtman (Ret.), which included attorneys for all Parties and a Revlon representative. *Id*. ¶ 29. This mediation was followed by several months of detailed and adversarial negotiations. *Id*. ¶ 30. The tremendous amount of time and labor devoted to this case factor in support of granting Class Counsel's request for fees and costs.

    **2.**     ***The Magnitude and Complexities of the Case, and Risks of Continued Litigation***

In this Circuit, litigation risk is the "pivotal" and "perhaps the foremost" factor to be considered in assessing a reasonable and appropriate award of fees in class actions. *See In re Marsh ERISA Litig*., 265 F.R.D. at 147; *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 424 (2d Cir. 2010); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479 (S.D.N.Y. 2013).

This was not a simple case, but involved complex issues regarding scientific efficacy of Revlon's DNA Advantage Products, consumer perceptions and reactions to the Products' labeling representations, and damages calculations attributable to the challenged advertising. Moreover, the FDCA is complex, has been frequently amended, and has lengthy and technical implementing regulations promulgated by the FDA. Had the case proceeded to trial, complex chemistry and

scientific issues raised by Plaintiffs' claims would have been at issue, and Plaintiffs would inevitably have to confront a variety of risks resulting in potential loss of the case. For instance, this Court already struck injunctive relief from the lawsuit for lack of Article III standing; and dismissed all class claims for the powder product, all claims that the Products were unapproved new drugs based on the doctrine of preemption, and several of Plaintiffs' causes of action *with prejudice* (counts one, three, five, nine, ten, and twelve through fifteen of the First Amended Complaint). Dkt. No. 79. And, Defendant firmly contends that its Products are not falsely or deceptively advertised, that its experts' reports establish that class certification would not have been granted due to the predominance of individual issues.

In addition to the risks regarding class certification and the merits, there also existed significant risk that Class Counsel, despite committing substantial resources to this matter, would not receive any compensation, as their payment was entirely contingent upon Plaintiffs prevailing. The substantial risk of non-recovery inherent in contingent class actions is well-documented in both New York and California. *See e.g., In re Marsh ERISA Litig.*, 265 F.R.D. at 148 ("

> Moreover, in addition to the risks discussed above, Plaintiffs' Counsel had to contend with the traditional risks inherent in any contingent litigation. [Class] Counsel accepted this case on a contingent basis, with the attendant risk that they would receive nothing at all. There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk. *Cf. Blum v. Stenson*, 465 U.S. 886, 902 (1984) (Brennan, J., concurring) ("[T]he risk of not prevailing, and therefore the risk of not receiving any attorney's fees, is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee."); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ("Because they shift part of the risk of loss from client to lawyer, contingent-fee contracts usually yield a larger fee in a successful case than an hourly fee would."). The risk factor, then, strongly supports the requested fee.

"); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-1133 (2001) ("

> A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan

> is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.

") (quoting Richard Posner, ECONOMIC ANALYSIS OF LAW (4th ed. 1992)). "[A]n attorney will therefore require a higher contingency rate to compensate for the fact that not all of the cases he works will result in remuneration." *U.S. v. Vilus*, 419 F. Supp. 2d 293, 299 (E.D.N.Y. 2005).

Finally, devoting 1767.6 attorney and staff hours and $50,442.96 in costs to this Action over the course of over three years necessarily precluded Class Counsel from taking on other employment, and/or from devoting significant resources to other cases or potential cases. In sum, the magnitude and complexities of this case, risks of continued litigation, lack of assurance of compensation, and opportunity cost of involvement in this litigation, all support Class Counsel's request here.

### 3. *The Quality of Representation, and Exceptional Benefits to the Class*

Class Counsel have extensive experience prosecuting complex consumer class actions, and each firm has significantly participated and successfully prosecuted a number of complex class action cases, as detailed in the accompanying declarations. *See* Marron Decl. ¶¶ 20(a)-(k), Ex. 1 (Marron Firm resume); Fitzgerald Decl. ¶¶ 2, 9-44 & Ex. A. Class Counsel respectfully suggest that their track record in this case, as well as past cases, demonstrates their skill and expertise. *See id*. A review of the record shows how hard fought this case has been. In light of the serious risks and complexities of this case, the quality of Class Counsel's representation may also be measured by the results achieved for the Class. *See Goldberger*, 209 F.3d at 55 ("[T]he quality of representation is best measured by results . . . ."). Here, the instant Settlement represents a positive result for the Class and general public.

First, the Settlement provides for up to $400,000.00 in monetary relief to the Class. Sett. Agmt. § III(D)(2)(a). In particular, all Class Members who timely complete and return an executed Claim Form will receive $3.00 per purchase (limited to three purchases without proof of purchase), which represents *three times* the estimated price premium that Revlon determined applied to the DNA

Advantage-specific advertising. *Id.*; *see also* Fitzgerald Decl. ISO MPA ¶ 2. Due to the unusually high rate of claims returned here, the total dollar amount of Settlement Payments for Authorized Claims already exceeds, and therefore will equal, the Settlement Payment Maximum of $400,000.00. *See id.* § III(D)(2)(f). Consequently, Defendant will not receive any reversion of money.

Second, despite the Court's dismissal of Plaintiff's claims for injunctive relief in this Action, the Settlement nonetheless provides for significant non-monetary relief. Specifically, Revlon has agreed to discontinue, and not recommence, manufacturing, advertising, promoting, distributing, offering for sale, and selling its DNA Advantage Products—essentially constituting a complete and total cessation of the primary accused false and misleading claims at issue. Sett. Agmt. § III(C). Class Counsel was able to successfully negotiate this complete discontinuance, despite the fact that Revlon adopted the sub-name DNA Advantage specifically as a trade mark and succeeded in obtaining a U.S. Trademark Registration for that term. The cost of implementing such injunctive relief provides a touchstone for the potential benefit to the Class. Notably, class action settlements do not typically result in complete injunctive relief against the accused product claims or advertising, especially where the accused product claim is a brand name and federally registered trademark.

While the value of injunctive relief may be difficult to monetize, the implementation of this advertising prohibition cannot be overlooked. *See Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2012 WL 1144303, at *1 (N.D. Cal. Apr. 4, 2012) ("Dell's elimination of allegedly false representations . . . conferred a benefit on both the class members and the public at large.") (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) ("[i]ncidental or nonmonetary benefits conferred by the litigation" are factors in a fee application)). Indeed, there is intrinsic value in eliminating deceptive advertising. *Vizcaino*, 290 F.3d at 1047. There are also direct monetary savings from providing consumers with truthful information that will guide future purchases.

Accordingly, the quality of Class Counsel's representation, as well as the exceptional results achieved for the Class through this Settlement, support the instant fee request.

**4.** *__Fee Requested in Relation to the Settlement, and Public Policy Considerations__*

To satisfy both attorneys' fees and costs, Class Counsel seeks between approximately 45% to 48% of the QSF. Not only is this request in line with the 20 to 50 percent range that this Circuit and others generally apply to common fund class actions, s*ee supra* Section IV(A) n.2, but is also significantly less than Class Counsel's actual lodestar, essentially amounting to a significant negative multiplier. This underscores the reasonableness of Class Counsel's requested fees and costs.

**C. The Requested Fees and Costs are Reasonable Under a Lodestar Cross-Check**

"Although lodestar analysis is no longer the preferred method of calculating attorneys' fees in connection with class action settlements, if the percentage of fund figure compares favorably with a lodestar that uses reasonable hourly rates and a reasonable multiplier, it tends to validate the percentage of funds figure." *Velez*, 2010 WL 4877852, at *22.

Class Counsel's total combined lodestar here is $955,029, which is based on 1767.6 total hours of work (1717.3 attorneys hours, 17.9 law clerk hours, and 33.4 paralegal/legal assistant hours). *See* Marron Decl. ¶¶ 11-13; Fitzgerald Decl. ¶¶ 3-4. *See also* Appendices 1-2 hereto.

While a modest multiplier would be amply warranted here, Class Counsel seek *less than half* their actual lodestar, resulting in a negative multiplier of 0.42, which will only decrease as they carry out their duties in effectuating the Settlement without additional fees. *See Velez*, 2010 WL 4877852, at *23 ("[W]here 'class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower.'") (citing *Bellifemine*, 2010 WL 3119374, at *19; *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 U.S. Dist. LEXIS 12762, at *7–8 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex

procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time"))). And, approval of the fee award sought under a lodestar cross-check should not be denied when it is *less* than the lodestar. *See id.* at *23 ("[T]hat a low multiplier lodestar calculation yields a number approximating the percentage of fund number persuades the court that it is appropriate to award the full requested fee to plaintiffs' counsel."). This is especially true here, where a good recovery was obtained, including relief unavailable to plaintiffs at trial, there was significant risk, and all *Goldberger* factors support the request.

1. ***Class Counsel's Hourly Rates are Reasonable, and Have Been Approved by Numerous Federal and State Courts***

Class Counsel's hourly rates are reasonable because they are in line with prevailing hourly rates charged by other attorneys of comparable experience, reputation, and ability for similar complex consumer protection class action litigation. Class Counsel's requested rates and hours are listed in this Memorandum's Appendix 1 showing work by timekeeper, and further organized by task category in Appendix 2. *See also* Marron Decl. ¶¶ 11-12; Fitzgerald Decl. ¶ 3-4. To further assist the Court, Class Counsel attach to the accompanying declarations their current firm resumes, exemplifying their vast experience and expertise in the area of complex consumer protection class action litigation, and setting forth examples of the hourly rates Class Counsel have been awarded in various other similar class action cases. Marron Decl. ¶¶ 20(a)-(k), Ex. 1; Fitzgerald Decl. ¶¶ 2, 9-44, Ex. A.

In setting a reasonable hourly rate, courts typically start by looking to the prevailing hourly rates in the district where the court sits, otherwise known as the "forum rule." *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-52 (2010); *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany*, 493 F.3d 110 (2d Cir. 2007) ["*Arbor Hill I*"]). However, "where circumstances have warranted it, [courts] have not insisted on strict adherence to the forum rule." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany*

*Cty. Bd. of Elections*, 522 F.3d 182, 192 (2d Cir. 2008) ["*Arbor Hill II*"].  Rather, "a district court may use an out-of-district hourly rate in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates."  *Id.* at 191; *see also Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983) ("Exceptions have been made upon a showing that the special expertise of counsel from a distant district is required.").

Not only has the Second Circuit upheld the use of out-of-district rates, but it has also affirmatively "urged district courts where appropriate to employ out-of-district rates in calculating the fee due."  *Arbor Hill II*, 522 F.3d at 193.  *See also Polk*, 722 F.2d at 25; *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987).  Indeed, "'there is good reason for a district court not be wed to the rates in its own community. If they are lower than those in another district, skilled lawyers from such other district will be dissuaded from taking meritorious cases in the district with lower rates.'"  *Arbor Hill II*, 522 F.3d at 193 (quoting *A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 81 (2d Cir. 2005)).  Moreover, "[t]he legal communities of today are increasingly interconnected. To define markets simply by geography is too simplistic." *Id.* at 192. In any case, "the rate prevailing in the appropriate community is only one of many factors bearing . . . a fee award." *Polk*, 722 F.2d at 25.  In addition, "the district court should consider . . . the *Johnson* factors," *Arbor Hill I*, 493 F.3d 110 (citing *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).[7]

Here, the Court should affirm the hourly rates that countless other federal and state courts have already approved for Class Counsel. Departure from the forum rule is warranted because of the special expertise required of, and provided by, Class Counsel in this Action surrounding both New York and

---

[7] The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 117-18.

California consumer protection law. This Action involved several California consumer protection statutes, including California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*. (Sixth Cause of Action), and California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. (Seventh Cause of Action). In order to effectively prosecute these claims, Plaintiffs would have had to either retain California counsel, or New York counsel well-versed in California consumer protection law (in either situation, a premium for such specialized knowledge would be expected). Otherwise, Plaintiffs would have had to limit their claims to the laws of a single state, despite the fact Defendant sells its products nationwide. By choosing to retain Class Counsel—licensed to practice law in both California and New York—Plaintiffs were able to effectively pursue Class-wide relief based on the applicable laws of both states, thereby increasing their potential recovery and Revlon's liability.

**Rates Other Courts Have Awarded.** Courts look to the amount of awards made in similar cases in determining the reasonableness of a requested hourly rate. *See Johnson*, 488 F.2d at 117-18.

Recently, the Marron Firm's hourly rates of $745 for Ronald Marron, $475 for Skye Resendes and Alexis Wood, $450 for Kas Gallucci, $440 for William Richards and other associate attorneys, and $290 for law clerks, were approved by multiple state and federal court judges in three related dietary supplement tea cases. The first was *Perry v. Truong Giang Corp.*, Los Angeles Super. Ct. Case No. BC58568, in which the Hon. Kenneth Freeman noted on August 6, 2015 that the same hourly rates requested here were reasonable. *See* Marron Decl. ¶ 20(b), Ex. 5 ("

> [T]his case involved difficult legal issues . . . and . . . proving the difference between the price paid (around $2 per box of tea) and the actual value received would have been difficult since arguably some value was received (the tea itself). Additionally, . . . the attorneys displayed skill in researching and settling this case, which provides a benefit not only to Class Members but to the public at large, and that in so doing, the attorneys undertook significant risk by spending time on this litigation on a contingency basis.

"). Similarly, on August 7, 2015, in *In re Leaf123* (adversary proceeding of *Augustine v. Natrol*), No. 14-114466, the Hon. Brendan L. Shannon, U.S. Bankruptcy Judge for the District of Delaware, found

the settlement in that case "fair, reasonable and adequate," which included an award of $799,000 in fees. *See id.* ¶ 20(c), Ex. 6. And on November 16, 2015, the Hon. Maxine M. Chesney, Senior District Court Judge for the Northern District of California, approved the same hourly rates. *Id.* ¶ 20(a). The court found the Marron Firm's rates to be "reasonable in light of the complexity of this litigation, the work performed, Class Counsel's reputation, experience, competence, and the prevailing billing rates for comparably complex work by comparably-qualified counsel in the relevant market." *Id.*

On February 24, 2017, the Fitzgerald Firm's requested hourly rates of $650 for Mr. Fitzgerald, $750 for Mr. Canova, and $500 for Mr. Flynn, were approved by the Honorable Katherine Bacal in *Cumming v. BetterBody Foods & Nutrition*, LLC, No. 37-2016-00019510-CU-BT-CTL (San Diego County Super. Ct.), a false advertising class action against a coconut oil manufacturer. Fitzgerald Decl. ¶¶ 9, 12 & Ex. B. More than a year ago, the Honorable Magistrate Judge Mitchell D. Dembin of the Southern District of California, approved rates only slightly lower—$725 for Mr. Canova, $625 for Mr. Fitzgerald, and $400 for Ms. Persinger. *Id.* ¶ 10 (citing *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-595-BAS-MDD, 2016 WL 1573319, at *2 (S.D. Cal. Apr. 18, 2016)). The rates currently requested by the Fitzgerald Firm attorneys reflects a modest increase to account for inflation, as well as the experience and skill gained during that time. *Id.* ¶ 12. And Ms. Nguyen's requested rate of $325 was approved more than a year and a half ago by the Honorable Joan M. Lewis, finding the rate "reasonable" and "in line with prevailing rates in the community." Fitzgerald Decl. Ex. C at ¶ 17.

Past courts have approved similar rates for the Marron Firm attorneys and Fitzgerald Firm attorneys, with appropriate increases over time, further underscoring the reasonableness of the requested rates, especially considering the several years which have passed since the most recent of those decisions. *See* Marron Decl. ¶¶ 20(d)-(j); Fitzgerald Decl. ¶¶ 11-12. *See also Vaccarino v.*

*Midland Nat. Life Ins. Co.*, 11 CV-5858-CAS MANX, 2014 WL 4782603, at *2 (C.D. Cal. Sept. 22, 2014); *see also id.* at ECF No. 407 (approving hourly rates of $715 for Mr. Marron, $440 for Ms. Resendes, $425 for Ms. Wood, and law clerks and paralegals at $245 and $215, respectively); *In re Quaker Oats Labeling Litig.*, No. C 10-0502 RS, 2014 WL 12616763, at *1 (N.D. Cal. July 29, 2014) (approving $715 for Mr. Marron, $580 for Mr. Fitzgerald, $440 for Ms. Resendes, $400 for Ms. Gallucci, $340 for Ms. Persinger, and $290 for law clerks); *Mason v. Heel, Inc.*, No. 3:12-cv-3056-GPC-KSC, 2014 WL 1664271 (S.D. Cal. Mar. 13, 2014) (approving $715 for Mr. Marron, $440 for Ms. Resendes, $425 for Ms. Wood, other attorneys at $400, and $215 for legal assistants); *In re Apple and AT&T iPad Unlimited Data Plan Litig*, No. 5:10-cv-02533 (N.D. Cal.), ECF Nos. 190-3, ECF Nos. 207-20 (approving $550 for Mr. Fitzgerald, and $195 for paralegals in March 2014); *Nigh v. Humphreys Pharmacal Inc.*, 3:12-cv-02714-MMA-DHB, 2013 WL 5995382 (S.D. Cal. Oct. 23, 2013) (approving $680 for Mr. Marron, $400 for Ms. Resendes, $385 for Ms. Wood, $245 per hour for law clerks, and $215 hourly rates for support staff); *Bruno v. Quten Research Inst., LLC*, No. 8:11-cv-00173-DOC-E, 2013 WL 990495, at *4-5 (C.D. Cal. Mar. 13, 2013) (approving $680 for Mr. Marron, $500 for Mr. Fitzgerald, $400 for Ms. Resendes, $315 for Ms. Persinger, $245 for law clerks, and $215 for support staff); *Gallucci v. Boiron, Inc*., No. 11CV2039 JAH NLS, 2012 WL 5359485, at *9 (S.D. Cal. Oct. 31, 2012) (approving $650 for Mr. Marron, $525 for Mr. Fitzgerald, $385 for Ms. Resendes, $300 for Ms. Persinger, and $195 for paralegals); *In re Ferrero Litig*., No. 11-CV-00205-H-KSC, 2012 WL 2802051, at *4 (S.D. Cal. July 9, 2012), *aff'd*, 583 F. App'x 665 (9th Cir. 2014) (approving $650 for Mr. Marron, $385 for Ms. Resendes, $525 for Mr. Fitzgerald, and $300 for Ms. Persinger).

In approving these rates, courts have complimented Class Counsel on their competence and skill in prosecuting consumer class actions, noting the substantial benefits obtained for consumers. *See*, *e.g.*, *Bruno*, 2013 WL 990495, at *4-5 ("

> Class Counsel, . . . displayed competence and diligence in the prosecution of this action, and their requested rates are approved as fair and reasonable . . . . [I]n addition to the monetary relief obtained by Class Counsel for class plaintiffs, there is a high value to the injunctive relief obtained in this case. New labeling practices affecting hundreds of thousands of bottles per year, over ten years, bring a benefit to class consumers, the marketplace, and competitors who do not mislabel their products.

"); *Gallucci*, 2012 WL 5359485, at *9 ("The Court finds the hourly billing rates reasonable in light of the complexity of this litigation, the work performed, Class Counsels' reputation, experience, competence, and the prevailing billing rates for comparably complex work by comparably-qualified counsel in the relevant market."); *In re Ferrero Litig.*, 2012 WL 2802051, at *4 (fees requested were "appropriate given the contingent nature of the case and the excellent results obtained for the Class, and because no enhancement or multiplier was sought above the actual amount of Class Counsel's lodestar" and "the billing rates used by Class Counsel [were] justified by prior awards in similar litigation and the evidence presented with their motion showing these rates are in line with prevailing rates in this District"); *see also* Marron Decl. ¶¶ 20(h)-(i), (k); Fitzgerald Decl. ¶¶ 15-19 & Ex. A.

**Survey Data.** Attached as Exhibit 2 to the Marron Declaration are portions from the published National Law Journal (NLJ) 2011 Law Firm Billing Survey; a rate analysis for partners and associates in the Southern California area, compiled by summarizing the NLJ 2011 Survey of Southern California firms; and a Summary reflecting the market rate increase in Southern California from 2010 to 2011 for partners and associates created by comparing the 2010 NLJ Survey to the 2011 NLJ Survey. Plaintiffs also attach the 2014 Report on the State of the Legal Market prepared by Georgetown Law Center and Thomson Reuters. Marron Decl. Ex. 4 This report shows that "from the third quarter of 2010 through November 2013 . . . firms increased their standard rates by 11 percent[,] from an average of $429 per hour to $476 per hour." Also instructive is the NLJ's survey of billing rates in December 2010, which reveals New York billing rates of senior partners above $900, average and mean partner rates from $613 to $785, and senior associate rates of $575 to $690. *Id*. at Ex. 3.

All other relevant *Johnson* factors have been met, and discussed thoroughly herein. As this evidence shows, Class Counsel's requested hourly rates for calculating the lodestar cross-check are well within the range of prevailing market rates in both California and New York.

### 2. *Class Counsel's Hours Expended Were Reasonable and Necessary for the Successful Prosecution of this Case*

"Where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50 (citation omitted).[8] "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . . ." *Id.*

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation" and "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. Relatedly, courts should not try to guess how minimal an effort could have been put forth to be successful. *Sylvester v. City of New York*, No. 03 Civ. 8760(FM), 2006 WL 3230152, at * 12 (S.D.N.Y. Nov. 8, 2006). Rather, the test is whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures" not whether, in hindsight, effort appears unrelated to plaintiff's success. *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Heng Chan v. Sung Yue Tung Corp.*, No. 03 CIV. 6048 (GEL), 2007 WL 1373118, at *6 (S.D.N.Y. May 8, 2007) ("So long as the plaintiff's unsuccessful claims are not wholly unrelated

---

[8] Class Counsel's raw billing records, maintained contemporaneously with the work performed, are voluminous and, even with redactions, would contain confidential information that would disclose strategy, mental impressions, work product and the like. Consistent with established practice in common fund cases, Class Counsel have summarized their records in their supporting declarations, as well as Appendices 1-3 hereto. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 284 (3d Cir. 2009) (summaries of records sufficient in common fund cases because court used information only to cross-check reasonableness of fee award); *Trs. of Cent. States Se. & Sw. Areas Pension Fund v. Golden Nugget, Inc.*, 697 F. Supp. 1538, 1558-59 (C.D. Cal. 1988); *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 505-06 (2016). Nevertheless, if the Court desires, Class Counsel's billing records of individual entries can be provided for in camera review. Marron Decl. ¶ 14. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 200 (3d Cir. 2000) (appropriate for counsel to wait to submit detailed time records until court requested them).

to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the lodestar amount." (quoting *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994))).

Class Counsel have already expended a total of 1717.3 attorney hours and 51.3 paralegal/legal assistant hours. Apps. 1-2; Marron Decl. ¶¶ 11-12; Fitzgerald Decl. ¶¶ 3-4. This time includes, *inter alia*: pre-filing investigation and research; subsequent pleadings, motions, oppositions, and briefing; propounding and responding to formal discovery; document review of over 100,000 pages; legal research and analyses of the applicable laws; witness depositions and third party subpoenas; expert reports; mediation and settlement negotiations; and ensuring the Class Notice was disseminated, Class Members' questions were answered, and their claims properly recorded.

Class Counsel further expects to expend an additional 50 hours (40 attorney hours and 10 support staff hours) implementing and monitoring the Settlement and other post-application work. Class Counsels' hours do not include entries that reflected possible errors, duplication, or otherwise reflected a task that is not ordinarily billed to a private client. Class Counsel also reduced entries where the time spent might have been excessive. *See* Marron Decl. ¶ 15; Fitzgerald Decl. ¶ 7.

## V.      THE REQUESTED COSTS ARE FAIR AND REASONABLE

"It is well settled that counsel who create a common fund . . . are entitled to the reimbursement of [all reasonable] litigation costs and expenses . . . ." *Velez*, 2010 WL 4877852, at *23 (quoting *In re Marsh ERISA Litig.*, 265 F.R.D. at 150). Compensable items include, among others, photocopying, travel expenses, telephone costs, postage, deposition costs, service of process fees, and filing fees. *See Luessenhop v. Clinton Cnty.*, 558 F. Supp 2d 247, 271-72 (N.D.N.Y. 2008); *DiSorbo v. City of Schenectady*, No. 99-CV-1131 (LEK), 2004 WL 115009, at * 5 (N.D.N.Y. Jan. 9, 2004) (awarding airfare and hotel expenses); *Cioffi v. New York Community Bank*, 465 F. Supp. 2d 202, 217 (E.D.N.Y. 2006) (awarding filing fees, service costs, photocopying, costs of depositions, and subpoena fees);

*Alnutt v. Cleary*, 27 F. Supp. 2d 395, 403-04 (W.D.N.Y. 1998) (awarding service of process fees). California's CLRA and Private Attorney General Statute also provide for the recovery of reasonable costs. *See* Cal. Civ. Code § 1780(e); Cal. Civ. Proc. Code § 1033.5. "Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course." *In re Vitamin C Antitrust Litig.*, 06-MD-1738 BMC JO, 2012 WL 5289514, at * 11 (E.D.N.Y. Oct. 23, 2012).

Here, Class Counsel have together incurred a total of $50,442.96 in recoverable costs, summarized in Appendix 3 hereto. *See also* Marron Decl. ¶ 13; Fitzgerald Decl. ¶ 5. All of Class Counsel's expenses were reasonable and necessary for the successful prosecution of this case. Accordingly, the Court should grant Class Counsel's full request for reimbursement of their costs. *See Bellifemine*, 2010 WL 3119374, at *7 ("[T]he costs. . . are reasonable, and therefore, Class Counsel should be reimbursed for these litigation related expenses.").

## VI.    THE REQUESTED ENHANCEMENT AWARDS ARE FAIR AND REASONABLE

"In the Second Circuit, 'the Courts have, with some frequency, held that a successful Class action plaintiff, may, in addition to his or her allocable share of the ultimate recovery, apply for and, in the discretion of the Court, receive an additional award, termed an incentive award.'" *Bellifemine*, 2010 WL 3119374, at *7 (quotation omitted).  Such awards are an important way of "reimbursing class representatives who take on a variety of risks and tasks when they commence representative actions, such as complying with discovery requests and often must appear as witnesses in the action.'" *Velez*, 2010 WL 4877852, at *25 (quoting *In re Marsh ERISA Litig.*, 265 F.R.D. at 58)

Here, Plaintiffs respectfully request enhancement awards of $5,000.00 each in recognition of their contributions over the past several years toward the successful prosecution of this Action. *See* Sett. Agmt. § III(D)(1)(i).  Such awards are justified in light of Plaintiffs' willingness to devote their time and energy to this litigation, and reasonable in light of the overall benefits conferred upon the

24

Class." *See Bellifemine*, 2010 WL 3119374, at *7.

Plaintiffs seek incentive/service awards of $5,000 each, based on the nature and extent of their substantial service for an involvement in this action, including traveling across the country from New York (Elkind) and Idaho (Rosen) to prepare and sit for their depositions in California, at significant personal burden given the ill health and serious medical condition of one of the plaintiffs (Elkind), requiring her to travel only in the company of her husband as a caregiver during that trip, and of the ill health and specific needs of several animals that the other plaintiff cares for (Rosen) – and they did so to accommodate Revlon counsel based in California. Fitzgerald Decl. ¶¶ 40-43. This participation in connection with their depositions followed substantial additional work on the part of plaintiffs in carefully reviewing and commenting upon the draft of the Complaint and the First Amended Complaint, as well as venue affidavits and other case filings, and working with their counsel in preparing discovery responses, including responses to interrogatories, supplementing those responses where needed, and responding to document requests, including by searching for responsive documents. *Id.* ¶ 44.

## VII.   **CONCLUSION**

For the foregoing reasons, the Court should, respectfully, grant the relief requested in full.

Respectfully submitted,

Dated: July 7, 2017

/s/ Jack Fitzgerald

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 4294401)
*jack@jackfitzgeraldlaw.com*
THOMAS A. CANOVA (SBN 2108119)
*tom@jackfitzgeraldlaw.com*
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

/s/ Ronald A. Marron

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (*pro hac vice*)
*ron@consumersadvocates.com*
WILLIAM B. RICHARDS, JR. (*pro hac vice*)
*bill@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Class Counsel***

## APPENDIX 1: CLASS COUNSEL'S LODESTAR

| Timekeeper | Position | Rate Requested | Total Hours | Total Amount |
|---|---|---|---|---|
| **Law Offices of Ronald A. Marron, APLC** | | | | |
| Ronald Marron | Partner | $745.00 | 59.6 | $44,402.00 |
| Skye Resendes | Senior Associate | $475.00 | 126.9 | $60,277.50 |
| Alexis Wood | Senior Associate | $475.00 | 47 | $22,325.00 |
| Kas Gallucci | Senior Associate | $450.00 | 89 | $40,050.00 |
| William Richards, Jr. | Associate | $440.00 | 101.4 | $44,616.00 |
| Marshall Lurtz | Associate | $440.00 | 22.4 | $9,856.00 |
| Beth Goodman | Associate | $440.00 | .8 | $352.00 |
| Erin Minelli | Associate | $440.00 | 12.5 | $5,500.00 |
| Michael Houchin | Associate | $440.00 | 244.9 | $107,756.00 |
| Law Clerks | | $245.00 | 17.9 | $4,385.50 |
| Paralegals/Legal Assistants | | $215.00 | 33.4 | $7,181.00 |
| | | | **Subtotal** | **$346,701.00** |
| **The Law Office of Jack Fitzgerald, PC** | | | | |
| Tom Canova | Partner | $750 | 449 | $336,750 |
| Jack Fitzgerald | Partner | $650 | 247.9 | $161,135 |
| Trevor Flynn | Associate | $500 | 36.3 | $18,150 |
| Melanie Persinger | Associate | $440 | 15.2 | $6,688 |
| Tran Nguyen | Associate | $325 | 263.4 | $85,605 |
| | | | **Subtotal** | **$608,328.00** |

Total attorney hours (all firms):
Total staff hours (all firms):
Total hours (all firms):

**TOTAL FEES = $955,029.00**

I

## VIII. APPENDIX 2: CLASS COUNSEL'S CATEGORIES OF HOURS EXPENDED

| Task | Hours |
|---|---|
| **Law Offices of Ronald A. Marron, APLC** | |
| Work Relating to Pre-Filing Investigation, Research, CLRA Letters | 13.9 |
| Work Relating to Subsequent Pleadings | 95.6 |
| Work Relating to Revlon's Motions to Dismiss | 27.7 |
| Work Relating to Applications for *Pro Hac Vice* | 24.7 |
| Work Relating to Discovery | 238.6 |
| Work Relating to Depositions | 138.1 |
| Work Relating to Protective Order | 2.4 |
| Work Relating to Expert Witnesses | 16.3 |
| Work Relating to Case Management, Communications, and Scheduling | 66.7 |
| Work Relating to Mediation and Settlement | 131.8 |
| **Subtotal** | 755.8 |
| **The Law Office of Jack Fitzgerald, PC** | |
| Work Relating to Pre-Filing Investigation, Research, CLRA Letters | 32.3 |
| Work Relating to Subsequent Pleadings | 29 |
| Work Relating to Revlon's Motions to Dismiss | 56.4 |
| Work Relating to Applications for *Pro Hac Vice* | 7.2 |
| Work Relating to Discovery | 428.4 |
| Work Relating to Depositions | 160.2 |
| Work Relating to Protective Order | 2.2 |
| Work Relating to Expert Witnesses | 71.6 |
| Work Relating to Case Management, Communications, and Scheduling | 24.6 |
| Work Relating to Mediation and Settlement | 199.9 |
| **Subtotal** | 1011.8 |

**TOTAL HOURS:** 1767.6

## APPENDIX 3: CLASS COUNSEL'S EXPENSES

| Description | Amount |
|---|---|
| **Law Offices of Ronald A. Marron, APLC** | |
| Court Filing Fees | $200.00 |
| Service of Process Fees | $380.00 |
| Postage | $34.84 |
| Certificates of Good Standing (for *Pro Hac Vice* Applications) | $150.00 |
| FOIA Request Fees | $25.00 |
| Deadlines.com Fees (for this case) | $570.00 |
| Expert Fees | $30,585.00 |
| Transcript Fees | $376.60 |
| Mediation Fees | $1,900.00 |
| Travel Expenses (Flights and Mileage Reimbursement) | $2,911.63 |
| Meals | $156.83 |
| Printer Fees and Photocopies | $3,516.00 |
| Delivery Service Fees (FedEx) | $147.85 |
| PACER | No charge |
| Westlaw | No charge |
| **Subtotal** | **$40,953.75** |
| **The Law Office of Jack Fitzgerald, PC** | |
| Court Filing Fees | $750.00 |
| Service of Process Fees | $2656.55 |
| Postage & Delivery Service Fees | $132.05 |
| Certificates of Good Standing & Notary Fees(for Pro Hac Vice Applications) | $85.00 |
| Transcript Fees | $80.40 |
| Travel Expenses (Flights, Hotels, and Mileage Reimbursement) | $4428.66 |
| Meals | $951.55 |
| Deadlines.com Fees (for this case) | $405.00 |
| **Subtotal** | **$9,489.21** |

**TOTAL EXPENSES: $50,442.96**

**UNITED STATES DISTRICT COURT**          **CIVIL CONFERENCE**
**EASTERN DISTRICT OF NEW YORK**          **MINUTE ORDER**

BEFORE:    A. KATHLEEN TOMLINSON        DATE:    <u>8-1-2017</u>
           U.S. MAGISTRATE JUDGE        TIME:    <u>10:19 a.m. (51 minutes)</u>

*Elkind et al. v. Revlon Consumer Products Corporation*
**CV 14-2484 (JS) (AKT)**

TYPE OF CONFERENCE:        **FAIRNESS HEARING**

APPEARANCES:    Plaintiff      Thomas A Canova
                               Ronald Marron

                Defendant      Sean Riley
                               Alexandra Gerber

FTR:    10:19-11:10


**THE FOLLOWING RULINGS WERE MADE:**

The Court conducted the Fairness Hearing today in this false advertising and unfair competition class action**.** The Court had reviewed and considered the extensive submissions by counsel in support of the motion for final approval of the class action settlement. Counsel proceeded to put on the record the response to class notice as well as the contents of the affidavit of the Claims Administrator. In excess of 55,000 individuals filed claims. Counsel explained in detail the elements of the settlement and the application of the *Grinnell* factors to the settlement itself. The Court noted that there were no objectors in the courtroom. Counsel confirmed that no objections had been filed and that there was a single opt-out form mailed back.

For the reasons stated in the record of today's proceedings, the Court found the settlement to be fair and reasonable and in the best interests of the class. Therefore, the settlement is approved, including the injunctive relief sought and the attorneys fees requested, representing 30% of the settlement fund, for the reasons set forth in the record today. Counsel are free to obtain the full record by making arrangements to do so with Courtroom Deputy Mary Ryan at 631-712-5765. The substantive Order finally approving the settlement will be entered separately. Counsel have been directed to submit a proposed Order expeditiously.


SO ORDERED

<u>/s/ A. Kathleen Tomlinson</u>
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge

# Exhibit 74

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JOSHUA RAWA, ELISABETH MARTIN, ROBERT RAVENCAMP, AMY WARD, CYNTHIA DAVIES, CHRISTOPHER ABBOTT, OWEN OLSON, JEANNIE A. GILCHRIST, ZACHARY SHOLAR, MATTHEW MYERS, JOHN W. BEARD, JR., and MICHAEL OVERSTREET on behalf of themselves, all others similarly situated, and the general public, | Case No.: 4:17-cv-01252-AGF |
| Plaintiffs, | |
| v. | |
| MONSANTO COMPANY, | |
| Defendant. | |

## SUPPLEMENTAL DECLARATION OF JACK FITZGERALD IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

I, Jack Fitzgerald, declare:

1.       I am a member in good standing of the State Bars of California and New York; and of the United States District Courts for the Northern, Central, and Southern Districts of California, the Southern and Eastern Districts of New York, and the Western District of Wisconsin; and of the United States Court of Appeals for the Ninth Circuit. I make this supplemental declaration based on my own personal knowledge, in support of plaintiffs' motion for attorneys' fees, costs, and incentive awards.

2.       Class Counsel's detailed billing records, arranged by timekeeper and action (California and Missouri), are attached hereto as Exhibit 1. Information revealing attorney-client privileged communications and attorney work product or case strategy have been redacted, and an unredacted copy of the records sent to the Court's chambers for its *in camera* review.

- 1 -

## Class Counsel's Billing Rates

3.      Class Counsel's billing rates in California and Missouri are as follows.

| Timekeeper | C.D. Cal. Rate | E.D. Mo. Rate |
|---|---|---|
| Sid Jackson | $925 | $650 |
| Jack Fitzgerald | $715 | $500 |
| Melanie R. Persinger | $485 | $340 |
| Trevor M. Flynn | $550 | $385 |
| Thomas A. Canova[1] | $750 | - |

4.      These rates are consistent with previous and recent fee awards because they represent a slight and proportionate 10% increase from rates approved more than a year ago, in February 2017, again seven months ago, in September 2017, and again four months ago, in December 2017.[2] I therefore believe these rates are consistent with prevailing rates in the community for attorneys of similar experience, skill, and reputation. Specifically:

        a.      On December 13, 2017, the Honorable David O. Carter approved rates of $750 for Mr. Canova, $650 for Mr. Fitzgerald, $500 for Mr. Flynn, and $440 for Ms. Persinger. *See Boswell et al. v. Costco Wholesale Corp.*, No. 8:16-cv-00278-DOC-DFM (C.D. Cal.), Dkt. Nos. 133 ¶ 11 (Order noting court "also approves Class Counsels' billing rates"); 126-1 at 8-9 (Memorandum setting forth rates).

        b.      On September 5, 2017, the Honorable A. Kathleen Tomlinson approved fees based on the same requested rates for Mr. Canova ($750), Mr. Fitzgerald ($650), Mr. Flynn ($500), and Ms. Persinger ($440), although the Order was silent as to the rates. *See Elkind et al. v. Revlon Consumer Prods. Corp.*, No. 14-cv-2484-JS-AKT (E.D.N.Y.), Dkt. No. 131.

---

[1] Mr. Canova is no longer associated with the undersigned's firm.

[2] On March 26, 2018, my firm requested these same rates in a class action settlement for which a final approval hearing is scheduled for April 23, 2018. *See Rodriguez v. Bumble Bee Foods, LLC*, No. 17-cv-2447-MMA-WVG (S.D. Cal.), Dkt. No. 18-1 at 6.

c.      On February 24, 2017, the Honorable Katherine Bacal, Judge of the Superior Court for San Diego County, approved rates of $750, $650, and $500 for Mssrs. Canova, Fitzgerald & Flynn, in *Cumming v. BetterBody Foods & Nutrition, LLC*, No. 37-2016- 00019510-CU-BT-CTL (San Diego Super. Ct.). A true and correct copy of the Order Granting Final Approval in *Cumming* is attached hereto as Exhibit 2.

d.      On April 18, 2016, the Honorable Magistrate Judge Mitchell D. Dembin of the Southern District of California, approved the following rates of $725, $625, and $400 for Mssrs. Canova & Fitzgerald, and Ms. Persinger. *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 2016 WL 1573319, at \*2 (S.D. Cal. Apr. 18, 2016).

e.      On December 4, 2015, the Honorable Joan M. Lewis, Judge of the Superior Court for San Diego County, approved rates of $725, $625 and $475 for Mssrs. Canova, Fitzgerald, and Flynn, in *Belardes v. Capay Inc.*, No. 37-2014-00041774-CU-MC-CTL (San Diego Super. Ct.) A true and correct copy of the Order Granting Final Approval to Class Action Settlement in *Belardes* is attached hereto as Exhibit 3.

f.      In July 2014, the Honorable Richard Seeborg, United States District Judge for the Northern District of California, approved a rate of $580 for Mr. Fitzgerald and $340 for Ms. Persinger. *See In Re Quaker Oats Labeling Litig.*, No. 5:10-cv-502-RS (N.D. Cal.), Dkt. No. 211 at 2-3 ¶¶ 7-8.

g.      On March 13, 2013, the Honorable David O. Carter approved a rate of $550 for Mr. Fitzgerald and $315 for Ms. Persinger, in settling a class action on behalf of Coenzyme Q10 supplement purchasers. *See Bruno v. Quten Research Institute, LLC*, 2013 WL 990495, at \*4-5 (C.D. Cal. Mar. 13, 2013); *compare Bruno*, Civ. Case No. 11-cv-173-DOC (C.D. Cal.), Dkt. No. 176 (fee application setting forth requested rates).

h. In October 2012, the Honorable John A. Houston, United States District Judge for the Southern District of California, approved a rate of $525 for Mr. Fitzgerald and $300 for Ms. Persinger, *see Gallucci v. Boiron, Inc.*, 2012 WL 5359485 (S.D. Cal. Oct. 31, 2012), *aff'd sub nom*, *Gallucci v. Gonzalez*, 603 Fed. App'x 553 (9th Cir. 2015). In approving these rates, Judge Houston found the rate "reasonable in light of the complexity of this litigation, the work performed, Class Counsels' reputation, experience, competence, and the prevailing billing rates for comparably complex work by comparably-qualified counsel in the relevant market." 2012 WL 5359485, at *9.

i. On July 9, 2012, the Honorable Marilyn L. Huff, United States District Judge for the Southern District of California, approved a rate of $525 for Mr. Fitzgerald and $300 for Ms. Persinger, *see In re Ferrero Litig.*, 2012 WL 2802051, at *4 (S.D. Cal. July 9, 2012); *Compare Ferrero*, Civ. Case No. 11-cv-205-H-KSC (S.D. Cal.), Dkt. No. 114-2 (fee application setting forth rates).

5. The 10% increase in LOJF's rates since February 2017 is consistent with increases for these attorneys that have been approved by various courts over the past several years as noted above, as reflected in the tables below.

**Mr. Fitzgerald:**

| Date | Case | Rate Approved | # Months Ago | % Increase |
|---|---|---|---|---|
| April 2018 | *Rodriguez v. Bumble Bee Foods, LLC* (S.D. Cal.) | $715 (requested) | - | 10% |
| December 2017 | *Boswell et al. v. Costco Wholesale Corp.* (C.D. Cal.) | $650 | 4 | - |
| September 2017 | *Elkind et al. v. Revlon Consumer Prods. Corp.* (E.D.N.Y.) | $650 | 7 | - |
| February 2017 | *Cumming v. BetterBody* (San Diego Superior Court) | $650 | 14 | 4% |

| Date | Case | Rate Approved | # Months Ago | % Increase |
|---|---|---|---|---|
| April 2016 | *Obesity Research Institute LLC v. Fiber Research International, LLC* (S.D. Cal.) | $625 | 24 | - |
| December 2015 | *Belardes v. Capay Incorporated* (San Diego Superior Court) | $625 | 28 | 7.8% |
| July 2014 | *In Re Quaker Oats Labeling Litig.* (N.D. Cal.) | $580 | 45 | 5.5% |
| March 2013 | *Bruno v. Quten Research Institute, LLC* (C.D. Cal.) | $550 | 61 | 4.8% |
| October 2012 | *Gallucci v. Boiron, Inc.* (S.D. Cal.) | $525 | 66 | - |
| July 2012 | *In re Ferrero Litig.* (S.D. Cal.) | $525 | 68 | - |

**Ms. Persinger:**

| Date | Case | Rate Approved | # Months Ago | % Increase |
|---|---|---|---|---|
| April 2018 | *Rodriguez v. Bumble Bee Foods, LLC* (S.D. Cal.) | $485 (requested) | - | 10% |
| December 2017 | *Boswell et al. v. Costco Wholesale Corp.* (C.D. Cal.) | $440 | 4 | - |
| September 2017 | *Elkind et al. v. Revlon Consumer Prods. Corp.* (E.D.N.Y.) | $440 | 7 | 10% |
| April 2016 | *Obesity Research Institute LLC v. Fiber Research International, LLC* (S.D. Cal.) | $400 | 24 | 17.6% |
| July 2014 | *In Re Quaker Oats Labeling Litig.* (N.D. Cal.) | $340 | 45 | 7.9% |
| March 2013 | *Bruno v. Quten Research Institute, LLC* (C.D. Cal.) | $315 | 61 | 5% |
| October 2012 | *Gallucci v. Boiron, Inc.* (S.D. Cal.) | $300 | 66 | - |
| July 2012 | *In re Ferrero Litig.* (S.D. Cal.) | $300 | 68 | - |

**Mr. Flynn:**

| Date | Case | Rate Approved | # Months Ago | % Increase |
|---|---|---|---|---|
| April 2018 | *Rodriguez v. Bumble Bee Foods, LLC* (S.D. Cal.) | $550 (requested) | - | 10% |
| December 2017 | *Boswell et al. v. Costco Wholesale Corp.* (C.D. Cal.) | $500 | 4 | - |
| September 2017 | *Elkind et al. v. Revlon Consumer Prods. Corp.* (E.D.N.Y.) | $500 | 7 | - |
| February 2017 | *Cumming v. BetterBody* (San Diego Superior Court) | $500 | 14 | 5.3% |
| December 2015 | *Belardes v. Capay Incorporated* | $475 | 28 | - |

**Mr. Canova:**

| Date | Case | Rate Approved | # Months Ago | % Increase |
|---|---|---|---|---|
| December 2017 | *Boswell et al. v. Costco Wholesale Corp.* (C.D. Cal.) | $750 | 4 | - |
| September 2017 | *Elkind et al Revlon Consumer Prods. Corp.* | $750 | 7 | - |
| February 2017 | *Cumming v. BetterBody* | $750 | 14 | 3.4% |
| April 2016 | *Obesity Research Institute LLC v. Fiber Research International, LLC* | $725 | 24 | - |
| December 2015 | *Belardes v. Capay Incorporated* | $725 | 28 | - |

### Final Claims Numbers, Class Administrator's Expenses, and *Cy Pres*

6.     On April 13, 2018, Dahl provided a final claim summary showing 70,628 valid claims for a total amount claimed of $10,774,061. Dahl further advised that, through March 2018, its total administration costs are $630,943.68. Given Dahl's costs, if the Court awards the full amount of fees, expenses, and incentive awards requested, the four *cy pres* designees will split $2,788,214.[3]

---

[3] $21,500,000 (Fund) - $630,944 (notice & administration) - $10,774,061 (claims) - $7,166,667 (fees) - $97,614 (costs) - $42,500 (incentive awards).

**Information Relating to Objector Migliaccio's Motion for Leave to File Sur-Reply**

7.　　On April 13, objector Migliaccio filed a motion for leave to file a sur-reply, attaching the proposed memorandum and exhibits. *See* Dkt. No. 52. One of the exhibits, a declaration of attorney Martin Jerisat, was signed on March 23, 2018, three weeks earlier.

8.　　Class Counsel believes the Court should deny the motion for leave. Neither the Settlement nor the Court's Preliminary Approval Order permit objectors to file memoranda or exhibits other than those submitted in connection with their objections. Moreover, it appears Mr. Migliaccio sat on Mr. Jerisat's March 23 declaration, knowing Class Counsel would be travelling on Monday, April 16 to attend the hearing and thus would be unlikely to be able to respond fully (including to his assertion of a supposed "unsigned, unfiled" declaration of an anonymous ethics expert, who perhaps left the supposed declaration unsigned because she did not agree with its contents as drafted by a hopeful lawyer). Unfortunately, such are the tactics of professional objectors. Class Counsel respectfully requests the Court not indulge such gamesmanship.

9.　　The Court should also be aware of the following regarding Mr. Jerisat's breach of his ethical duties to plaintiff Elisabeth Martin and us, Ms. Martin's counsel.

10.　　Mr. Jerisat's involvement in this litigation was limited to sponsoring Mr. Sidney Jackson's *pro hac vice* application in the California *Martin* action. The Central District of California has a local rule requiring counsel within the district to sponsor such application. Because I do not maintain offices within Los Angeles county, I asked Mr. Jerisat if he would do so, as a personal favor. We expressly discussed and agreed that he would have no substantive role in the case.

11.　　I knew Mr. Jerisat because I met him at a judges' luncheon in San Diego. He approached me and explained that he was a young lawyer without much experience and was looking to build a class action practice. He asked if I would be willing to jointly prosecute a case

he had been thinking of, against a supplement manufacturer, and to effectively mentor him in the business. I agreed to do so.

12. Mr. Jerisat did not reveal to me until it was too late, was that the target of his proposed lawsuit was in fact a former client of his, which he believed owed him money, despite that the two had apparently settled their fee dispute. Shortly after we filed the case, the defendant successfully moved to disqualify Mr. Jerisat and, by association, my firm. Mr. Jerisat only narrowly escaped more serious sanctions, by a court that was obviously flabbergasted at what he had done, through my careful assistance, effectively "representing" him in front of the court. Thus, it is unsurprising that Mr. Jerisat would have been willing to do something as simple as sign a *pro hac vice* application on behalf of my co-counsel, Mr. Jackson, and maintain offices in the county per the local rule.

13. Aside from that, Mr. Jerisat had no role in the litigation. For example, he did not see any document produced by any party; did not participate in any depositions or see any transcripts; did not participate in any motion practice; was not a part of the settlement discussions in any manner; and otherwise played no role whatsoever other than sponsoring Mr. Jackson's *pro hac vice* application. He billed no hours to the case.

14. Nevertheless, Mr. Jerisat has appeared in the *Martin* case, and represents Ms. Martin. He has never withdrawn from that representation. Ms. Martin has never authorized Mr. Jerisat to act in any way contrary to her interests, or to the interests of the class she represents.

15. Despite this, immediately after we obtained class certification, Mr. Jerisat apparently began recruiting other lawyers and plaintiffs around the country to file "copycat" actions. This behavior was not authorized by Ms. Martin, but was *ultra vires*.

16. Mr. Jerisat's March 23 declaration likewise was not authorized by Ms. Martin, despite that it is directly contrary to her interests.

17.     With regard to the substance of Mr. Jerisat's declaration, it is false. Although Jerisat vaguely claims that he "opposed the transfer of California *Martin* case [sic] to Missouri," Dkt. No. 52-2, Jerisat Decl. ¶ 2, Jerisat in fact (a) filed nothing with the Central District court purportedly opposing transfer (as a review of the *Martin* docket will demonstrate), and (b) never raised with Ms. Martin or us his purported opposition.

18.     Moreover, contrary to his Declaration, on September 21, 2017, after the action had been transferred to Missouri, Mr. Jerisat referred his copycat clients to Class Counsel, as previously described, and did not raise any purported issue then with the nationwide class settlement.[4] I understand that, in accordance with this agreement, also contrary to his March 23 declaration, Mr. Jerisat voluntarily dismissed his Illinois case.

19.     Although I remain ignorant of the motivation behind Mr. Jerisat's behavior, it seems apparent to myself and Mr. Jackson that Mr. Jerisat has engaged in numerous, and serious, ethical violations in acting contrary to the interests of his current client, Ms. Martin, and without her authorization, as well as his former client, Ms. Ward, also a plaintiff in this matter, who likewise has not signed a conflict waiver or otherwise authorized Mr. Jerisat to act contrary to her interests.


        I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Signed this 14th day of April, 2018, in San Diego, California.

                                        /s/ Jack Fitzgerald
                                        Jack Fitzgerald

---

[4] The agreement required each firm to timely provide, well ahead of the filing deadline, itemized billing records to Class Counsel. All firms other than Mr. Jerisat's firm did so. Mr. Jerisat, by contrast, sent a 2-page document on the day the motion was due comprising a purported summary of his time arranged into a handful of tasks, rather than individual billing records. Because Class Counsel had neither the time nor the literal ability to review Mr. Jerisat's particular tasks, his time, unlike the other firms, was not noted in the application. *See* Fitzgerald Decl. ¶ 12.

# Exhibit 1

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

## Table of Contents

Sid Jackson - California ................................................................................................. 1

Sid Jackson - Missouri ................................................................................................. 14

Jack Fitzgerald - California ......................................................................................... 17

Jack Fitzgerald - Missouri .......................................................................................... 29

Melanie Persinger – California ................................................................................... 31

Melanie Persinger – Missouri ..................................................................................... 36

Trevor Flynn - California ............................................................................................. 39

Trevor Flynn – Missouri .............................................................................................. 41

Thomas Canova – California........................................................................................ 41

### Sid Jackson - California

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 4/3/2015 | 2 | Meeting with ▉▉▉▉, discussion of label and mix ratio, other users he is aware of. Purchase Roundup Concentrate Plus 64 oz. Review outer label and package insert for misleading information and inconsistencies.  Review website that discloses "for best results" use the lower rate.  Research whether or not there are complaints concerning misleading label.  Open file. |
| 5/11/2015 | 2 | Research and obtain various false advertising complaints including baby formula, class action involving mismanagement of pension funds, silicone earplug litigation (Bayou Ears), review University of Miami law review article "The Green Washing Deluge: Who Will Rise Above the Waters of Deceptive Advertising". |
| 5/11/2015 | 1 | Compare concentration in Roundup to non Roundup to counter argument that the package insert gives all information.  Review consumer expectation as to concentrate vs. regular Roundup.  Determine whether it is reasonable for consumers to expect 6 oz. per gallon of concentrate. |
| 5/11/2015 | 0.25 | Review ▉▉▉▉▉▉▉▉ instructions relative to "emerging weeds".  Compare ▉▉▉▉▉▉▉ to Roundup concentrate for Southern Lawns and square footage. |
| 5/11/2015 | 1 | Research Roundup concentrates online for Wal-Mart and complaints made about misleading label. |
| 5/11/2015 | 1 | Review and compare various Roundup concentrate ads including Max Control 365, Super concentrate, Extended Control, various sizes of |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|------|-------|---------------------|
| | | concentrate plus. Compare representations concerning non concentrate plus brands and pricing. |
| 5/11/2015 | 2 | Research Scotts Lawn Service, its relationship to Monsanto, representations made by Scotts and investigation as to the relationship to determine appropriate defendants. |
| 7/24/2015 | 2 | Memo to file concerning whether or not ▮▮▮▮▮▮▮▮ will be a valid theory. |
| 7/30/2015 | 0.5 | Review and research experts for damage models including ▮▮▮▮▮▮▮, telephone call to ▮▮▮▮▮▮, obtaining CV and discussion of potential case. |
| 8/13/2015 | 1.25 | Follow up with ▮▮▮▮▮▮ concerning nature of class action for conflict checks. Research Lanham Act |
| 8/17/2015 | 3 | Research California law on false labeling including biodegradable cases, further research Roundup labels. Research other retailers such as Tractor Supply Company concerning other concentrated weed killers and how their labels compare. |
| 8/17/2015 | 1 | Research and compare representations on Wal-Mart/Skype website vs. print ads and label information. |
| 8/17/2015 | 8 | Recap-Research on competitor products comparing their concentrates and representations to Roundup; comparison of other Roundup products not at issue concerning representations, pricing and sales, review training materials provided by Roundup including "Roundup 101", compare actual label representations to that submitted to the EPA; Memo to file relative to items to add to complaint with analysis of misleading information. |
| 8/20/2015 | 1 | Research effect of Comcast U.S. Supreme Court case on certification issues, research whether or not a breach of an implied warranty must be relied upon by client, review damage theory. |
| 8/20/2015 | 4 | Further review of Comcast and damage issue, whether or not fraud can be involved, expert testimony relating to the class being mislead, necessity of proving actual damages (if the customer knew that 20 gallons of Roundup would not be made then the purchase would not have been made), research of proper way Roundup should have managed its label. |
| 8/20/2015 | 0.5 | Research certain lawyers and law firms for associating counsel. Additional research whether or not "makes up to" ▮▮▮▮▮▮▮▮▮▮▮. |
| 8/21/2015 | 1 | Access and review Killzall II super concentrate label representations. |
| 8/24/2015 | 2 | Editing of Roundup label with notes showing discrepancies and misleading information. |

CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 8/25/2015 | 6 | Research EPA submissions by Monsanto, determined ██████████ ██████████, review EPA website pesticide labeling guidelines and procedures manual, review September 24, 2002 label submissions. Compare earlier labels to accused label. |
| 8/26/2015 | 1.5 | Access and research 2006 submission to EPA - Note that ██████ █████████████████████████████████████. |
| 8/26/2015 | 10 | Review 2002, 2004, 2006, 2007, 2008, 2010, 2013, and February 18, 2014 and March 4, 2014 submissions to EPA for comparison purposes. |
| 9/3/2015 | 1 | Research and review ██████ EPA submission to compare "up to" language to see what industry standard is. Same as to ██████████████. Memo concerning whether ██████ may be a candidate for a Lanham Act case to merit out Monsanto misleading label details. |
| 9/9/2015 | 2 | Research SCOTUS pre-emption issues |
| 9/25/2015 | 1 | Review regulations part 156 cfr |
| 11/11/2015 | 1 | Pacer research for complaint in ████████████████████ review complaint and Pacer materials. |
| 11/11/2015 | 7 | Draft initial Complaint using multiple plaintiffs from key states including ████████████████████. Research and insert claims for Magnuson Moss, Breach of Warranty, False Advertising, Misrepresentation and Violation of Consumer Statutes including the CLRA and the Song-Berverly Consumer Warranty Act. |
| 11/16/2015 | 0.75 | Review Answer to Amended Complaint of June and October 2012 in ██████, review September Amended Complaint, |
| 11/17/2015 | 0.3 | Review ██████████ website concerning referral of case. |
| 11/23/2015 | 0.5 | Review and research associating counsel including ██████████ counsel with former class mate from law school. |
| 11/23/2015 | 0.5 | Research class council for ██████ including Alabama class council. |
| 12/10/2015 | 2 | Conference with █████████ regarding circumstances of Monsanto litigation, procedure to bring case, law firms to consult and telephone call to ██████ at ███████████████. Email to ████████ and forwarding NDA Agreement. |
| 12/11/2015 | 0.7 | Email to ██████ detailing consumer approach to purchasing the Roundup, forwarding of data and documents in order for evaluating same. |
| 12/12/2015 | 0.25 | Review email from ██████ turning down case. |
| 1/9/2016 | 0.5 | Research EPA submissions based on product number 71995-29. |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 1/18/2016 | 0.5 | Research earliest EPA label submissions including February 26, 2004. Note that ████████████████████████. |
| 1/18/2016 | 0.25 | Note that █████████████████████████████████████ █████████████████████████████████. |
| 1/28/2016 | 0.25 | Review part 156 of EPA Code. |
| 4/12/2016 | 8 | Conversation with attorney at ████████ concerning association and joint work on case, emails back and forth setting up meeting, compilation of demonstrative aids, law and photographs to present case. Work on presentation |
| 4/14/2016 | 3 | Prepare for and meeting with ████████ attorneys in discussion of FTC determination of "up to" advertising claims and filing suit. |
| 5/9/2016 | 1 | Second meeting with ████████ and further analysis of case, discussion of ascertaining damages, funding the lawsuit, venue and additional work to be done. |
| 5/10/2016 | 3 | Receipt and review of analysis of case from ████████, review authority including Ault v. J. M. Smucker, Evan v. Kangadis Foods, Stewart v. Bean Global Spirits, Werdebaugh v. Blue Diamond Growers, Randolph v. J. M. Smucker, Anrea Scotts E. Z. Seeds litigation, Anrea Conagra Foods, Karhuv Vital Pharmaceuticals, Andrea Dial Marketing and Sales, Dapeer v. Neutrogena, Mirabella v. Vial Pharmaceuticals. |
| 5/18/2016 | 0.2 | Email to ████████ regarding joint agreement to prosecute Monsanto case, reply from ████████, scheduling teleconference. |
| 5/23/2016 | 0.2 | Preparation and forwarding of NDA Agreement in order to discuss going forward with case. |
| 5/26/2016 | 2 | Email to ████████, potential joint venture attorney regarding "up to" claims, documents from information law group discussing same, ████████████ Motion to Certify Class, Bates v, Dowe, Scotus case found at 125 Supreme Court 1788. |
| 5/26/2016 | 0.5 | Further emails with ████████ and setting up conference call with he and ██ ████. Review file materials to determine estimate of class damages. |
| 5/26/2016 | 0.5 | Review and forwarding of "up to" articles, ████████ pleadings, Scotus cases and EPA submissions by Monsanto to ████████. |
| 6/19/2016 | 0.7 | Review file to determine if ████████ is interested. Email to ████████ concerning same and review of his response explaining delay. Review legal research on similar cases and "up to" claims. |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 6/20/2016 | 0.1 | Email response to ████████ relative to update of status. |
| 6/30/2016 | 1 | Research recent findings involving Monsanto and glyphosate including Monsanto being fined $80 million for Roundup accounting irregularities and glyphosate failure to warn count. Email to ████████ concerning same. |
| 7/14/2016 | 0.2 | Second follow up email to ████████ asking if his firm is interested, noting case needs to be filed ASAP. Review reply from ████████ that he is out of the office. |
| 7/28/2016 | 0.1 | Another follow up to ████████ concerning status. |
| 8/1/2016 | 0.1 | Another email to ████████ and in ████████ concerning status. |
| 8/16/2016 | 0.2 | Telephone call from ████████ declining case. Email to ████████ asking for referral. |
| 8/26/2016 | 0.1 | Email from ████████ suggesting Jack Fitzgerald of San Diego. |
| 8/30/2016 | 0.25 | Telephone call with ████████ concerning other attorneys to consult with to file class action in California. |
| 9/1/2016 | 1.4 | First contact with Jack Fitzgerald, discussion of case by telephone and email, work on joint prosecution revision, complaint and volunteer. |
| 9/5/2016 | 4 | Continue work on complaint, forwarding of file information gathered previously to Mr. Fitzgerald. Work on complaint. |
| 9/9/2016 | 0.25 | Telephone call to Jack Fitzgerald concerning case status and strategy, review CLRA demand letter. |
| 9/12/2016 | 1 | Review Monsanto's 2014 submissions to the EPA. |
| 9/12/2016 | 1 | Research law firm of ████████ relative to class association, review Motion for Class Certification in ████████ for similar causes of action. |
| 9/14/2016 | 0.5 | Email to Jack Fitzgerald concerning ████████ to support a private cause of action. Review joint prosecution agreement. |
| 9/27/2016 | 0.3 | Telephone call with Mr. Canova and Mr. Fitzgerald regarding current status of complaint and various concentrates to claim. |
| 9/27/2016 | 0.5 | Review and edit Joint Prosecution Agreement with Jack Fitzgerald. |
| 9/27/2016 | 1.5 | Review multi state consumer protection law analysis for states similar to California, review warranty claims as being inappropriate. |
| 9/27/2016 | 0.7 | Research ████████ partial granting of Motion to Certify Class and Order in ████████ class action case, email to Tom Canova. |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|---|---|---|
| 10/6/2016 | 1 | Research items discussed with Mr. Fitzgerald, review history of Roundup, when first marketed to non-farmers, when deception first appeared. Review 30 day letter. |
| 10/7/2016 | 0.7 | Telephone call to Wal-Mart attorneys concerning Non Party Subpoena. Telephone call to Lowe's attorney concerning Non Party Subpoena. Telephone call to Amazon attorney concerning Non Party Subpoena. Discussion with JF relative to Motion to Dismiss. |
| 10/11/2016 | 2 | Telephone call with Mr. Fitzgerald to have telephone meeting with client. Telephone call with Ms. Martin, review and finalize papers to file with the complaint. |
| 10/11/2016 | 3 | Review earlier drafts of complaint; email to Tom Canova advising that he needs to review the complaints.  Review Third Amended ▮▮▮▮ Complaint, ▮▮▮ Complaint and ▮▮▮▮ Complaint to identify California law. |
| 10/12/2016 | 1.5 | Research legal issues concerning national class action, review third draft complaint. |
| 10/17/2016 | 0.3 | Review article in class action blog concerning case at bar. |
| 10/18/2016 | 0.25 | Teleconference with Mr. Canova and Mr. Fitzgerald regarding strategy. |
| 10/19/2016 | 1 | Travel to Lowe's to review and photograph existing Roundup product relative to changes in label. |
| 10/19/2016 | 1 | Conference call with Mr. Canova and Mr. Fitzgerald and ▮▮▮▮ regarding association of Los Angeles firm. |
| 10/20/2016 | 1.9 | Teleconference with Missouri lawyers ▮▮▮▮ and ▮▮▮▮ regarding filing Monsanto case in Missouri, follow up discussion with Mr. Fitzgerald and Mr. Canova, teleconference with damage expert Colin Weir and his colleague, Andrew Kearns. |
| 10/25/2016 | 3 | Work on math model of translating concentrate to ready to use, research other countries where Roundup is sold for label discrepancies, research world glyphosate market, emails with Jack Fitzgerald. |
| 10/27/2016 | 2 | Telephone call with Mr. Fitzgerald and potential damage experts ▮▮▮▮ and ▮▮▮▮ regarding damage model and potential expert analysis. Work on damage model. |
| 10/31/2016 | 3 | Review early draft of class certification motion from Mr. Fitzgerald.  Research Conjoint analysis. |
| 11/1/2016 | 1 | Email from Mr. Fitzgerald regarding class certification strategy and damage model. |

CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 11/2/2016 | 0.5 | Prepare PHV application. |
| 11/8/2016 | 2 | Receipt and review EPA documents and email from opposing counsel, conduct research of EPA submissions relied upon by Monsanto, review EPA submissions for Concentrate Plus and Super Concentrate. |
| 11/11/2016 | 1.5 | Further review of Monsanto's submissions relative to the amount to use for weed seedlings or allowing the label to use the "makes up to __ gallons". Comparison of 2014 submission to 2013 submission. Decision to ask Monsanto for 2014 label submitted to EPA, email to Jack Fitzgerald, discussion by email of preemption issue. |
| 11/21/2016 | 1 | Review class certification motion, review correspondence from Mr. Rosenthal, prepare for and participate in teleconference with Jack Fitzgerald and Monsanto counsel regarding motion to dismiss. |
| 11/22/2016 | 0.4 | Teleconference with Mr. Canova and Mr. Fitzgerald relative to amending complaint, class certification and experts. |
| 11/23/2016 | 0.5 | Review emails from Jack Fitzgerald concerning amending complaint, review research and amendments to complaint. |
| 11/28/2016 | 1 | Review Amended Complaint, emails with Mr. Fitzgerald. |
| 12/1/2016 | 1 | Meet with, conference and discussion with purchaser of older Roundup Concentrate with label not as deceptive as current label. Photographs and discussion concerning same. |
| 12/6/2016 | 1 | Participation in meet and confer call with counsel including discussing 26(f) scheduling. Review Monsanto's draft of report. |
| 12/10/2016 | 0.7 | Review and edit discovery and deposition notice to Monsanto, telephone call with opposing counsel, review Motion to Dismiss. |
| 12/13/2016 | 0.5 | Review Minute Order in Chambers from Judge Walter, review ADR Rules and Options |
| 12/14/2016 | 0.5 | Review Opposition to Motion to Dismiss, prepare for Rule 26(f) conference. |
| 12/15/2016 | 1 | Participation in Rule 26(f) conference, review email from opposing counsel concerning changes to Rule 26(f) Report, email to Jack Fitzgerald concerning administrative letter. |
| 12/15/2016 | 1 | Access and review blog sites concerning use of Roundup and whether or not anyone uses weaker concentration or defines "easy to kill weed seedlings". Include research of ▮▮▮▮▮▮▮▮▮▮. |
| 12/15/2016 | 1.75 | Review and edit Plaintiff's First Requests for Production, Interrogatories, 30(b)(6) Notice, IRI Subpoena, Subpoenas to Amazon, Walmart, Tractor Supply, Target, Sears, Sam's Club, Orchard Supply, Lowe's, Home Depot, Ace |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|------|-------|---------------------|
| | | and K-Mart; notes concerning ██████████ ████████████████████████████████████ |
| 12/16/2016 | 0.2 | Review declaration of Mr. Lombardi, opposing counsel. |
| 12/22/2016 | 0.5 | Review response to Motion to Dismiss. |
| 12/27/2016 | 1.5 | Review responses to Non Party Subpoenas from Target, Amazon and Sears, work on responding to their objection. |
| 12/29/2016 | 0.5 | Review responses to Non Party Subpoenas, email to Mr. Fitzgerald setting forth protocol to respond to objections. |
| 12/30/2016 | 2 | Work on Monsanto depositions, review of appendix and consolidated list of label claims, email concerning Exhibit E to Persinger submission, note that ██████████████████████████████████████████, note that ███ ███████████████████████████████████████████████, note that ███ ██████████████████. |
| 1/3/2017 | 0.5 | Review responses to Non Party Subpoenas, conference with Jack Fitzgerald concerning strategy to obtain replies. |
| 1/9/2017 | 1 | Review Monsanto's reply to Motion to Dismiss.  Research Home Depot SKUs. |
| 1/16/2017 | 0.25 | Conference with Mr. Fitzgerald concerning depositions. |
| 1/18/2017 | 1 | Telephone call to Amazon counsel regarding Non Party Subpoena, telephone call to Lowe's counsel regarding Non Party Subpoena.  Conversation with Wal-Mart concerning Protective Order and meet and confer, email to Mr. Fitzgerald, review Third Party discovery status and strategy. |
| 1/19/2017 | 2 | Telephone call from Wal-Mart in-house counsel concerning UPC codes and requested items.  Advised if we will be responsible for costs concerning complaint information, identity of customers, advertising and the parameters of the Protective Order, emails to and from Mr. Fitzgerald. |
| 1/24/2017 | 2 | Meet with IT person to access documents from Roundup, begin review of late Roundup production of documents. |
| 1/25/2017 | 4 | Review documents provided by Roundup, edit deposition outline for 30(b)(6) deposition. All day review of voluminous non-Martin documents relative to preparing for 30(b)(6) deposition. |
| 1/25/2017 | 5 | Compilation and begin review of documents produced by Monsanto in preparation for depositions. |
| 1/26/2017 | 15 | Travel to St. Louis, prepare for deposition of Roundup, meet with Jack Fitzgerald. |
| 1/26/2017 | 0.5 | Review ████████ opposition to Motion for Class Certification. |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 1/27/2017 | 16 | Deposition of Roundup 30(b)(6), follow up with Jack Fitzgerald, travel to Mobile, Alabama. |
| 1/30/2017 | 3 | Work on Non Party Subpoenas and discussion of adding 6 oz. bottle.  Review request for Joint Protective Order, review information from Home Depot's counsel concerning SKU numbers, telephone call to Lowe's counsel concerning Protective Order and forwarding them Complaint.  Work on declaration for SWJ. |
| 1/31/2017 | 0.2 | Review email from opposing counsel concerning updating the noted version of produced documents 9336 through 42. |
| 2/1/2017 | 1 | Telephone call from Lowe's in-house counsel discussion of Orchard subpoena, work on Ms. Martin's deposition scheduling, finalize declaration of SWJ. |
| 2/6/2017 | 2 | Review discovery responses from Ms. Martin, email and telephone call relative to Non Party Subpoenas.  Receipt of certified documents and invoice from in-house legal counsel Brian Hennelly for Wal-Mart.  Review email from opposing counsel Adam Nadelhaft concerning 30(b)(6) deposition transcript and protected documents. |
| 2/7/2017 | 2 | Review Motion for Class Certification |
| 2/8/2017 | 0.7 | Review emails to and from Jack Fitzgerald and expert Colin Weir, travel arrangements to Los Angeles, review deposition notice of Mr. Weir and Plaintiff. |
| 2/8/2017 | 4.3 | Review documents produced for Ms. Martin's deposition, email to Mr. Fitzgerald concerning logistics of depositions. |
| 2/9/2017 | 12.5 | Travel to Los Angeles, participate in deposition of expert Colin Weir, meeting with Ms. Martin to prepare her for her deposition. |
| 2/9/2017 | 1.5 | Research ██████████ EPA submission - note that EPA is much more restrictive for this product than it is for Roundup - notes that ████████████ ██████████████, email to Jack Fitzgerald referencing same. |
| 2/10/2017 | 11 | Attend the deposition of Plaintiff, conference with Mr. Fitzgerald, telephone call to Ms. Martin, discussion of deposition and future strategy. |
| 2/11/2017 | 8 | Travel from Los Angeles to Mobile, Alabama. |
| 2/11/2017 | 0.2 | Review Motion to Extend Ex Parte application to file opposition by Monsanto. |
| 2/13/2017 | 0.5 | Review Order granting Ex Parte Motion to file Opposition to Plaintiff's Motion to Certify Class, email Jack Fitzgerald regarding whether ████ |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|------|-------|---------------------|
| | | ████████████████████████████████<br> Discussion whether or not ██████████████████████████<br>████████████████████████████████ |
| 2/16/2017 | 0.4 | Review Scott's objection to our Non Party Subpoena. Review Judge Walter's Order partially denying Monsanto's Motion to Dismiss, review excerpts of Weir deposition transcript to be marked confidential. |
| 2/20/2017 | 5 | Review Monsanto's designation of damages expert and research and preparation for taking her deposition. Prepare duces tecum for deposition of Robin Cantor, review opposition to Class Certification filed by Monsanto with exhibits. |
| 2/21/2017 | 0.5 | Teleconference with damages expert Weir and Mr. Fitzgerald regarding strategy concerning report of Robin Cantor. |
| 2/21/2017 | 6 | Work on deposition prep for Cantor deposition. |
| 2/21/2017 | 3 | Review declaration of Robin Cantor and work on preparation of her deposition. Research Dr. Cantor's other submissions and trial testimony and comments by District Courts concerning her expertise. |
| 2/21/2017 | 5 | Review ████████████████ submission to EPA and note that ████████<br>████████████████████████. Review Cantor CV and locate transcripts of other testimony, prepare for Cantor deposition. |
| 2/23/2017 | 2 | Review declaration of damage expert Colin Weir, response to Jack Fitzgerald concerning ████████████████████, review Weir email concerning ████████████████████████. |
| 2/26/2017 | 2 | Review response to Monsanto's opposition to Motion for Class Certification, suggesting edits of reply brief, email to Jack Fitzgerald and Ms. Persinger. |
| 3/3/2017 | 0.4 | Participation in call with Mr. Fitzgerald to discuss strategy of Monsanto's issues with Second Amended Complaint, discussion of issues with opposing counsel. |
| 3/6/2017 | 0.7 | Emails concerning Third Amended Complaint, finalizing and filing Third Amended Complaint. |
| 3/10/2017 | 1 | Finalizing and editing Non Party Subpoena to Orchard Supply Company and serving same. |
| 3/24/2017 | 0.5 | Review Order certifying class and appointing Ms. Martin class representative, email to Jack Fitzgerald, email with Ms. Martin. |
| 3/29/2017 | 0.9 | Participate and meet and confer with opposing counsel and Mr. Fitzgerald regarding notice plan, discussion afterwards relative to getting administrator for class notice and administration. |

CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 3/30/2017 | 0.7 | Review trial certification notice and discussion concerning same. |
| 4/3/2017 | 1 | ███████████████████████████████████████████████████████████████. |
| 4/4/2017 | 2 | Teleconference with co-counsel concerning strategy and settlement demand following Monsanto's request for same. Work on reviewing other similar cases for settlement demand. |
| 4/5/2017 | 0.5 | Teleconference with opposing counsel, Mr. Rosenthal and Mr. Canova regarding notice plan and settlement. |
| 4/6/2017 | 2.5 | Review Monsanto's draft motion regarding clarification of certification order, review draft notice plan and proposed notice. |
| 4/7/2017 | 3.9 | Work on investigation and vetting potential mediators including ████████, other mediators at JAMS, email discussion concerning timing of mediation with Mr. Canova and Jack Fitzgerald, discussion of ████████ and ████████, discussion of joint notice plan due on this date, review Monsanto's attempt to use language nonsensical to consumers, forwarding of Class Certification Order to Vanessa Power, counsel for Amazon. |
| 4/10/2017 | 0.1 | Review Order granting Plaintiffs' Motion to Compel responses and request for production. |
| 4/17/2017 | 3 | Review information concerning copycat lawsuit filed in state court in Missouri, research Missouri filing system to locate case, locate Missouri lawyer to file companion Federal Court case, email to Jack Fitzgerald. |
| 4/19/2017 | 1 | Legal research on trial plan and work on trial strategy. |
| 4/20/2017 | 0.6 | Teleconference with opposing counsel concerning discovery disputes, discussion with co-counsel concerning mediator and dates for mediation. |
| 4/29/2017 | 4 | Begin review and summary of Jim Guard deposition and preparation of talking points. |
| 4/30/2017 | 2.5 | Continue work on Guard deposition summary and talking points. |
| 4/30/2017 | 0.5 | Prepare detailed deposition notice for Scotts. |
| 5/2/2017 | 0.25 | Discussion with co-counsel concerning Judge Holderman's scheduling and introductory phone call. |
| 5/10/2017 | 0.5 | Review status report and notice concerning mediation, email from Mr. Fitzgerald. |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 5/15/2017 | 0.7 | Confer with Mr. Fitzgerald and Mr. Canova concerning case issues, status of discovery, focus group/mock jury and strategy for mediation. Debriefing following status call. |
| 5/16/2017 | 1.5 | Teleconference with Judge Holderman, discussion with co-counsel and debriefing concerning strategy and upcoming work to be done. |
| 5/17/2017 | 1 | Review Jim Guard depo exhibits for mediation preparation and purposes. |
| 5/17/2017 | 1 | Review comparison of Roundup to other similar products in Chainsaw Journal, including ████████████████████████, ████████, ██████, ██████ and ████. |
| 5/22/2017 | 0.4 | Strategy call with Mr. Canova and Mr. Fitzgerald concerning mediation materials. |
| 5/24/2017 | 0.1 | Review Order striking joint status report and review proposed order concerning same. |
| 5/26/2017 | 0.4 | Telephone call from Jack Fitzgerald concerning case strategy and status, work on mediation brief. |
| 5/29/2017 | 2 | Review and work on mediation brief. Discussion by email with Jack Fitzgerald concerning the percentage of sales at big box stores, whether or not our data is accurate compared to Monsanto's position on sales. |
| 5/30/2017 | 1 | Further work on mediation position and review documentation concerning sales. |
| 6/1/2017 | 0.6 | Work on class action checklist, work on making sure 128 oz. variety is in our damage calculation ██████████████. |
| 6/2/2017 | 0.8 | Teleconference with opposing counsel and Jack Fitzgerald concerning nationwide retail sales. Work on nationwide sales estimate. Strategy on copycat cases and their effect on settlement and the class. |
| 6/5/2017 | 1.5 | Travel to Tractor Supply in Foley, Alabama to compare generic glyphosate products and the representations. Note that ████████████████████ ████████████████████████. Photographs of other bottles. |
| 6/9/2017 | 1 | Formulating focus group/mock jury strategy and discussion with Mr. Fitzgerald and Mr. Canova concerning same, initial meeting with legal assistants concerning logistics and setting up focus group. |
| 6/10/2017 | 1.25 | Email to Mr. Fitzgerald concerning response to Monsanto's mediation position. Distinguishing "up to" argument under state and federal law. Concentration on ████████████ aspect in reply; Research conversion of glyphosate salt to glyphosate for concentration purposes. |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 6/12/2017 | 7 | Begin work on focus group to present trial issues and information for mediation.  Conference with legal assistants Christian Harben and Sidney Jackson, IV, legal assistants (third year law students at Cumberland School of Law Samford University) regarding focus group including ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Photos of Roundup at big box stores. |
| 6/13/2017 | 5 | Further work on focus group on focus group/mock jury/mediation preparation, meeting with legal assistants, review list of participants, compilation of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ to present to the focus group. |
| 6/14/2017 | 5 | Review and finalize ▇▇▇ presentation to focus group, work on presentation, meet with legal assistants and finalization of ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ focus group. |
| 6/15/2017 | 8 | All day work on finalizing and editing presentation to focus group including meeting with IT person and legal assistants.  Vetting of focus group participants ▇▇▇▇▇▇▇▇▇▇▇, presentation of case to focus group, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, debriefing of focus group and discussion with co-counsel concerning mediation strategy. |
| 6/16/2017 | 4 | Review focus group feedback materials, memorandum to file, further discussion concerning focus group and mediation strategy.  Correspondence to each of the focus group participants. |
| 6/17/2017 | 1.25 | Review Roundup response to our Mediation Statement. Research cost of 64 oz. bottle at $22.00 rate.  Research whether Exhibit B items still have "up to" claim.  Review and research cases cited by Monsanto to distinguish.  Note that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ contrary to Monsanto assertion. |
| 6/20/2017 | 4 | Travel to Chicago for mediation, conference with Jack Fitzgerald concerning mediation. |
| 6/21/2017 | 15 | Participate in mediation and travel back to Mobile, Alabama. |
| 7/8/2017 | 0.1 | Review customer complaint on Roundup Amazon comments. |
| 7/17/2017 | 3 | Access and research Monsanto representations for its concentrate in Australia.  Note that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Conversation with Judge Holderman regarding use of this as evidence. |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 7/28/2017 | 0.5 | Review term sheet proposed by Monsanto, conference with Mr. Fitzgerald concerning same and comments on reply draft. |
| 7/31/2017 | 0.1 | Teleconference with Mr. Fitzgerald and Mr. Rosenthal discussing status report strategy, review report and agreement to filing same. |
| 8/2/2017 | 0.25 | Telephone call to Mr. Fitzgerald concerning Court Order and strategy relative to the California certification. |
| 8/3/2017 | 0.75 | Teleconference with Jack Fitzgerald and John Rosenthal regarding settlement, venue, and review class issue legal research. |
| 8/15/2017 | 0.4 | Teleconference with Ms. Martin discussing settlement term sheet and approval to move forward in Missouri. |
| 8/16/2017 | 0.5 | Review term sheet, teleconference with Jack Fitzgerald regarding ethical issues and client involvement. |
| *Total =* | *355.2* | |

**Sid Jackson - Missouri**

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 3/27/2017 | 0.5 | Research Missouri lawyers and additional phone call to attorney Kevin Dolley concerning local counsel, discussion of case and conflict check. |
| 4/4/2017 | 2 | Review Missouri Complaint, work on getting Rawa case filed, work with local counsel in finalization of papers to file, review local counsel agreement and execution of same. |
| 4/05/2017 | 0.5 | Review Eastern District of Missouri local rules and procedure for pro hac admission. |
| 4/17/2017 | 1 | Complete work on pro hac vice motion, review and filing motion. |
| 4/20/2017 | 0.7 | Email to Missouri counsel concerning state court copycat action pending in Missouri, review Missouri statute on class certification and timing of same, review response from Missouri counsel concerning timing of class certification. |
| 5/10/2017 | 0.2 | Email from Missouri counsel concerning co-counsel agreement and attorney fees. |
| 5/26/2017 | 0.5 | Telephone call with Jack Fitzgerald and John Rosenthal relative to initial meeting, discussion of Motion to Dismiss. |
| 6/4/2017 | 7 | Travel to Kansas City, Kansas for hearing June 5 in Missouri state case and monitoring same. |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| | | |
|---|---|---|
| 6/5/2017 | 12 | Travel to and attendance of Missouri State Court case concerning Missouri State Court copycat counsel statements to the Court concerning scheduling of its case and note that ███████████. Travel to St. Louis to meet with Missouri client, meeting with Mr. Rawa and discussion of ███████████. |
| 6/6/2017 | 6 | Travel from St. Louis to Mobile, Alabama. |
| 08/10/17 | 0.5 | Teleconference with Court concerning status, conference with JF concerning settlement. |
| 8/16/2017 | 0.5 | Teleconference with Josh Rawa, discuss settlement and term sheet. |
| 8/25/2017 | 0.3 | Together with Jack Fitzgerald, participate in call with Chris Shank regarding participation in settlement |
| 9/7/2017 | 1 | Email from Mike Anderson concerning copycat cases, telephone call with Mike Anderson relative to copycat clients, telephone call with Jack Fitzgerald regarding Nationwide settlement, review related case information, email to attorney Michael Meuth, review documents filed in Court. |
| 9/12/2017 | 1.5 | Research Monsanto profits as its license expires and marketing efforts relating to same. |
| 9/21/2017 | 2 | Work on copycat cases, work on term sheet and getting adhered to, telephone calls to and from Jack Fitzgerald, email from John Rosenthal concerning term sheet, review term sheet and alternative methods to reach an agreement, telephone call to Judge Holderman, mediator, telephone call to Adam Rapier concerning copycat cases. |
| 9/22/2017 | 2 | Telephone call to John Rosenthal, discuss term sheet and settlement, memo to file, telephone call to Jack Fitzgerald giving update, review term sheet, telephone call with Judge Holderman, and discussion of settlement, follow up telephone call with John Rosenthal, telephone call with Jack Fitzgerald discussing amended complaint, review emails from Adam Rapier. |
| 9/25/2017 | 2 | Research ███████████ for settlement parameters, telephone call with Jack Fitzgerald regarding ███████████, telephone call with John Rosenthal and Adam Nadelhaft to discuss term sheet, discussion of Judge Holderman's involvement and position, conference with Jack Fitzgerald concerning same. |
| 9/26/2017 | 3.5 | Text and email to Judge Holderman regarding settlement, telephone call to Judge Holderman while he was in France to discuss settlement, trial options, mediation. Telephone call to Jack Fitzgerald to discuss options |

|  |  | and strategy, email to John Rosenthal to set up time to confer. Research Eight Circuit law on ████████████████████. |
|---|---|---|
| 9/26/2017 | 0.5 | Telephone call with Jack Fitzgerald regarding copycat cases, review emails from Mike Anderson. |
| 9/27/2017 | 0.2 | Email to John Rosenthal and Jack Fitzgerald regarding settlement and term sheet. |
| 9/28/2017 | 1.6 | Telephone call to Jack Fitzgerald, review Dahl materials, work on administration matters of settlement. |
| 10/3/2017 | 3 | Work on proposed Order Granting Preliminary Approval of Class, work on proposed long form of notice of class settlement, work on schedule including opt out notice, telephone call with John Rosenthal concerning filing of materials, edit notice, review District of Columbia law concerning statute of limitations and including District of Columbia, work on getting materials filed. |
| 12/4/2017 | 0.3 | Phone call with court regarding cy pres w/ JF and MRP |
| 12/11/2017 | 0.7 | Review email from Mark Fellows concerning notice in Better Homes and Garden, review options if Better Homes and Gardens misses Publication deadline, confirmation of reserving Better Homes and Garden for notice. |
| 12/12/2017 | 0.2 | Review time line for notice, claims, hearing and processing. |
| 12/16/2017 | 0.5 | Review final notices for opt out form, post card notice, and email notice. |
| 12/20/2017 | 0.1 | Review email concerning some of the pictures not loading on the claim site. |
| 12/27/2017 | 0.2 | Review email from Dahl consisting of project summary for the settlement including notifications received in claims filed. |
| 1/4/2018 | 0.2 | Communication to Dahl concerning consolidating names and addresses and sending only one notice, review emails from JF and MP concerning same. |
| 1/8/2018 | 0.2 | Review emails to and from Monsanto and Dahl concerning claim filing deadline, and options to select on claim form. |
| 1/11/2018 | 0.2 | Review email concerning up-tick in claims and monitoring a filing rate by Dahl. |
| 1/15/2018 | 0.3 | Work on tweaking Dahl reports to us including location of claims, dollar amount of claims, break down of different bottles of claims. |
| 1/20/2018 | 0.5 | Review and analysis of potential fraudulent claims involving 128 ounce products. Note 3,708 claimants claim 20 of these bottles which likely amounts to fraud. Note these claims represent 13.5% claims rate which is very suspect. |

CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER

| 1/31/2018 | 0.5 | Review update of claims activity through January 30, 2018. |
|---|---|---|
| 2/8/2018 | 0.25 | Conference call with Monsanto attorneys concerning claims filed and the need to talk with Dahl concerning fraudulent claims. |
| 2/8/2018 | 0.3 | Telephone call with Jack Fitzgerald, to John Rosenthal and Adam Nadelhaft regarding current claims status |
| 2/12/2018 | 0.5 | Review updated concentrate settlement project summary. Noting break downs of numbers, purchases, highest value claims. |
| 2/13/2018 | 0.75 | Prepare for teleconference with Dahl and Monsanto, teleconference discussing fraudulent claims, notice and future work to be done, memo to file. |
| 2/13/2018 | 0.8 | Telephone call with Jack Fitzgerald and Melanie Persinger to John Rosenthal and representatives from Dahl to discuss current claims status |
| 2/14/2018 | 0.2 | Fielding of two claimants' questions and emails and forwarding same to Dahl. |
| 2/21/2018 | 0.3 | Review spreadsheet and project summary from Dahl |
| **Total =** | **56.0** | |

**Jack Fitzgerald - California**

| Date | Hours | Description of Work |
|---|---|---|
| 9/1/2016 | 1.4 | Telephone call with Sid Jackson to discuss possible case against concentrated RoundUp; send written proposal to Mr. Jackson concerning possible fee split and other joint prosecution provisions. |
| 9/5/2016 | 4.9 | Work on Monsanto Complaint; draft joint prosecution agreement |
| 9/5/2017 | 2.2 | Begin sending emails and advertising for volunteer plaintiffs. |
| 9/7/2016 | 0.6 | Call with potential client Elisabeth Martin; draft engagement letter and send same to Ms. Martin. |
| 9/9/2016 | 0.1 | Participate in phone call with Sid Jackson regarding case status and strategy. |
| 9/13/2016 | 0.3 | Finish draft joint prosecution agreement and send to Mr. Jackson for review; email to client Ms. Martin to schedule phone call; review and revise draft CLRA demand letter and send to Mr. Jackson for review; begin reviewing draft Complaint. |
| 9/14/2016 | 0.3 | Telephone call with client Elisabeth Martin to discuss ██████████████ ███████████████. |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 9/19/2016 | 0.5 | Meeting with Mr. Canova re background of case, including review of products and product literature. |
| 9/23/2016 | 0.2 | Telephone call with Mr. Canova to brief him regarding Monsanto case and materials for review. |
| 9/27/2016 | 0.4 | Together with Mr. Canova, participate in strategy call with Sid Jackson. |
| 9/27/2016 | 0.2 | Draft and send template engagement letter to Mr. Jackson |
| 9/27/2016 | 1.4 | Run ads for clients; work on ██████████████████████ ███████████ . |
| 9/27/2016 | 0.5 | Review and edit Joint Prosecution Agreement with Sid Jackson |
| 10/5/2016 | 0.2 | Review and finalize CLRA letter on behalf of client Elisabeth Martin and prepare for sending. |
| 10/11/2016 | 4 | Review, comment on, and revise into new clean version current draft Complaint; post advertisements for clients. |
| 10/13/2016 | 0.5 | Work on finalizing Monsanto Complaint |
| 10/13/2016 | 0.6 | Send materials to client for signing and authorization to file; telephone call with client; together with Mr. Canova and Sid Jackson, participate in conference call with client Ms. Martin |
| 10/13/2016 | 1.5 | Review and finalize all papers and file Complaint. |
| 10/18/2016 | 0.6 | Review notice of deficiency regarding Sid Jackson's PHV application; discussions with Mr. Canova and Mr. Jackson regarding potential strategies in case. |
| 10/19/2016 | 0.7 | Together with Mr. Canova, participate in strategy call with Sid Jackson |
| 10/19/2016 | 0.9 | Communications with ██████████ regarding NDA; prepare and send ██ ████ same. |
| 10/19/2016 | 0.6 | Together with Mr. Canova, participate in phone call with ██████████ to provide overview of case; set up conference call with Mssrs. ██████ and Jackson for following day. |
| 10/20/2016 | 0.5 | Together with Mr. Canova, participate in conference call with Sid Jackson and ██████████ regarding possible association of ██████████ in case. |
| 10/24/2016 | 1.3 | Together with Mr. Canova, participate in conference call with Sid Jackson, ██████████ , and ██████████ regarding possibility of filing Monsanto case in Missouri; follow-up call with Mr. Jackson to discuss strategy; communications with potential survey and damages experts |

CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 1/24/2016 | 0.6 | Participate in conference call with Sid Jackson, Colin Weir, and Andrew Kearns. |
| 10/25/2016 | 5 | Begin work on class certification motion, including drafting notice and starting to draft memorandum; and performing research regarding available damages models; email to Mr. Canova and Mr. Jackson regarding same. |
| 10/26/2016 | 7.7 | Work on class certification motion, including case law research. |
| 10/27/2016 | 6.4 | Together with Sid Jackson, participate in two telephone calls with ███████ and one call with ███████ regarding damages models for class certification and potential expert analysis; research relating to same. |
| 10/28/2016 | 8.8 | Conduct online pricing survey and create spreadsheet concerning same; share same with Mr. Jackson, Mr. Canova, and ███████; continue working on class certification motion. |
| 10/29/2016 | 4.5 | Continue working on Monsanto class certification motion. |
| 10/31/2016 | 6.1 | Complete early draft of class certification motion and send to Mr. Jackson and Mr. Canova for review. |
| 11/1/2016 | 0.5 | Together with Mr. Canova, participate in call with ███████ and ███████ regarding potential expert services for damages. |
| 11/1/2016 | 0.9 | Together with Mr. Canova, participate in call with Colin Weir regarding potential expert services and viable damages models. |
| 11/2/2016 | 0.4 | Draft and send email to Mr. Canova and Mr. Jackson regarding class certification strategy and damages model. |
| 11/2/2016 | 0.5 | Confer with Mr. Canova regarding class certification strategy and damages model. |
| 11/2/2016 | 0.2 | Call with Colin Weir to continue discussing ███████ damages model. |
| 11/3/2016 | 0.1 | Communications with Martin Jeristat regarding acting as local counsel; send PHV application to Mr. Jackson and Mr. Jerisat to sign. |
| 11/3/2016 | 4.8 | Work on revising draft class certification brief to include consumer fraud claims |
| 11/4/2016 | 5.6 | Continue working on Monsanto class certification motion. |
| 11/5/2016 | 5.9 | Continue working on Monsanto class certification motion. |
| 11/14/2016 | 0.6 | Prepare and file Proof of Service of Summons & Complaint; arrange for delivery of chambers copies. |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 11/16/2016 | 8.4 | Continue working on Monsanto class certification motion, especially researching certification decisions since Comcast. |
| 11/17/2016 | 2.8 | Continue working on Monsanto class certification motion research. |
| 11/21/2016 | 1 | Prepare for and, together with Mr. Jackson, participate in meet and confer conference with Monsanto's counsel regarding motion to dismiss. |
| 11/22/2016 | 0.4 | Together with Mr. Canova, participate in strategy call with Mr. Jackson to discuss ███████████████████████████████████████ ████████ |
| 11/23/2016 | 1.7 | Email communications with opposing counsel regarding intent to amend complaint; draft First Amended Complaint and circulate to Mr. Canova and Mr. Jackson for review. |
| 11/25/2016 | 2.6 | Continue case law survey with respect to Monsanto class certification motion. |
| 11/26/2016 | 3.5 | Continue case law survey with respect to Monsanto class certification motion. |
| 11/28/2016 | 2 | Finalize and file First Amended Complaint; email communications with Mr. Canova and Mr. Jackson regarding same; email communications with Monsanto's counsel, John Rosenberg, regarding same. |
| 12/3/2016 | 7.8 | Complete survey of post-Comcast class certification case law and continue working on certification motion. |
| 12/6/2016 | 2.6 | Participate in meet-and-confer call with Monsanto's counsel regarding intended motion to dismiss; discuss discovery and Rule 26(f) scheduling with counsel; email Mr. Canova and Mr. Jackson regarding same. |
| 12/7/2016 | 6.3 | Review Monsanto's draft of joint report of meet and confer call, make revisions and send to Mr. Canova and Mr. Jackson for review; return same to Monsanto's counsel; work on class certification motion. |
| 12/10/2016 | 6.9 | Continue working on class certification motion. |
| 12/12/2016 | 0.2 | Send materials to Ms. Persinger to work on Monsanto discovery from home. |
| 12/12/2016 | 4.7 | Work on class certification motion; review motion to dismiss and begin drafting opposition. |
| 12/13/2016 | 0.1 | Confer with Ms. Persinger regarding status of various discovery items being prepared. |
| 12/13/2016 | 5.8 | Work on opposition to motion to dismiss. |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|---|---|---|
| 12/14/2016 | 0.4 | Review ADR rules and options; send Notice of ADR Options to client, Ms. Martin, and participate in telephone call with Ms. Martin regarding options. |
| 12/14/2016 | 6.4 | Confer with Ms. Persinger regarding drafting discovery; review and revise draft interrogatories, requests for production, Rule 26(f) report, protective order, and ESI stipulation, and circulate drafts to Mr. Jackson and Mr. Canova for review; work on opposition to motion to dismiss. |
| 12/15/2016 | 5 | Confer with Mr. Jackson prior to Rule 26(f) conference; participate in Rule 26(f) conference with Monsanto's counsel; revise draft joint Rule 26(f) report and send to Monsanto's counsel for review and revision; work with Ms. Persinger to finalize and serve first requests for production, interrogatories, Rule 30(b)(6) notice, third-party subpoenas, and notice of intent to serve third-party subpoenas. |
| 12/16/2016 | 4.8 | Work on opposition to motion to dismiss; confer with Ms. Persinger regarding her research into EPA approval for purposes of opposing motion to dismiss. |
| 12/17/2016 | 8.5 | Work on opposition to motion to dismiss. |
| 12/18/2016 | 3 | Continue working on class certification motion. |
| 12/19/2016 | 3.7 | Continue working on class certification motion. |
| 12/20/2016 | 6 | Continue working on class certification motion. |
| 12/22/2016 | 3.9 | Review and revise completed draft of motion to dismiss, with Ms. Persinger's section regarding EPA registration completed; continue to revise and cut; circulate draft to Mr. Canova and Mr. Jackson for review. |
| 12/23/2016 | 4.9 | Continue working on class certification motion, especially regarding damages. |
| 12/26/2016 | 9.1 | Begin paring down class certification motion. |
| 12/27/2016 | 0.4 | Finish draft of initial disclosures; phone call with Colin Weir regarding ███████████████████████; confer with Ms. Persinger regarding finalizing of opposition to motion to dismiss, particularly relating to request for judicial notice. |
| 12/28/2016 | 0.5 | Telephone call with Colin Weir to discuss ███████████████; revise per conversation and circulate to Mr. Canova and Mr. Jackson for review. |
| 12/28/2016 | 3.1 | Finalize and serve initial disclosures; review near-final documents regarding plaintiff's opposition to motion to dismiss, including request for judicial notice and supporting declaration. |
| 12/28/2016 | 0.2 | Follow up on responses to subpoenas to Target, Amazon, and Sears. |

CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER

| Date | Hours | Description of Work |
|---|---|---|
| 12/29/2016 | 5 | Review Monsanto's revisions to draft Joint Rule 26(f) report and revise plaintiff's portions in response; draft ADR Request Form and send to opposing counsel for review; file Rule 26(f) report and ADR form and arrange for delivery of chambers copies. |
| 12/29/2016 | 2.2 | Work with Ms. Persinger to finalize opposition to motion to dismiss including peripheral papers; perform final proofread and finalizing, and prepare for filing. |
| 12/30/2016 | 0.3 | File opposition to motion to dismiss and arrange for service of chambers copies. |
| 1/3/2017 | 0.5 | Call with counsel for Home Depot regarding subpoena; review and process response from Wal-Mart to subpoena, and send to Mr. Jackson. |
| 1/9/2017 | 0.9 | Telephone call with Sid Jackson to discuss case status and assignments; call with Monsanto's counsel to discuss various case issues. |
| 1/9/2017 | 0.7 | Communications with Home Depot's counsel concerning subpoena response; research and send to Home Depot's counsel SKU and model numbers for products at issue. |
| 1/9/2017 | 0.6 | Call with Monsanto's counsel to discuss various case issues. |
| 1/9/2017 | 0.5 | Review Monsanto's reply in support of motion to dismiss. |
| 1/10/2017 | 0.6 | Review and revise draft protective order and Rule 502 order and send back to opposing counsel with comments. |
| 1/14/2017 | 0.5 | Finalize and file stipulated protective order and stipulated 502 order. |
| 1/16/2017 | 0.2 | Call with John Rosenthal to discuss ESI stipulation and deposition scheduling; call with Sid Jackson regarding same. |
| 1/16/2017 | 0.4 | Call with client Elisabeth Martin to discuss discovery requests served by Monsanto. |
| 1/17/2017 | 0.3 | Review discovery requests in preparation for telephonic conference with client. |
| 1/17/2017 | 5.4 | Draft and serve amended Rule 30(b)(6) deposition notice; begin preparing for hearing on motion to dismiss. |
| 1/18/2017 | 1.5 | Draft Local Rule 37-1 meet-and-confer letter regarding Monsanto's discovery responses and send to Monsanto. |
| 1/18/2017 | 0.9 | Telephone call with client to review discovery requests and begin drafting responses. |
| 1/19/2017 | 4.7 | Draft interrogatory responses on behalf of plaintiff; communications with plaintiff throughout day regarding same; confer with Ms. Persinger on |

CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER

| Date | Hours | Description of Work |
|------|-------|---------------------|
| | | draft responses to requests for documents; review communications with client and draft privilege log; telephone call with opposing counsel to discuss various case issues; work on class certification motion including drafting plaintiff's declaration and circulating to Mr. Canova and Mr. Jackson for review, and drafting Fitzgerald Declaration. |
| 1/29/2017 | 0.5 | Draft joint report regarding meet-and-confer on class certification motion. |
| 1/23/2017 | 5.8 | Prepare for Monsanto deposition, including beginning to review documents produced by Monsanto. |
| 1/24/2017 | 2.6 | Review Monsanto's letter responding to meet and confer letter and send email to John Rosenthal to set up conference call; prepare for call, then participate in Local Rule 37-1 meet-and-confer conference; send email to Monsanto's counsel confirming substance of conference. |
| 1/24/2017 | 7.5 | Undertake document review in preparation for Monsanto's 30(b)(6) deposition. |
| 1/25/2017 | 9.7 | Confer with Ms. Persinger regarding drafting of motion to compel; prepare for taking Monsanto's Rule 30(b)(6) deposition. |
| 1/26/2017 | 15 | Travel to St. Louis and continue to prepare to take Monsanto's Rule 30(b)(6) deposition. |
| 1/27/2017 | 16.5 | Take Monsanto's Rule 30(b)(6) deposition and travel back to San Diego. |
| 1/28/2017 | 10.3 | Work on class certification motion, specifically beginning to integrate documents and testimony into a statement of facts. |
| 1/29/2017 | 10.8 | Work on class certification motion. |
| 1/30/2017 | 5.4 | Work on class certification motion; participate in meet-and-confer conference with Monsanto's counsel and draft joint report of meeting, then send to Monsanto's counsel for review. |
| 2/1/2017 | 9.7 | Continue work on class certification motion, including emails to opposing counsel regarding various issues. |
| 2/2/2017 | 8.2 | Draft subpoena to Scotts; draft and send Notice of Intent to Serve Subpoena to opposing counsel; telephone call with Colin Weir to further discuss ███████████████████████████; work on class certification motion. |
| 2/3/2017 | 7.1 | Continue working on class certification motion, including table of authorities; meet-and-confer call with Monsanto's counsel regarding exhibits to be filed under seal; telephone conversations with Colin Weir regarding various issues. |
| 2/4/2017 | 9.3 | Continue working on class certification motion. |

CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 2/7/2017 | 2.7 | Communications with Colin Weir, Elisabeth Martin, John Rosenthal, and Sid Jackson regarding deposition scheduling and logistics; complete drafts of discovery responses and send to Mr. Jackson and Mr. Canova for review. |
| 2/6/2017 | 7 | Finalize and file motion for class certification; prepare and send documents to AMS for preparing chambers copies. |
| 2/8/2017 | 7.6 | Complete and serve plaintiff's responses to discovery requests, including collecting and preparing documents for production, and communicating with client for final sign-off; prepare to travel to Los Angeles to participate in and defend the depositions of Colin Weir and Elisabeth Martin, including communications with deponents, opposing counsel, and co-counsel concerning logistics, and organizing materials for deposition preparation. |
| 2/9/2017 | 11.3 | Travel to Los Angeles and defend deposition of Colin Weir; together with Mr. Jackson, prepare Elizabeth Martin for deposition. |
| 2/10/2017 | 11.3 | Participate in deposition of Elisabeth Martin and travel home. |
| 2/12/2017 | 0.5 | Review Adam Nadelhaft's November 11 letter regarding Colin Weir materials and perform related research; communications with Mr. Weir regarding same. |
| 2/13/2017 | 1.1 | Draft response to Monsanto's ex parte motion and send to Mr. Jackson for review; review Judge Walter's order granting Monsanto's ex parte application to continue opposition due date; draft response to Monsanto's February 11 letter regarding Colin Weir materials, and prepare for production and produce Mr. Weir's spreadsheets. |
| 2/16/2017 | 0.2 | Review Judge Walter's Order on Monsanto's motion to dismiss. |
| 2/16/2017 | 0.3 | Review excerpts of Colin Weir deposition transcript provided by Monsanto for confidentiality and provide comments to Monsanto's counsel. |
| 2/19/2017 | 0.3 | Review documents identified in Adam Nadelhaft's email for objections to filing under seal and respond to email. |
| 2/20/2017 | 7.3 | Together with Ms. Persinger and Mr. Jackson, participate in meet and confer conference with John Rosenthal and Adam Nadelhaft regarding Monsanto's legal control of Scotts documents; prepare deposition notice of Robin Cantor and prepare for service; prepare amended deposition notice of Robin Cantor (with document requests) and prepare for service; prepare Second Amended Complaint per Judge Walter's Order and |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|------|-------|---------------------|
| | | circulate for review; review Monsanto's class certification opposition and begin working on reply. |
| 2/21/2017 | 13.4 | Work on reply in support of motion for class certification, including participating in conference call with Ms. Persinger, Mr. Jackson, and Colin Weir, regarding strategy concerning report of Robert Cantor. |
| 2/22/2017 | 7.8 | Work on class certification reply. |
| 2/24/2017 | 7.3 | Work on class certification reply. |
| 2/25/2017 | 8.4 | Work on class certification reply. |
| 2/26/2017 | 12.9 | Work on class certification reply. |
| 2/27/2017 | 10.8 | Work on finalizing and filing Class Cert reply. |
| 3/3/2017 | 0.2 | Together with Ms. Persinger, participate in call with Sid Jackson to discuss strategy regarding Monsanto's issues with Second Amended Complaint |
| 3/3/2017 | 0.3 | Call with John Rosenthal to discuss issues relating to Second Amended Complaint and plaintiff's motion to compel. |
| 3/6/2017 | 4 | Email communications with opposing counsel regarding Third Amended Complaint, including additional rounds of revisions to reach agreement; finalize and file Third Amended Complaint. |
| 3/14/2017 | 3.6 | Review Order to Show Cause regarding mis-tabbed Fitzgerald Declaration; draft response to OSC, finalize, and file; prepare Fitzgerald Declaration Exhibits 1-91 per OSC. |
| 3/24/2017 | 0.5 | Review class certification order; communications with co-counsel, plaintiff, and Colin Weir regarding same. |
| 3/29/2017 | 0.5 | Prepare for meet-and-confer call with Monsanto's counsel by researching issues related to giving class notice after certification. |
| 3/30/2017 | 1 | Together with Mr. Jackson, participate in meet-and-confer call with John Rosenthal and Adam Nadelhaft regarding notice plan and other aspects of case. |
| 3/30/2017 | 0.1 | Call with Teri Thompson, Rust Consulting, to get quote for class notice and administration. |
| 3/31/2017 | 0.6 | Telephone call with Dahl to provide parameters for notice estimate; send Protective Order to Dahl, then gather and send relevant documents to Dahl after Protective Order signed. |
| 4/1/2017 | 2.2 | Draft class certification Notice and send to Mr. Canova and Mr. Jackson for review. |

CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 4/2/2017 | 0.2 | Revise draft class certification Notice per Mr. Jackson's comment and circulate to Monsanto's counsel for review. |
| 4/4/2017 | 0.4 | Telephone call with Sid Jackson to discuss status and strategy; telephone call with Mr. Canova and Sid Jackson to discuss status and strategy |
| 4/4/2017 | 4.2 | Begin drafting settlement demand letter to Monsanto. |
| 4/5/2017 | 4.3 | Together with Mr. Canova and Mr. Jackson, participate in call with John Rosenthal and Adam Nadelhaft regarding notice plan and settlement; review Monsanto's draft joint motion regarding clarification of the class definition, make revisions, and circulate back to Monsanto; review Monsanto's revisions to the draft Notice, make further revisions, and send back to Monsanto for review; draft Joint Notice Plan and Proposed Notice and send to Monsanto's counsel for review. |
| 4/7/2017 | 4 | Work on joint notice plan and proposed notice, including email and telephone communications with Monsanto's counsel, revising documents, creating proposed orders for joint motion for clarification and proposed notice plan, and coordinating with notice administrators Dahl and Rust. |
| 4/11/2017 | 0.9 | Communications with Monsanto's counsel regarding joint motion to clarify class definition and proposed order regarding joint notice plan; finalize and file same. |
| 4/19/2017 | 0.3 | Email and telephone communications with co-counsel, Sid Jackson, and Monsanto's counsel, John Rosenthal. |
| 4/20/2017 | 0.9 | Together with Mr. Canova, Ms. Persinger, and Sid Jackson, participate in call with Monsanto's counsel regarding various discovery issues and mediation. |
| 5/2/2017 | 0.3 | Communications with co-counsel, opposing counsel, and Judge Holderman's clerk regarding scheduling of introductory phone call. |
| 5/10/2017 | 0.3 | Draft status report regarding notice and send to Mr. Canova and Mr. Jackson for review; circulate to Monsanto's counsel for review. |
| 5/10/2017 | 0.3 | Phone call with John Rosenthal to discuss settlement arrangements and various case issues. |
| 5/10/2017 | 0.3 | Sign and return JAMS agreements. |
| 5/15/2017 | 0.9 | Confer with Mr. Jackson regarding various case issues, including ▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆. |
| 5/16/2017 | 0.2 | Call with John Rosenthal prior to call with Judge Holderman to discuss various issues related to mediation. |

CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 5/16/2017 | 2.1 | Prepare for then, together with Mr. Canova, Mr. Flynn, Ms. Persinger, and Mr. Jackson, participate in pre-mediation preparation call with Judge Holderman (Flynn & Persinger unannounced); debrief with team regarding same. |
| 5/22/2017 | 0.6 | Together with Mr. Canova, participate in strategy call with Mr. Jackson; call with Adam Nadelhaft regarding materials to Judge Holderman. |
| 5/24/2017 | 0.2 | Review order striking Joint Status Report and Request Regarding Notice; draft proposed order and circulate to defense counsel for review. |
| 5/26/2017 | 0.4 | Finalize and re-file Joint Status Report and Request Regarding Notice, including with proposed order. |
| 5/26/2017 | 0.3 | Work on mediation brief; call with Sid Jackson to discuss case status and strategy. |
| 5/27/2017 | 2.4 | Work on mediation brief. |
| 5/29/2017 | 10 | Perform further work on mediation brief then circulate to team for review. |
| 5/30/2017 | 3.1 | Further work on mediation brief. |
| 5/31/2017 | 1.9 | Work on finalizing and serving mediation brief. |
| 6/1/2017 | 1 | Draft Class Action Checklist, circulate to Mr. Canova and Sid Jackson for review and revision, then send to Monsanto's counsel. |
| 6/2/2017 | 0.8 | Together with Sid Jackson, participate in telephone call with John Rosenthal and Adam Nadelhaft regarding calculation of nationwide retail sales. |
| 6/10/2017 | 1.5 | Begin working on Monsanto Mediation Reply Brief. |
| 6/15/2017 | 2.4 | Participate in focus group electronically; together with Mr. Canova and Ms. Persinger, debrief with Mr. Jackson regarding results of focus group and mediation strategy. |
| 6/20/2017 | 4 | Travel to Chicago for mediation. |
| 6/21/2017 | 16.8 | Participate in mediation, then travel home. |
| 6/22/2017 | 0.2 | Internal email communications regarding strategy moving forward. |
| 6/22/2017 | 0.5 | Call with John Rosenthal to discuss filing second status report and request regarding notice; draft second status report and proposed order and send to John Rosenthal and Adam Nadelhaft for review. |
| 7/10/2017 | 4 | Travel to Chicago for mediation. |
| 7/11/2017 | 15.5 | Participate in mediation, then travel home. |

CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 7/12/2017 | 0.3 | Discuss mediation with Ms. Persinger and Mr. Flynn. |
| 7/20/2017 | 1.4 | Review, revise, and comment on draft term sheet and circulate to Mr. Jackson and Mr. Canova for review. |
| 7/28/2017 | 0.5 | Complete redline of term sheet for purposes of sending to opposing counsel, and circulate to Mr. Jackson and Mr. Canova to review. |
| 7/31/2017 | 0.2 | Call with Sid Jackson and John Rosenthal to discuss status report strategy; review Monsanto's draft report, make revisions, finalize and file. |
| 8/2/2017 | 0.3 | Telephone call with Sid Jackson concerning Court Order and strategy relative to the California certification. |
| 8/3/2017 | 0.7 | Teleconference with Sid Jackson and John Rosenthal regarding settlement, venue. |
| 8/7/2017 | 1.1 | Draft stipulation regarding status and request to transfer, and proposed order, and send to Mr. Jackson, then Monsanto's counsel for review; together with Mr. Jackson, participate in call with John Rosenthal and Adam Nadelhaft regarding next steps. |
| 8/8/2017 | 2.1 | Telephone calls with John Rosenthal to discuss fourth joint status report and term sheet; revise term sheet and send to Mr. Jackson for review, then send to Mr. Rosenthal; finalize and file fourth joint status report. |
| 8/8/2017 | 0.4 | Call with Colin Weir to discuss strategy for ███████████. |
| 8/9/2017 | 0.5 | Call with Sid Jackson to discuss strategy in dealing with ████████ ████████. |
| 8/9/2017 | 0.8 | Research law relating to All Writs Act and forward to Mr. Jackson for review. |
| 8/10/2017 | 0.3 | Call with Aaron Rapier regarding Monsanto settlement. |
| 8/14/2017 | 0.7 | Draft non-disclosure agreement for disclosing terms of proposed settlement to other counsel, and circulate to Mr. Jackson for review; circulate signed NDA to other counsel; revise NDA and re-send. |
| 8/15/2017 | 0.3 | Email communications with state counsel regarding settlement. |
| 8/16/2017 | 0.8 | Research legal ethics experts and call and email several; telephone conversation with legal ethics expert Peter Jarvis; review Term sheet and confirm acceptance of changes with Monsanto's counsel. |
| 8/21/2017 | 3.4 | Review and revise Monsanto's draft of motion to transfer and proposed order, and circulate back for Monsanto's review. |
| 8/22/2017 | 2.3 | Work with Monsanto's counsel to finalize motion to transfer; file same. |
| *Total =* | *567.8* | |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

### Jack Fitzgerald - Missouri

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 3/27/2017 | 3.8 | Send email blast seeking volunteer class representatives for MO action; communications with numerous respondents. |
| 4/3/2017 | 2.5 | Begin drafting Missouri Complaint; send same to Mr. Canova to provide details as to plaintiff Joshua Rawa. |
| 4/4/2017 | 2.5 | Continue working on Missouri Complaint; work with local counsel to finalize, including reviewing and finalizing peripheral papers. |
| 4/5/2017 | 0.9 | Further work on preparing Complaint for filing. |
| 4/11/2017 | 1.1 | Prepare and file Pro Hac Vice motion, and notice of errata and corrected motion. |
| 6/12/2017 | 0.2 | Confer with Ms. Persinger regarding opposition to motion to dismiss. |
| 6/14/2017 | 7.4 | Review and revise draft opposition to motion to dismiss. |
| 6/15/2017 | 3.5 | Work on completing and filing opposition to motion to dismiss. |
| 8/7/2017 | 0.2 | Review decision on motion to dismiss. |
| 8/10/2017 | 0.4 | Participate in telephonic status conference with Judge Fleissig. |
| 8/17/2017 | 0.5 | Review draft stipulation and return to Monsanto's counsel with edits. |
| 8/24/2017 | 1.7 | Telephone call with Sid Jackson to discuss status and tasks moving forward; telephone conversation with Mike Anderson (counsel in copycat state cases); telephone call with client ▮▮▮▮▮▮▮; call and email Chris Shank (counsel in copycat Missouri state case). |
| 8/24/2017 | 0.7 | Draft Amended Consolidated Complaint adding Elizabeth Martin and ▮▮▮▮▮▮▮ to Complaint and circulate to Mr. Jackson for review; |
| 8/25/2017 | 0.3 | Together with Mr. Jackson, participate in call with Chris Shank regarding participation in settlement. |
| 8/31/2017 | 0.5 | Draft agreement for Chris Shank and send to Mr. Jackson for review. |
| 9/12/2017 | 0.3 | Calls with Chris Shank and John Rosenthal regarding settlement. |
| 9/16/2017 | 9.9 | Review and revise draft settlement agreement and circulate to Mr. Jackson for review; review and revise draft Consolidated Amended Complaint and send to Mr. Jackson and Chris Shank for review; review and revise draft preliminary approval motion. |
| 9/19/2017 | 9.6 | Review and provide revisions to Judge Holderman's declaration, and circulate for review. |
| 9/21/2017 | 1.8 | Communications with Aaron Rapier regarding referral agreement and related issues; together with Sid Jackson, participate in phone call with |

| Date | Hours | Description of Work |
|------|-------|---------------------|
| | | John Rosenthal regarding draft complaint and settlement agreement; together with Mr. Jackson, participate in call with Judge Holderman regarding issue with settlement; review and revise draft amended consolidated complaint and send to Mr. Jackson and Ms. Persinger with comment and for further review. |
| 9/25/2017 | 0.9 | Calls with Sid Jackson, John Rosenthal, and Adam Rapier concerning settlement status. |
| 9/28/2017 | 4.5 | Revise preliminary approval motion and draft supporting Fitzgerald Declaration; circulate to co-counsel and Monsanto's counsel for review. |
| 9/29/2017 | 4.5 | Continue working on preliminary approval motion. |
| 10/3/2017 | 4.4 | Continue working on preliminary approval papers and settlement agreement, including email and telephone communications with Monsanto's counsel. |
| 10/4/2017 | 7.2 | Finish and file preliminary approval motion, including coordinating with co-counsel and Monsanto's counsel. |
| 10/5/2017 | 0.6 | Communications with Monsanto's counsel, co-counsel, and copycat counsel regarding status. |
| 11/9/2017 | 1.8 | Prepare for then participate in conference call with Judge Fleissig regarding preliminary approval motion; follow-up calls with Mr. Jackson and John Rosenthal. |
| 11/11/2017 | 2 | Review and revise Ms. Persinger's draft Supplement and exhibits, and send to Mr. Jackson for review. |
| 11/17/2017 | 0.8 | Complete and have local counsel file supplement to preliminary approval motion. |
| 11/25/2017 | 0.5 | Revise Second Supplement to Preliminary Approval motion and circulate to Mr. Jackson for review; then circulate draft to John Rosenthal for review. |
| 11/28/2017 | 1 | Confer with Sid Jackson regarding cy pres; together with Mr. Jackson, participate in call with Monsanto's counsel, John Rosenthal and Adam Nadelhaft, regarding cy pres; revise Second Supplement and circulate to co-counsel and Monsanto's counsel. |
| 11/28/2017 | 0.3 | Together with Mr. Flynn and Ms. Persinger, participate in call with clerk regarding typos in Class Notice. |
| 12/4/2017 | 0.3 | Together with Mr. Jackson and Ms. Persinger, participate in phone call with court regarding cy pres. |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|---|---|---|
| 12/12/2017 | 0.2 | Locate and send to Dahl class member contact information provided by third parties, for purpose of making direct notice. |
| 12/20/2017 | 0.7 | Review website and related materials and communicate with Dahl and opposing counsel before settlement website goes live. |
| 2/8/2018 | 0.3 | Together with Mr. Jackson, participate in call with John Rosenthal and Adam Nadelhaft regarding current claims status. |
| 2/13/2018 | 0.8 | Together with Ms. Persinger and Mr. Jackson, participate in call with John Rosenthal and representatives from Dahl to discuss current claims status. |
| 3/5/2018 | 3 | Begin reviewing and revising Ms. Persinger's draft final approval and fee motions. |
| 3/10/2018 | 9.8 | Continuing drafting motions for final approval and fees; revise and get as near final as possible memorandums in support of motions and supporting Fitzgerald Declaration. |
| 3/12/2018 | 0.9 | Participate in conferences with defense counsel and Dahl concerning issues relating to finalizing motion for final approval. |
| 3/13/2018 | 10 | Finalize and file motions for final approval and for fees. |
| 3/27/2018 | 2 | Review objection and Monsanto's opposition to motion for fees; conduct research relating to same. |
| 3/31/2018 | 11.3 | Work on reply in support of motion for attorneys' fees and response to objections. |
| 4/1/2018 | 6.3 | Work on reply in support of motion for attorneys' fees and response to objections. |
| 4/2/2018 | 6.6 | Work on reply in support of motion for attorneys' fees and response to objections; finalize for filing on April 3. |
| 4/13/2018 | 8.2 | Review Court's Order regarding submission of billing records and rates, and motion of objector Migliaccio for leave to file sur-reply; begin working on notice of filing of records and rates, including supporting papers. |
| *Total =* | *136.1* | |

**Melanie Persinger – California**

| Date | Hours | Description of Work |
|---|---|---|
| 12/12/2016 | 1.5 | Begin drafting 26(f) report. |
| 12/13/2016 | 1.2 | Finish draft of 26(f) report. |

CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 12/13/2016 | 4 | Draft subpoenas to IRI and retailers, including notice of intent to serve subpoenas. |
| 12/13/2016 | 2.8 | Begin draft of first set of document requests. |
| 12/14/2016 | 6.6 | Continue drafting discovery, including finishing first set of document requests, first set of interrogatories and 30(b)(6) deposition notice, and plaintiff's initial disclosures. |
| 12/14/2016 | 0.5 | Edits to 12 subpoenas. |
| 12/14/2016 | 0.4 | Edits to 26(f) report based on order from Judge re topics to cover. |
| 12/15/2016 | 0.6 | Participate in part of rule 26(f) conference. |
| 12/15/2016 | 2.9 | Edits to attachments 1 of each of the 12 subpoenas being served today; finalize and send out for service 12 subpoenas; finalize and serve notice of intent to serve subpoenas, first set of ROGs and first set of RFPs. |
| 12/15/2016 | 2 | Research for opposition to motion to dismiss. |
| 12/16/2016 | 7.5 | Research for opposition to motion to dismiss. |
| 12/19/2016 | 7.5 | Opposition to motion to dismiss. |
| 12/20/2016 | 0.2 | Table re status of third party subpoenas. |
| 12/20/2016 | 8.6 | Opposition to motion to dismiss. |
| 12/21/2016 | 6.5 | Opposition to motion to dismiss. |
| 12/22/2016 | 8.5 | Edits to opposition to motion to dismiss. |
| 12/27/2016 | 8 | Editing and finalizing motion to dismiss, including request for judicial notice. |
| 12/28/2016 | 4.5 | Finishing request for judicial notice and edits to opposition (including hyperlinks to all Westlaw citations). |
| 1/6/2017 | 0.3 | Create and file corrected opposition to Monsanto's motion to dismiss (to fix hyperlink issue). |
| 1/24/2017 | 0.2 | Discuss motion to compel with Jack. |
| 1/24/2017 | 1 | Participate in meet and confer call, discuss call with Sid and Jack. |
| 1/24/2017 | 0.8 | Begin draft of motion to compel. |
| 1/24/2017 | 3 | Help Jack with deposition preparation. |
| 1/25/2017 | 3.3 | Help Jack with deposition preparation. |
| 1/26/2017 | 8.7 | Draft motion to compel production of documents. |
| 1/27/2017 | 7.5 | Draft motion to compel production of documents. |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 1/30/2017 | 7.5 | Finalize draft of motion to compel documents. |
| 1/31/2017 | 2 | Edits to motion to compel, discuss same with Tom, address Tom's comments on draft, finalize and email to opposing counsel. |
| 1/31/2017 | 4.1 | Begin motion to file under seal for class cert motion. |
| 2/1/2017 | 0.1 | Correspondence regarding third party subpoenas. |
| 2/1/2017 | 5.4 | Continue work for seal motion, including highlighting exhibits and preparing for meet and confer call regarding whether we can publicly file redacted versions of exhibits; edits to motion for class certification and supporting Fitzgerald Declaration. |
|  | 0.2 | Correspondence regarding request for conference; correspondence re third party Orchard Supply; correspondence regarding expert Colin Weir. |
| 2/2/2017 | 8.3 | Continue pulling exhibits and working on preparation for seal motion and meet and confer regarding same. |
| 2/3/2017 | 11 | Continue to assist in draft of motion for class certification, application to seal, including meet and confer re confidential documents. |
| 2/4/2017 | 10.5 | Drafting application to file under seal documents relating to class certification motion; edits to motion for class certification and supporting documents. |
| 2/6/2017 | 7.5 | Finalizing and filing motion for class certification, application to file under seal, and all supporting documents for both. |
|  | 0.2 | Review Judge Walter's order on Monsanto's motion to dismiss. |
| 2/16/2017 | 6.8 | Begin preparing statement of decision for motion for class certification. |
| 2/20/2017 | 1 | Review opposition to motion for class certification and discuss same with JF. |
| 2/20/2017 | 0.3 | Participate in meet and confer conference with JF, Sid Jackson, John Rosenthal and Adam Nadelhaft regarding Scotts documents. |
| 2/21/2017 | 0.2 | Arranging for courtesy copies of Second amended complaint, including follow up correspondence with AMS. |
| 2/21/2017 | 10.8 | Research for RIS class certification. |
| 2/22/2017 | 7.5 | Reply in support of motion for class certification. |
| 2/23/2017 | 8.6 | Reply in support of motion for class certification. |
| 2/24/2017 | 10.5 | Reply in support of motion for class certification. |
| 2/25/2017 | 8 | Reply in support of motion for class certification. |
| 2/26/2017 | 14.3 | Reply in support of motion for class certification. |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 2/27/2017 | 8 | Finalizing reply in support of motion for class certification and application to file under seal; arranging for courtesy copies. |
| 2/28/2017 | 8.3 | Drafting statement of decision. |
| 3/1/2017 | 5.5 | Finalizing, filing, and arranging for courtesy copies of proposed statement of decision. |
| 3/2/2017 | 0.1 | Reviewing orders regarding seal motion. |
| 3/2/2017 | 0.1 | Correspondence with AMS regarding delivery of courtesy copies. |
| 3/3/2017 | 0.8 | Participate in call with Sid Jackson and JF re amending complaint; amending complaint and sending third amended complaint and redline to second amended complaint to opposing counsel; follow-up discussions with Jack and further emails to opposing counsel. |
| 3/6/2017 | 0.3 | Finalizing and filing third amended complaint and coordinating with AMS for courtesy copies. |
| 3/6/2017 | 1 | Creating new redacted versions of documents for public filing in response to court order; coordinating with AMS for courtesy copies. |
| 3/7/2017 | 0.1 | Emails with opposing counsel re draft of joint stipulation re plaintiff's motion to compel; discussing same with Jack. |
| 3/8/2017 | 1.7 | Formatting, finalizing, and filing motion to compel, including coordinating with opposing counsel re approval of final draft and coordinating for courtesy copies to be delivered. |
| 3/21/2017 | 4 | Finish draft of supplemental brief in support of motion to compel production of documents and circulate draft to team; edit supplemental brief; finalize and file supplemental brief and arrange for courtesy copies; review Monsanto's supplemental brief. |
| 3/22/2017 | 0.1 | Correspondence regarding courtesy copies to Magistrate Judge Pym. |
| 3/24/2017 | 0.3 | Review class certification decision and discuss with team. |
| 4/20/2017 | 0.9 | Together with JF, TAC, and Sid Jackson, participate in call with Monsanto's counsel regarding various discovery issues and mediation. |
| 5/16/2017 | 1.1 | Call with mediator Judge Holderman (Ret.). |
| 5/24/2017 | 4.4 | Work on mediation brief, including document review and gathering evidence for section on punitive damages and drafting sections of brief. |
| 5/25/2017 | 8.2 | Continue work on mediation brief, including document review, research on damages and interest, and drafting sections; confer with Mr. Fitzgerald re same. |

CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 5/29/2017 | 0.5 | Confer with JF re recent document production and mediation; discussing status of mediation brief with JF. |
| 5/30/2017 | 8.4 | Review and edit mediation brief; discuss same with JF; circulate new draft to team. |
| 5/31/2017 | 3.5 | Continue work on mediation brief, including gathering materials for submission and edits to mediation brief. |
| 6/12/2017 | 0.2 | Confer with JF regarding opposition to motion to dismiss. |
| 6/14/2017 | 1.7 | Prepare for mediation, including review documents for focus group and listen to focus group and discuss same with JF. |
| 6/15/2017 | 0.8 | Discuss results of focus group & mediation with co-counsel; collect documents for mediation. |
| 6/16/2017 | 5.2 | Collecting and organizing information and documents in preparation of mediation. |
| 6/19/2017 | 3.3 | Collecting and organizing information and documents in preparation of mediation. |
| 6/20/2017 | 8 | Travel to mediation in Chicago. |
| 6/21/2017 | 16 | Attend mediation and travel home. |
| 6/22/2017 | 2.8 | Research regarding issues pertinent to mediation. |
| 6/23/2017 | 0.2 | Draft notice of intent to serve subpoenas. |
| 6/23/2017 | 3.5 | Research regarding issues pertinent to mediation; discuss mediation with TAC. |
| 6/27/2017 | 0.5 | Discuss mediation with TAC. |
| 6/28/2017 | 0.1 | Edit home depot subpoena. |
| 6/28/2017 | 0.2 | Discussions and correspondence regarding mediation. |
| 6/28/2017 | 0.5 | Work on discovery plan in event case does not settle. |
| 6/29/2017 | 0.3 | First amended initial disclosures; discussing same with TAC & circulate draft to co-counsel. |
| 6/29/2017 | 5.3 | Continue to work on discovery plan, including drafting subpoenas and discovery requests. |
| 7/12/2017 | 0.3 | Discuss Monsanto mediation with JF and TF. |
| *Total =* | *329.6* | |

CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER

**Melanie Persinger – Missouri**

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 6/9/2017 | 2.5 | Begin draft of opposition to motion to dismiss. |
| 6/12/2017 | 7 | Continue drafting OMD. |
| 6/13/2017 | 6.9 | Continue drafting OMD. |
| 6/14/2017 | 5.5 | Continue drafting OMD. |
| 6/15/2017 | 7.8 | Finalize OMD. |
| 7/7/2017 | 3.7 | Compile sales volume for potential multi-state class based on statute of limitations chart compiled by Monsanto's counsel and research regarding possibility of certifying a multi-state class. |
| 7/15/2017 | 5 | Begin draft of motion for preliminary approval. |
| 7/31/2017 | 0.3 | Call with Jack, Sid, and opposing counsel regarding settlement approval. |
| 7/31/2017 | 6.9 | Draft motion for preliminary approval. |
| 8/1/2017 | 3.1 | Draft motion for preliminary approval. |
| 8/3/2017 | 2 | Research on Missouri law. |
| 8/3/2017 | 5.1 | Continue draft of motion for preliminary approval. |
| 8/4/2017 | 8 | Draft motion for preliminary approval. |
| 8/7/2017 | 6.5 | Draft motion for preliminary approval. |
| 8/8/2017 | 8.1 | Draft motion for preliminary approval. |
| 8/9/2017 | 4.6 | Draft motion for preliminary approval. |
| 8/10/2017 | 0.3 | Call with Judge Fleissig re transfer/settlement. |
| 8/10/2017 | 3.2 | Draft motion for preliminary approval. |
| 8/11/2017 | 4.2 | Draft motion for preliminary approval. |
| 8/14/2017 | 6.9 | Draft motion for preliminary approval. |
| 8/15/2017 | 6 | Draft motion for preliminary approval. |
| 8/22/2017 | 0.3 | Research for motion to transfer. |
| 8/24/2017 | 0.8 | Research for motion for preliminary approval, including choice of law analysis in Missouri and whether transfer impacts analysis, certification of nationwide classes in Missouri consumer fraud cases. |
| 8/25/2017 | 7.8 | Complete draft motion for preliminary approval; confer with JF about preliminary approval motion, including choice-of-law analysis. |
| 8/28/2017 | 0.8 | Edits to draft of motion for preliminary approval. |

CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 9/18/2017 | 0.2 | Call with JF to discuss amended complaint; email opposing counsel re settlement agreement and amended complaint; sending redline of amended complaint to opposing counsel. |
| 9/18/2017 | 1.3 | Edits to motion for preliminary approval. |
| 10/3/2017 | 3.7 | Edits to preliminary approval documents, including opt-out form, claim form, long form notice, and post card notice. |
| 11/9/2017 | 3 | Telephone conference re preliminary approval motion; follow up conference with Sid and John Rosenthal; edits to preliminary approval documents. |
| 11/10/2017 | 2.5 | Edits to preliminary approval documents. |
| 11/14/2017 | 0.1 | Correspondence re preliminary approval. |
| 11/16/2017 | 0.1 | Correspondence re supplement to preliminary approval motion. |
| 11/17/2017 | 0.2 | Review Monsanto's materials re supplement to motion for preliminary approval. |
| 11/28/2017 | 0.8 | Call from the court re preliminary approval documents; edits to preliminary approval documents. |
| 11/29/2017 | 0.4 | Draft second supplement to motion for preliminary approval. |
|  | 0.2 | Call with court re preliminary approval documents. |
| 12/4/2017 | 0.4 | Edits to long form notice; send long form notice to opposing counsel for review; finalize and file supplement to preliminary approval motion. |
| 1/16/2018 | 4.2 | Begin research for motions for final approval and for attorneys' fees, costs, and incentive awards; begin drafts of both motions. |
| 1/22/2018 | 2.8 | Continue draft of motion for attorneys' fees. |
| 1/24/2018 | 5.9 | Continue draft of motion for attorneys' fees. |
| 2/13/2018 | 0.8 | Call with JF and SJ to John Rosenthal and representatives from Dahl to discuss current claims status. |
| 2/20/2018 | 1.9 | Continue draft of motion for attorneys' fees. |
| 2/21/2018 | 7 | Continue draft of motion for attorneys' fees. |
| 2/22/2018 | 8.5 | Continue draft of motion for attorneys' fees. |
| 2/23/2018 | 7.5 | Continue draft of motion for attorneys' fees. |
| 2/26/2018 | 7.9 | Continue draft of motion for attorneys' fees; continue draft of motion for final approval. |
| 2/27/2018 | 5.5 | Continue to draft motion for final approval. |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 2/28/2018 | 0.1 | Review updated claim data from Dahl. |
| 3/1/2018 | 0.1 | Review correspondence from Dahl and enter edits to Sid's hours per his email. |
| 3/5/2018 | 0.2 | Finalize hours & giving reconciliation project to Val (paralegal). |
| 3/5/2018 | 6.9 | Edits to motions for fees and for final approval; confer with JF re motions and send to him for review; begin drafts of declarations in support of Motions for fees and final approval. |
| 3/6/2018 | 5.5 | Edits to hours; continue to draft supporting declarations. |
| 3/8/2018 | 0.5 | Call with counsel and Dahl, including preparing for call and confer with JF after call. |
| 3/9/2018 | 0.2 | Review declarations from Dahl and email re edits, discuss same with JF. |
| 3/9/2018 | 3.3 | Edits to motions for fees and for final approval and supporting declaration; draft proposed order granting motions. |
| 3/12/2018 | 7.2 | Edits to motion for fees; edits to motion for final approval; edits to supporting declarations; call with Dahl to discuss valid and fraudulent claim numbers; finalizing all documents for filing tomorrow. |
| 3/13/2018 | 11.5 | Finalizing motions for final approval and for attorneys' fees and all supporting documents calls with Dahl and opposing counsel re claims administration process; conferring with JF and SJ re motions; edits to all papers, including cite check of both briefs. |
| 3/20/2018 | 0.2 | Call with Monsanto re following up with claim administration; confer with JF re same. |
| 3/21/2018 | 0.7 | Call with Dahl and follow-up discussion with JF re supplemental filing; draft supplemental declaration and circulate to JF to review; edits to supplemental declaration and circulate to whole team; review correspondence re setting up a call for tomorrow. |
| 3/22/2018 | 0.7 | Call with Dahl and defense counsel to discuss claims administration; follow up correspondence with JF and SJ. |
| 3/23/2018 | 1 | Correspondence regarding supplemental declaration of Kim Ness, review proposed edits to same; edit supplemental declaration and circulate to team again; calls with JR and AN regarding supplemental declaration and filing; draft notice of filing of supplemental declaration; finalize and file notice and supplemental declaration. |
| 3/29/2018 | 7.9 | Research for and begin draft of reply in support of motion for fees and responses to objections; email JF re total hours by timekeeper. |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 4/2/2018 | 4.6 | Review reply in support of motions for fees and final approval; edit reply; draft supporting declaration for reply; make exhibits in support of reply; confer with JF re finalizing brief and all supporting documents. |
| 4/3/2018 | 8.3 | Edit reply; finalize all documents for filing including final review and edits. |
| 4/13/2018 | 4 | Research hourly rates in Missouri; research multipliers in Eighth Circuit; begin draft of declaration in support of Notice of Lodging hours. |
| *Total =* | *241.1* | |

**Trevor Flynn - California**

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 9/2/2016 | 1.8 | Investigation of potential claims including review of products themselves from information available online, review of memorandum of facts and law from co-counsel, review of a draft complaint from co-counsel. |
| 9/2/2016 | 0.6 | Started work on drafting complaint for Central District of California. |
| 9/7/2016 | 0.4 | Reviewed changes to complaint. |
| 9/7/2016 | 1.6 | Cont'd investigation of products; reviewed product labels, took pictures and scanned relevant items from products. |
| 9/9/2016 | 7.5 | Cont'd work on Complaint including research on measurements of glyphosate efficacy and actual efficacy test results, research on causes of action, and incorporated co-counsel's notes on prior draft. |
| 9/13/2016 | 1.6 | Draft CLRA Letter. |
| 10/10/2016 | 0.4 | Reviewed edits and comments to complaint from TAC; emails from TAC and Sid Jackson. |
| 10/13/2016 | 0.3 | Prep for filing complaint including research on proper venue; case cover sheet; formatting complaint; and summons. |
| 10/14/2016 | 0.6 | To prepare for filings of Pro Hac Vice, reviewed notices from Court, sent and received multiple emails to Co-Counsel, researched CACD local rules re: service of pleading docs. |
| 10/14/2016 | 0.3 | Research on assigned judge; email to TC and JF. |
| 10/14/2016 | 0.6 | Prepared all filed initiating documents for chambers/courtesy copies; dropped at FedEx for overnight. |

CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 10/17/2016 | 0.8 | Prepared and filed Pro Hac Vice application and attendant documents for Sid Jackson; prepared fed ex overnight and dropped it off. |
| 1/3/2017 | 0.3 | Looked up UPC Codes to send to Home Depot as requested for their cooperation with subpoena. |
| 1/11/2017 | 2.3 | Work on Proposed Statement of Decision; filed. |
| 1/31/2017 | 4.5 | Work on deposition summary. |
| 2/1/2017 | 7.5 | Finished summary of 30b6 deposition; including identification of ███, ██████████████████████████████ , and prepared a list of all deposition excerpt citations for meet and confer as per JF's instructions. |
| 2/2/2017 | 2.3 | Worked on finalizing exhibits for class cert motion. |
| 2/3/2017 | 1.7 | Finalized exhibits w/ MRP for class cert motion. |
| 3/7/2017 | 6.5 | Reviewed deposition of Elizabeth Martin; prepared summary. |
| 3/8/2017 | 0.3 | Prepared exhibit table from plaintiff's deposition, reviewed references for accuracy and analyzed any need for further errata. |
| 3/8/2017 | 0.5 | Finished deposition summary for plaintiff's deposition. |
| 3/8/2017 | 4.5 | Reviewed Weir deposition; work on summary. |
| 5/16/2017 | 1.1 | Joint teleconference with mediator. |
| 6/23/2017 | 1 | Meeting re: mediation and status of settlement; strategy planning on further settlement efforts. |
| 7/12/2017 | 0.3 | Discuss mediation with MRP and JF. |
| 11/9/2017 | 1.2 | Teleconference w/ Court re: changes to Notice and Order on Prelim. Approval w/ JF and MRP. |
| 11/28/2017 | 0.3 | Phone call w/ clerk at Court re: typos in Class Notice w/ MRP and JF. |
| 12/4/2017 | 0.3 | Phone call w/ court re: cy pres w/ JF and MRP. |
| *Total =* | **51.1** | |

CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER

**Trevor Flynn – Missouri**

| Date | Hours | Description of Work |
|---|---|---|
| 9/15/2017 | 0.7 | Work on consolidated MO complaint; sent to JF for review. |
| 1/16/2018 | 0.2 | Phone call w/ claimant re: issue. |
| 1/23/2018 | 0.2 | Phone call w/ claimant re: issue. |
| 1/29/2018 | 0.3 | Phone call w/ claimant re: issue. |
| 1/31/2018 | 0.2 | Phone call w/ claimant re: issue. |
| 2/1/2018 | 0.2 | Phone call w/ prospective claimant re: settlement. |
| *Total =* | *1.8* | |

**Thomas Canova – California**

| Date | Hours | Description of Work |
|---|---|---|
| 9/19/2016 | 0.5 | Meeting with JF re background of case, including review of products and product literature. |
| 9/23/2016 | 0.2 | Telephone call with JF for briefing on Monsanto case and materials for review. |
| 9/27/2016 | 1 | Telecon with JF and S. Jackson re draft Complaint, and strategic considerations (state filings, plaintiffs); review of follow up emails. |
| 10/4/2016 | 1.5 | Review and revisions to draft Complaint. |
| 10/6/2016 | 2 | Continue revisions to draft Complaint. |
| 10/10/2016 | 3.5 | Continue revisions to draft Complaint; review related emails from SJ. |
| 10/11/2016 | 3 | Continue revisions to draft Complaint; review SJ comments; add further comments; related emails with JF and SJ. |
| 10/12/2016 | 1 | Review JF draft of Complaint; further revisions and comments to same; review SJ edits/comments. |
| 10/13/2016 | 0.75 | Review and revisions to latest JF draft Complaint; emails with JF and co-counsel re same; telecon with same and client. |
| 10/18/2016 | 0.5 | Review of Notice rejecting PHV application; related conferences with JF and SJ. |
| 10/19/2016 | 2 | Conferences with JF, telecons with SJ, re options and strategy re LA counsel issue; confer with JF re NDA for ███████; review of ███████████████ on Monsanto article; telecon with JF and ███████ |
| 10/20/2016 | 0.5 | Telecon with JF, SJ and ██████ re merits and jurisdiction. |

*CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER*

| Date | Hours | Description of Work |
|---|---|---|
| 10/28/2016 | 1.5 | Review of statute and case excerpts re damages model; review of Judge Walker's NJOY decision re class damages models; related emails and conferences with JF; review of new Lenovo case excerpt, and related conference with JF, re damages model; review Excel document prepared by JF and confer with same re damages model; review of Eli Lily case excerpts and confer with JF re damages model discussion; continued conferences with JF re warranty claim damages only. |
| 11/1/2014 | 1 | With JF, participate in call with ████████ and ████████ regarding potential expert services for damages; participate in call with Colin Weir regarding potential expert services and viable damages models. |
| 11/3/2016 | 0.25 | Conferences with JF re LA counsel, damages model for consumer protection claims, and timing for service. |
| 11/10/2016 | 0.2 | Review of Monsanto counsel letter re CLRA notice; confer with JF. |
| 11/11/2016 | 0.1 | Emails with co-counsel re EPA label review issues. |
| 11/22/2018 | 0.4 | Teleconference with SJ and JF relative to amending complaint, class certification, and experts. |
| 11/28/2016 | 1 | Review and revisions to draft Amended Complaint; related emails with co-counsel and conferences with JF. |
| 1/27/2017 | 2 | Begin review of Monsanto 30b6 (Guard) dep transcript; related emails with JF. |
| 1/28/2017 | 3 | Review Guard dep transcript; emails and call with JF re same. |
| 1/30/2017 | 1 | Review of draft Certification motion. |
| 1/31/2017 | 2.5 | Review and revisions to Motion to Compel Monsanto Document Production; related conferences with MP. |
| 2/2/2017 | 3 | Review and revisions to draft Certification motion and supporting declarations; related conferences with JF. |
| 2/16/2017 | 0.5 | Review and confer with JF re meet and confer letter to Monsanto counsel re Scott documentation. |
| 3/14/2017 | 0.3 | Review Court order, confer with JF, review draft response to OSC, re tabbing mistake. |
| 4/20/2017 | 0.9 | Emails and telecon with JF and S. Jackson re cert decision and forward strategy. |
| 5/15/2017 | 0.7 | Together with JF, MRP, SJ participate in call with Monsanto's counsel regarding various discovery issues and mediation. |

CLASS COUNSEL'S DETAILED BILLING RECORDS BY TIMEKEEPER

| Date | Hours | Description of Work |
|------|-------|---------------------|
| 5/22/2017 | 0.4 | Confer with JF and telecon with S. Jackson re preparation for 5/16 planning call with mediator. |
| 6/27/2017 | 0.5 | Strategy call with JF and S. Jackson re mediation materials. |
| *Total =* | *35.7* | |

Case 1:16-cv-21862-VSB Doc. Document 104-4 Filed 11/14/18 Page 890 of 232 # 801

# Exhibit 2

1

2

3    F I L E D
     Clerk of the Superior Court

4    FEB 2 4 2017

5    By: J. Browder, Deputy

6

7

8

9

10

11

12

13

14
                        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
15                                  **COUNTY OF SAN DIEGO**

16                                          Case No.: 37-2016-00019510-CU-BT-CTL

17   CHRISTINE CUMMING, on behalf of herself, all
     others similarly situated, and the general public    **ORDER GRANTING FINAL APPROVAL TO**
18                                                         **CLASS ACTION SETTLEMENT; AWARDING**
                                                           **ATTORNEYS' FEES AND COSTS;**
19         Plaintiff,                                      **AWARDING CLASS REPRESENTATIVE**
                                                           **ENHANCEMENT AWARD; AND ENTERING**
20         v.                                              **JUDGMENT**

21   BETTERBODY FOODS & NUTRITION, LLC,
                                                           Date:     February 17, 2017
22         Defendant.                                      Time:     1:30 p.m.
                                                           Dept.:    C-69
23                                                         Judge:    Hon. Katherine Bacal

24

25

26

27

28

     *Cumming v. BetterBody Foods & Nutrition, LLC*, No. 37-2016-00019510-CU-BT-CTL
                                          ORDER

1      This matter came before the Court on plaintiff's motion for final approval of a proposed class action

2 settlement, and motion for attorneys' fees and costs, and a class representative enhancement award. A

3 Fairness Hearing was held on February 24, 2017 in Department C-69. Having read and considered the parties'

4 Settlement Agreement, plaintiff's motions and all papers submitted in connection therewith, and having

5 heard oral argument during the Fairness Hearing, and for good cause found,

6 **IT IS HEREBY ORDERED:**

7      1.      This is a nationwide false advertising class action in which plaintiff contends defendant

8 BetterBody Foods & Nutrition, LLC misleadingly labeled two coconut oil products as inherently healthy.

9 The class includes approximately 900,000 individuals who purchased BetterBody's Organic Extra Virgin

10 Coconut Oil or Naturally Refined Coconut Oil for personal use between January 1, 2013 and November 18,

11 2016.

12      2.      The Court granted preliminary approval on November 18, 2016. In addition to injunctive

13 relief, the settlement creates a $1 million common fund with $650,000 in cash and $350,000 in gift cards.

14      *Notice & the Class's Reaction*

15      3.      Notice was provided on websites, social media, and responses to keyword searches. The class

16 action administrator, Dahl, estimates that over 75 percent of the class received notice. Dahl has preliminarily

17 validated 90,097 claims totaling $3,149,662.84. No members opted out or objected to the settlement.

18      *The Fairness, Adequacy, and Reasonableness of the Settlement*

19      4.      The initial settlement provided for a $1 million common fund. Given the strong response to

20 the settlement, the cash and gift card payments have to be reduced pro rata to accommodate all claims. To

21 offset the impact of the reduction, plaintiff agreed to reduce the fee request by $83,333, and BetterBody

22 agreed to add $100,000 more in gift cards. In addition, Dahl agreed to cap its fees at the $68,000 estimate

23 even though its actual costs exceeded $111,000. This ensures that all members who made the maximum $40

24 claim will be able to make a purchase without being out-of-pocket.

25      5.      For the reasons stated in the order granting preliminary approval, the Court finds the

26 settlement to be fair, adequate, and reasonable. See, e.g., *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th

27

28

1   1794, 1800-1801; Cal. Rules of Court, rule 3.769(g). The reasonableness of the settlement is further

2   demonstrated by the fact that there were no objections or requests for exclusion.

3   **Attorneys' Fees**

4   6.      Plaintiff is requesting $250,000 in fees and costs of $1,738. A percentage method may be used

5   to calculate a reasonable fee in a common fund case such as this. *Laffitte v. Robert Half Intern. Inc.* (2016) 1

6   Cal. 4th 480, 503. The fees and costs constitute approximately 23 percent of the cash and gift cards portion

7   of the settlement, which is well within the range of reasonableness. *Chavez v. Netflix, Inc.* (2008) 162 Cal.

8   App. 4th 43, 66 n.11 (fees in class actions average around one-third of recovery).

9   7.      Using a lodestar-multiplier approach, the lodestar amounts to $157,497.60, based on 274.5

10  hours of work, and $1,737.67 in costs. Class Counsel's hourly rates are as follows:

11

| Attorney | Hourly Rate |
|----------|-------------|
| Jack Fitzgerald | $650 |
| Paul K. Joseph | $400 |
| Trevor M. Flynn | $500 |
| Thomas A. Canova | $750 |

14  8.      The amount of fees and costs actually incurred is 14.3 percent of the total settlement fund.

15  The amount of fees requested would effectively constitute a 1.6 multiplier. An enhancement is warranted

16  due to the contingent risk, the novel issues involved, and the results obtained. *Laffitte, supra,* at 504.

17  Accordingly, plaintiff's request for fees and costs is approved.

18  **Incentive Payment to the Class Representative**

19  9.      Incentive payments to class representatives "must not be disproportionate to the amount of

20  time and energy expended in pursuit of the lawsuit." *Cellphone Termination Fee Cases* (2010) 186

21  Cal.App.4th 1380, 1395. Ms. Cumming spent 17 hours meeting with counsel, assisting with the complaint,

22  reviewing the settlement, and other tasks. The Court concludes an incentive payment of $2,500 is appropriate

23  to compensate Ms. Cumming for her efforts.

24  **Supplemental Incentive Payment, Attorneys' Fees, and Administrator Expenses**

25  10.     Plaintiff, class counsel, and the claims administrator have reduced the amount of their fees,

26  etc. to enable most claimants to use gift cards without being out-of-pocket. Plaintiff requests that any funds

27  uncashed beyond the 90-day window be distributed in the following order: (1) up to $2,500 to the plaintiff

28

1 for an incentive payment; (2) supplemental fees up to a total of $333,333; and (3) up to $43,000 to the claims

2 administrator for costs that it has otherwise agreed to write off.

3     11.    The Court preliminarily approved an incentive payment of $5,000. This amount is justified

4 by plaintiff's efforts on the case. The Court preliminarily approved a fee award of 33.3%. For purposes of

5 this motion, plaintiffs' counsel tentatively reduced their fee request to 23%. The supplemental fees would

6 increase the fee award up to 30% of the common fund, which is still within reason. Finally, it is appropriate

7 that the claims administrator recover its actual costs to the extent possible. Thus, plaintiff's request for

8 supplemental incentive payments, fees, and administrative expenses is granted.

9     *Compliance with Settlement Agreement; Continuing Jurisdiction; and Judgment*

10     12.    To the extent not specifically ordered herein, the Court orders the parties to comply with all

11 obligations arising under the Settlement Agreement.

12     13.    Nothing in this Order shall preclude any action to enforce or interpret the terms of the

13 Settlement Agreement. Any action to enforce or interpret the terms of the Settlement shall be brought solely

14 in this Court.

15     14.    The Court expressly retains continuing jurisdiction as to all matters relating to the Settlement,

16 and this Order, and for any other necessary and appropriate purpose.

17     15.    Having approved the Settlement, the Court hereby enters judgment pursuant to California

18 Rules of Court Rule 3.769(h) consistent with all provisions of this Order, including the retention of

19 jurisdiction to enforce the terms of the judgment.

20

21 **IT IS SO ORDERED.**

22

23 DATED: February 24, 2017                   KATHERINE A. BACAL

24                             HON. KATHERINE BACAL
                            JUDGE OF THE SUPERIOR COURT

25

26

27

28

# Exhibit 3

F I L E D
Clerk of the Superior Court

DEC 0 4 2015

By: R. Lindsey-Cooper, Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN DIEGO

| | |
|---|---|
| MATTHEW BELARDES, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAPAY INCORPORATED d/b/a FARM FRESH TO YOU<br><br>Defendant. | Case No.: 37-2014-00041774-CU-MC-CTL<br><br>**ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT; AWARDING ATTORNEYS' FEES AND COSTS; AWARDING CLASS REPRESENTATIVE ENHANCEMENT AWARD; AND ENTERING JUDGMENT**<br><br>Dept.:    C-65<br>Judge:    Hon. Joan M. Lewis |

1    This matter came before the Court on plaintiff's motion for final approval of a proposed class action

2 settlement, and motion for attorneys' fees and costs, and a class representative enhancement award. A

3 Fairness Hearing was held on December 4, 2015, at 8:30 a.m., in Department C-65, before the undersigned.

4 Having read and considered the parties' Settlement Agreement,[1] plaintiff's motions and all papers submitted

5 in connection therewith, and having heard oral argument during the Fairness Hearing (including that provided

6 by any objectors who appeared at the Fairness Hearing without prior notice), and for good cause found,

7    **IT IS HEREBY ORDERED:**

8    1.    On September 4, 2015, in response to plaintiff's motion for preliminary approval of a

9 proposed class action settlement, the Court found that the requirements of Cal. Code Civ. P. § 382 were

10 satisfied, preliminarily certified a settlement Class, and directed that the Class be notified of the Settlement.

11    2.    The Court now finally and fully certifies the Class, defined as:

12    Any person who, as reflected in Capay's business records, incurred during the Class Period
      (August 1, 2011 to December 31, 2014) a debt as a result of receiving Farm Fresh to You
13    residential produce delivery, which debt remains unpaid as of the Settlement Agreement
      Effective Date.
14

15    3.    In particular, the Court finds that the Class is sufficiently numerous, in that it includes 49,416

16 Californians, the joinder of whom would be impracticable, and that the Class is ascertainable, since each

17 Class Member has been identified by name from defendant's business records.

18    4.    The Court further finds that common issues of law and fact predominate over issues affecting

19 only individual Class Members, such that class treatment is the superior method of resolution of this action.

20    5.    The Court also finds that plaintiff's claims are typical of the claims of absent Class Members.

21    6.    The Court finds that plaintiff and his counsel have adequately represented the Class, and will

22 continue to do so. The Court appoints Matthew Belardes as Class Representative, and reaffirms its

23 appointment of his counsel, The Law Office of Jack Fitzgerald, PC, and Lucero Law Firm, and each of their

24 attorneys, as Class Counsel.

25    ────────────────────────
      [1] Attached as Exhibit 1 to the August 7, 2015 Declaration of Jack Fitzgerald in Support of Plaintiff's Motion
26    for Preliminary Approval. This Order incorporates by reference the definitions in the Settlement Agreement,
      and all terms used herein shall have the same meaning as that set forth in the Settlement Agreement, provided
27    *however, that in the event of any inconsistency, the terms of this Order shall control.*

28    ─────────────────────────────────────────
1
      *Belardes v. Capay Incorporated*, No. 37-2014-00041774-CU-MC-CTL
      ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT; AWARDING ATTORNEYS' FEES, COSTS,
      AND CLASS REPRESENTATIVE ENHANCEMENT AWARD; AND ENTERING JUDGMENT

7.      The Court previously found that the parties' proposed Notice and plan for dissemination of the Notice met the requirements of Cal. Code Civ. P. § 382, Cal. Rule Ct. 3.769(f), and due process, and was the best notice practicable under the circumstances, and therefore ordered that notice be effected in accordance with the proposed plan.

8.      The Court now finds that Notice was effected in accordance with the Court's Order, and that the Class was adequately notified of the Settlement. Because Capay's records identified Class Members by name, email address, and physical mailing address, the parties notified Class Members directly, initially by email and, where undeliverable, by postcard sent to a physical home address. Of the 49,416 Class Members, all but 1,497 (3% of the Class) received direct notice of the Settlement. Given the parties' best efforts to notify all Class Members (including by maintaining a settlement website at www.fftysettlement.com), the Court finds that notice had a reasonable chance of reaching a substantial percentage of the Class, and in fact reached a substantial percentage of the Class (97%). Accordingly, the Court finds that notice was the best practicable under the circumstances, and satisfied the requirements of Civil Procedure section 382, Rule of Court 3.769(f), and due process.

9.      The Court finds that the proposed Settlement is a fair, reasonable, and adequate result for the Class. Because the primary allegation in this action is that defendant unlawfully created and asserted against the Class members illegitimate debt, which is disputed, Capay's agreement to cancel, reverse, negate, and forever waive any right to collect upon the disputed debt is an appropriate remedy. Moreover, because Capay has agreed to cancel all $3,254,320 of the Class Members' disputed debt, as concerns this dispute, this provision of the Settlement represents all the economic relief the Class might hope to obtain at trial, and thus is an excellent result for the Class.

10.     The Court's finding that the proposed Settlement is fair, reasonable, and adequate is further supported by the inclusion of several other monetary and non-monetary benefits its offers the Class and general public, including:

    a.      Capay's provision of over $365,000 in Delivery Credits (*i.e.*, free deliveries) to Complaining Class Members (Settlement Agreement ¶ 2.4);

2

b.       Capay's agreement to pay the costs of Class Notice and administration, attorneys' fees and costs, and an enhancement award to the Class Representative (*id.* ¶¶ 2.10 – 2.12);

c.       Capay's provision to Class Members who request it, of a credit repair letter explaining that a debt previously reported was mistaken, and that any negative information on the Class Member's credit report should be removed (*id.* ¶ 2.3);

d.       Capay's agreement not to enroll any new customer in its Farm Fresh to You residential produce delivery service, or reactivate any inactive consumer in the service, unless it has on file for the customer a valid credit card number and her express authorization to charge her credit card (*id.* ¶ 2.5);

e.       Capay's agreement to provide customers a delivery reminder email no fewer than 72 hours before a delivery, including instructions on how to skip or cancel the delivery (*id.* ¶ 2.6);

f.       Capay's agreement not to deliver produce to any new customers with undeliverable email addresses (*id.* ¶ 2.7);

g.       Capay's installment of a prominent link on its webpage allowing customers to easily and effectively cancel or suspend their Farm Fresh to You accounts, subscriptions, or memberships (*id.* ¶ 2.8); and

h.       Capay's agreement to send to active customers via email a corrective message (*id.* ¶ 2.9).

11.      The Court finds that Class Counsel is experienced in similar class action litigation, and notes that Class Counsel is confident the Settlement is fair, reasonable, and adequate for the Class. In addition, the Class's reaction to the Settlement has been positive, with just four Class Members (0.008%) opting out, and no Class Members objecting.[2] These factors raise a presumption that the Settlement is fair, reasonable, and adequate, which presumption is borne out in this case for the reasons discussed herein.

---

[2] One Class Member submitted a letter in response to the Notice that stated, "I am writing you and [sic] objection in regards to an email about a notice of settlement of class action that I received . . . ." The letter states that its author "know[s] of the delivery service called Farm Fresh To You," and then tells a story of having received unordered produce. The letter does not seem to take any issue with the Settlement itself, and thus cannot fairly be construed as a legal objection to the Settlement notwithstanding its use of the word

3

12.   To the extent it has not already done so, the Court orders Capay:

a.   Pursuant to paragraph 2.2 of the Settlement Agreement, to reverse, negate, and otherwise cancel any and all unpaid sums or debts incurred as a result of home produce delivers made to individual consumers in California during the Class Period (and which remained unpaid as of the Settlement Agreement Effective Date of June 11, 2015), and to forever surrender and waive any future right to collect upon such debts, and refrain from making any attempts, either directly or indirectly, to collect such debts;

b.   Pursuant to paragraph 2.3 of the Settlement Agreement, to provide to those Class Members who requested it a Credit Repair Letter;

c.   Pursuant to paragraph 2.4 of the Settlement Agreement, to provide to the Complaining Class Members Delivery Credits representing two free Farm Fresh to You produce deliveries, of up to $35 per credit for a total Delivery Credit of up to $70, to notify Complaining Class Members of the provision of these Delivery Credits in the manner set forth in paragraphs 2.4.1, and to ensure the requirements of paragraphs 2.4.2 and 2.4.3 of the Settlement Agreement are satisfied and continue to be satisfied for the 12 months following the date of the Delivery Credit Notification Email;

d.   Pursuant to paragraph 2.5 of the Settlement Agreement, to refrain from enrolling any new customer in its Farm Fresh to You residential produce delivery service, or to reactivate any inactive customer in the service, unless Capay has on file for the customer a valid credit card number and his or her express authorization to charge his or her credit card;

e.   Pursuant to paragraph 2.6 of the Settlement Agreement, to ensure that, following entry of Judgment, Capay, within a reasonable amount of time in advance of any Farm Fresh to You residential produce delivery but in no event fewer than 72 hours before any such delivery, send to the customer whose delivery is scheduled an email that reminds the customer of the upcoming delivery and provides directions on how to skip or cancel the delivery if the customer so desires;

---

"objection" in the first sentence of the letter. (*See* Kratz Decl. Ex. D.) To the extent the letter is considered an objection, it provides no basis for believing the settlement is unfair, unreasonable, or inadequate, and accordingly, is overruled.

4

      f.    Pursuant to paragraph 2.7 of the Settlement Agreement, to refrain from processing a new customer's delivery if, upon enrolling the customer, Capay receives a "bounce-back" email or other message indicating that Capay's Delivery Reminder Email may not have reached the customer, unless and until Capay makes contact with the customer, either through a subsequent email or by communicating to the customer via the telephone number required and provided upon enrollment;

      g.    Pursuant to paragraph 2.8 of the Settlement Agreement, to, no later than January 31, 2016, place and maintain in a prominent position on the logged-in customer homepage of the Farm Fresh to You website (www.farmfreshtoyou.com), one or more links that permit a customer to easily and effectively cancel or suspend his or her FFTY produce delivery account, subscription, or membership;

      h.    Pursuant to paragraph 2.9 of the Settlement Agreement, to, within 30 days of the Effective Date, send a one-time email to all active customers who, during the Class Period, enrolled in the Farm Fresh to You residential produce delivery service, at the customer's most recent email address on file, containing the remedial message set forth in the Settlement Agreement;

      i.    Pursuant to paragraph 2.10 of the Settlement Agreement, to reimburse Dahl for the actual costs of Class Notice and administration, up to $20,000

    13.    The Court further orders Class Counsel to reimburse Dahl for any costs of Class Notice and administration that exceed $20,000.

    14.    The Court grants Class Counsel's application for an award of fees and costs of $300,000 and orders Capay to pay this amount in the manner set forth in paragraph 2.11 of the Settlement Agreement.

    15.    In particular, the Court finds that plaintiff and the Class are prevailing parties and accordingly Class Counsel is entitled to an award of reasonable fees and costs pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code § 1780(e), and Rosenthal Fair Debt Collection Practices Act, *id.* § 1788.30(c). In addition, because plaintiff and the Class are "successful" parties, the action has resulted in the enforcement of an important right affecting the public interests, a significant benefit has been conferred on the general public and a large class of persons, and the necessity and financial burden of private enforcement are such as to make an award appropriate, *see Serrano v. Stefan Merli Plastering Co.*, Inc. (2011) 52 Cal. 4th 1018,

1  1020 (quoting Cal. Code Civ. P. § 1021.5, and citing *Woodland Hills Residents Assn., Inc. v. City Council*

2  (1979) 23 Cal. 3d 917, 935), Class Counsel is entitled to an award of reasonable fees and costs pursuant to

3  California's Private Attorney General Act, Cal. Civ. Code § 1021.5.

4      16.    The Court also notes that defendant has contractually agreed to pay Class Counsel fees and

5  costs, further supporting Class Counsel's request, and that equitable principles further justify an award of

6  fees and costs, *see Serrano v. Priest* (1977) 20 Cal. 3d 25, 45.

7      17.    The Court concludes that the billing rates used by Class Counsel are justified by prior awards

8  in similar litigation and evidence presented with Class Counsel's motion showing these rates are in line with

9  prevailing rates in the community. Specifically, the Court finds the following billing rates are reasonable:

| Attorney | Hourly Rate |
|---|---|
| Jack Fitzgerald | $625 |
| Thomas A. Canova | $725 |
| Trevor M. Flynn | $475 |
| Tran Nguyen | $325 |
| Steve Lucero | $350 |

16      18.    The Court concludes that the 443.9 hours of time included in Class Counsel's calculation of

17  its lodestar was reasonably spent on this litigation, including in relation to the results obtained. The Court

18  notes that prior to calculating its lodestar, Class Counsel voluntarily cut 39 attorney hours, representing 8.1%

19  of its raw time records. (Fitzgerald Decl. ¶¶ 10-11.)

20      19.    Given Class Counsel's rates and hours, the Court concludes that Class Counsel's reasonable

21  lodestar is $237,067.60.

22      20.    The Court grants Class Counsel's request for reimbursement of $5,541 in costs recoverable

23  under California Code of Civil Procedure § 1033.5, and reasonably necessary to conduct the litigation.

24      21.    Subtracting the $5,541 from Class Counsel's request for a fee-and-cost award of $300,000,

25  Class Counsel requests $294,459 in fees, representing a 1.24 multiplier to its $237,067.50 lodestar. The Court

26  finds such a multiplier justified by the novelty and difficulty of the questions involved in this litigation; the

27  skill displayed by Class Counsel; the contingent risk and delay in payment experienced by Class Counsel,

28

1   which prosecuted this matter on a contingency basis including advancing all costs and expenses; and most
2   importantly the excellent results obtained for the Class and general public.

3       22.     The Court further notes that Class Counsel's efforts created a "constructive common fund" of
4   $3,944,510, comprised of $3,254,320 in reversed Disputed Debt, $365,190 in Delivery Credits, $300,000 in
5   attorneys' fees and costs, $20,000 for Class Notice and administration, and $5,000 for an enhancement award
6   for the Class Representative. Class Counsel's $300,000 request represents just 7.6% of this monetary relief
7   provided by Capay to the Class under the Settlement Agreement, which is well below ranges typically
8   awarded under a percentage-of-fund analysis. *See Chavez v. Netflix Inc.* (2008) 162 Cal. App. 4th 43, 65.
9   This analysis thus further demonstrates that Class Counsel's request is fair and reasonable.

10      23.     Finally, the Court notes that the Class has been notified of Capay's agreement to pay fees and
11  costs, Class Counsel's intention to seek fees and costs, the amount Class Counsel would seek, and the division
12  of any fees awarded among Class Counsel. After receiving such notice, no Class Member has objected to the
13  fee request, further supporting the Court's conclusion that the amount sought is fair and reasonable.

14      24.     The Court grants Class Representative's application for an enhancement award of $5,000 and
15  orders Capay to pay this amount in the manner set forth in paragraph 2.12 of the Settlement Agreement. The
16  Court finds the amount of the award requested reasonable in light of the steps Mr. Belardes took to protect
17  the interests of the Class by bringing and actively participating in this lawsuit, and the degree to which the
18  Class has benefitted from Mr. Belardes' efforts.

19      25.     To the extent not specifically ordered herein, the Court orders the parties to comply with all
20  obligations arising under the Settlement Agreement, which become effective upon the Effective Date, *i.e.*,
21  that date by which any Judgment entered pursuant to the Settlement Agreement becomes Final.[3]

---

[3] "Final" means (a) if no appeal from the Judgment is filed, the date of expiration of the time for filing or noticing any appeal from the Judgment; or (b) if an appeal from the Judgment is filed, and the Judgment is affirmed or the appeal dismissed, the date of such affirmance or dismissal; or (c) if a petition for certiorari seeking review of the appellate judgment is filed and denied, the date the petition is denied; or (d) if a petition for writ of certiorari is filed and granted, the date of final affirmance or final dismissal of the review proceeding initiated by the petition for writ of certiorari. Settlement Agreement ¶¶ 1.15 – 1.16.

26. Nothing in this Order shall preclude any action to enforce or interpret the terms of the Settlement Agreement. Any action to enforce or interpret the terms of the Settlement shall be brought solely in this Court.

27. The Court expressly retains continuing jurisdiction as to all matters relating to the Settlement, and this Order, and for any other necessary and appropriate purpose.

28. Having approved the Settlement, the Court hereby enters judgment pursuant to California Rules of Court Rule 3.769(h) consistent with all provisions of this Order, including the retention of jurisdiction to enforce the terms of the judgment.

**IT IS SO ORDERED.**

Dated: _12/4_, 2015

Joan M. Lewis

Hon. Joan M. Lewis

8

*Belardes v. Capay Incorporated*, No. 37-2014-00041774-CU-MC-CTL
ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT; AWARDING ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT AWARD; AND ENTERING JUDGMENT

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

JOSHUA RAWA, ELISABETH MARTIN, ROBERT RAVENCAMP, AMY WARD, CYNTHIA DAVIES, CHRISTOPHER ABBOTT, OWEN OLSON, JEANNIE A. GILCHRIST, ZACHARY SHOLAR, MATTHEW MYERS, JOHN W. BEARD, JR., and MICHAEL OVERSTREET on behalf of themselves, all others similarly situated, and the general public,

Plaintiffs,

v.

MONSANTO COMPANY,

Defendant.

Case No. 4:17CV01252 AGF

*Consolidated with Martin v. Monsanto, Case No. 4:17CV02300 AGF*

# MEMORANDUM AND ORDER
##  GRANTING FINAL APPROVAL OF CLASS SETTLEMENT

This consumer class action came before the Court for a hearing on April 17, 2018, on Plaintiffs' motion for approval of a nationwide class settlement, and on Plaintiffs' separate motion for attorney's fees, litigation costs, and service awards for class representatives.  Counsel for the parties and for Objector James Migliaccio appeared in person; a representative of the Claims Administrator appeared by telephone.  Defendant Monsanto Company ("Monsanto") consents to the motion to approve the settlement, and opposes the amount of attorney's fees requested.  For the reasons set forth below, the class will be certified and the settlement agreement will be approved, with attorney's fees set at 28% of the settlement fund.  The requests for notice and administration cost,

litigation costs, and service awards will be granted, and a modified *cy pres* distribution will be ordered.

## **BACKGROUND**

In *Rawa v Monsanto Co*., 4:17CV01252 AGF, filed on April 5, 2017, Plaintiffs claimed that Monsanto engaged in misleading practices by overstating on several of its Roundup Concentrate products' labels, the number of gallons of spray solution the concentrates would make, in violation of the Missouri Merchandising Practices Act ("MMPA"). Briefly, on the front of the containers near the top, a small separate label stated, "Makes Up to" a certain number of gallons. On the back of the containers, a multipage booklet label was attached. On the front of the booklet label was a symbol indicating that the label could be peeled back, with the instruction, "OPEN," in the top right corner. When the front of the booklet label was peeled back as instructed, the booklet advised as to different dilution options, the least concentrated of which would yield the "up to" amount noted on the front label. Plaintiffs, who were purchasers of the products, sought damages and asserted jurisdiction under the Class Action Fairness Act ("CAFA").

On October 13, 2016, approximately six months before the case was filed here, another putative class action challenging the same practices as to the same products, *Martin v. Monsanto*, 4:17CV2300 AGF, was filed in the Central District of California. *Martin* was brought under the Magnuson Moss Warranty Act ("MMWA"), on behalf of a nationwide class; and under various California consumer protection laws, on behalf of a California subclass. The district court in California denied Monsanto's motion to

- 2 -

dismiss the state law claims for failure to state a claim, and on March 24, 2017, certified a statewide California class with respect to the state law claims. The *Martin* plaintiffs did not seek certification of a class with respect to their MMWA claim. The *Martin* plaintiffs initially estimated that damages for the California class were $22 million, but then corrected the amount to approximately $15.5 million, based on information from Monsanto that a certain product that was included in the damages estimate did not have an offending label.

Plaintiffs' counsel in *Martin* and *Rawa* were the same. On August 22, 2017, in light of a tentative nationwide settlement, the parties in *Martin* jointly requested that *Martin* be transferred to this Court, and on August 23, the California district court granted the motion, finding good cause, in part because "transfer will promote an efficient and economical consideration of the proposed nationwide settlement, and transfer will not affect the substantive rights of the [California] class certified in this action." *Martin*, ECF No. 108.

Upon transfer to this Court, *Martin* was provisionally consolidated with *Rawa* and on September 22, 2017, an Amended Consolidated Class Action Complaint was filed herein. Meanwhile, according to Plaintiffs' counsel's declaration dated October 4, 2017, nine related actions were filed in other states. After the nationwide settlement agreement was reached, Plaintiff's counsel herein reached out to each of the plaintiffs in the nine related actions. All agreed that the nationwide settlement was strong, and worth supporting. Thus, each of these plaintiffs was referred to Plaintiffs' counsel, to be added to the consolidated complaint, and their original actions were dismissed. ECF 32-1 at 3.

- 3 -

The consolidated complaint proposes the following nationwide class:

> All persons in the United States, who, during the Class Period,[1] purchased in the United States, for personal or household use certain Roundup Concentrate products whose neck or shoulder label stated that the product "makes up to" a specified number of gallons.

The consolidated complaint alleges that class members would have paid from 40% to 50% less for the concentrate products had they paid the market price for the number of gallons of spray solution actually received. The 12 representative Plaintiffs are from ten states: Missouri, California, Illinois, Kentucky, Colorado, North Carolina, Indiana, Georgia, Tennessee, and Pennsylvania. They include the Plaintiffs in *Rawa*, *Martin*, and the other related cases.

Two causes of action are asserted in the consolidated complaint – one under the MMPA and one under the MMWA. ECF No. 28. On October 4, 2017, Plaintiffs, with Monsanto's consent, moved for preliminary approval of a proposed nationwide class settlement, pursuant to a Settlement Agreement signed that day (ECF No. 32-1 at 7-23), providing for a common fund of $21.5 million. By Order dated December 6, 2017, the Court granted the motion. The Court conditionally certified the proposed class for settlement purposes only (the "Settlement Class"). The Court also approved the parties' selection of a Claims Administrator, approved the form and content of the proposed Class Notice and the proposed method of its dissemination, and set a schedule for the

---

[1]    "Class Period" refers to a time period not to exceed the applicable statute of limitations for the false advertising law in the state where each claimant is domiciled, triggered by the date the complaint was filed in *Martin* for California residents, and by the date the complaint was filed in *Rawa* for all other states' residents.

notice period, the opt out and objection periods, and a final approval hearing.  ECF No.
41.  The approved notice form advised Settlement Class members how to file claims.
The notice also advised, among other things, that if funds remained in the common fund
after all (valid) claims and expenses were paid, "any remaining amounts will be donated
*cy pres* to one or more Court-approved organizations, meaning the remaining funds will
be donated to organizations that promote the interests of absent class members."  ECF
No. 39-1 at 2.  The proposed *cy pres* recipients were disclosed on the settlement website.

      The Settlement Agreement provides for a payout to an individual claimant of one-
half the average retail price of the product(s) he or she purchased.  The Settlement
Agreement provides that claims are limited to 20 units per household and limits refunds
to those who submitted a Claim Form that has been reviewed and validated by the
Claims Administrator.  Proof of purchase was not required.  The Agreement states that
the Claims Administrator retained sole discretion in accepting or rejecting a Claim
Form.  It further provides that payments to claimants are subject to pro-rata reduction,
depending on the total valid claims submitted.  Class counsel and class representatives
were to request fees and service awards to be paid from the common fund, and
Monsanto could oppose such requests.   And the Agreement states, "Costs for
settlement, notice, claims administration, incentive fees, and any other fees, including
attorney's fees, will be paid from the Common Fund."  ECF No. 32-1 at 15.

      The Agreement includes a "quick pay provision," providing that the "the Claims
Administrator shall pay to Class Counsel from the Common Fund the amount of
attorneys' fees and costs awarded by the Court within seven (7) calendar days of entry of

Judgment, notwithstanding the filing of any appeals, or any other proceedings which may delay the effective date of the settlement or a final judgment in the case . . . ."  ECF No. 32-1 at 15.

In support of their motion for approval of the settlement, Plaintiffs assert that the evidence suggests the Settlement Class consists of about 541,000 members.  ECF No. 49 at 1 n.2.  Extensive and varied notice procedures were employed by the Claims Administrator, as set forth in its March 13, 2018 declaration.  The Claims Administrator established a settlement website with general information, important deadlines, and downloadable forms; and established an automated toll-free helpline.  The website and helpline number were listed in the over 123,000 mailed and emailed notices sent to potential class members.  ECF No. 42-3.  In addition, the Claims Administrator implemented print publication notice, keyword search notice, social media notice, and online video and online radio notice.  ECF. No. 42-2.

By declaration dated March 23, 2018, the Claims Administrator stated that it had received approximately 94,000 claims.  The Claims Administrator disallowed claims for various reasons, including claims filed out of time and beyond the limitations period.  "[P]ursuant to its standard practice to evaluate claims to ensure that [claims] are not fraudulent," the Claims Administrator excluded certain claims as fraudulent, such as when multiple claims were filed from the same IP address.   Based on its analysis of sales and use data, the Claims Administrator also determined that a disproportionate number of the largest containers – which paid the largest claim amounts – were asserted by some claimants, suggesting fraud.  Accordingly, the Claims Administrator excluded

- 6 -

any claims for over 18 bottles for Super Concentrate 53.7 oz., over 16 bottles for Super Concentrate 64 oz., and over 14 bottles for Super Concentrate 128 oz.

According to Plaintiffs' counsel's April 14, 2018 sworn declaration, as of April 13, 2018, this resulted in 70,628 validated claims, valued at $10,774,061, which represents a claims rate of approximately 13%. ECF No. 54-1 at 6. As of March 31, 2018, notice and administration costs were $630,944. *Id.* By separate motion, Plaintiffs seek attorney's fees of one-third of the common fund, which would result in fees of $7,166,666; notice and administration costs which would be approximately the amount noted above; litigation expenses of approximately $97,614; and service awards to the representative Plaintiffs totaling $42,500, including a $10,000 award for the representative Plaintiff in *Martin*.

If the Court were to award the full amount of attorney's fees, litigation expenses, notice and administration costs, and service awards that Plaintiffs have requested, approximately (depending on final amounts of costs and expenses) $2,788,218 of the common fund would remain. The parties have suggested that this remainder be distributed *cy pres* to four recipients: 30% to the National Consumer Law Center ("NCLC"); 30% to the Better Business Bureau's National Advertising Division; 20% to Gateway Greening (a nonprofit that educates and empowers people to strengthen their communities through gardening and urban agriculture in the St. Louis, Missouri, area); and 20% to Kids Gardening (a nonprofit that seeks to improve nutritional attitudes and educational outcomes through garden-based learning, nationally). This suggestion was posted on the settlement website.

Monsanto consents to the motion for final approval of the settlement in all respects except attorney's fees. Monsanto agrees that class counsel is entitled to reasonable attorney's fees from the common fund, but argues for an award of no more than the "standard" 25% of the class fund, which would amount to $5,375,000 in attorney's fees. Monsanto states that while "a great result was achieved" for the Settlement Class, the vast majority of the time spent by class counsel (1,703 hours through March 12, 2018) was limited to a single case that took only a year from the date of filing to a signed settlement agreement, with only two fact and two expert depositions conducted.

According to Plaintiffs, only ten Settlement Class members opted out. Two individuals have filed objections to the Settlement Agreement: James Migliaccio and Patrick Sweeney. Migliaccio is a member of the class from California. In his written objection, he argues that the nationwide Settlement Class should not be certified because the approximately 51,000 California class members are positioned for a greater recovery than class members from other states, because, he contends, California has stronger consumer protection laws. Thus, he argues, the California members received inadequate representation. He further argues that Plaintiffs' counsel made no showing that Missouri law would apply to all proposed class members, and if differing state laws applied, the questions of law or fact common to all class members would not predominate over questions affecting only some members.

Migliaccio also argues that the Claim Administrator's change in the number of bottles of Roundup Concentrate a claimant could claim is an improper "rewriting" of the

Settlement Agreement. Migliaccio also objects to payment of more than $7 million in attorney's fees for less than a year's work. He argues that this amount in attorney's fees would result in an average billing rate of approximately $2,700 an hour (adding the hours spent by attorneys in the related cases), and a lodestar disclosure should be required. Objector Sweeney only objects to the request for attorney's fees, arguing that the fees should be no higher than 25% of the common fund. He also argues that the quick-pay provision "escalates the natural conflict between class counsel and class members." ECF No. 48 at 2.

Plaintiffs assert, and the Objectors do not dispute, that Sweeney filed a claim for one bottle of Roundup Concentrate Plus 32 oz., for which he will be issued a refund of $11; and Migliaccio filed a claim for five bottles of Roundup Super Concentrate 35 oz., for which he will be issued a refund of $105. Plaintiffs argue that Migliaccio's objection to class certification and approval of the settlement should be overruled, in light of a recent Eighth Circuit case, *Keil v. Lopez*, 862 F.3d 685 (8th Cir. 2017) (affirming approval of a nationwide class settlement in a consumer false advertising case), that rejected an argument similar to Migliaccio's based on differing consumer protection laws in different states whose citizens were members of a nationwide class.[2]

---

[2]    Migliaccio states that he is represented by local counsel Peter Woods, but is also represented by Christopher Bandas and Robert Clore, who reserve the right to make an appearance. ECF No. at 4-5. Plaintiffs bring to the Court's attention that Bandas and Sweeney are serial or "professional" objectors whose objections numerous courts have found meritless. ECF No. 49 at 2-7.

With respect to Migliaccio's argument that the Claims Administrator "rewrote" the Settlement Agreement, Plaintiffs first argue that Migliaccio lacks standing to bring this argument because his refund for the five bottles he purchased is unaffected by the change, and more fundamentally, the statement in the Settlement Agreement that claims are limited to 20 units per household does not mean that all claims for 20 units would be honored, regardless of their validity.

Prior to the hearing, the Court required Plaintiffs' counsel to submit detailed billing statements and hourly rates. Counsel submitted unredacted billing records for *in camera* review, as well as redacted records for the parties. The records show a lodestar amount of $1,136,390. ECF No. 54.

At the hearing, counsel for the parties represented that Monsanto has revised its labeling of Roundup concentrate products in response to the *Martin* case and this action. Counsel for the parties and the Claims Administrator described the notice and claims process, including that claimants did not have to provide proofs of purchase. Counsel and the Claims Administrator explained how decisions were made to minimize fraudulent claims. They explained the propensity for fraudulent claims, based on the Claims Administrator's experience, given that no proof of purchase was required, the settlement was announced on various websites, and the recovery level was relatively high. They explained how fraud was detected as to certain claims, based primarily on the volume of claims filed from a single online filing site, the amount of Roundup Concentrate supposedly purchased that exceeded "heavy use" for households (a usage amount based on years of studies and giving the claimants the benefit of the doubt), and

- 10 -

the disproportionate number of claims for the items with the highest refunds. Fraud was also detected in other ways such as claims for purchases from areas where the products were not sold.

In addition to the decision to exclude claims for more than 18, 16, and 14 bottles, respectively, of the three largest products, the Claims Administrator also disallowed a claim in its entirety if it sought a refund for more than 20 bottles. But this only accounted for a small number of disallowed claims, as the vast majority of claims were filed online and the online process did not allow more than 20 units to be claimed.

Plaintiffs' counsel, counsel for Monsanto, and counsel for Migliaccio all presented their respective arguments on all aspects of the case, including the amount of attorney's fees that should be allowed. Counsel for Monsanto represented that Monsanto would not be willing to amend the Settlement Agreement to give claimants more than 50% of the purchase price of the Roundup concentrate they bought, to reduce the *cy pres* remainder. He stated that 50% of the purchase price constitutes at least a 100% recovery, that the term was a material part of the Settlement Agreement, and that an increase would result in a windfall to claimants.

## **DISCUSSION**

### **Settlement Class Certification**

As noted above, the Court conditionally certified the proposed nationwide class for settlement purposes. Final certification is governed by Federal Rule of Civil Procedure 23(b), which provides that class certification is proper only if the four conditions of Rule 23(a) are met and, as relevant here, "the court finds that questions of

- 11 -

law or fact common to class members predominate and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). The four conditions of Rule 23(a) are "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 690 (9th Cir. 2018).

The Court finds that final class certification under Rule 23 is appropriate because (1) the class members are so numerous that joinder of all class members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims of Plaintiffs as Class Representatives are typical of the claims of the class; and (4) Plaintiffs and their counsel fairly and adequately represent and protect the interests of all Settlement Class members. Plaintiffs' counsel is competent and experienced in class action litigation, and specifically in litigation involving false and misleading advertising. The fact that some states may have stronger consumer protection laws than others does not undermine the Court's conclusion on any of the four Rule 23(a) requirements, as will be addressed below in assessing the overall fairness of the settlement.

Turning to the requirements of Rule 23(b), the Court concludes that questions of law or fact common to the Settlement Class members predominate over any questions affecting only individual Settlement Class members. Questions of law and fact common

to the proposed Settlement Class include questions such as whether the claimed "Makes up to" amount of gallons was material to purchasers, whether a reasonable consumer would open the sealed pamphlet on the Roundup Concentrate products that might have alerted the consumer to a different solution yield, and the proper amount of damages. And all proposed Settlement Class members were allegedly subjected to the same misleading and deceptive conduct when they purchased the Roundup Concentrates, and allegedly suffered economic injury because the Roundup Concentrates at issue are misrepresented in the same manner.

Moreover, class treatment is superior to other options for resolution of the controversy because the relief sought for each proposed Settlement Class member is small, such that, absent representative litigation, it would be infeasible for members to redress the wrongs done to them. Thus, the Court grants final certification to the Settlement Class, under Rule 23(a) and (b). The Court reaffirms the Preliminary Approval Order appointing the Plaintiffs as Class Representatives and appointing The Law Office of Jack Fitzgerald, PC, and Jackson and Foster LLC, as well as their current attorneys, as Class Counsel.

## Approval of Nationwide Class Settlement

"The court's role in reviewing a negotiated class settlement is . . . to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Keil,* 862 F.3d at 693.

> To determine whether a settlement is "fair, reasonable, and adequate," district courts must analyze . . . four factors . . . (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the

- 13 -

defendant's financial condition; (3) the complexity and expense of further
litigation; and (4) the amount of opposition to the settlement.

*Id.* (citing *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir.1988)).  "The single most
important factor in determining whether a settlement is fair, reasonable, and adequate is
a balancing of the strength of the plaintiff's case against the terms of the settlement."
*Van Horn*, 840 F.2d at 607.

### 1. Merits of Plaintiffs' Case Weighed Against the Terms of the Settlement

As for the first factor, the outcome of going to trial would not be certain if the
settlement is not approved.  Although Plaintiffs survived motions to dismiss their state
law claims and prevailed on their motion for class certification in the *Martin* case, they
would still have to prevail at trial and contend with any appeals.  There are several issues
that remain contested, including whether Defendant's purported misrepresentations were
material, and the extent of damages.  The Settlement Agreement provides for direct
benefits to the class, with class members who submitted valid claims receiving an
amount equal to or in excess of their out-of-pocket loss.  Indeed, the percentage of
recovery per unit purchased exceeds the amount of recovery in Plaintiffs' expert
damages report, and far exceeds Defendant's damages analysis.  In addition, Monsanto
changed its labelling in response to the litigation.

This is a strong result in the face of an uncertain trial outcome.  Weighing the
uncertainty of relief against the immediate benefit in the settlement, as well as the
remuneration that equals or exceeds out-of-pocket loss, this factor favors approving the
settlement.  *See, e.g., Khoday v. Symantec Corp*., No. 11-CV-180 (JRT/TNL), 2016 WL

1637039, at *5 (D. Minn. Apr. 5, 2016), *Rep. & Recommendation adopted*, No. 11-CV-0180 (JRT/TNL), 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017); *see also Keil*, 862 F.3d at 695-96 (holding that the first factor weighed in favor of approving a nationwide settlement because "although the district court certified the class for purposes of settlement, it is uncertain whether, if the case proceeded to trial, this multistate class of consumers would have created intractable management problems requiring the district court to decertify it").

Further, the amount of the common fund negotiated by Plaintiffs is excellent, providing full recovery for claimants. As noted above, extensive and varied notice procedures were employed by the Claims Administrator, and the claim rate of approximately 13% is quite high, further tipping this factor in favor of approval. *See Keil*, 862 F. 3d at 696 (noting, in discussing first factor, that "a claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness").

### 2. Defendant's Financial Condition

With respect to Monsanto's financial condition, Monsanto voluntarily agreed to the payment amount in the Settlement Agreement, and there is no indication that Monsanto's financial condition would prevent it from making all the payments called for

or any damages awarded following trial.  As such, this factor is neutral.  *See Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015).[3]

### 3. Complexity and Expense of Further Litigation

Third, the complexity and expense of further litigation could be significant. Plaintiffs are not certain to prevail at trial, with substantial questions posed on issues of materiality and damages.  Further, "[c]lass actions, in general, place an enormous burden of costs and expense upon parties."  *See id*.  Absent approval of the settlement, what remains is one or more trials, perhaps in multiple forums, which are likely to be lengthy and complex, with an unpredictable outcome and post-trial motions and appeals, all while class members remain uncompensated and litigation time, stress, fees, and costs increase for both sides.  *See id*.

### 4. Amount of Opposition to the Settlement

Notwithstanding the large size of the Settlement Class and the extensive public notice, there are only two Objectors.  The Objectors do not contend that the Settlement Agreement is the product of fraud or collusion.  While both Objectors argue that attorney's fees of one-third of the settlement fund are excessive, there is only one objection to the other aspects of the Settlement Agreement.  This weighs in favor of approval.  *See Keil*, 862 F.3d at 698 (finding that 14 objections where class consisted of

---

[3]    One could argue that Monsanto's financial condition tips in favor of approval, as absent a nationwide settlement, Monsanto has the resources to vigorously litigate the various cases.

approximately 3.5 million households were "miniscule").  It is also telling that the plaintiffs in the related cases all joined in the settlement.

In sum, three factors weigh in favor of approval and one is neutral.  The Court further finds that the Settlement Agreement is the result of serious, informed, non-collusive arms-length negotiations, involving experienced counsel familiar with the legal and factual issues of this case.

After careful consideration of the claims process employed, the Court also finds that the Claims Administrator acted properly and within its discretion to accept or decline claims.  The Court accepts the Claims Administrator's assessment as to the propensity for fraud, and for the reasons discussed above, finds that the procedures to exclude untimely claims and those deemed fraudulent were reasonable.  *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 667 (7th Cir. 2015) ("[Courts] can rely, as they have for decades, on claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court to take into account the size of the claims, the cost of the techniques, and an empirical assessment of the likelihood of fraud or inaccuracy.").

Migliaccio's argument based on the fact that the settlement's allocation plan distributes the fund equally among class members of all states, without accounting for the varying strengths of different states' unfair trade practice statutes, is rejected based on the Eighth Circuit's decision in *Keil*, which held that a nationwide class action settlement need not account for differences in state law, and further, that a district court need not consider evidence regarding the valuation of claims under the laws of different

states. *Keil*, 862 F.3d at 700. The district court's obligation is "to evaluate the plaintiffs' case in its entirety rather than on a claim-by-claim basis." *Id*. Moreover, at the hearing, Migliaccio was unable to identify any material difference between California law and the law of other states that would offer California claimants a greater measure of damages. The Court also rejects Migliaccio's argument, based on an unsigned and unadmitted statement by another attorney previously involved in *Martin*, that Plaintiffs' counsel had a conflict of interest.

The Court concludes that the settlement is fair, reasonable, and adequate. The Court will next address the issues of attorney's fees and a *cy pres* distribution.

## **Attorney's Fees**

In class action settlement cases,

[c]ourts utilize two main approaches to analyzing a request for attorney fees. Under the 'lodestar' methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action. Another method, the 'percentage of the benefit' approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation. It is within the discretion of the district court to choose which method to apply, as well as to determine the resulting amount that constitutes a reasonable award of attorney's fees in a given case. To determine the reasonableness of a fee award under either approach, district courts may consider relevant factors from the twelve factors listed in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719-20 (5th Cir. 1974).

*Keil*, 862 F.3d at 701 (citations omitted).

A lodestar check can help a court determine if use of percentage of the benefit method results in a reasonable fee award. *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir.

- 18 -

2017). The twelve *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 719-20.

Upon careful consideration of all relevant factors, the parties' arguments, Plaintiff's counsel's billing records, and the case law, specifically in the Eighth Circuit, on attorney's fees in class action settlements, the Court concludes that a fee award of 28% of the common fund is just and reasonable in this case. This results in an award of $6,020,000. Among the *Johnson* factors most favoring this award are the novelty and uncertainty of the claims, the skill required by counsel to perform the work properly, especially on a nationwide basis, time limits imposed in the *Martin* case while it was pending in California, the experience and ability of the attorneys, and significantly, the large amount involved and excellent result achieved. The corresponding lodestar multiplier of 5.3 is still quite high compared to similar cases in this circuit.[4] *See, e.g.,*

---

[4] The lodestar multiplier if one third of the common fund were awarded in attorney's fees would be 6.3. From their fee award, Class counsel will also reimburse the plaintiff's attorneys in the related cases some amount.

*Keil* (approving attorney's fee award of 25% of $32 million settlement fund, with lodestar multiplier of 2.7). The Court does not perceive this award as "penalizing" Plaintiffs' counsel for resolving the case relatively quickly; nor can the amount reasonably be seen as insufficient to entice competent counsel to undertake class action consumer fraud cases.

On the other hand, the Court does not believe this award is too high. Plaintiffs' counsel took on a case with little precedent and handled the *Martin* case in a speedy and efficient manner, including in obtaining class certification within a little over five months of filing the lawsuit. Plaintiffs' counsel negotiated an excellent settlement for the class and promptly and efficiently obtained the approval of the plaintiffs in the similar lawsuits filed in other jurisdiction to join the settlement, rather than pursue protracted proceedings through a multidistrict litigation process. And Plaintiffs' counsel ensured an effective notice process, achieving a 13% claim rate.

In response to Sweeney's conclusory objection, the Court notes that the quick-pay provision will not harm the claimants given the structure of the Settlement. And courts routinely approve quick-pay provisions such as that contained in the Settlement Agreement here. *See, e.g., Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016) ("The quick-pay provision does not harm the class members in any discernible way, as the [benefit amounts] available to the class will be the same regardless of when the attorneys get paid."); *In re: Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *21 (N.D. Ohio Sept. 23, 2016) ("The

essential purpose of a quick-pay clause is to disincentivize lawyers who are 'professional objectors.'").

<u>**Notice and Administration Costs, Litigation Costs, and Service Awards**</u>

The Court will award these items in the amounts requested.  The Court finds the amounts are reasonable.  With respect to the service awards,  "[c]ourts often grant service awards to named plaintiffs in class action suits to promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits," and courts in this circuit regularly grant service awards of $10,000 or greater.  *Caligiuri*, 855 F.3d at 867 (citation omitted).   The Court approves service awards to the Class Representatives of $10,000 to Elizabeth Martin, $5,000 each to Joshua Rawa and Robert Ravencamp, and $2,500 each to Amy Ward, Cynthia Davies, Christopher Abbott, Owen Olson, Jeannie Gilchrist, Zachary Sholar, Matthew Myers, John Beard, and Michael Overstreet.  Although the service award to Martin is sizeable, Martin participated in drafting the complaint in the *Martin* case, reviewed the demand letter sent to Monsanto on her behalf, participated in discovery, and sat for a five and one-half hour deposition in support of the class certification motion.  *See* ECF No. 43-2 at 7-9.

Thus, in addition to attorney's fees of $6,020,000, the following amounts will be paid from the common fund: notice and administration costs of $630,944, litigation costs of $97,614, and $42,500 in service awards to the representative Plaintiffs.  The Court recognizes that the administration and litigation costs will increase slightly, depending on remaining tasks for the Claims Administrator and Plaintiffs' counsel.

<u>*Cy Pres* **Award**</u>

In light of the above rulings, approximately $3,934,881 million will remain in the common fund. In *David P. Oetting, Class Representative v. Green Jacobson, P.C.*, 775 F.3d 1060 (8th Cir. 2015), the Eighth Circuit expressed its concerns, and those of other federal courts, with *cy pres* distributions of unclaimed class action settlement funds. The appellate court discussed with approval the American Law Institute ("ALI") *cy pres* criteria:

> A court may approve a settlement that proposes a cy pres remedy . . . . The court must apply the following criteria in determining whether a cy pres award is appropriate:
>
> (a) If individual class members can be identified through reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement proceeds should be distributed directly to individual class members.
>
> (b) If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.
>
> (c) If the court finds that individual distributions are not viable based upon the criteria set forth in subsections (a) and (b), the settlement may utilize a cy pres approach. The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class. If, and only if, no recipient whose interest reasonably approximate those being pursued by the class can be identified after thorough investigation and analysis, a court may approve a recipient that does not reasonably approximate the interests being pursued by the class.

*Id*. at 1063-62.

The Eighth Circuit agreed with the Fifth Circuit that "'[b]ecause the settlement funds are the property of the class, a *cy pres* distribution to a third party of unclaimed settlement funds is permissible only when it is not feasible to make further distributions to class members, except where an additional distribution would provide a windfall to class members with liquidated-damages claims that were 100 percent satisfied by the initial distribution.'" *Id*. at 1064 (quoting *Klier v. Elf Atochem N. Am.*, *Inc.*, 658 F.3d 468, 473-82 (5th Cir. 2011)). The Eighth Circuit noted that a class should be notified of a *cy pres* proposal before a *cy pres* recipient is chosen, and the Court emphasized that "when a district court concludes that a *cy pres* distribution is appropriate . . . such a distribution must be for the next best use . . . for indirect class benefit," and "for uses consistent with the nature of the underlying action and with the judicial function." *Id*. at 1067; *see also Caligiuri*, 855 F.3d at 866-67; *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682-84 (8th Cir. 2002) (holding that "the unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated"). The Eighth Circuit directed that district courts "carefully weigh all considerations, including the geographic scope of the underlying litigation, and make a thorough investigation to determine whether a recipient can be found that most closely approximates the interests of the class." *Id*. (citation omitted).

The Court is not unmindful of criticisms that have been levied against *cy pres* awards in the class action context. *See Marek v. Lane*, 571 U.S. 1003, 134 S. Ct. 8, 9

(2013) (Roberts, J., noting that there exist "fundamental concerns surrounding the use of [*cy pres*] remedies in class action litigation, including when, if ever, such relief should be considered; how to assess its fairness as a general matter; whether new entities may be established as part of such relief; if not, how existing entities should be selected; what the respective roles of the judge and parties are in shaping a *cy pres* remedy; how closely the goals of any enlisted organization must correspond to the interests of the class; and so on"); Martin H. Redish, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617 (July 2010).

Nonetheless, the Court finds such an award to be appropriate here for several reasons. First, the identification and distribution process was fair and reasonable. The Claims Administrator made proper and extensive efforts to notify potential claimants, resulting in a high claims rate of 13%. The claims process was favorable to claimants, as they could submit claims easily on line, and no proof of purchase was required. Rather than a nominal or nonexistent return to claimants – the source of much of the criticism of *cy pres* awards – claimants are receiving what the parties have reasonably characterized as at least 100% of their damage amounts. In addition, the class action resulted in a further benefit to the class, as Monsanto changed its product labelling.

With regard to the second ALI factor, while a further distribution to claimants is mechanically feasible, the Court concludes that an additional distribution to class members who filed valid claims would provide a windfall to them, as they are already getting the full amount of their out-of-pocket damages by the proposed distribution. And requiring that a windfall be distributed to class members in consumer cases like

this, where class members are not required to provide any proof of purchase, would only serve to encourage fraudulent claims. Of course, the alternative of structuring the settlement in a manner that provides a reversion to the Defendant is even less attractive; here the large settlement fund negotiated by Plaintiffs serves to deter like conduct in the future, which confers an indirect but significant benefit to the class members.

Lastly, the class was notified of a potential *cy pres* distribution, although not of the actual amount, in the notice sent by the Claims Administrator; and was notified of the recipients suggested by the parties, on the settlement website. No class member objected to the concept of a *cy pres* award or to the proposed recipients. In sum, the Court concludes that a *cy pres* distribution of approximately $3.9 million is reasonable.

The Court further concludes that the first two organizations suggested by the parties as *cy pres* recipients are well tailored to the nature of this lawsuit. Furthermore, they are nationwide organizations, as appropriate for a case that involves a nationwide harm. *See In re Airline Ticket*, 3017 F.3d at 683-84. Numerous courts have approved *cy pres* awards to the NCLC in nationwide consumer class actions claiming false advertising. *See, e.g., Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB, 2015 WL 758094, at *8 (N.D. Cal. Feb. 20, 2015).[5] The Better Business Bureau's National

---

[5]     The court in *Miller* described the NCLC as follows:

> The [NCLC] advocates on behalf of consumers, providing legal services and aid, and representing them on matters of interest before Congress and state legislatures and by filing amicus briefs in courts. In 2009, it published "Consumer Protection in the States: A 50–State Report on Unfair and Deceptive Acts and Practices Statutes," which analyzed and summarized

Advertising Division monitors national advertising in all media for good and services, enforcing high standards of truth and accuracy, and accepts complaints from consumers.

However, as laudable as Gateway Greening and Kids Gardening appear to be, the former serves to benefit only St. Louis residents, and neither charitable organization can fairly be characterized as the "next best use," or addresses the harm alleged, namely, the misleading of consumers.

Accordingly, the Court will order that 50% of the funds available for *cy pres* distribution be paid to the National Consumer Law Center, and 50% paid to the Better Business Bureau's National Advertising Division.

## Notice of Disallowed Claims

The Court does have some concern with respect to the notification process for disallowed claims. At the hearing, the Claims Administrator confirmed that consistent with its normal practices, no notice has been provided to those claimants whose claims were disallowed. Rather, the Claims Administrator intended to post on the website that claims checks had been distributed, advise that the claims of those who had not received a check had likely been disallowed, and provide information for such individuals to make further inquiry of the Claims Administrator. Although the Court, in general, does

---

the unfair-and-deceptive-acts-and-practices (UDAP) laws that protect consumers in each state and the District of Columbia, spotlighted limitations in these laws and in their enforcement, and made proposals for reform. It also provides help to litigation counsel representing persons with incomes below 200% of the federal poverty line in matters involving consumer sales and services.

*Miller*, 2015 WL 758094, at * 8.

not quarrel with granting the Claims Administrator sole discretion in accepting or rejecting Claim Forms, here the Court believes that some further notice and an opportunity to substantiate a claim should be provided with respect to certain of the disallowed claims. Of primary concern are the non-electronic claims for more than 20 units that were disallowed in their entirety, and those class members whose claims were impacted by the Claims Administrator's exclusion of claims for over 18 bottles for Super Concentrate 53.7 oz., over 16 bottles for Super Concentrate 64 oz., and over 14 bottles for Super Concentrate 128 oz.

Specifically, the Claims Administrator will be required to post on the website the date on which distribution is being made, advise that certain claims have been disallowed, and provide a description of the types of claims disallowed. This notice should advise the class members of the decision to reduce the maximum number of units per household with respect to the larger products. Class members whose claims have been disallowed for reasons such as submitting non-electronic claims for more than 20 units, or submitting claims for more than the reduced number of units of the larger concentrates, should be given at least 60 days from the distribution date to submit tangible proof of their purchases, such as verifiable receipts.

At the hearing, Monsanto recognized that a reserve could be established to cover any previously disallowed claims that might hereafter be allowed by the Claims Administrator based on appropriate proof of purchase. The parties are directed to confer with the Claims Administrator with respect to an appropriate reserve amount, and within fourteen (14) days of the date of this Order, advise the Court of the proposed reserve

- 27 -

amount and proposed procedure and language to notify claimants how they could substantiate disallowed claims.   Once a proposal by the parties is approved by the Court, the Court will dismiss the case and enter judgment.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's Motion for Final Approval of the Class Action Settlement is **GRANTED**, as provided herein.  (ECF No. 42.)

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorney Fees, Costs, and Service Awards is **GRANTED in part**, as provided herein.  (ECF No. 43.)

**IT IS FURTHER ORDERED** that the parties and the Claims Administrator shall implement the Settlement Agreement in accordance with its terms and this Court's rulings herein.

Dated this 25th day of May, 2018.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE