UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELODIE PASSELAIGUE, on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br><br>      v.<br><br>GETTY IMAGES (US), INC., GETTY IMAGES, INC., BILL DIODATO PHOTOGRAPHY, LLC, and BILL DIODATO,<br><br>                Defendants. | Case No. 16 Civ. 01362 (VSB) (BCM) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................................................... ii

I.   COUNSEL'S PRE-FILING INVESTIGATION AND SUBSEQUENT DISCOVERY DEMONSTRATED NO FACTUAL BASIS FOR PLAINTIFF'S RECOLLECTION ............................................................................. 1

II.   PLAINTIFF CANNOT RECANT HER UNAMBIGUOUS TESTIMONY AS LACK OF MEMORY WHEN NO OBJECTION WAS MADE AT HER DEPOSITION AND HER LATER-PROPOSED AMENDMENT MATCHES HER TESTIMONY ....................................................................................... 5

III.   PLAINTIFF AND HER COUNSEL CANNOT ESCAPE RULE 11 SANCTIONS BASED ON PROCEDURAL TECHNICALITIES AND FACTUAL DIVERSIONS ................................................................................. 7

IV.   PLAINTIFF CANNOT RECOVER ANY ATTORNEY'S FEES, MUCH LESS THE OUTLANDISH FEES HER COUNSEL RACKED UP IN A MATTER OF 16 DAYS ........................................................................................ 9

CONCLUSION ........................................................................................................................ 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Australia and New Zealand Banking Grp. Ltd. Secs. Litig.*,
    712 F. Supp. 2d 255 (S.D.N.Y. 2010)................................................................................3

*Bonacci v. Lone Star Int'l Energy, Inc.*,
    No. 98 Civ. 0634, 1999 WL 76942 (S.D.N.Y. Feb. 16, 1999) ..........................................9

*Brandt v. Schal Assocs., Inc.*,
    121 F.R.D. 368 (N.D. Ill. 1988)..........................................................................................1

*Calloway v. Marvel Entm't Grp.*,
    111 F.R.D. 637 (S.D.N.Y. 1986) ...................................................................................2, 3

*Carlton Grp., Ltd. v. Tobin*,
    No. 02 Civ. 5065, 2003 WL 21782650 (S.D.N.Y. July 31, 2003) .....................................9

*Eastway Const. Corp. v. City of N.Y.*,
    762 F.2d 243 (2d Cir. 1985)................................................................................................9

*Gambello v. Time Warner Commc'ns, Inc.*,
    186 F. Supp. 2d 209 (E.D.N.Y. 2002) ................................................................................4

*L.I. Head Start Child Dev. Servs., Inc. v. Frank*,
    165 F. Supp. 2d 367 (E.D.N.Y. 2001) ................................................................................4

*Mareno v. Jet Aviation of Am., Inc.*,
    970 F.2d 1126 (2d Cir. 1992)..............................................................................................4

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    128 F.R.D. 243 (N.D. Ill. 1989)..........................................................................................3

*Mercury Air Grp., Inc. v. Mansour*,
    237 F.3d 542 (5th Cir. 2001) ..............................................................................................1

*O'Brien v. Alexander*,
    101 F.3d 1479 (2d Cir. 1996)..............................................................................................4

*Ramashwar v. Espinoza*,
    No. 05 Civ. 2021, 2006 WL 36752 (S.D.N.Y. Jan. 6, 2006)..............................................4

*Reichmann v. Neumann*,
    553 F. Supp. 2d 307 (S.D.N.Y. 2008).................................................................................3

*Rosary-Take One Prod. Co. P'ship v. New Line Distrib., Inc.*,
    No. 89 Civ. 1905, 1996 WL 79328 (S.D.N.Y. Feb. 23, 1996) ...........................................6

*Safe-Strap Co. v. Koala Corp.*,
    270 F. Supp. 2d 407 (S.D.N.Y. 2003) ........................................................................................7

**Rules**

Fed. R. Civ. P. 11 ................................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 11, Advisory Committee Notes to the 1993 Amendments ...........................4, 7, 8

Plaintiff's Opposition to Defendants' Motion for Rule 11 Sanctions[1] ("Opposition") – complete with a 31-page attorney declaration and 74 exhibits ("Opp. Decl." and "Opp. Ex.") – is rife with irrelevant information, unsupportable theories, and hyperbolic distractions.  It is a frantic attempt to smooth over the recently-exposed errors in judgment and made-up facts that have sustained this meritless litigation for nearly three years.  In fact, the Opposition further exposes the conduct that prompted this motion in the first place, detailing a pre-filing inquiry that, despite its breadth, could not possibly substantiate Plaintiff's allegation that the model release ("Release") was signed in 2004, followed by a years-long discovery effort that for Plaintiff has proven fruitless.  For all their supposed effort, Plaintiff's counsel ("Counsel") failed to meaningfully consider contradictory evidence put right in front of them, choosing instead to accept Plaintiff's self-serving recollections on faith alone.  Plaintiff's deposition then undercut the entire basis of her case; the furious backpedaling by Plaintiff and Counsel since then tells the Court all it needs to know.

**I.    COUNSEL'S PRE-FILING INVESTIGATION AND SUBSEQUENT DISCOVERY REVEALED NO FACTUAL BASIS FOR PLAINTIFF'S RECOLLECTION**

A major portion of the Opposition is devoted to detailing the alleged 220-hour investigation conducted by Counsel in the eight months before filing suit, including communications with Plaintiff, other models whose photos were taken by Diodato and their agents, and consultation with photographer Richard Agudelo.  *See* Opp. at 1-5, 17-21; Opp. Decl. ¶¶ 15-28.  However, even a lengthy pre-filing investigation cannot insulate counsel from Rule 11 liability where the factual allegations in the complaint were not "justified by the evidence that [such] investigation provided." *Brandt v. Schal Assocs., Inc.*, 121 F.R.D. 368, 379 (N.D. Ill. 1988).  *See, e.g.*, *Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 548-49 (5th Cir. 2001) (affirming sanctions where counsel conducted 150-hour, 6-month pre-filing inquiry, but ignored testimony showing suit was baseless).

---

[1] "Mot. Decl." and Mot. Ex." refer to the declaration and exhibits in support of Defendants' Motion (Dkt. No. 100).

Despite its façade of comprehensiveness, Counsel's pre-filing investigation demonstrated no factual basis for Plaintiff's allegation that she signed the Release at the 2004 Clinique Shoot (Cplt. ¶¶ 27, 63, 38, 85), and that Diodato later "doctored" it to appear she signed later (*id.* ¶¶ 62, 67, 71), which was the crux of her original, and still operative, complaint and advocated thereafter.

*First*, while Counsel allegedly consulted many models and industry professionals during their inquiry, none could possibly substantiate Plaintiff's specific allegations as to the signing of the Release. They did not attend the relevant photo shoots, did not witness the signing of the Release, and have no firsthand knowledge of the circumstances in which it was signed. *See* Reply Decl. of Scott J. Sholder dated Nov. 27, 2018 ("Reply Decl."), at ¶ 2. Plaintiff does not claim otherwise. *Cf.* Opp. at 3-7. Rather than fact-checking *Plaintiff's* allegations, these witnesses were likely consulted to develop *putative class members'* allegations. *Compare id.* at 3-5 *with* Reply Decl. ¶ 3, Ex. A at No. 1 & *id.* Ex. B. Regardless, no competent counsel would be satisfied from speaking to these unacquainted models that Plaintiff's account would find evidentiary support.

*Second*, Counsel made no legitimate attempt to verify Plaintiff's core allegation that the Release was "doctored" to appear that Plaintiff "signed after the form was supposedly 'revised' in 2007." Cplt. ¶ 71. *See also id.* ¶¶ 62, 67. Plaintiff suggested years ago that a "forensic handwriting expert" would be retained (*see* Dkt. No. 74 at 7-8), but the only opinion proffered to date is that of Mr. Agudelo, a photographer whose qualifications are dubious and unknown.[2] Counsel's sole reliance on Plaintiff's claim of "doctoring," without ever attempting to corroborate it despite Diodato's long-ago denial of same (Reply Decl. ¶ 5 & Ex. E at No. 2), is far from the "reasonable inquiry" required under Rule 11. *See Calloway v. Marvel Entm't Grp.*, 111 F.R.D. 637, 641 (S.D.N.Y. 1986) (imposing sanctions where counsel advocated clients' allegations of forgery);

---

[2] Plaintiff did not disclose Mr. Agudelo as a witness, let alone a handwriting expert, nor did she produce documents related to his opinion, despite being responsive to Defendants' document requests. Reply Decl. ¶ 4 & Exs. C-D.

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 128 F.R.D. 243, 245-46 (N.D. Ill. 1989) (sanctions warranted; the "[t]he ease by which counsel could have conducted a reasonable inquiry into the substantiality of his clients' claims" that their signatures were forged, "by hiring a handwriting expert," "belies his reliance solely on their allegations").

*Third*, Counsel ignored contradictory evidence, available in their pre-filing investigation and proffered by Defendants post-filing, and have done little (if anything) to challenge it to date. Counsel ignored the clear import of the Release's pre-printed 2007 "revised" date from the start, baselessly claiming it was "doctored." Plaintiff gives much weight to favorable parts of Mr. Agudelo's opinion, yet ignores his conclusion that "it was possible *but unlikely* that Diodato had falsified the revision date, so that *it was probably signed in 2009*." Opp. at 6 (emphasis added). Counsel continued to advocate Plaintiff's position (*see, e.g.*, Dkt. Nos. 30, 47) even after receiving, on April 1, 2016, signed statements from the only three individuals known to have witnessed the signing of the Release, two of whom signed it themselves, and all of whom state it was signed in 2009 (*see* Mot. Exs. B-D). Counsel contacted witness Lauren Benward in 2016, who confirmed the witness signature on the Release was "definitely" hers and that she "work[ed] on the Spiegel Job that day." Opp. Ex. 20. Until recently, Counsel made no attempt to question, let alone depose, witnesses Max Miller and Linda Hilfiker on their statements. *See* Reply Decl. ¶ 6 & Exs. F-G.

If Counsel had properly considered the product of their pre-filing investigation and evidence later provided, they would have realized that Plaintiff's purported recollection as to the signing of the Release had no basis in fact. *See Reichmann v. Neumann*, 553 F. Supp. 2d 307, 327 (S.D.N.Y. 2008) (counsel's failure to properly question client's recollection of events when clear documentary evidence disproved them was sanctionable); *In re Australia and New Zealand Banking Grp. Ltd. Secs. Litig.*, 712 F. Supp. 2d 255, 264 (S.D.N.Y. 2010) (imposing sanctions where any reasonable inquiry into facts would have prevented mistake going to crux of complaint).

3

## II. PLAINTIFF AND HER COUNSEL FAILED TO WITHDRAW THIS ACTION WHEN CONFRONTED WITH CLEAR EVIDENCE THAT IT WAS NOT TENABLE

Plaintiff denies "later advocating" the allegation that she signed the Release in 2004, but claims there is "no continuing duty" to comply with Rule 11 regardless. *See* Opp. at 21. This argument has no merit. Rule 11 does, in fact, "require[] an attorney to continuously make sure that his allegations have evidentiary support." *L.I. Head Start Child Dev. Servs., Inc. v. Frank*, 165 F. Supp. 2d 367, 372 (E.D.N.Y. 2001). *See also O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) ("[A] litigant's obligations with respect to the contents of . . . papers . . . include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit.") (quoting Fed. R. Civ. P. 11, 1993 Adv. Comm. Notes (hereinafter, "1993 ACN")). Plaintiff points to *Mareno v. Jet Aviation of Am., Inc.*, 970 F.2d 1126 (2d Cir. 1992) (Opp. at 21), but that case merely holds that Rule 11 imposes no continuing duty to investigate facts alleged in a state court complaint upon removal to federal court. *Id.* at 372.

Counsel violated their ongoing Rule 11 obligations by continuing to advocate Plaintiff's allegations as to the signing and "doctoring" of the Release (Dkt. Nos. 30, 47, 81),[3] in the face of evidence showing they have no merit (*see, e.g.*, Mot. Exs. B-D). Plaintiff concedes she "has not developed evidence, beyond her own testimony, to support the claim that [the Release] was signed in 2004" (Dkt. No. 105), though she had years to do so.[4] Sanctions are warranted under these circumstances. *See Ramashwar v. Espinoza*, No. 05 Civ. 2021, 2006 WL 36752, at *3 (S.D.N.Y. Jan. 6, 2006) ("[I]f evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention.") (quoting 1993 ACN); *Gambello v. Time Warner Commc'ns, Inc.*, 186 F. Supp. 2d 209, 230 (E.D.N.Y. 2002) (counsel must "withdraw any claims that bec[o]me unsupportable later").

---

[3] This Motion is not solely directed at Plaintiff's Rule 12 opposition; it is an example of continued advocacy.
[4] Plaintiff did not testify to signing in 2004; that no evidence confirms her story "yet" is an absurd hedge. Opp. at 20.

4

**III. PLAINTIFF CANNOT RECANT HER UNAMBIGUOUS TESTIMONY AS TO HER LACK OF MEMORY WHEN NO OBJECTION WAS MADE AT DEPOSITION AND HER LATER-PROPOSED AMENDMENT MATCHES HER TESTIMONY**

Far beyond "isolated factual errors" (Opp. at 19), Plaintiff's unsupported allegation that the signing of the Release occurred not at the 2009 Spiegel Shoot, but rather at the 2004 Clinique Shoot, has informed the trajectory of this entire litigation, necessitating witness statements, discovery demands, document collections, and motion practice aimed at establishing when it was actually signed.  *See* Reply Decl. ¶ 7.  Despite substantial evidence corroborating Defendants' position and undercutting hers, Plaintiff did not waver – until she admitted at her deposition that she actually had no "specific recollection" of the circumstances or timing of the signing of the Release.  *See* Mot. Ex. F (excerpts from transcript of Plaintiff's Deposition dated August 13, 2018 ("Aug. 13 Tr.")), at 119:16-22, 126:24-127:1.

Plaintiff desperately attempts to discredit her own damning testimony by faulting the sequence and form of Defendants' counsel's questioning.  *See* Opp. at 8-9.  But the transcript is clear:  Plaintiff admitted under oath, after having an opportunity to review the complaint and Release, that she had no "specific recollection" of the circumstances behind signing the Release.  *See* Aug. 13 Tr. at 119:16-22.  It is too late to recant.  That Plaintiff only "scanned" the complaint during her deposition and was questioned about the Release later is irrelevant (Opp. at 8), especially in light of the thorough involvement she had in drafting the complaint's painstakingly detailed allegations (*see* Opp. Decl. ¶ 18) and the full opportunity she had to review the document during deposition.  *See* Aug. 13 Tr. at 11:4-23.  Similarly unavailing is Plaintiff's claim that her testimony is not responsive.  *See* Opp. at 23.  Plaintiff volunteered her lack of recollection in response to the first part of the question asked, and regardless, a deponent cannot invalidate her own straightforward, complete statement based on a perceived non-responsiveness to the question.  *See* Aug. 13 Tr. at 119:16-22, 126:24-127:1.

5

In any event, Plaintiff's counsel did not object to the form of these questions at the deposition, and such objections are thus waived. *See* Aug. 13 Tr. at 3:19-21 (reserving "all objections except as to form"); *Rosary-Take One Prod. Co. P'ship v. New Line Distrib., Inc.*, No. 89 Civ. 1905, 1996 WL 79328, at *2 (S.D.N.Y. Feb. 23, 1996) (objections due to non-responsiveness relate to form and are waived if not made at the deposition). Defendants' counsel had no obligation to "follow up" or ask more specific questions (Opp. at 8-9); that is the role of Plaintiff's counsel, who declined the opportunity to rehabilitate Plaintiff's testimony by cross-examination. Remarkably, Plaintiff seeks to invalidate her testimony for purposes of avoiding Rule 11 sanctions, yet effectively affirms the same testimony in her concurrently filed proposed amended complaint, wherein she concedes that she "does not recall precisely when she signed the Release." Dkt. No. 105-1 at ¶ 28.

Following her deposition, Plaintiff's once steadfast position quickly unraveled, exhibiting inconsistencies that confirm that Plaintiff has no "specific recollection" of signing the Release, and could not have had a sufficient recollection to make the allegations in the original complaint:

- On September 7, 2018, at the conference before the Court, Plaintiff represented "there is some confusion as to when the [M]odel [R]elease was actually signed," and "so it [was Plaintiff's] position that if it was in fact signed in 2009, then the [M]odel [R]elease . . . would only apply to that set of photos." Dkt. No. 91, Tr. at 17:3-17.

- On October 18, 2018, in the proposed, but subsequently withdrawn, version of the amended complaint dated October 18, 2018 (Dkt. No. 95-1), Plaintiff alleged that she "does not recall precisely when she signed the Model Release" (*id.* ¶ 31), but because, *inter alia*, the 'Description of Shoot' . . . section[] [was] blank" when she signed the Model Release (*id.* ¶ 38), it would apply only to photos taken the day she signed (*id.*).

- On November 14, 2018, in the proposed amended complaint presently before the Court (Dkt. No. 105-1), Plaintiff's position shifted further; though she still "does not recall precisely when she signed the Model Release" (*id.* ¶ 28), she somehow recalled in the interim that the "Model Release relat[ed] to the Clinique Underwater Shoot images" in particular (*id.* ¶ 31), and the specific words "Clinique Underwater Shoot" were written into "Description of Shoot" on the Model Release when she signed it (*id.* ¶ 35).

At some point, Plaintiff must concede that she simply cannot support her claims. But it is her Counsel's obligation to prevent these ever-changing allegations from forming the basis of a lawsuit which has been pending for nearly three years, and Counsel's failure to do so is sanctionable.

6

IV. **PLAINTIFF AND HER COUNSEL CANNOT ESCAPE RULE 11 SANCTIONS BASED PROCEDURAL TECHNICALITIES AND FACTUAL DIVERSIONS**

Clearly wary of the substantive merits of her defenses to sanctions, Plaintiff advances numerous procedural technicalities and factual diversions, none of which has any merit.

*First*, Plaintiff claims Defendant's Rule 11 Motion is untimely. *See* Opp. at 15. Not so. As a threshold matter, timeliness is resolved "on a case by case basis, considering the particular circumstances involved"; in some circumstances, [a Rule 11 motion] "should not be filed until the other party has had a reasonable opportunity for discovery." 1993 ACN. Plaintiff claims the clock has been running since the date of Defendants' initial letter regarding suspected sanctionable conduct, but this letter was merely served as a courtesy and, ultimately, Defendants elected not to proceed with a Rule 11 motion at that time. *See* Reply Decl. ¶ 8. Understanding the severity of a Rule 11 Motion, Defendants believed it was prudent to move forward with such a motion only if evidence procured in discovery confirmed their suspicions. *Id*. At her deposition in August, Plaintiff's testimony confirmed as much. The cases Plaintiff cites indicate that Defendants were permitted to file their Rule 11 motion "as soon as practicable" after Plaintiff's Rule 11 violation was discovered. *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 413 n. 3 (S.D.N.Y. 2003).

*Second*, Plaintiff is in no position to lecture Defendants about timeliness. Defendants pointed out the significant defects in her complaint as early as March 16, 2016 (Mot. Decl. ¶ 2) (and again in the April 1, 2016 letter), but it took Plaintiff 885 days until October 18, 2018 to "discover" that her allegations were wrong and file a motion to amend the complaint (Dkt. No. 95).

*Third*, Plaintiff's arguments as to the Rule 11 safe harbor (Opp. at 15-17) are misguided. That Plaintiff's former lawyer Tom Canova was not personally served prior to filing has no bearing on the instant request for sanctions against Plaintiff and her current Counsel, who have been involved since this action's inception and took part in the sanctionable filings. *See* Dkt. Nos. 1, 47 (Fitzgerald, Persinger, Flynn, listed in signature block); Dkt. No. 81 (signed by Persinger). *See*

7

*also* Opp. Ex. 13 (Persinger and Fitzgerald billed 143.9 and 14.9 hours, respectively, in connection with pre-filing inquiry and preparation of complaint).  *See* 1993 ACN (sanctions should be imposed on the persons responsible for the violation, which may include the attorney(s) who actually signed, filed, submitted, and/or advocated the document in addition to "other attorneys in the firm, co-counsel, [and/or] the party itself").  Further, Mr. Canova signed the pleadings and papers at issue during his tenure at the Law Offices of Jack Fitzgerald, and the firm is responsible therefor.  *See* Fed. R. Civ. P. 11(c)(1) ("law firm" normally "held jointly responsible for a [Rule 11] violation committed by its partner, associate, or employee").

Plaintiff's contention that the parties' agreement to suspend litigation activity pending mediation ("Suspension Agreement") tolled the safe harbor period (Opp. at 16-17) is disingenuous. *Cf.* Reply Decl. ¶¶ 9-11 & Exs. H-I.  This contention does not hold up against Plaintiff's prior contention that the Suspension Agreement applied only to discovery such that she was free to file a motion to amend before mediation. *See id.* Exs. G, J; Dkt. No. 95.  There was no "rush" here; Defendants carefully considered the substance and timing of the instant motion, and it was no surprise that it was ultimately filed promptly after the unsuccessful mediation.  The parties never contemplated that the safe harbor be tolled beyond the period of time in which the parties had agreed to cease litigation activities in order to focus on mediation and possible resolution – which, in effect, extended the safe harbor from September 27, 2018 to October 26, 2018.  *See* Reply Decl. ¶¶ 9, 11. Defendants waited an extra three days while Plaintiff considered their final settlement offer.  *Id.* ¶ 10. Plaintiff received a significantly longer "safe harbor" than Rule 11 requires.[5]  This is another example of Plaintiff's pattern of attempting, after-the-fact, to reimagine facts in order to bolster an argument that has been shown to have no merit.

---

[5] Indeed, Plaintiff has had two-and-a-half years to consider most of the arguments made in the Rule 11 Motion.

8

*Finally*, along with her various unsupported legal positions and misconstruction of case law, Plaintiff's numerous factual misrepresentations further validate the need for Rule 11 sanctions here. For instance, Plaintiff fails to mention that she sought to depose Getty Images' 30(b)(6) witness on nine days' notice and to procure documents from Ms. Hilfiker, Ms. Benward, and Mr. Miller on ten days' notice (*id.* Exs. K-L), omits that she could provide no reason why Getty Images' 30(b)(6) deposition should occur before her Opposition (*id.* Ex. M), and references irrelevant and mischaracterized evidence to defend her inconsistent position as to the Release (Opp. at 20-21).

V. **PLAINTIFF CANNOT RECOVER ANY ATTORNEY'S FEES, MUCH LESS THE OUTLANDISH FEES HER COUNSEL RACKED UP IN A MATTER OF 16 DAYS**

In a transparent attempt to intimidate Defendants into abandoning their motion, Plaintiff raises the specter of a six-figure fee award. *See* Opp. at 22 & n.4. Not only is Plaintiff not entitled to fees, but her attorney's fees as stated are not reasonable in terms of both hours and hourly rates.

Plaintiff's request for attorney's fees incurred in opposing Defendants' motion is effectively a counter-demand for sanctions, and is thus "subject to the same Rule 11 analysis as all other motions." *Bonacci v. Lone Star Int'l Energy, Inc.*, No. 98 Civ. 0634, 1999 WL 76942, at *3 (S.D.N.Y. Feb. 16, 1999) (citation omitted). To determine whether the pursuit of sanctions is itself a violation of Rule 11, the relevant question is whether a competent attorney would have concluded that it was "destined to fail." *Eastway Const. Corp. v. City of N.Y.*, 762 F.2d 243, 254 (2d Cir. 1985). Such is not the case here. *See, e.g., Carlton Grp., Ltd. v. Tobin*, No. 02 Civ 5065, 2003 WL 21782650, at *8 (S.D.N.Y. July 31, 2003) (sanctions motion not unreasonable where evidence underlying claims was not overwhelming and plaintiff did not later uncover supporting evidence).

Predictably, Plaintiff misrepresents the facts to bolster her flimsy argument. Specifically: prior correspondence from an attorney advocating a position before the suit was filed does not prove Defendants knew the claim wasn't fabricated (*see* Opp. at 22); Plaintiff admitted under oath she did not recall when she signed the release with no objections from her attorneys, so her

9

testimony is not tainted (*id.* at 23); Diodato's deposition did not change the record (*id.* at 12, 24), and if anything, bolstered Defendants' positions; and the Rule 11 Motion is not based on "a few factual allegations" (*id.*) – it is based on Plaintiff's continued misrepresentations and fabrications regarding the single document that forms the basis of her entire case.

Plaintiff also offers no credible allegations that the Rule 11 Motion was brought for an improper purpose (*see* Opp. at 24-25) and, again, misconstrues the record.  Specifically: Getty Images did not use this motion as leverage to mediate, as its representative asked Plaintiff during her first day of deposition – well before the service of the motion – whether she would agree to mediate, which she ultimately did (Reply Decl. ¶ 16); this motion was not leverage to force Plaintiff to accept a settlement – it was already served prior to mediation, which was undertaken with no preconditions apart from the Suspension Agreement (*id.* ¶ 17); Getty Images offered to engage in settlement discussions as a business decision, and Defendants should not be penalized for trying to resolve the case without further escalation (*id.* ¶ 18); and Defendants have not obstructed access to witnesses given that Plaintiff has known of Ms. Hilfiker, Ms. Benward, and Mr. Miller since at least April 2016, and could have deposed them any time since.  *Id.* ¶ 6.

Finally, Plaintiff's counsel's claim to have spent 188.1 hours on their Opposition over the course of 16 days is not reasonable (Opp. Decl. ¶¶ 100-03).  According to the Opposition, Counsel spent almost as much time drafting the Opposition as they did conducting their alleged pre-filing inquiry (*see id*. at ¶¶ 15-28).  The hourly rates charged for the named attorneys are unreasonable as well.  If the Court considers awarding any of Plaintiff's fees (it should not), Defendants request an opportunity to fully brief the question of reasonableness of Plaintiff's purportedly incurred fees.

## CONCLUSION

Defendants respectfully request that the Court issue Rule 11 sanctions against Plaintiff and her counsel for the reasons stated herein and in Defendants' moving brief.

|  | Respectfully submitted, |
|---|---|
| Dated: November 27, 2018<br>New York, New York | COWAN, DEBAETS, ABRAHAMS<br>& SHEPPARD LLP |

By: /s/ Scott J. Sholder
Nancy E. Wolff
Scott J. Sholder
Marissa B. Lewis
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
nwolff@cdas.com
ssholder@cdas.com
mlewis@cdas.com

*Attorneys for Defendant Getty Images (US), Inc., Bill Diodato Photography, LLC, and Bill Diodato*

11