UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELODIE PASSELAIGUE, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>   v.<br><br>GETTY IMAGES (US), INC., GETTY IMAGES, INC., BILL DIODATO PHOTOGRAPHY, LLC, and BILL DIODATO,<br><br>      Defendants. | Case No. 16 Civ. 01362 (VSB)(BCM) |

## DECLARATION OF SCOTT J. SHOLDER

SCOTT J. SHOLDER declares as follows:

1. I am a partner with the law firm of Cowan, DeBaets, Abrahams & Sheppard LLP ("CDAS"), counsel for Defendants[1] Getty Images (US), Inc., Bill Diodato Photography, LLC, and Bill Diodato. I submit this declaration in further support of Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 (Dkt. Nos. 98-101) ("Rule 11 Motion") against plaintiff Elodie Passelaigue and her current attorneys of The Law Office of Jack Fitzgerald, PC.

2. According to Plaintiff's Opposition to Defendants' Rule 11 Motion, Plaintiff's counsel consulted many models and industry professionals as part of their pre-filing investigation. These witnesses include, for example: Phil Bram (model), Lucia Fiala (model), Jen Tourigney ("Model Manager" at modeling agency Wilhelmina, who identified another eight models), Simone Awor (model), Richard Agudelo (fashion photographer), and Haley Higgins, Mariel Booth, Karol Marie, Kris Huegel a/k/a Kris Bucholz, Chris Ryan, Andressa Costa, and Brittany Clybourn (all

---

[1] Unless otherwise noted, all defined terms referenced herein, including the term "Defendants," shall have the same meanings assigned in Defendants' Reply Memorandum of Law in further support of their Rule 11 Motion.

models).  *See* Opp. at 3-7; Opp. Decl. ¶¶ 25, 55, 80-86   However, as far as Defendants are aware based on their personal knowledge and the record in discovery, none of the foregoing witnesses (or any third parties mentioned in the Opposition, except for the three witnesses Defendants identified in April 2016, namely, Linda Hilfiker, Lauren Benward, and Max Miller, who are discussed below) attended either of the relevant photo shoots; witnessed the signing of the Release; or otherwise have firsthand knowledge of the circumstances in which the Release was signed.

3. Many of the models with whom Plaintiff and her counsel consulted were previously identified as putative class members.  Attached hereto as **Exhibit A** is a true and correct copy of redacted excerpts from Plaintiff's Responses to Defendants' First Set of Interrogatories dated October 12, 2016, including, in pertinent part, Plaintiff's Response to Interrogatory No. 1, wherein she identifies the thirteen putative class members by name.[2]  Attached hereto as **Exhibit B** is a true and correct copy of Plaintiff's Privilege Log dated September 5, 2017, which shows that a large majority of the communications undertaken as part of counsel's pre-filing investigation involved these thirteen putative class members.

4. Plaintiff and her counsel claim their pre-filing investigation also involved consultation with a "New York fashion photographer" named Richard Agudelo.  *See* Opp. at 6. Plaintiff did not name Mr. Agudelo in her Initial Disclosures dated May 4, 2016 (a true and correct copy of which is attached hereto as **Exhibit C**) or offer him as an expert witness, nor did she produce documents related to his opinion, despite being responsive to Defendants' document requests.  Attached hereto as **Exhibit D** is a true and correct copy of Defendants' First Set of Document Requests dated May 20, 2016, including, in pertinent part, Request Nos. 10-11, and 24.

---

[2] Because Plaintiff designated her Response to Interrogatory No. 1 as confidential pursuant to the stipulated protective order (Dkt. No. 61), Defendants have attached a redacted copy of Exhibit A for public filing and will concurrently file a request for leave to file an unredacted copy of same under seal.

5. Attached hereto as **Exhibit E** is a true and correct copy of excerpts from Diodato's Responses to Plaintiff's First Set of Requests for Admission dated October 28, 2016, including, in pertinent part, Diodato's Response to Request Nos. 2 and 3, wherein he expressly "states that he has not forged a signature on a MODEL RELEASE" and also "has not directed or requested another person to forge a signature on a MODEL RELEASE."

6. Although Plaintiff has known about Linda Hilfiker, Lauren Benward, and Max Miller since at least as early as April 1, 2016, when CDAS provided Plaintiff's counsel with their signed witness statements (true and correct copies of which are attached as Exhibits B-D to the Declaration of Nancy E. Wolff dated September 6, 2018 (Dkt. No. 100)), she made no attempt to question, let alone depose, Ms. Hilfiker and Mr. Miller on the facts set forth in such statements until only recently, and only sought documents from the three witnesses last month.  True and correct copies of the Notices of Subpoena *Ad Testificandum* to Ms. Benward and Ms. Miller, dated September 13, 2018, are collectively attached hereto as **Exhibit F**.  Plaintiff did not serve a Notice of Subpoena *Ad Testificandum* to Ms. Hilfiker on Defendants, but her counsel indicated via email on September 20, 2018 that Ms. Hilfiker had been served.  A true and correct copy of the relevant email correspondence is attached hereto as **Exhibit G**.

7. Plaintiff's allegation that the signing of the Release occurred not at the 2009 Spiegel Shoot, but rather at the 2004 Clinique Shoot, has informed the trajectory of this entire litigation. This allegation prompted Defendants to immediately identify and secure signed written statements from each of the individuals known to have witnessed the signing of the Release, and also to propound discovery demands, collect documents, and engage in motion practice aimed at establishing when it was actually signed.

3

8. As mentioned in Defendants' opening brief, CDAS, on behalf of Defendants, sent a letter to Plaintiff's counsel on April 1, 2016 requesting withdrawal of the complaint pursuant to Rule 11. This was merely a customary warning letter. Although Plaintiff did not withdraw her complaint or the factually inaccurate allegations therein, Defendants ultimately decided not to serve Plaintiff with a formal Rule 11 motion at that time. Recognizing the severity and potential ramifications of a Rule 11 motion, CDAS and Defendants believed it was prudent to move forward with such a motion only if evidence procured in discovery confirmed the conclusion drawn from the product of their own preliminary investigation. Further, a motion to dismiss pursuant to Rule 12(b)(6) provided an alternative, and less controversial, avenue for dismissal of Plaintiff's claims in their entireties; accordingly, CDAS and Defendants made a strategic decision to focus their efforts on a motion to dismiss in the meantime. Less than two weeks after the date of the Rule 11 letter, Defendants filed a request for leave to file a motion to dismiss. *See* Dkt. No. 26 (filed April 12, 2016). *See also* Dkt. Nos. 44-50 (motion filed May 26, 2016, fully briefed as of July 14, 2016).

9. The Rule 11 Motion (including copies of the notice of motion, memorandum of law, and declaration with exhibits, which are substantively identical to the versions filed with the Court, *see* Dkt. Nos. 98-100) was served on September 6, 2018 by email (a true and correct copy of the transmittal email is attached hereto as **Exhibit H**). The safe harbor would have closed twenty-one days later, on September 27, 2018. However, the parties agreed to cease litigation activities in order to focus on the upcoming mediation and possible resolution – which, in effect, extended the safe harbor for an additional twenty-nine days, from September 27, 2018 (the close of the initial safe harbor) to October 26, 2018 (the day after the mediation). Attached hereto as **Exhibit I** is a true and correct copy of email correspondence by and between myself and Jack Fitzgerald, Esq. dated September 20, 2018, regarding the parties' Suspension Agreement.

10. Defendants did not file the Rule 11 Motion immediately after the unsuccessful mediation. Rather, Defendants waited an extra three days before filing to allow Plaintiff time to consider Defendants' final settlement offer communicated at the mediation.

11. Plaintiff's counsel should not have been surprised that, absent a settlement at mediation, Defendants proceeded to file the instant sanctions motion. Defendants made it clear that the Rule 11 motion would be filed if and when it became obvious that a settlement could not be reached. Yet, Plaintiff never told Defendants that she believed filing immediately after the mediation would violate the Suspension Agreement. Defendants never contemplated that the safe harbor would be tolled beyond the period of time in which the parties were attempting to resolve this case, and have no reason to believe Plaintiff maintained such a belief.

12. Attached hereto as **Exhibit J** is a true and correct copy of email correspondence by and between myself and Jack Fitzgerald, Esq. dated October 19, 2018.

13. Attached hereto as **Exhibit K** is a true and correct copy of the Notice of Deposition of Getty Images pursuant to Fed. R. Civ. P. 30(b)(6), which was served on October 29, 2018, and noticed the deposition to be held nine days later, on November 7, 2018.

14. Attached hereto as **Exhibit L** are true and correct copies of the Notices of Subpoena *Duces Tecum* to Ms. Hilfiker, Ms. Benward, and Mr. Miller, which were served on October 29, 2018, and required production of documents ten days later, on November 8, 2018.

15. Attached hereto as **Exhibit M** is a true and correct copy of email correspondence by and between myself and Jack Fitzgerald, Esq. dated November 2, 2018.f

16. Getty Images' representative asked Plaintiff during her first day of deposition – well before the service of the motion – whether she would agree to mediate, which she ultimately did.

17. This motion was already served prior to mediation, which was undertaken with no preconditions apart from the Suspension Agreement.

18. Getty Images offered to engage in settlement discussions as a business decision, and to resolve the case without further escalation.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: New York, New York
November 27, 2018

_____
SCOTT J. SHOLDER